# In the United States Court of Federal Claims

No. 04-1719 C
(Filed: November 1, 2005)

| | |
|---|---|
| **AAB JOINT VENTURE,** Plaintiff, | * |
| v. | * |
| **THE UNITED STATES,** Defendant. | * |

*Brian Cohen*, of Bell, Boyd & Lloyd, Washington, D.C., for Plaintiff.

*Shalom Brilliant*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

---

**OPINION**

---

**DAMICH**, Chief Judge.

This case is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Plaintiff seeks to recover additional costs it allegedly incurred for disposal of excess material as a result of differing site conditions under a construction contract with the U.S. Army Engineer Corps-Europe. Plaintiff also seeks to recover additional costs and delay costs for its two subcontractors, Rolider, Ltd. ("Rolider") and Biri Barashi, Land Works, Development Infrastructure and Road, Ltd. ("Barashi"), as a result of the differing site conditions. In its motion, Defendant requests the Court to dismiss for lack of jurisdiction Plaintiff's claim on behalf of Barashi because it was not certified and presented to the contracting officer for final decision as required by the Contract Disputes Act for claims exceeding $100,000. *See* 41 U.S.C. § 605(c)(1). Plaintiff asserts that the Barashi claim arises from the same set of operative facts as its own certified claim to the contracting officer on July 23, 2003, and hence does not constitute a new claim that needs to be separately certified. For the reasons set forth below, Defendant's

Motion to Dismiss is hereby GRANTED.

## I. Background

AAB entered into a contract with the U.S. Army Engineer Corps-Europe on June 5, 2001, to design and construct a storage and logistics base in Elad, Israel for use by the Israeli Defense Force. Compl. ¶ 4, 6. AAB was to complete the project in three years, and was to receive $124,089,176 in compensation. *Id.* ¶ 6.

Attached to its Request for Proposals, the government provided a Geotechnical Report, which characterized the sub-surface in most of the building areas as mostly massive and hard, consisting of limy dolomite rock. *Id.* ¶ 7. The Geotechnical Report concluded that most of the work site could be excavated in hard limestone and dolomite, and that the excavated rock could be crushed and used as backfill. *Id.* The Geotechnical Report further advised that it would be possible to produce stable excavated slopes with no need of retaining walls, and that a portion of the buildings could be constructed on flat foundations. *Id.* The government specifications contained numerous references to the Geotechnical Report in its instructions on design and placement of piles and beams in construction of the foundations for the buildings. *Id.* ¶ 11.

AAB prepared its bid for earthwork operations based on the information contained in the Geotechnical Report indicating that it could expect approximately 60% hard rock, 30% medium rock, 10% weathered rock, and only traces of clay. *Id.* ¶ 14. AAB reduced its bid in anticipation of realizing additional revenue from offsite disposal and sale of excess excavated materials. *Id.*

Barashi and Rolider subcontracted with AAB to perform the earthwork operations. *Id.* ¶ 15. Barashi was to perform the work in the southwest section of the site, and Rolider was to perform the work in the northeast section of the site. *Id.* Both subcontractors were to engage in drilling, blasting, excavation, and processing material for fill and fill placement, while AAB was responsible for offsite disposal of excess material. *Id.*

In January 2002, AAB performed exploratory borings, which revealed different subsurface conditions from those shown in the Geotechnical Report. *Id.* ¶ 16. AAB thereafter gave written notice to the government of differing site conditions, noting that the subsurface conditions encountered differed materially from those indicated in the contract (Type I), and from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract (Type II). *Id.* ¶ 17.

On July 23, 2003, AAB submitted a certified claim to the contracting officer for an equitable adjustment of $6,885,115 (which it later revised to $6,510,301) for the costs relating to excess material disposal on the site. *Id.* ¶ 33. The costs were attributed to the unrealized commercial value of the excess excavated material, the added costs of processing materials for reuse, and the added costs of removing the excess usable material. *Id.* ¶ 32. The contracting officer failed to issue a final decision within 60 days of receipt of the certified claim. *Id.* ¶ 35.

On November 23, 2003, AAB submitted a certified claim to the contracting officer for an equitable adjustment to cover the added costs and delay costs incurred by Rolider as a result of the differing site conditions. *Id.* ¶ 39. According to the claim, Rolider had to utilize different methods to excavate and process the subsurface materials because the subsurface conditions encountered differed materially from the conditions represented in the Geotechnical Report. *Id.* The contracting officer failed to issue a final decision within 60 days of receipt of the certified claim. *Id.* ¶ 40.

In Count I of its November 30, 2004, complaint, AAB requested compensation in the amount of $6,510,301, pursuant to FAR 52.236-2 (Differing Site Conditions) and FAR 52.243-4 (Changes) for the increased costs incurred as a result of the subsurface conditions encountered at the work site. *Id.* ¶ 37. In Count I of its amended complaint, filed December 20, 2004, AAB requested $11,588,813 total compensation. Am. Compl. ¶ 42. In addition to the previously requested $6,510,301, AAB also requested: (1) $412,239 to replace unsuitable material under structures required as a result of the differing site conditions; (2) $4,037,203 to compensate subcontractor Rolider for its added costs and delay costs due to the differing site conditions; and (3) $629,070 to compensate subcontractor Barashi for delays in its operations due to the required removal of unsuitable subsurface material. Id. ¶ 37-39. It is the third claim that is the subject of Defendant's motion, as this claim was never submitted to the contracting officer.

## II. Standard of Review

In considering Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1), the Court must accept as true all of Plaintiff's well-pleaded facts alleged in the complaint, and draw all reasonable inferences in the Plaintiff's favor. *Goodwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Fed. Nat'l Mortgage Assoc. v. United States*, 379 F.3d 1303, 1311 (Fed. Cir. 2004) (citing *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The Tucker Act provides:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in

> tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2000).[1] The United States, therefore, waives its sovereign immunity and gives its consent to be sued by private parties over contract disputes under the Tucker Act. *United States v. Mitchell*, 463 U.S. 206, 215, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

Under the Contract Disputes Act, a contractor may submit a claim against the government relating to a contract to the contracting officer for a decision. 41 U.S.C. § 605(a) (2002). For claims of more than $100,000, the contractor must certify to the contracting officer that

> the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1) (2000). A final decision by the contracting officer, or the failure of the contracting officer to render a decision within the specified time period, serves as the basis for appeal to this court. 41 U.S.C. § 609(a) (2002); 41 U.S.C. § 605(c)(5) (2000).

## III. Analysis

Defendant argues that Plaintiff's claim for damages incurred by subcontractor Barashi, which was first introduced in its amended complaint, does not meet the requirements of 41 U.S.C. § 605 and § 609 because the claim was not first certified and submitted in writing to the contracting officer for consideration. Plaintiff counters that the Barashi claim is not a new claim, but is merely a request for an increase in amount of its properly certified claim that was presented to the contracting officer on its own behalf on July 23, 2003.

This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. *Santa Fe Eng'r v. United States*, 818 F.2d 856, 859 (Fed. Cir. 1987). Although a contractor is not precluded from increasing the amount of a claim, a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer. *Id.* at 858; *J.F. Shea Co., Inc. v. United States*, 4 Cl.Ct. 46, 54 (Cl. Ct. 1983). A new claim is "one that does not arise from the same set of operative facts as the claim submitted to the contracting officer." *J. Cooper & Assoc., Inc. v. United States*, 47 Fed.Cl. 280, 285 (2000) (*citing Tecom, Inc. v. United States*, 732 F.2d 935, 936-937 (Fed. Cir. 1984); *see also Foley Co.*

---

[1] Section 10(a)(1) of the Contract Disputes Act is codified at 41 U.S.C. § 609(a)(1), and section 6 is codified at 41 U.S.C. § 605.

*v. United States*, 26 Cl.Ct. 936, 940 (1992); *Cerebronics, Inc. v. United States*, 13 Cl.Ct. 415, 417 (1987). The same set of operative facts has been found where the contractor submits additional evidence pertaining to damages to support the same factual claim, *Shea*, 4 Cl.Ct. at 55, or where the claim merely "augments the legal theories" underlying the certified claim. *Cerebronics*, 13 Cl.Ct. at 418-419; *Thermocor, Inc. v. United States*, 35 Fed.Cl. 480, 489-490 (1996). In contrast, the same set of operative facts has not been found where the contractor files a different type of claim from that presented to the contracting officer, *Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1570 (Fed. Cir. 1993); *J. Cooper*, 47 Fed. Cl. at 285-286; *Metric Constr. v. United States*, 44 Fed.Cl. 513, 518-519 (1999); *Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 91 (1989), or where the facts require different kinds of proof. *Placeway Constr. v. United States*, 920 F.2d 903, 909 (Fed. Cir. 1990); *Foley*, 26 Cl.Ct. at 940. For example, in a breach of warranty dispute relating to infected sheep purchased from the Department of Agriculture, claims for seventeen sheep failed for lack of jurisdiction before this court because they had not been certified to the contracting officer, even though a claim for another sheep had been presented and certified. *Dodson Livestock Co. v. United States*, 42 Fed.Cl. 455, 461 (1998).

Plaintiff's claim in its amended complaint requests compensation on behalf of subcontractor Barashi for increased costs caused by delays in Barashi's operations as a result of removal of unsuitable subsurface material which differed from that represented in the Geotechnical Report. Am. Compl. ¶ 38. It is Plaintiff's position that the Barashi claim need not be separately certified because it arises from the same set of operative facts as the certified claim which AAB presented to the contracting officer on its own behalf on July 23, 2003.[2] However, the legal remedy sought, the party to be compensated, the factual basis, and the proof required for the Barashi claim is different from that for the certified AAB claim. The AAB claim is to recover the unrealized commercial value of the excess excavated material, the added costs of processing materials for reuse, and the added cost to remove to spoil or landfill the excess unusable material. *Id.* ¶ 32-33. While Barashi and Rolider were responsible for the drilling, blasting, excavation, fill processing, and fill placement operations, AAB was responsible for the offsite disposal of excess material. *Id.* ¶ 15. Hence, the functions of the contractor and the subcontractors were different, and the impact of the alleged differing site conditions on each of them was different. The AAB claim is to recover for the lost value on the excavated material, whereas the Barashi claim is to recover for delays in the earthwork operations. Although there is a common factual thread in that the subsurface conditions were the cause of both claims, "that does not necessarily mean that each claim involves proof of a common or related set of operative facts." *Placeway*, 920 F.2d at 909. Here, the factual evidence and proof required for Barashi's claim for delay costs is entirely different from that required for AAB's claim of increased costs

---

[2] It is not AAB's contention that the Barashi claim arises from the same set of operative facts as the certified claim presented by subcontractor Rolider on November 23, 2003. Although Defendant's arguments in its Motion to Dismiss focus entirely on how the Barashi claim is distinct from the certified Rolider claim, Plaintiff does not dispute Defendant's arguments and instead points to the certified AAB claim of July 23, 2003 as the basis for the Barashi claim.

for disposal of excess material, and therefore the two claims do not arise from the same set of operative facts.

Moreover, there is no allusion to the delay in Barashi's operations in AAB's original certified claim, which "would have alerted the contracting officer" that the Barashi's delay was part of AAB's claim. *Am. Renovation & Constr. Co., Inc. v. United States*, 45 Fed.Cl. 44, 51 (1999). The purpose of the certification requirement is to force contractors to use specificity in the claim that they submit to the contracting officer so that the contracting officer can give the claim full consideration before it goes to the court. *See Tecom*, 732 F.2d at 937; *Dodson Livestock*, 42 Fed.Cl. at 462. The critical test is whether the presentation of the claim directly to the court undermines the scheme of adjudication prescribed by the Contract Disputes Act by circumventing the statutory role of the contracting officer to pass judgment on the contractor's entire claim. *Thermocor*, 35 Fed.Cl. at 489 (citing *Cerebronics*, 13 Cl.Ct. at 418). By first raising the Barashi claim with this Court, Plaintiff has effectively circumvented the role of the contracting officer to render judgment on the delay costs incurred by Barashi as a result of removal of the unsuitable subsurface material.

Proof of a claim by a prime contractor on behalf of its subcontractor is distinct from proof of a claim by the prime contractor on its own behalf. *Eng'r Demolition, Inc. v. United States*, 60 Fed.Cl. 822, 831 (2004). The claims involve "'separate contracts, embodying separate obligations, between' different parties." *Id*. (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4408 at 188 (2d ed. 2002). Here, the claim by AAB on its own behalf was based on the contract between AAB and the government under which AAB would design and construct a storage and logistics base. In contrast, the claim by AAB on behalf of Barashi was based on the subcontract between AAB and Barashi under which Barashi would perform the earthwork operations required for excavation of the site. Different contracts and different factual issues are therefore under consideration in each claim. Barashi can not bring the claim against the government directly. The Tucker Act does not provide standing for subcontractors to sue the government for an equitable adjustment under the Contract Disputes Act. *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *Severin v. United States*, 99 Ct.Cl. 435, 442 (1943). The government consents to be sued only by its contractors, with whom it has privity of contract. *Erickson*, 731 F.2d at 813. The contractor, therefore, may bring a pass-through suit on the subcontractor's behalf only when the contractor is liable to the subcontractor. *Metric Constr. v. United States*, 314 F.3d 578, 581 (Fed. Cir. 2002); *E. R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1370 (Fed. Cir. 1999). At issue in the Barashi claim but not in the AAB claim, therefore, is AAB's liability to Barashi under the subcontract. In sum, the Barashi claim and the certified AAB claim are based on different sets of operative facts, and hence the Barashi claim need be independently certified before the contracting officer for a final decision. In the absence of presentation and certification to the contracting officer, this Court lacks jurisdiction of the Barashi claim.

## IV. Conclusion

Defendant's Motion to Dismiss Plaintiff's claim on behalf of Barashi (Am. Compl. ¶ 38) for Lack of Subject Matter Jurisdiction pursuant to RCFC 12(b)(1) is hereby GRANTED.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge