**Request for International Judicial Assistance
pursuant to the Hague Convention of 18 March 1970
on the Taking of Evidence Abroad in Civil or Commercial Matters**

# Re: Request for Oral Deposition of Mr. Amos Israeli

| | |
|---|---|
| 1. Sender: | Honorable Judge Edward J. Damich, Chief Judge<br>United States Court of Federal Claims<br>717 Madison Place<br>Washington, D.C. 20001 |
| 2. Central Authority of the Requested State: | Director of Courts<br>22 Kanfei Nesharim St.<br>Jerusalem, 95464 Israel<br>Telephone (972) (2) 655-6843<br>Facsimile (972) (2) 655-6846 |
| 3. Person/entity to whom the executed request is to be served upon: | Amos Israeli<br>27 Sutin Street<br>Tel Aviv, Israel |
| **IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:** | |
| 4. a. Requesting judicial authority (article 3,a): | Honorable Judge Edward J. Damich, Chief Judge<br>United States Court of Federal Claims<br>717 Madison Place<br>Washington, D.C. 20001 |
| b. To the competent authority of (article 3,a): | The State of Israel |
| c. Name of the case and any identifying number: | A.A.B Joint Venture v. United States, United States Court of Federal Claims, Case No. 04-1719-C |

| | |
|---|---|
| 5. Name and addresses of the parties and their representatives (including representatives in the requested State) (article 3,b) | |
| a. Plaintiff: | A.A.B Joint Venture<br>P.O. Box 37, Rosh HaAyin, 68100 Israel<br>Attn: Mr. S. Denison Keeney |
| Representatives/Attorneys: | Brian Cohen, Esquire<br>Lawrence M. Prosen, Esquire<br>Philip Clark Jones, Esq.<br>Bell, Boyd & Lloyd PLLC<br>1615 L Street, N.W.<br>Suite 1200<br>Washington, D.C. 20036-5610 USA<br>202-955-6834 (telephone)<br>202-955-4117 (facsimile)<br>bcohen@bellboyd.com<br><br>Devorah M. Patt. Adv.<br>P.O. Box 2221<br>Sayvon, Israel<br>972 3 7369844 |
| b. Defendant: | United States of America |
| Representatives/Attorneys: | Shalom Brilliant, Esquire<br>Senior Trial Counsel<br>Commercial Litigation Branch, Civil Division<br>United States Department of Justice<br>Attention: Classification Unit<br>8th Floor, 1100 L Street, N.W.<br>Washington, D.C. 20530 USA<br>202-305-7561 (telephone)<br>202-305-7643 (facsimile)<br>Shalom.Brilliant@usdoj.gov |
| c. Other parties: | None |
| d. Representatives: | None |

| | |
|---|---|
| 6. a. Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (article 3,c): | Claim by contractor for equitable adjustment of contract price pursuant to Federal Contract Disputes Act, arising out of construction of Nachshonim Military Storage Base, Elad, Israel. |
| b. Summary of complaint: | Contractor asserts claims arising out of material differences between the description of subsurface conditions in the Geotechnical Report, which was a Contract Document, and actual conditions as discovered during construction, causing increased costs of performance on the part of the contractor and its subcontractors. |
| c. Summary of defense and counterclaim: | The United States denies liability. |
| d. Other necessary information or documents: | None |
| 7. a. Evidence to be obtained or other judicial act to be performed (article 3,d): | AAB Joint Venture seeks to take the oral testimony, under oath, of Mr. Amos Israeli concerning the topics described in Exhibit B.<br><br>**Time / Date:** 9:30 a.m. on Wednesday, July 26, 2006<br>**Place:** Fischer Behar Chen & Co.<br>3 Daniel Frisch Street<br>Tel Aviv 64731, Israel |
| b. Purpose of the evidence or judicial act sought: | Collection of evidence in aid of prosecuting the litigation identified above in Block 6. |
| 8. Identity and address of any person to be examined (article 3,e): | Amos Israeli<br>27 Sutin Street<br>Tel Aviv, Israel |
| 9. Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (article 3,f): | See Exhibit B for the topics on which AAB Joint Venture seeks to examine Mr. Amos Israeli. |
| 10. Documents or other property to be inspected (article 3,g): | |

| | |
|---|---|
| 11. Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3,h): | The oral examination will be under oath or affirmation. |
| 12. Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (articles 3,i and 9): | The examination by the attorney for the A.A.B Joint Venture of Mr. Israeli will be conducted by oral questions and answers to be recorded and transcribed verbatim. If counsel for the United States so desires he may cross examine the witness. |
| 13. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (article 7): | Please notify Plaintiff's Counsel, Brian Cohen, Esquire, Bell, Boyd & Lloyd PLLC, 1615 L Street, N.W., Suite 1200, Washington, D.C. 20036-5610 USA; 202-955-6834 (telephone), 202-955-4117 (facsimile); bcohen@bellboyd.com, both verbally and in writing immediately upon service of this document upon the party identified in block 3 above. |
| 14. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (article 8): | Not applicable |
| 15. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (article 11,b): | Not applicable |
| 16. The fees and costs incurred which are reimbursable under the second paragraph of article 14 or under article 26 of the Convention will be borne by: | Plaintiff, A.A.B Joint Venture, care of<br>Brian Cohen, Esquire<br>Bell, Boyd & Lloyd PLLC<br>1615 L Street, N.W.<br>Suite 1200<br>Washington, D.C. 20036-5610 USA<br>202-955-6834 (telephone)<br>202-955-4117 (facsimile)<br>bcohen@bellboyd.com |
| DATE OF REQUEST | So requested this ______ day of _______________, 2006. |
| SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY | ________________________________<br>The Honorable Edward J. Damich<br>Chief Judge, United States Court of Federal Claims |

**Exhibit A – Instructions and Definitions**

All of the topics for oral examination (Exhibit B) relate to the Nachshonim Military Storage Base, near Elad, Israel, which was constructed by the A.A.B Joint Venture under Contract No. DACA90-01-C-0043 with the United States Army Corps of Engineers.

With respect to the deposition (oral inquiry, under oath), the witness will be examined on all aspects of the Geotechnical Report (including the Site Investigation Survey). Exhibit B sets forth some of the specific topics of inquiry, but the examination will not be limited to just those topics.

**EXHIBIT B – Topics for Inquiry – Mr. Amos Israeli**

1. Describe in detail your educational and professional background.

2. Describe in detail your involvement in the preparation of the Geotechnical Report (including the Site Investigation Survey).

3. Describe in detail your involvement in the preparation of the Request for Proposals.

4. Describe in detail your involvement or participation in the Project after award of the contract to A.A.B Joint Venture, including but not limited to observing or analyzing piling, borings and/or excavation work performed by the Joint Venture and observation of subsurface conditions.

5. At the time the Geotechnical Report (including the Site Investigation Survey) was being prepared, what restrictions existed on access to the site of the Project?

6. Who made the decision to plan ten borings, and what factors were taken into consideration in making that decision?

7. Why were only seven borings taken, of the ten planned borings?

8. How was the location of the borings determined?

9. Were you personally present when the borings were taken?

10. Did you receive reports concerning the results of the borings?

11. In your opinion, were seven borings adequate upon which to base the opinions of the nature of the subsurface conditions which were included in the Geotechnical Report?

12. Describe the process by which the boring material was collected and analyzed?

13. Who performed the analysis of the material collected by the borings?

14. What is the geotechnical meaning of “hard” rock, “weathered” rock, and “medium hard” rock.

15. Is rock mass with a uniaxial compressive strength of 500-800 kg/sq. cm. considered "hard" rock?

16. With respect to the statement in Paragraph 4.5 of the Geotechnical Report to "our experience in the region," whose experience does that statement make reference to, and what were the details of such experience?

17. In the references at Conclusions, Section 6.1 to "most of the area" will be excavated in hard limestone and dolomite and that "[w]eathered rock areas in depths exceeding 3.0 m" would be "small," what was the intended meaning of "most" and "small"? Is there a percentage or a range of percentages that can reasonably be applied to these terms?

18. With respect to the statement at Section 6.4 of the Geotechnical Report that "[t]he excavated rock is hard and solid, enabling the construction of the buildings on flat foundations," who made or participated in making that determination, and what factors were taken into consideration?

19. With respect to the statement at Section 7.2.4.1 of the Geotechnical Report that horizontal pressures developed by earth pressure shall be calculated according to earth pressure coefficient "at rest" of Ka=0.5, how was this directive determined, what factors were taken into account, and who was involved in the decision to include this directive in the Report?

20. With respect to the statement at Section 7.2.3.2 of the Geotechnical Report that penetration length of piles shall be determined according to an allowable friction of 15 ton/sq. m., how was this directive determined, what factors were taken into account, and who was involved in the decision to include this directive in the Report?

21. What factors were taken into account with respect to the determination in Section 7.2.5 of the Geotechnical Report that the foundation method for the buildings referenced therein be footings as opposed to piles.

22. Was it anticipated that the contractors would formulate their bids based on their forecast of the expected costs utilizing the foundation methods described in Section 7.2.5 of the Geotechnical Report.

23. Whether the witness has any knowledge concerning the extent of the market in Israel for the sale of crushed rock for use as fill material for the period 2001 – 2003.

24. Whether any estimates were performed concerning the availability of on-site material for grading and fill operations on the Project; and if so, the details pertaining to such estimates.

25. Whether any analysis was performed concerning whether there would be excess material that would have to be removed from the site, and if so, the details pertaining to such analysis, including what if any quantities were anticipated to be disposed and/or sold.

26. What permits, licenses, or other such documents were required from the Israeli Land Authority with respect to export, re-use of sale of material excavated from the Project site.

27. Whether the Host Nation Technical Requirements set forth in the Contract represented custom and usage in the construction industry in Israel for the issues addressed therein.

28. With respect to the statement in the Geotechnical Report, at Section 3, that "considerable information" about the properties of the rock was collected from the quarry area north of the site, what information does this statement refer to, and which quarry is referred to. Was it reasonable for bidders to assume that the subsurface conditions at the Project site were similar in nature to that quarry?

29. Whether it was anticipated that the contractors would formulate their bids based on the assumption that there would be excess material of a quality such that it could be sold for off-site use. If so, explain in detail the basis for such assumption.

30. Describe in detail the nature and quantity of clay material that was anticipated.

31. Whether you anticipated a specific total length and number of piles and how you made these determinations.

32. The percentage and/or quantity of various types of subsurface material which was anticipated.

33. Describe any analyses or information which you have discussed and/or provided to anyone concerning the JV's claims.