A-E

**Request for International Judicial Assistance
pursuant to the Hague Convention of 18 March 1970
on the Taking of Evidence Abroad in Civil or Commercial Matters**

## Re: Document Request and Request for Oral Deposition of Blank-Lehrer, Ltd.

| | |
|---|---|
| 1. Sender: | Honorable Judge Edward J. Damich, Chief Judge<br>United States Court of Federal Claims<br>717 Madison Place<br>Washington, D.C. 20001 |
| 2. Central Authority of the Requested State: | Director of Courts<br>22 Kanfei Nesharim St.<br>Jerusalem, 95464 Israel<br>Telephone (972) (2) 655-6843<br>Facsimile (972) (2) 655-6846 |
| 3. Person/entity to whom the executed request is to be served upon: | Blank-Lehrer, Ltd.<br>7 Ha'arad Street<br>Tel Aviv, 69710 Israel |
| **IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:** | |
| 4. a. Requesting judicial authority (article 3,a): | Honorable Judge Edward J. Damich, Chief Judge<br>United States Court of Federal Claims<br>717 Madison Place<br>Washington, D.C. 20001 |
| b. To the competent authority of (article 3,a): | The State of Israel |
| c. Name of the case and any identifying number: | A.A.B Joint Venture v. United States, United States Court of Federal Claims, Case No. 04-1719-C |

A-E

| | |
|---|---|
| 5. Name and addresses of the parties and their representatives (including representatives in the requested State) (article 3,b) | |
| a. Plaintiff: | A.A.B Joint Venture<br>P.O. Box 37, Rosh HaAyin, 68100 Israel<br>Attn: Mr. S. Denison Keeney |
| Representatives/Attorneys: | Brian Cohen, Esquire<br>Lawrence M. Prosen, Esquire<br>Philip Clark Jones, Esq.<br>Bell, Boyd & Lloyd PLLC<br>1615 L Street, N.W.<br>Suite 1200<br>Washington, D.C. 20036-5610 USA<br>202-955-6834 (telephone)<br>202-955-4117 (facsimile)<br>bcohen@bellboyd.com<br><br>Devorah M. Patt. Adv.<br>P.O. Box 2221<br>Sayvon, Israel<br>972 3 7369844 |
| b. Defendant: | United States of America |
| Representatives/Attorneys: | Shalom Brilliant, Esquire<br>Senior Trial Counsel<br>Commercial Litigation Branch, Civil Division<br>United States Department of Justice<br>Attention: Classification Unit<br>8th Floor, 1100 L Street, N.W.<br>Washington, D.C. 20530 USA<br>202-305-7561 (telephone)<br>202-305-7643 (facsimile)<br>Shalom.Brilliant@usdoj.gov |
| c. Other parties: | None |
| d. Representatives: | None |

A-E

| | |
|---|---|
| 6. a. Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (article 3,c): | Claim by contractor for equitable adjustment of contract price pursuant to Federal Contract Disputes Act, arising out of construction of Nachshonim Military Storage Base, Elad, Israel. |
| b. Summary of complaint: | Contractor asserts claims arising out of material differences between the description of subsurface conditions in the Geotechnical Report, which was a Contract Document, and actual conditions as discovered during construction, causing increased costs of performance on the part of the contractor and its subcontractors. |
| c. Summary of defense and counterclaim: | The United States denies liability. |
| d. Other necessary information or documents: | None |
| 7. a. Evidence to be obtained or other judicial act to be performed (article 3,d): | A.A.B Joint Venture seeks to inspect the documents described in Exhibit B to this Request, and then to take the oral testimony, under oath,, a designee of Blank-Lehrer, Ltd. concerning the topics described in Exhibit C.<br><br>The production of the documents should be coordinated with Advocate Devorah Patt, and should be produced not later than June 30, 2006.<br><br>Unless the parties agree to different time or place, the deposition (oral examination) will be conducted as follows:<br><br>**Time / Date:** 9:30 a.m. on Monday, July 24, 2006<br>**Place:** Baratz, Bar-Nathan & Co.<br>1 Azriell Center, Round Tower, 18th Floor<br>Tel Aviv 67021, Israel |
| b. Purpose of the evidence or judicial act sought: | Collection of evidence in aid of prosecuting the litigation identified above in Block 6. |
| 8. Identity and address of any person to be examined (article 3,e): | Person(s) designated by<br>Blank-Lehrer, Ltd.<br>7 Ha'arad Street<br>Tel Aviv, 69710 Israel |

A-£

| | |
|---|---|
| 9. Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (article 3,f): | See Exhibit C for the topics on which A.A.B Joint Venture seeks to examine a person or persons to be designated by Blank-Lehrer, Ltd. as their representative(s), as an informed person who is capable of answering the questions posed in Exhibit C. If the person designated by Blank-Lehrer does not have person knowledge any matter referenced in Exhibit C, an inquiry must be made to find out the answer if possible. |
| 10. Documents or other property to be inspected (article 3,g): | See list appended hereto as Exhibit B. |
| 11. Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3,h): | The oral examination will be under oath or affirmation. |
| 12. Special methods or procedure to be followed (e.g. oral or in writing, verbatim, transcript or summary, cross-examination, etc.) (articles 3,i and 9): | The examination by the attorney for the A.A.B Joint Venture of the designee of Blank-Lehrer, Ltd., will be conducted by oral questions and answers to be recorded and transcribed verbatim. If counsel for the United States so desires he may cross examine the witness. |
| 13. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (article 7): | Please notify Plaintiff's Counsel, Brian Cohen, Esquire, Bell, Boyd & Lloyd PLLC, 1615 L Street, N.W., Suite 1200, Washington, D.C. 20036-5610 USA; 202-955-6834 (telephone), 202-955-4117 (facsimile); bcohen@bellboyd.com, both verbally and in writing immediately upon service of this document upon the party identified in block 3 above. |
| 14. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (article 8): | Not applicable |
| 15. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (article 11,b): | Not applicable |

A-E

| | |
|---|---|
| 16. The fees and costs incurred which are reimbursable under the second paragraph of article 14 or under article 26 of the Convention will be borne by: | Plaintiff, A.A.B Joint Venture, care of<br>Brian Cohen, Esquire<br>Bell, Boyd & Lloyd PLLC<br>1615 L Street, N.W.<br>Suite 1200<br>Washington, D.C. 20036-5610 USA<br>202-955-6834 (telephone)<br>202-955-4117 (facsimile)<br>bcohen@bellboyd.com |
| DATE OF REQUEST | So requested this 12th day of June, 2006. |
| SIGNATURE AND SEAL OF THE REQUESTING AUTHORITY | Edward J. Damich<br>The Honorable Edward J. Damich<br>Chief Judge, United States Court of Federal Claims |

A -E

**Exhibit A – Instructions and Definitions**

All of the Requests for Documents (Exhibit B) and the topics for oral examination (Exhibit C) relate to the Nachshonim Military Storage Base, near Elad, Israel, which was constructed by the A.A.B Joint Venture under Contract No. DACA90-01-C-0043 with the United States Army Corps of Engineers.

The documents requested include all forms of information regardless of the method by which it is stored, and includes letters, emails, memoranda, reports, handwritten notes, plans, sketches, charts, etc. This request covers both paper documents and documents stored in electronic form, including documents stored on computer hard drives, computer disks, CDs, or any other form of information storage.

With respect to the deposition (oral inquiry, under oath), the witness will be examined on all aspects of the Geotechnical Report (including the Site Investigation Survey). Exhibit C sets forth some of the specific topics of inquiry, but the examination will not be limited to just those topics.

A-E

**EXHIBIT B – Documents Requested**

1. All communications, including emails, sent by you or received by you related in any way to the Project, including but not limited to communications to and from Ta Hal Consultant Engineers, Ltd., the Israel Ministry of Defense, the Israeli Defense Forces, the U.S. Army Corps of Engineers, Klar Engineer & Engineering Services, Ltd, and Geo-Prospect, Ltd., related in any way to the Project.

2. All rough, preliminary and revised drafts of any documents prepared by you related to the Project, including but not limited to the Geotechnical Report / Site Investigation Survey or any sections thereof prepared by you.

3. All documents which were referenced or cited in the Geotechnical Report (including the Site Investigation Survey), or consulted by you in connection with your work on the Project, including but not limited to maps and surveys.

4. All published standards relied upon or consulted by you with respect to the recommendations in the Geotechnical Report of the type of footings for the various buildings of the Project, including but not limited to SI 940.

5. All photographs taken at the Project site, whether taken by you or obtained from third parties or other sources, including but not limited to photographs of core borings.

6. All information available to you concerning subsurface conditions in the general area of the Project site, including nearby quarries, or nearby construction sites.

7. All notes and memoranda of meetings attended by you in connection with the Project.

8. All communications, including reports, analysis, or evaluation of A.A.B Joint Venture's claim for equitable adjustment arising out of differing site conditions.

9. All documents concerning pile test loading, foundation design, and civil engineering calculations concerning the Project.

A-E

10. All documents concerning the earthworks for the Project, including but not limited to estimates, take-offs or projections concerning excavation and cut and fill operations, foundation design, placement and compaction of fill material, and disposal or excess material.

////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

A-E

**EXHIBIT C – Topics for Inquiry**
**Deposition of Designee of Blank-Lehrer, Ltd.**

1. Describe in detail the educational and professional background of your designee(s).

2. Describe in detail your company's involvement in the preparation of the Geotechnical Report / Site Investigation Survey, including who in your organization participated in that effort, and the area of responsibility for each such person.

3. Describe in detail your company's involvement in the preparation of the Request for Proposals.

4. Describe in detail your company's involvement or participation in the Project after award of the contract to A.A.B Joint Venture, including but not limited to observing or analyzing piling, borings and/or excavation work performed by the Joint Venture and observation of subsurface conditions.

5. At the time the Geotechnical Report (including the Site Investigation Survey) was being prepared, what restrictions existed on access to the site of the Project?

6. Who made the decision to plan ten borings, and what factors were taken into consideration in making that decision?

7. Why were only seven borings taken, of the ten planned borings?

8. How was the location of the borings determined?

9. Was anyone from your company personally present when the borings were taken?

10. Did you receive reports concerning the results of the borings?

11. In your opinion, were seven borings adequate upon which to base the opinions of the nature of the subsurface conditions which were included in the Geotechnical Report?

12. Describe the process by which the boring material was collected and analyzed?

A-E

13. Who performed the analysis of the material collected by the borings?

14. What is the geotechnical meaning of "hard" rock, "weathered" rock, and "medium hard" rock.

15. Is rock mass with a uniaxial compressive strength of 500-800 kg/sq. cm. considered "hard" rock?

16. With respect to the statement in Paragraph 4.5 of the Geotechnical Report to "our experience in the region," whose experience does that statement make reference to, and what were the details of such experience?

17. In the references at Conclusions, Section 6.1 to "most of the area" will be excavated in hard limestone and dolomite and that "[w]eathered rock areas in depths exceeding 3.0 m" would be "small," what was the intended meaning of "most" and "small"? Is there a percentage or a range of percentages that can reasonably be applied to these terms?

18. With respect to the statement at Section 6.4 of the Geotechnical Report that "[t]he excavated rock is hard and solid, enabling the construction of the buildings on flat foundations," who made or participated in making that determination, and what factors were taken into consideration?

19. With respect to the statement at Section 7.2.4.1 of the Geotechnical Report that horizontal pressures developed by earth pressure shall be calculated according to earth pressure coefficient "at rest" of Ka=0.5, how was this directive determined, what factors were taken into account, and who was involved in the decision to include this directive in the Report?

20. With respect to the statement at Section 7.2.3.2 of the Geotechnical Report that penetration length of piles shall be determined according to an allowable friction of 15 ton/sq. m., how was this directive determined, what factors were taken into account, and who was involved in the decision to include this directive in the Report?

A-E

21. What factors were taken into account with respect to the determination in Section 7.2.5 of the Geotechnical Report that the foundation method for the buildings referenced therein be footings as opposed to piles.

22. Was it anticipated that the contractors would formulate their bids based on their forecast of the expected costs of utilizing the foundation methods described in Section 7.2.5 of the Geotechnical Report.

23. Whether your designee has any knowledge concerning the extent of the market in Israel for the sale of crushed rock for use as fill material.

24. Whether any estimates were performed concerning the availability of on-site material for grading and fill operations on the Project; and if so the details pertaining to such estimates.

25. Whether any analysis was performed concerning whether there would be excess material that would have to be removed from the site, and if so, the details pertaining to such analysis, including what if any quantities were anticipated to be disposed and/or sold.

26. What permits, licenses, or other such documents were required from the Israeli Land Authority with respect to export, re-use of sale of material excavated from the Project site.

27. Whether the Host Nation Technical Requirements set forth in the Contract represented custom and usage in the construction industry in Israel for the issues addressed therein.

28. With respect to the statement in the Geotechnical Report, at Section 3, that "considerable information" about the properties of the rock was collected from the quarry area north of the site, what information does this statement refer to, and which quarry is referred to. Was it reasonable for bidders to assume that the subsurface conditions at the Project site were similar in nature to that quarry?

A-E

29. Whether it was anticipated that the contractors would formulate their bids based on the assumption that there would be excess material of a quality such that it could be sold for off-site use? If so, explain in detail the basis for such assumption.

30. Describe in detail the nature and quantity of clay material that was anticipated.

31. Whether you anticipated a specific total length and number of piles and how you made these determinations.

32. The percentage and/or quantity of the various types of subsurface material which was anticipated.

33. Describe any analyses or information which you have discussed and/or provided to anyone concerning the JV's claims.

# CERTIFICATE OF TRANSLATION

I, Yuval Rosen, bearer of Israeli Identity Document No. 054757828, of 27 Soutine Street, Tel Aviv, Israel, HEREBY DECLARE AND CERTIFY as follows:

1. I was admitted as an Advocate of the Israel Bar on 31st May 1994 and I am proficient in both the English and Hebrew languages.

2. I am self-employed as legal counsel and translator and specialise in the translation of legal documentation.

3. I have extensive experience in both the drafting and translation of legal documentation.

4. In the course of my employment as aforesaid, I translated the English documentation annexed hereto and marked "A-E" into Hebrew to the best of my ability, and my interpretation and translation of the said documentation, which is annexed hereto and marked "A-H", is, to the best of my knowledge and belief, reasonable and accurate.

AS WITNESS my hand this 31st day of May 2006

יובל רוזן, עו"ד
מ.ר 16485

Yuval Rosen, Adv.

A-H

**בקשה לעזרה משפטית בינלאומית בהתאם לאמנה בדבר גביית ראיות בחוץ לארץ בעניינים אזרחיים או מסחריים שנחתמה בהאג ביום 18 במארס 1970**

**הנדון: בקשה למסמכים ובקשה לעדות בעל פה של בלנק – לרר בע"מ**

| | |
|---|---|
| 1. השולח: | כב' השופט אדוארד ג'יי דאמיך, שופט ראשי, בית המשפט של ארצות הברית לתביעות פדראליות<br>717 Madison Place<br>Washington, D.C. 20001 |
| 2. הרשות המרכזית של המדינה המבקשת: | מנהל בתי המשפט<br>רח' כנפי נשרים 22<br>ירושלים 95464, ישראל<br>טלפון 655-6843 (2) (972)<br>פקסימיליה 655-6846 (2) (972) |
| 3. האדם / הגוף שיש להמציא לו את הבקשה החתומה: | בלנק – לרר בע"מ<br>רח' הארד 7<br>תל אביב, ישראל 69710 |
| **בהתאם לסעיף 3 של האמנה, מתכבד המבקש החתום מטה להגיש את הבקשה המפורטת להלן:** | |
| 4. א. הרשות המשפטית המבקשת (סעיף 3, א): | כב' השופט אדוארד ג'יי דאמיך, שופט ראשי<br>בית המשפט של ארצות הברית לתביעות פדראליות<br>717 Madison Place<br>Washington, D.C. 20001 |
| ב. אל הרשות המוסמכת של (סעיף 3, א): | מדינת ישראל |
| ג. שם התיק וכל מספר מזהה: | א. א. ב. מיזם משותף נ' ארצות הברית, בית המשפט של ארצות הברית לתביעות פדראליות, תיק מס' 04-1719-C |

A-H

| | |
|---|---|
| 5. שמות הצדדים ונציגיהם ומעניהם (לרבות נציגים במדינה המתבקשת) (סעיף 3. ב) | |
| א. התובע: | א. א. ב. מיזם משותף<br>ת. ד. 37, ראש העין, 68100, ישראל<br>לידיעת: מר ס. דניסון קיני |
| נציג / באי כח: | בריאן כהן, עורך דין<br>לורנס מ. פרוסן, עורך דין<br>פיליפ קלארק ג'ונס, עורך דין<br>בל, בויד ולויד, משרד עורכי דין<br>1615 L Street, N.W.<br>Suite 1200<br>Washington, D.C. 20036-5610 USA<br>טלפון: 202-955-6834<br>פקסימיליה: 202-955-4117<br>bcohen@bellboyd.com<br><br>דבורה מ. פת, עורכת דין<br>ת. ד. 2221<br>סביון, ישראל<br>972 3 7369844 |
| ב. הנתבע: | ארצות הברית של אמריקה |
| נציג / באי כח: | שלום בריליאנט, עורך דין<br>עורך דין בכיר המנהל את התיק בבית המשפט<br>המחלקה לליטיגציה בעניינים מסחריים, חטיבה אזרחית<br>משרד המשפטים של ארצות הברית<br>לידיעת: יחידת הסיווג<br>8th Floor, 1100 L Street, N.W.<br>Washington, D.C. 20530 USA<br>טלפון: 202-305-7561<br>פקסימיליה: 202-305-7643<br>gov.usdoj@Brilliant.Shalom |
| ג. צדדים אחרים: | אין |
| ד. נציגים: | אין |

A-H

| | |
|---|---|
| 6. א. אופי ההליכים (גירושים, הורות, הפרת חוזה, אחריות בגין מוצרים פגומים וכו') (סעיף 3, ג): | תביעה של קבלן לביצוע התאמה מן הצדק במחיר חוזי בהתאם לחוק בעניין סכסוכים בהסכמים פדראליים, הנובעת מבניית בסיס אפסנאות נחשונים, באלעד, ישראל. |
| ב. תקציר התביעה | הקבלן העלה בתביעתו טענות הנובעות מהבדלים מהותיים בין תיאור תנאי תת הקרקע בדוח הגיאוטכני שנכלל במסמכי ההסכם, לבין תנאי הקרקע שהתגלו בפועל במהלך הבניה, דבר שגרם להגדלת הוצאות הביצוע של הקבלן וקבלני המשנה שלו. |
| ג. תקציר ההגנה והתביעה שכנגד | ארצות הברית טוענת שלא חלה עליה אחריות. |
| ד. מידע או מסמכים נחוצים אחרים: | אין |
| 7. א. הראיות שיש לגבות או הפעולה המשפטית האחרת שיש לבצע (סעיף 3, ד): | א. א. ב. מיזם משותף מבקשת לבדוק את המסמכים המתוארים בנספח ב לבקשה זו, ולאחר מכן לגבות עדות בעל פה, בשבועה, מנציג מטעם בלנק – לרר בע"מ, בקשר לנושאים המתוארים בנספח ג.<br><br>את המצאת המסמכים יש לתאם עם עורכת דין דבורה פת, ויש להמציא את המסמכים לא מאוחר מ – 30 ליוני 2006.<br><br>אם לא יוסכם על ידי הצדדים על מקום ומועד אחרים, גביית העדות (חקירה בעל פה) תתנהל כמפורט להלן:<br><br>**תאריך / זמן:** 9:30 לפני הצהריים, ביום שני, 24 ליולי 2006<br>**מקום:** אצל פישר, בכר, חן ושות', משרד עורכי דין<br>רח' דניאל פריש 3,<br>תל אביב, ישראל 64731 |
| ב. מטרת הראיות או הפעולה המשפטית המבוקשת: | איסוף ראיות במסגרת המשפט המתנהל כמפורט בתיבה 6 לעיל. |
| 8. זהותו וכתובתו של כל אדם שיש לחקור (סעיף 3, ה): | אדם (אנשים) מטעם<br>בלנק – לרר בע"מ<br>רח' הארד 7<br>תל אביב, ישראל 69710 |

A-H

| | |
|---|---|
| 9. שאלות שיש לשאול לאנשים שיש לחקור או פירוט הנושא שבו יש לחקור אותם (סעיף 4, ו): | ר' נספח ג, לעניין הנושאים שבהם א. א. ב. מיזם משותף מבקש לחקור את האדם או האנשים שיקבעו על ידי בלנק - לרר בע"מ כנציגם או נציגיהם, כאדם המכיר את הנושא ומסוגל להשיב על השאלות הנכללות בנספח ג. במידה שלאדם שיקבע על ידי בלנק – לרר אין ידיעה אישית בכל עניין הנזכר בנספח ג, יש לחקור ולדרוש על מנת למצוא את התשובה, במידת האפשר. |
| 10.מסמכים או חפצים אחרים שיש לבדוק (סעיף ג, ז): | ר' רשימה המצורפת לבקשה זו כנספח ב. |
| 11.כל דרישה לגביית הראיות בשבועה, בהן צדק או בכל צורה מיוחדת אחרת (סעיף 3, ח): | העדות בעל פה תהיה בשבועה או בהן צדק. |
| 12.דרך מיוחדת לביצוע הבקשה (לדוגמא, בעל פה או בכתב, רישום מילולי, תעתיק או תקציר, חקירה נגדית וכו') (סעיף 3, ו – 9): | החקירה של האדם מטעם בלנק – לרר על ידי בא כוחו של א. א. ב. מיזם משותף תתנהל בדרך של שאלות בעל פה ותשובות שיוקלטו וירשמו באופן מילולי. אם בא כח ממשלת ארצות הברית יהיה מעוניין בכך, תהיה לו אפשרות לחקור את העד חקירה נגדית. |
| 13.בקשה להודעה על המקום והזמן לביצוע הבקשה וזהות וכתובת כל אדם שיש להודיע לו (סעיף 7): | נא להודיע לבא כח התובע, בריאן כהן, עורך דין, Bell, Boyd & Lloyd PLLC, 1615 L Street, N.W., Suite 1200, Washington, D.C. 20036-5610 USA; טלפון 202-955-6834; פקסימיליה 202-955-4117; bcohen@bellboyd.com; הן בכתב והן בעל פה מייד עם המצאת מסמך זה לצד הנקוב בתיבה 3 לעיל. |
| 14.בקשה להתייצבות או השתתפות של נציגים של הרשות המבקשת בביצוע מכתב הבקשה (סעיף 8): | אינו חל |
| 15.פירוט חיסיון או חובה לסרב להעיד לפי חוקי מדינת המקור (סעיף 11, ב): | אינו חל |

A - H

| | |
|---|---|
| 16. המיסים וההוצאות המזכים בקבלת החזר בהתאם לפסקה השניה של סעיף 14 או בהתאם לסעיף 26 של האמנה, יכוסו על ידי: | התובע א. א. ב. מיזם משותף, באחריותו של בריאן כהן, עורך דין<br>בל, בויד ולויד, משרד עורכי דין<br>1615 L Street, N.W.<br>Suite 1200<br>Washington, D.C. 20036-5610 USA<br>טלפון: 202-955-6834<br>פקסימיליה: 202-955-4117<br>com.bellboyd@bcohen |
| תאריך הבקשה | זו הבקשה, היום ה - _____ ל - ________ , 2006. |
| חתימה וחותם בלט של הרשות המבקשת | ________________________________<br>כב' השופט אדוארד ג'יי. דאמיך<br>שופט ראשי, בית המשפט של ארצות הברית לתביעות פדראליות |

A-H

**נספח א – הוראות והגדרות**

כל הבקשות למסמכים (נספח ב) והנושאים לחקירה בעל פה (נספח ג) מתייחסים לבסיס מחסני חירום נחשונים, ליד אלעד, ישראל, אשר הוקם על ידי א. א. ב. מיזם משותף לפי הסכם מס' DACA90-01-C-0043 עם חיל ההנדסה של צבא ארצות הברית.

המסמכים המבוקשים כוללים את כל צורות המידע ללא קשר לשיטת האחסון שלהם, לרבות מכתבים, שדרים בדואר אלקטרוני, מזכרים, דוחות, הערות בכתב יד, תוכניות, שרטוטים, תרשימים וכדומה. בקשה זו חלה הן על מסמכים מנייר והן על מסמכים מאוחסנים בגרסה אלקטרונית, לרבות מסמכים המאוחסנים בכונני מחשב קשיחים, דיסקים למחשב, תקליטורים או בכל צורה אחרת של אחסון נתונים.

בנוגע לעדות (חקירה בעל פה, בשבועה), העד ייחקר על כל ההיבטים של הדוח הגיאוטכני (לרבות, סקר חקירת האתר). נספח ג מפרט אחדים מהנושאים הספציפיים של החקירה, אולם החקירה לא תוגבל לנושאים אלה בלבד.

A – H

## נספח ב – המסמכים המבוקשים

1. כל התקשורות כולל שדרים בדואר אלקטרוני, שנשלחו או התקבלו על ידיכם בכל דרך בקשר לפרויקט, לרבות אך לא רק תקשורות אל או מתה"ל מהנדסים יועצים בע"מ, משרד הביטחון, צה"ל, חיל ההנדסה של צבא ארצות הברית, קלאר מהנדסים ושירותים הנדסיים בע"מ וגיאו – פרוספקט בע"מ, הקשורות בדרך כלשהי לפרויקט.

2. כל הטיוטות הגולמיות, הראשונות והמעודכנות של כל מסמך אשר הוכן על ידיכם בקשר לפרויקט, לרבות אך לא רק דוח גיאוטכני / סקר חקירת האתר, או כל חלק של מסמך כזה שהוכן על ידיכם.

3. כל המסמכים הנזכרים או מצוטטים בדוח הגיאוטכני (כולל סקר חקירת האתר), או שנועצתם בהם בקשר לעבודתכם עבור הפרויקט, לרבות אך לא רק מפות ומדידות.

4. כל התקנים שפורסמו שהסתמכתם עליהם או נועצתם בהם בקשר להמלצות בסקר הגיאוטכני לגבי סוג היסודות למבנים השונים בפרויקט, לרבות אך לא רק SI 940.

5. כל התמונות שצולמו באתר הפרויקט, בין אם צילמתם אותן בעצמכם או קיבלתן אותן מצדדים שלישיים או ממקורות אחרים, לרבות, אך לא רק, צילומים של קידוחי הליבות.

6. כל המידע שברשותכם בקשר לתנאי תת הקרקע באזור הכללי של אתר הפרויקט, לרבות מחצבות סמוכות או אתרי בניה קרובים.

7. כל הרשימות והמזכרים הקשורים לכל ישיבה שהשתתפתם בה בקשר לפרויקט.

8. כל התקשורות, לרבות דוחות וחוות דעת, ניתוחים או הערכות של הטענות של א. א. ב. מיזם משותף, לביצוע התאמה לפי מידת הצדק בשל כך שתנאי האתר בפועל היו שונים מהצפוי.

9. כל המסמכים בקשר לניסויי העומס של הכלונסאות, תכנון היסודות והחישובים מתחום ההנדסה האזרחית בקשר לפרויקט.

10. כל המסמכים הנוגעים לעבודות האתר בפרויקט, לרבות אך לא רק אומדנים, הפחתות או תחזיות בקשר לעבודות החפירה, החציבה והמילוי, תכנון היסודות, הנחה והידוק חומר המילוי, וסילוק החומר העודף.

A-H

[redacted]

**נספח ג – נושאים לחקירה**
**העדות של אדם מטעם בלנק – לרר בע"מ**

1. תאר באופן מפורט את ההשכלה והרקע המקצועי של האדם / אנשים מטעמכם?

A - H

2. תאר באופן מפורט את המעורבות של החברה שלכם בהכנת הדוח הגיאוטכני / סקר חקירת האתר, לרבות מי מהארגון שלכם השתתף בפעילות זו, ומה היה תחום האחריות של כל אחד מהמשתתפים?

3. תאר באופן מפורט את המעורבות של החברה שלך בהכנת הבקשה להציע הצעות?

4. תאר באופן מפורט את המעורבות או ההשתתפות של החברה שלך בפרויקט לאחר הזכייה של א. א. ב. מיזם משותף, לרבות, אך לא רק, פיקוח או ניתוח עבודות קידוח, הנחת כלונסאות ו/או עבודות חפירה שבוצעו על ידי המיזם המשותף ותנאי תת הקרקע שנמצאו באתר?

5. בזמן שבו הוכן הדוח הגיאוטכני (לרבות סקר חקירת האתר), מה המגבלות שהיו על הגישה לאתר הפרויקט?

6. מי קיבל את ההחלטה לתכנן עשרה קידוחים, ומה הגורמים שהובאו בחשבון בקבלת החלטה זו?

7. מדוע נחפרו רק 7 קידוחים מתוך 10 הקידוחים המתוכננים?

8. כיצד נקבע המיקום שנבחר לביצוע קידוח?

9. האם משהו מחברתכם נכח באופן אישי בזמן ביצוע הקידוחים?

10. האם קיבלתם דיווחים על תוצאות הקידוחים?

11. לדעתך, האם היה די ב – 7 קידוחים על מנת לבסס ולגבש דעה על אופי תנאי תת הקרקע, כפי שמוצג בדוח הגיאוטכני?

12. תאר את התהליך שבו נאסף ונותח החומר מהקידוחים?

13. מי ביצע את האנליזה של החומר שנאסף מהקידוחים?

14. מה המשמעות הגיאוטכנית של סלע "קשה" "סלע שהושפע מתנאי מזג אוויר" וסלע ב"דרגת קושי בינונית"?

15. האם מסת סלע עם חוזק לחיצה בציר אחד של 500 עד 800 ק"ג לרגל רבוע נחשבת סלע "קשה"?

16. בקשר לדברים הנאמרים בסעיף 4.5 של הדוח הגיאוטכני "לפי ניסיוננו באזור", לניסיונו של מי מתייחסים הדברים, ומהם פרטי ניסיון זה?

A-H

17. במסקנות הדוח, בסעיף 6.1 ש"מרבית האזור" ייחפר בסלע גיר קשה ודולומיט וש"כמות הסלע המושפע מתנאי מזג האוויר בעומק העולה על 3.0 מטר תהיה קטנה", לאיזו משמעות מכוונות המילים "מרבית" ו"קטנה"? האם ישנו אחוז, או שיעור באחוזים, שאפשר לייחס באופן סביר למונחים אלה?

18. בנוגע לדברים בסעיף 6.4 של הדוח הגיאוטכני ש"הסלע הנחפר הוא קשה ומוצק, ומאפשר בניה של המבנים על יסודות שטוחים" מי קבע קביעה זו או השתתף בקביעתה, ומהם הגורמים שהובאו בחשבון?

19. בקשר לדברים בסעיף 7.2.4.1 של הדוח הגיאוטכני שהלחצים האופקיים שיתפתחו כתוצאה מלחץ האדמה יחושבו לפי מקדם לחץ אדמה של אדמה "במנוחה" של $Ka = 0.5$, כיצד נקבעה הנחייה זו, מהם הגורמים שהובאו בחשבון, ומי היה מעורב בהחלטה לכלול הנחייה זו בדוח?

20. בקשר לדברים בסעיף 7.2.3.2 של הדוח הגיאוטכני שאורך החדירה של הכלונסאות יקבע בהתאם לחיכוך מותר של 15 טון למטר רבוע, כיצד נקבעה הנחייה זו, מהם הגורמים שהובאו בחשבון, ומי היה מעורב בהחלטה לכלול הנחייה זו בדוח?

21. מהם הגורמים שהובאו בחשבון לצורך הקביעה בסעיף 7.2.5 של הדוח הגיאוטכני ששיטת ביצוע היסודות למבנים הנזכרים שם תהיה בדרך של בסיסים (footings) ולא בדרך של כלונסאות?

22. האם נצפה המצב שהקבלנים ינסחו את הצעותיהם על בסיס תחזיותיהם בקשר לעלויות הצפויות של השימוש בשיטות ביצוע היסודות אשר מתוארות בסעיף 7.2.5 של הסקר הגיאוטכני?

23. האם לאדם מטעמכם יש ידע כלשהו על היקף השוק בישראל למכירת סלע גרוס לשימוש בחומר מילוי?

24. האם בוצע אומדן כלשהו בקשר לזמינות החומר באתר לביצוע פעילויות המילוי והיישור במסגרת הפרויקט?; ואם התשובה חיובית, פרטים בנוגע לאומדנים אלה.

25. האם בוצע ניתוח של השאלה האם יצטבר חומר עודף שיהיה צורך לפנותו מן האתר?, ואם כן פרטים בנוגע לניתוח זה, לרבות מה הכמות אם בכלל שתוכנן לסלק מהשטח ו/או למכור.

A-H

26. מהם ההיתרים, הרישיונות והמסמכים הדומים האחרים מסוג זה שנדרשו ממנהל מקרקעי ישראל לצורך ייצוא, שימוש חוזר או מכירה של חומר שנחפר מאתר הפרויקט?

27. האם הדרישות הטכניות של המדינה המארחת המפורטות בהסכם מייצגות מנהג ושימוש נוהג בתעשיית הבניה בישראל להתמודדות עם נושאים אלה?

28. בקשר לדברים בסעיף 3 של הדוח הגיאוטכני ש"מידע רב" על תכונות הסלע נאסף מאזור מחצבה מצפון לאתר. לאיזה מידע ולאיזו מחצבה מתייחסים דברים אלה? האם סביר היה למציעים להניח שתנאי תת הקרקע באתר הפרויקט יהיו דומים בטבעם לתנאים במחצבה?

29. האם היה צפוי שהקבלנים ינסחו את הצעותיהם על בסיס ההנחה שיצטבר חומר עודף באיכות שתאפשר למכור את החומר לשימוש מחוץ לאתר? אם התשובה לשאלה זו חיובית, נא הסבר בפירוט הנחה זו.

30. תאר בפירוט את אופי וכמות הטיט שהיתה צפויה?

31. האם צפיתם אורך כולל ספציפי ומספר ספציפי של כלונסאות, וכיצד קבעתם קביעות אלה?

32. כמויות ו/או שיעורים באחוזים של הסוגים השונים של חומר תת הקרקע שהיו צפויים?

33. תאר כל ניתוח או מידע שדנת בו ו/או סיפקת לכל האדם בקשר לטענות המיזם המשותף?