IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS
PLAINTIFF’S CLAIM CONCERNING SUBGRADE MATERIAL,
ASSERTED IN PARAGRAPH 37 OF THE AMENDED COMPLAINT IN NO. 04-1719C

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, and the order entered in No, 04-1719C on April 12, 2006, defendant respectfully requests the Court to dismiss plaintiff's claim concerning subgrade material, asserted in paragraph 37 of the amended complaint in No. 04-1719C, for lack of jurisdiction. In support of this motion, we rely upon the amended complaint[1] and the following brief.

DEFENDANT’S BRIEF

Issue Presented

Whether this Court possesses jurisdiction to entertain plaintiff's claim concerning subgrade material, asserted in paragraph 37 of the amended complaint in No. 04-1719C, which was not certified and presented to the contracting officer for a final decision.

Nature Of The Case

These consolidated cases concern a contract between the plaintiff, A.A.B. Joint Venture (“AAB”) and the United States Army Corps of Engineers, for the design and construction of a

[1] For the purposes of this motion only, the factual allegations contained in plaintiff's complaint will be treated as true.

storage and logistics base complex for the Israel Defense Forces. AAB's amended complaint contains numerous counts alleging differing site conditions. AAB utilized two subcontractors, Rolider, Ltd. ("Rolider") and Biri Barashi Land Works, Development Infrastructure and Roads, Ltd. ("Barashi"), to perform the earthwork, including "drilling, blasting, excavation, processing material for fill and fill placement," but retained responsibility for offsite disposal of excess material. Compl. ¶ 15.

Count I of the amended complaint seeks recovery of $11,588,813, Compl. ¶ 42, based upon alleged differing site conditions between those detailed in the Government's Geotechnical Report and those actually encountered, particularly with respect to subsurface conditions. Compl. ¶¶ 16-17. Included in this amount is $629,070 in costs allegedly incurred by Barashi, and $4,037,203 in costs allegedly incurred by Rolider. The balance of the amount sought in Count I is for costs allegedly incurred by AAB. These costs, according to the amended complaint, consist of $6,510,301 "for the unanticipated costs related to the excess material disposal on the site," Compl. ¶ 33, and "$412,239 to replace unsuitable material under structures," Compl. ¶ 37. However, although AAB alleges that it submitted certified claims to the contracting officer for its excess material disposal claim and the claim on behalf of Rolider, Compl. ¶¶ 33, 38, the amended complaint contains no such allegation with respect to AAB's claim concerning replacement of material under structures, or concerning the Barashi claim. In an opinion dated November 1, 2005, this Court dismissed the Barashi claim on for lack of jurisdiction, because it was not submitted to the contracting officer for a decision. The claim concerning replacement of material under structures should be dismissed for the same reason.

ARGUMENT

The legal principles and authorities that govern the jurisdictional issue before the Court are fully set forth in this Court's November 1, 2005 opinion dismissing the Barashi claim in this case, in the Court's separate published opinion of the same date, AAB Joint Venture v. United States, 68 Fed. Cl. 363 (2005), dismissing the Barashi claim in No. 04-1792C, and in the briefs filed by the Government in support of its motions to dismiss in these cases. As summarized by the Court in this case, the governing principles are as follows:

> This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. Although a contractor is not precluded from increasing the amount of a claim, a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer. A new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer. The same set of operative facts has been found where the contractor submits additional evidence pertaining to damages to support the same factual claim, or where the claim merely augments the legal theories underlying the certified claim. In contrast, the same set of operative facts has not been found where the contractor files a different type of claim from that presented to the contracting officer, or where the facts require different kinds of proof. . . .

November 1, 2005 Opinion, slip op. 4-5 (internal citations and quotations omitted); accord AAB Joint Venture v. United States, 68 Fed. Cl. at 365-66.

AAB alleges that its claim for the cost of replacing "unsuitable material under structures" is "based on the same underlying operative set forth herein; that is, the actual subsurface material differed materially from the conditions represented in the Geotechnical Report." Compl. ¶ 37. Yet, it is plain on the face of this claim that it is based upon different facts from those involved in the claim described in Count I of the amended complaint as having been certified and

submitted to the contracting officer for a decision. Although both claims involve allegations that subsurface material differed from the conditions represented in the Geotechnical Report, this is virtually all that the two claims have in common.

The claim submitted to the contracting officer for a decision was "for the unanticipated costs related to the excess material disposal on the site." Compl. ¶ 33. The claim asserted than much of the material excavated at the site generally (not specifically material under structures) was unsuitable for fill material on the site or for commercial sale, thus adding to AAB's removal and disposal costs. The gist of the subgrade material claim alleged in paragraph 37 of the amended complaint is that "the subgrade material under many of the structures could not be used for foundation support and had to be replaced with suitable subgrade material." Compl. ¶ 37. Upon this basis, AAB now seeks costs allegedly incurred "to replace unsuitable material under structures . . . ." Id.

The focus of the claim that AAB submitted to the contracting officer was upon the suitability of excavated material for fill or commercial sale, not the suitability of subgrade material in place for foundation support under structures.[2] In the claim submitted to the contracting officer, the subject of whether the subgrade material under structures could be utilized for foundation support was addressed only tangentially. And, although the claim documents referenced engineers' recommendations concerning replacement of such material, and mentioned quantities of material supposedly replaced or recommended to be replaced in certain lots, they did not describe where or to what extent subgrade material under structures was

[2] A copy of this claim is contained in the Appendix to the Joint Preliminary Status Report, at Tab 19.

actually replaced, or how or with what this material was replaced. The claim documents provided no facts concerning the costs that AAB now alleges were incurred for replacing material under structures, little if any basis upon which to conclude that such costs were incurred or had to be incurred, and no information concerning the amount of those costs. Indeed, if the contracting officer had wished to compensate AAB for the cost of replacing unsuitable material under structures, he would have found no basis in AAB's claim package for even roughly estimating those costs.

The key facts that AAB would have to prove in connection with the claim asserted in paragraph 37 of the amended complaint – that AAB had to and in fact did replace material under structures, and the cost it incurred in doing so – do not have to be proved in connection with the claim for excess material disposal. Conversely, the key facts involved in the claim that was submitted to the contracting officer – the nature and amount of material removed for from the site (not necessarily from areas under structures), the costs associated with the removal and disposal of this material, and, under AAB's theory, whether the removed material was suitable for commercial sale – are not involved in the claim for the costs of replacing subgrade material under structures. The latter claim cannot be said to arise from the same set of operative facts as the claim submitted to the contracting officer.

As this Court observed in its November 1, 2005 decision dismissing the Barashi claim,

> The [certified and submitted] AAB claim is to recover for the lost value on the excavated material, whereas the Barashi claim is to recover for delays in the earthwork operations. Although there is a common factual thread in that the subsurface conditions were the cause of both claims, "that does not necessarily mean that each claim involves proof of a common or related set of operative facts."

Slip op. 5, quoting Placeway Constr. v. United States, 920 F.2d 903, 909 (Fed. Cir. 1990). Likewise, here, the claim for the costs related to the excess material disposal and the claim for the costs of replacing subgrade material under structures may share "a common factual thread in that the subsurface conditions were the cause of both claims," but "that does not necessarily mean that each claim involves proof of a common or related set of operative facts." The Court further stated in its November 1, 2005 decision that "the factual evidence and proof required for Barashi's claim for delay costs is entirely different from that required for AAB's claim of increased costs for disposal of excess material, and therefore the two claims do not arise from the same set of operative facts." Id. at 5-6. Likewise, here, the "factual evidence and proof required" for AAB's claim for the cost of replacing subgrade material under structures "is entirely different from that required for AAB's claim of increased costs for disposal of excess material, and therefore the two claims do not arise from the same set of operative facts."

In sum, the claim asserted in paragraph 37 of the amended complaint in No. 04-1719C, for the cost of replacing subgrade material under structures, is a $412,239 claim that has neither been certified nor submitted to the contracting officer for a decision, and is based upon a set of operative facts distinct from those underlying the claims that AAB did certify and submit to the contracting officer. Therefore, the Court lacks jurisdiction to entertain the asserted in paragraph 37 of the amended complaint.

## CONCLUSION

For the foregoing reasons, the claim asserted in paragraph 37 of the amended complaint in No. 04-1719C, for the cost of replacing subgrade material under structures, should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

July 21, 2006