IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case Nos. 04-1719C, 04-1792C, |
| | ) | 05-114C and 06-49C |
| THE UNITED STATES OF AMERICA | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIM CONCERNING SUBGRADE MATERIAL, ASSERTED IN PARAGRAPH 37 OF THE AMENDED COMPLAINT IN CASE NO. 04-1719C**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims and the Order entered in No. 04-1719C on April 12, 2006 plaintiff opposes Defendant's Motion to Dismiss. In support of this response, plaintiff relies upon the Amended Complaint, the accompanying affidavit of S. Denison Keeney and the following brief.

## STATEMENT OF FACTS

The following facts are pertinent to the Court's resolution of defendant's motion to dismiss.

1. By letter dated January 22, 2002 plaintiff informed defendant that it had encountered unanticipated subsurface conditions for which it was entitled to an equitable adjustment for the costs and time required as a result of present and future unanticipated subsurface conditions which varied appreciably from the conditions described in the contract. The letter noted that the unanticipated subsurface conditions affected numerous aspects of the work including additional pile number, length, diameter, reinforcement and that excess excavated material would not have a commercial value. Significantly, the letter also stated that

"Additional excavation/fill and construction equipment will be required to attain an adequate subgrade and foundation for structure stability" and "Slopes on excavations will have to be flattened due to poor material, thereby increasing excavation and sub-base quantities." (Amended Complaint ¶ 17).

2. By letter dated July 29, 2002 plaintiff submitted a request for equitable adjustment to defendant for subbase replacement – Segment # 56, DSB Type A. (Exhibit 1).

3. By letter dated August 11, 2002 plaintiff submitted a request for equitable adjustment to defendant for subbase replacement for Segment # 45, DSB Type A. (Exhibit 2).

4. By email dated August 30, 2002, Michael Roach of USACE attached Modification Log 18 Aug 02 which included M-1026, Geo-Sector 56-Undercutting (Subgrade Replacement) and Geo-Sector 45-Undercutting (unnumbered). Additionally, this Modification Log included M-1010 (Road 16 Excavation, C-29) which would be issued as Modification P46 on January 30, 2004. All of these modifications were followed by Category Code 7 (Differing Site Conditions). (Exhibit 3).

5. By letter dated March 26, 2003 plaintiff addressed various outstanding requests for equitable adjustment. The letter specifically referenced the REAs for subbase replacement for Segments 56 and 45 and stated the following with respect to those claims: "The A.A.B JV and the USACE are negotiating a unit cost for this work. We would appreciate an update on the USACE's review. (Exhibit 4, also included in Exhibit 32, Appendix to JPSR 04-1719C).

6. In July and August 2003, Plaintiff submitted 10 certified claims for differing site conditions- 9 relating to pile lengths under the DSBs and the other for excess material disposal. (Exhibits 21 – 29, Appendix to JPSR 04-1719C).

7. Defendant issued Change Orders 46 ($73,100) and 47 ($84,500) to compensate plaintiff for subgrade replacement for roads and slopes due to unsuitable material i.e. excess quantities of clay. (Exhibits 5 and 6).

8. Modification P46 for additional roadway excavation performed on Road 16 was executed on January 30, 2004.

9. Modification P47 in the amount of $84,500 for the entire length of Road 12 and Road 17 for excavation and removal of additional unsuitable soil, breaking protruding rocks and placing additional select fill was executed on January 30, 2004.

10. Plaintiff submitted requests for equitable adjustment for Segments 45 and 56 for subbase replacement and reasonably believed, since the government had issued change orders for the Government designer's recommendations for the roads for subgrade replacement, that the government would negotiate the same or a similar unit price and compensate the Joint Venture for the Joint Venture designer's recommendations for subgrade replacement for the structures (DSBs). Therefore, plaintiff reasonably concluded that it did not need to follow up its requests for equitable adjustment with certified claims and accordingly did not do so. (Keeney Aff. ¶ 7).

11. The subgrade replacement claim is based on and involves the same physical locations and legal theories at issue in the pile length differing site conditions certified claims. The subgrade replacement claim is merely additional damages flowing from the material differences between the actual and anticipated subsurface conditions. Both claims (pile length and subgrade replacement) are based on a comparison between what the Geotechnical Report reasonably indicated the subsurface conditions would be versus the actual subsurface conditions in the same locations, i.e. the structures in segments 11, 23, 34, 45, 56 67, and 91 of the project. (Keeney Aff. ¶ 8).

## ARGUMENT

A. The Government's Analysis Is Flawed In That It Is Based On An Incorrect Factual Assumption.

The government's entire argument is founded on a comparison between the certified claim submitted by plaintiff for "excess material disposal" and the subgrade replacement claim. (Def.'s Mot. to Dismiss 2). Utilizing this assumption the government argues that the subgrade replacement claim and the certified excess material disposal claim are based upon different facts (Def.'s Mot. to Dismiss 3), noting that the focus of the claim submitted to the contracting officer was upon the suitability of excavated material for fill for commercial sale, not the suitability of subgrade material in place for foundation support under structures. (Def. Mot. to Dismiss 4). [1]

Based on this comparison the government argues that the key facts regarding the subgrade replacement claim concern whether plaintiff in fact did replace material under the structures and the costs it incurred in doing so, and that these facts do not have to be proven in connection with the disposal claim which turns on whether the removed material was suitable for commercial sale. (Def.'s Mot. to Dismiss 5). Therefore, defendant argues, the claims do not arise from the same operative facts. (Def.'s Mot. to Dismiss 5, 6).

This, however, is a false comparison, which conveniently overlooks Counts II through Count X of the Amended Complaint. Those counts are pile length differing site conditions claims for Segments, 67, 45, 56, 34, 10, 78, 89, 91, 11, 12 and 23. Each of those counts is based upon the same legal theory asserted with respect to the subgrade replacement claim, namely that the subsurface materials encountered differed materially from those indicated in the contract

---

[1] Plaintiff does not concede that the Government is correct based upon a comparison to the excess material disposal claim. However, as discussed below, the more appropriate comparison is between the pile length claims and the subgrade replacement claim.

entitling plaintiff to an equitable adjustment under the differing site conditions clause of the contract (*see, e.g.,* Pl. Amend. Compl. ¶ 189, Count IX).

Further, plaintiff submitted separate certified claims for each pile length claim containing a detailed analysis of the anticipated subsurface conditions versus the actual subsurface conditions. The certified claims are included at Exhibits 21 through 29 in the JPSR Appendix.

Moreover, as noted in the accompanying affidavit of Mr. Keeney, the subgrade replacement claim is concerned with the subgrade preparation under the structures, (DSBs) in segments 11, 23, 34, 45, 56, 67 and 91. The pile length claims in Counts II through X relate to precisely the same locations (as well as others not pertinent to this issue); since the piling goes under and forms a part of the foundation of each of the structures. Furthermore, the Joint Venture's geotechnical designer, Eng. M. Yuger, would inspect each building lot to recommend any subgrade replacement, only after the piling was installed and the tailings from the pile drilling were visible to evaluate unsuitable subsurface conditions. (Keeney Aff. ¶ 8). It is therefore indisputable that the Court will have to hear the same facts relating to precisely the same locations concerning the reasonable interpretation of the geotechnical report as compared to the subsurface conditions actually encountered under the same identical structures.

In short, plaintiff submits that the appropriate analysis involves a comparison between the certified pile length claims and the subgrade replacement claim; not between the excess material disposal claim and the subgrade replacement claim.[2] Therefore, Defendant's argument is fatally flawed and must be rejected.

---

[2] Plaintiff believes this is clear from the amended complaint. However, should the Court feel there is any confusion because the subgrade replacement claim is physically located in Count I plaintiff asks leave of the Court to amend its complaint.

B. *A.A.B Joint Venture v. United States*, 68 Fed. Cl. 363 (2005) Is Distinguishable.

Defendant contends that this Court's decision in *A.A.B Joint Venture v. United States*, 68 Fed. Cl. 363 (2005) is dispositive of the pending motion to dismiss. (Def.'s Mot. to Dismiss 2, 3). However, it is apparent that the cited decision is clearly distinguishable from the instant case.

First, this Court emphasized in *A.A.B Joint Venture* that while a certified claim had been presented on behalf of Rolider, no such certified claim had been presented for another subcontractor, Barashi. Thus, the Court concluded "The two claims present different factual issues including: the location on the site where each of the subcontractors performed its earthwork operations; the extent that each relied on the contract specifications in preparing its bid; the impact of USACE's response to RFI No. DC-0011 on its operations; and the ultimate effect on the cost of its operations of the change in the fill size and compaction requirements." The Court concluded "Here, the factual evidence and proof required for Barashi's claim for increased costs is entirely different from that required for Rolider's claim for increased costs, and therefore the two claims do not arise from the same set of operative facts." *Id.* at 366.

Here, the opposite is true. The location on the site that is pertinent to the resolution of the pile length claims and the subgrade replacement claims is identical; the factual evidence and proof related to the extent to which plaintiff relied on the geotechnical report is the same and the impact of the alleged differing site conditions, including the cost thereof will also involve the same proof.

Likewise, the other basis for the Court's decision in *A.A.B* is inapplicable to the present motion. In *A.A.B* the Court noted that the proof of a claim by a prime contractor on behalf of its subcontractor is distinct from proof of a claim by the prime contractor on its own behalf *A.A.B Joint Venture,* 68 Fed. Cl. at 366. Based thereon the Court reasoned that where the claim is a

claim by a prime contractor on behalf of a subcontractor the claims involve separate contracts embodying separate obligations between different parties. The Court noted that the claims brought on behalf of different subcontractors required different proof in that the claim brought on behalf of Barashi was based on the subcontract between A.A.B and Barashi, whereas the claim brought by A.A.B on behalf of Rolider was based on the subcontract between A.A.B and Rolider. Thus, "Different contracts and different factual issues are therefore under consideration in each claim." *Id.* at 367.

Here, the subgrade replacement claim is a claim brought by A.A.B on its own behalf and does not implicate even one subcontractor, much less two subcontractors. Accordingly, this basis for the Court's decision in *A.A.B Joint Venture* is also clearly inapplicable here.

Therefore, *A.A.B Joint Venture* is clearly distinguishable and provides no basis for granting the motion to dismiss the subgrade replacement claim.

C. The Court Has Subject Matter Jurisdiction To Hear And Decide The Subgrade Replacement Claim.

When construing the pleadings pursuant to a motion to dismiss, the Court should not grant the motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief. *J. Cooper & Assocs., Inc. v. United States,* 47 Fed. Cl. 280, 282–83 (2000). Further, the court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Finally, the court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *J. Cooper & Assocs.,* 47 Fed. Cl. at 283.

Admittedly, the Court of Appeals for the Federal Circuit has determined that, as a jurisdictional requirement, the contractor must submit in writing to the contracting officer a clear

and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim. *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987).

However, it is equally well established that the contractor has the right on appeal to increase the amount of its claim as long as it does not raise any new claims not presented and certified to the contracting officer. *Santa Fe Engineers, Inc. v. United States*, 818 F.2d 856, 858 (Fed. Cir. 1987). A new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer. *A.A.B Joint Venture*, 68 Fed. Cl. 363, 365; *Hawkins & Powers Aviation, Inc. v. United States*, 46 Fed. Cl. 238, 243 (2000); *J. Cooper & Assocs., 47* Fed. Cl. 280, 285.

Here, the subgrade replacement claim arises from the same operative facts as the certified pile length claims since the underlying facts relevant to determination of the claim involve consideration of the identical operative facts, namely a comparison between the anticipated subsurface conditions and the subsurface conditions actually encountered in precisely the same locations. Also, the subgrade replacement claim is based on the same legal theory as the certified claims, i.e. differing site conditions.

Further, considerations of judicial economy weigh heavily in favor of hearing the subgrade replacement claim at the same time as the pile length claims so that the court will review the same or related evidence only one time. *See Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed. Cir. 1990) ("If the court will have to review the same or related evidence to make its decision, then only one claim exists.")[3]

---

[3] It should be noted that the subgrade replacement claim has been pending before the Court for over 18 months. The resources of the Court will be best served by allowing this claim to proceed with the other consolidated claims.

In addition, this Court has also recognized that drawing distinctions regarding overlapping claims to the contracting officer and claims filed in court under the CDA can involve subtle distinctions, noting that common sense is a useful guide and that when considering such issues, the Court will look to guidance from the Boards of Contract Appeals, *J. Cooper & Assocs.*, 47 Fed. Cl. at 287.

Those Board decisions indicate that the question of whether a claim is a new claim turns upon whether the matters raised differ from the "essential nature" or "basic operative facts" of the original claim. *Trepte Constr. Co., Inc.,* ASBCA No. 38555, 90-1 BCA, ¶ 22,595. For the reasons noted above, Plaintiff submits that the subgrade replacement claim clearly does not differ in its "essential nature" or "basic operative facts" from the certified pile length claims.

Moreover, many Board decisions have held that jurisdiction existed to consider increases in, and additional damage elements relating to or resulting from the same operative facts in previously certified claims. *Am. Consulting Services, Inc.* ASBCA No. 52923, 2000-2 BCA ¶ 31,084. *Accord SMS Agoura Sys., Inc.*, ASBCA Nos. 50878 et al., 97-2 BCA, ¶ 29,321 at 145, 792-93; *1120 Vermont Ave. Assocs. v. Gen. Services Admin.*, GSBCA No. 16071, 2004 GSBCA Lexis 157 (introduction of additional facts which do not alter the nature of the original claim, or a dollar increase in the amount claimed when based upon the same operative facts as included in the original claim do not constitute new claims); *Stroh Corp. v. Gen. Services Adm.*, GSBCA No. 11029, 96-1 BCA ¶ 28,265 at 141,130; *Envtl. Safety Consultants, Inc.*, ASBCA No. 53485, 2004-1 BCA ¶ 32,626 (inclusion of additional subcontractors costs not submitted to the contracting officer for decision based on same underlying operative facts); *D.J. Barclay & Co., Inc.* ASBCA No. 28908, 85-1 BCA ¶ 17,922.

In short, the court has jurisdiction because the subgrade replacement claim arises from the same operative facts as the certified pile length claims and is merely additional damages flowing from those same operative facts.

**CONCLUSION**

The underlying premise of the government's motion to dismiss is erroneous. The operative facts underlying the subgrade replacement claim are the same operative facts underlying the certified pile length claims. Therefore, the subgrade replacement claim is not a new claim and the court has jurisdiction to hear and decide the claim. Accordingly, plaintiff urges the Court to deny the motion.

Respectfully submitted,

s/ Brian Cohen
Brian Cohen
BELL BOYD & LLOYD, PLLC
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Plaintiff's Response To Defendant's Motion to Dismiss Plaintiff's Claim Concerning Subgrade Material, Asserted in Paragraph 37 of the Amended Complaint In Case No. 04-1719C, and Affidavit of Stephen Denison Keeney was served by electronic transmission this 28th day of August, 2006 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

s/ Brian Cohen
Brian Cohen