No. 04-1792C, No. 04-1719C, No. 05-114C,
No. 05-1172C, and No. 06-49C (CONSOLIDATED)
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

A.A.B JOINT VENTURE,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S ANSWERS TO INTERROGATORIES IN CASE NOS. 04-1719C, 04-1792C AND 05-114C

---

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

**Filed electronically**

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

September 7, 2006

**TABLE OF CONTENTS**

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S ANSWERS TO INTERROGATORIES IN CASE NOS. 04-1719C, 04-1792C AND 05-114C . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Objections That the Government Raised in its Responses to the Interrogatories in Question Were Proper . . . . . . . . . . . . . . . . . . 2

A. The Government's General Objections Were Proper . . . . . . . . . . . . . . . 2

B. The Government's Specific Objections Were Proper . . . . . . . . . . . . . . . 4

1. Privilege Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2. Other Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. The Government's Answers Were Sufficient under the Circumstances . . . . . . . 13

III. The Government Has Not Refused to Supplement its Responses, but Has Had Insufficient Time Within Which to Do So . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INDEX TO APPENDIX

Page

Declaration of Paul O. Cheverie ........................................................................................ 1

Letter from Shalom Brilliant to Brian Cohen,
dated December 22, 2005, with enclosure ................................................................... 3

# TABLE OF AUTHORITIES

## CASES

Assurance Co. v. United States,
813 F.2d 1202 (Fed. Cir. 1987) . . . . . . . . . . 5

Pacific Gas and Electric Co. v. United States,
69 Fed. Cl. 784 (2006) . . . . . . . . . . 6

Sharman Company, Inc. v. United States,
2 F.3d 1564 (Fed. Cir. 1993) . . . . . . . . . . 11

Wilner v. United States,
24 F.3d 1397 (Fed. Cir. 1994) . . . . . . . . . . 5

## STATUTES

28 U.S.C. §§ 516-520 . . . . . . . . . . 11

## RULES

RCFC 26(a)(1). . . . . . . . . . . 16

RCFC 26(b)(4). . . . . . . . . . . 7

RCFC 33(a) . . . . . . . . . . 3

RCFC 33(d) . . . . . . . . . . 13, 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S ANSWERS TO INTERROGATORIES IN CASE NOS. 04-1719C, 04-1792C AND 05-114C

INTRODUCTION

Plaintiff has requested that the Court compel the Government to provide further responses to various interrogatories that have been served in two of the above-captioned consolidated cases (Nos. 04-1719C and 05-114C), and in one separate case that is related to, but not consolidated with, the above-captioned cases (No. 04-1792C). Specifically, plaintiff requests an order "requiring the Government to provide full, complete responses to Interrogatories 8 through 17, 20, 23 through 27, 33 through 36, 38 through 40, 42, 47 and 50 (1719), 5 and 6 (05-114) and 15, 17, 18, 20 and 21 (04-1792) within 7 days . . . ." Plaintiff's Brief 16-17.

To the extent that plaintiff's motion to compel pertains to No. 04-1792C, it should be denied for two reasons: (1) if plaintiff believes it is entitled to an order compelling discovery in that case, it should request such an order in that case, not this one; and (2) plaintiff is plainly not entitled to an order compelling discovery in that case, at least in its present posture. Pursuant to prior agreement and this Court's April 12, 2006 order in that case, the parties filed simultaneous cross motions for summary judgment in that case on May 15, 2006. In its April 12, 2006 order, the Court stated: "All further discovery in this case is hereby stayed pending decision on the cross

motions for summary judgment." The cross motions have been fully briefed, neither party has asserted a need for further discovery in order to support its own motion or to respond to the other party's motion, and, subject to any oral argument that the Court may schedule in connection with the cross motions, these motions are ready for adjudication. Unless and until further discovery becomes appropriate in No. 04-1792C as a result of a ruling on the cross motions for summary judgment, there is no reason to consider, much less grant, a motion to compel discovery in that case.

To the extent that plaintiff's motion to compel pertains to Nos. 04-1719C and 05-114C, it should be denied because the objections that the Government raised in its responses to the interrogatories in question were valid, and the substantive answers that the Government provided to these interrogatories were reasonable and sufficient under the circumstances. Further, the Government has been and remains willing to revisit areas in which the sufficiency of discovery responses is disputed, upon a reciprocal and cooperative basis and to the extent and within a time period that is reasonable under the circumstances.

## ARGUMENT

### I. The Objections That the Government Raised in its Responses to the Interrogatories in Question Were Proper

#### A. The Government's General Objections Were Proper

The interrogatories in question were part of plaintiff's first sets of interrogatories in Nos. 04-1719C, 04-1792C and 05-114C. For the reasons stated above, consideration of issues concerning discovery in No. 04-1792C should await disposition of the parties' pending cross motions for summary judgment in that case, and should occur, if at all, in that case, not this one. As for No. 04-1719C, the Government objected to this set of interrogatories in its entirety,

because, among other things, the number and scope of the interrogatories rendered them unduly burdensome. We noted that plaintiff's first set of interrogatories included 50 numbered interrogatories, many of which include numerous discrete subparts; that this far exceeded the number of interrogatories permitted by RCFC 33(a), which limits a party to serving interrogatories "not exceeding 25 in number including all discrete subparts" in the absence of "leave of court or written stipulation;" and that, although the parties stated, in their Joint Preliminary Status Report in No. 04-1719C, that this limit should not apply in this case, this did not mean that there was no limit at all to the number of interrogatories the Government should be required to answer. Pl. App. 20.[1] As is evident from the fact of this set of interrogatories, these interrogatories sought extensive information in abundant detail concerning an extremely broad range of matters. Pl. App. 1-18. And, the Government had no reason to assume that this set of interrogatories was not merely the first of numerous sets to follow. In fact, plaintiff did serve a several subsequent sets of interrogatories, many of which, like the first set, included numerous discrete subparts.

The Government was not required to unilaterally waive this objection by undertaking the burden of fully answering each interrogatory to the extent that it was not unduly burdensome standing alone, and was not otherwise objectionable. After all, this objection was not based upon the burden imposed by each interrogatory or subpart of an interrogatory standing alone, but upon the burden imposed by these interrogatories collectively. Nevertheless, the Government did make a good faith effort to answer the individual interrogatories to the extent that it was

---

[1] "Pl. App." refers to the appendix to plaintiff's motion to compel with respect to defendant's answers to interrogatories.

practicable to do so. To the extent that these answers may have lacked the degree of detail and comprehensiveness that plaintiff may have desired, the answers were nevertheless reasonable under the circumstances. If plaintiff obtained too little, it is because they demanded too much.

B. The Government's Specific Objections Were Proper

In addition to the above-discussed general objection, the Government objected individually to various particular interrogatories, including those that are the subject of plaintiff's motion to compel. We objected to Interrogatories 8-17 and 20 in No. 04-1719C, and Interrogatories 5 and 6 in No. 05-114C, upon the ground that the requested information consisted of attorney work product and material protected by the attorney-client privilege or the attorney work product doctrine. We objected to Interrogatories 23 through 25, 27, 33 through 36, 38 through 40, 47 and 50 in No. 04-1719C upon the ground that each of those interrogatories was unduly burdensome as well as vague and/or overbroad. In the case of Interrogatories 23, 25, 27 and 33 through 36, we further objected "to the extent that" the interrogatory would require disclosure of attorney work product or information protected by the attorney-client privilege or the attorney work product doctrine. The latter objection, however, was merely a cautionary one based upon the likelihood that the kind of information encompassed by the broad terms of these interrogatories would include some information protected by these privileges. Implicit in the primary objections of undue burden, overbreadth, and vagueness, however, is that we did not compile all specific items of information responsive to these interrogatories and withhold some of them as privileged, and we do not contend that narrower and clearer versions of these interrogatories would necessarily implicate privileged information. In the case of Interrogatories

26 and 42 in No. 04-1719C, we objected primarily that the interrogatory was vague and was based upon erroneous assumptions.

1. Privilege Objections

Interrogatories 8-17 and 20, Pl. App. 9-12, request that the Government "[d]escribe in detail any review, analysis or evaluation of A.A.B's claim for equitable adjustment . . . and/or certified claim" for the various categories of alleged additional costs listed in those interrogatories. Interrogatories 5 and 6 in No. 05-114C request the same information with respect to plaintiff's claim "for TCN labor," and that the Government "[i]dentify and produce any schedules or schedule analyses prepared, reviewed or which were prepared for the use of defendant, relating or pertaining to the TCN labor claim." Pl. App. 68.

The process of analyzing and evaluating the referenced requests for equitable adjustments ("REAs") and certified claims was largely performed under the guidance of attorneys in the Office of Counsel ("OC") of the United States Army Corps of Engineers ("USACE"), Europe District ("EUD").[2] The REAs in question presented issues that could lead to the submission of contract claims, and it was anticipated that if any such claims were to be denied, they were likely to become the subject of litigation. Accordingly, EUD'S Israel Program Office("IPO") and the contracting officer requested a legal opinion concerning the merits of the REAs. In addition, since the REAs were a potentially significant matter from a program standpoint, a legal opinion concerning the REAs was also requested by EUD and Government of Israel ("GOI") program

[2] The manner in which defendant may have reviewed, analyzed, or evaluated the referenced claims prior to the commencement of this action is not relevant in itself, because the contracting officer did not issue a decision on the referenced claims, and because, in any event, review of the claim in this action is de novo. Wilner v. United States, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994)(en banc); Assurance Co. v. United States, 813 F.2d 1202 (Fed. Cir. 1987).

officials. For this purpose, the OC requested factual and technical analysis concerning the REAs from technical experts within the EUD, as well as information and legal opinions from the GOI Ministry of Defense. The information received from these sources was utilized by the OC in formulating a legal opinion concerning the REAs and related issues. Def. App. 1-2.[3]

Plaintiff argues that these interrogatories "seek facts and information, not documents," and that "the work-product doctrine provides protection only for documents and tangible things and not for facts a party may have learned, even if they were learned from work-product documents that are not themselves discoverable." Plaintiff's Brief 15-16. This argument might be pertinent if the interrogatories simply requested information concerning the subjects to which they refer. The "facts and information" sought by these interrogatories, however, concerns the content of documents. To "[d]escribe in detail any review, analysis or evaluation" is to disclose the content of any document in which the review, analysis or evaluation is contained. Although it is generally true that the work-product doctrine protects documents and tangible things rather than information, the doctrine also

> furnishes protection for some forms of work product not in tangible form, but these are limited to the mental impressions, conclusions, opinions, legal theories, thought processes and recollections of an attorney or other representative of a party concerning the litigation. . . . . Furthermore, this protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants. . . .

Pacific Gas and Electric Co. v. United States, 69 Fed. Cl. 784, 816 (2006) (internal citations and quotation marks omitted). The information sought by the interrogatories in question fall into this category.

---

[3] "Def. App." refers to the appendix to this brief.

Similarly, plaintiff misses the mark in arguing, concerning the application of the attorney-client privilege to these interrogatories, that "[t]he attorney-client privilege attaches not to the underlying factual information, but to the communication of the information." Plaintiff's Brief 16. These interrogatories do not request the underlying factual information. They request information concerning the substance of analyses and evaluations of the underlying facts, performed at the direction of OC attorneys as part of the OC's provision of legal advice to the agency.

Contrary to plaintiff's suggestion, our objection to providing the information sought in these interrogatories is not based upon a contention that a review, analysis or evaluation of a claim or request for equitable adjustment is necessarily privileged merely because it might later be of use to the Government in defending against the claim or request. Rather, it is based upon the fact that any reviews, analyses or evaluations performed by or for the agency with respect to the referenced claims were performed as an integral part of agency counsel's provision of legal advice to the agency concerning these claims. By the time these claims were submitted to the agency, the likelihood that they would become the subjects of litigation was apparent, and analysis of these claims under the guidance of OC attorneys was performed in anticipation of such litigation.

To the extent that plaintiff is entitled to basic identifying information – such as author, date, subject – concerning written communications as to which we have asserted these privileges, this information was provided to plaintiff in the form of a privilege log transmitted to plaintiff on December 22, 2005. Def. App. 3. And, to the extent that certain information concerning analyses of plaintiff's claims may become subject to discovery pursuant to RCFC

26(b)(4), governing expert discovery, this information will be provided in accordance with that rule during the expert discovery phase of this litigation. However, for the Government to further describe these analyses and related communications of the kind addressed by these interrogatories in a manner responsive to these interrogatories would reveal the mental processes of the Government's attorneys concerning subjects of anticipated litigation, and would also reveal, directly or indirectly, the substance of privileged attorney-client communications.

2. Other Objections

Interrogatories 23 through 25, 27, 33 through 36, 38 through 40, 47 and 50, Pl. App. 12-17, are unduly burdensome, vague and/or overbroad in various respects, which we explained to plaintiff by letter of December 14, 2006, from Government counsel to plaintiff's counsel. Pl. App. 139-140. Plaintiff did not, in response to this letter, make any effort to clarify or narrow these interrogatories, nor did it otherwise address the merits of these objections. These interrogatories, on their face, seek extensive, wide-ranging, and detailed information. Their breadth and the burden they impose, however, are greater than they appear, and, in some respects, they are simply vague.

Interrogatories 23, 33, 34, 35, request that the Government identify or describe "any review, analysis and/or evaluation" of various matters, including the date(s) of the review, analysis and/or evaluation; its results, all documents concerning it, and the identity of all persons with knowledge of it. The matters involved include "A.A.B's March 2, 2004 answers in response to the questions in the aforementioned December 19, 2003 letter" (Interrogatory 23); "A.A.B's and/or its subcontractors' subgrade soil replacement operations at the project" (Interrogatory 33); "A.A.B's and/or its subcontractors' sorting, screening and/or crushing

operations to produce fill material at the Project" (Interrogatory 34); and "A.A.B's and/or its subcontractors' excess material disposal operations at the Project" (Interrogatory 35). The "March 2, 2004 answers" referenced in Interrogatory No. 23 was a 46-page document containing answers to 62 separate questions, accompanied by various attachments. The matters referenced in Interrogatories 33 through 35 are broad areas of operations conducted by plaintiff and its subcontractors, through numerous individuals at various locations at the work site, over an extended period of time.

These matters may encompass, but plainly exceed, what is relevant here. The fact that the alleged differing site conditions may have affected the referenced operations does not mean that every "review, analysis and/or evaluation" of any aspect of these operations is relevant. (One of these areas of operations – the subgrade soil replacement operations referenced in Interrogatory No. 33 – will be irrelevant as a whole if the Court grants the Government's pending motion to dismiss plaintiff's claim concerning these operations for lack of jurisdiction.) Further, a "review, analysis and/or evaluation" of any of these matters could consist of anything from a formal, written report to an oral comment, made by an employee of the Government, the plaintiff, Israel's Ministry of Defense, the Israel Defense Force, or consultants of any of these entities. To describe every "review, analysis and/or evaluation" within the scope of these interrogatories, and to provide all of the associated details requested in the separate subsections of each of these interrogatories, is unduly burdensome.

Interrogatory No. 24 requests similarly broad and extensive information, and, on its face, extends to matters of no apparent relevance. This interrogatory calls upon the Government to "[d]escribe in detail any exploration, testing, analysis and/or evaluation, which was performed at any time prior to award of the Contract, of the subsurface conditions at the Project (including

areas not in the scope of A.A.B's work)" (emphasis added), including the dates and results of the exploration, analysis and/or evaluation; the identity of any documents concerning the exploration, testing, analysis and/or evaluation or concerning "the request for proposal for the exploration, testing, analysis and/or evaluation;" the scope of the exploration, testing, analysis and/or evaluation; any bids received for this activity, the persons or entities who performed the activity; the contract for the activity; and the identity of any persons with knowledge of the activity. To provide such information as to period that has no particular beginning point, and as to areas outside the scope of plaintiff's work, is plainly overbroad and unduly burdensome.

Interrogatory No. 27 calls upon the Government to "[d]escribe in detail any review, testing, analysis or evaluation of the subsurface conditions actually encountered during performance of the Contract," and to provide related details similar to those requested in Interrogatories 23, 33, 34 and 35. This case, however, concerns the subsurface conditions that are alleged to be different from the conditions represented in the solicitation, not any and all subsurface conditions encountered during performance of the Contract. Further, as previously noted, "analysis or evaluation" could consist of anything from a formal, written report to an oral comment, made by an employee of the Government, the plaintiff, Israel's Ministry of Defense, the Israel Defense Force, or consultants of any of these entities. And, testing, analysis or evaluation of subsurface conditions could concern anything from widespread general conditions to a virtually unlimited variety of specific local conditions.

Interrogatory No. 36 calls upon the Government to "[d]escribe in detail any pre-bid review, analysis, evaluation and/or estimate of the costs of removal and/or disposal of the excess excavated material from the Project in accordance with the Contract requirements," and to

provide related details similar to those requested in Interrogatories 23, 33, 34 and 35. This interrogatory is overbroad and unduly burdensome for reasons similar to those discussed in connection with Interrogatories 23, 33, 34 and 35.

Interrogatory No. 38 requests the government to "[d]escribe in detail any communications, written or oral, among or between USACE, IDF, ILA, MOD, Blank-Lehrer and/or any other entity concerning the claims by A.A.B which are the subject of this action." Interrogatories 39 and 40 request the same kinds of information concerning the claims asserted in Count I of the complaint on behalf of two subcontractors, Rolider, Ltd. ("Rolider") and Biri Barashi Land Works, Development Infrastructure and Roads, Ltd. ("Barashi"), and Interrogatory No. 47 request the same kinds of information "concerning the legal and/or contractual requirements for disposal, sale or use of excess materials from the Project site." Interrogatory No. 40 is now irrelevant, because the claim on behalf of Barashi has been dismissed for lack of jurisdiction. Further, the Government properly objected to all four of these interrogatories upon the grounds that they were vague, overbroad and unduly burdensome. These interrogatories are, on their face, catch-all requests calling for a description of any and all communications that might have anything to do with this case. The Government personnel involved in the project cannot be expected to recall the numerous informal, oral conversations that may have concerned these topics. [4]

[4] If Interrogatories 38 through 40 are construed as limited to communications concerning the claims as pleaded in the complaint in No. 04-1719C, rather than about the facts underlying these claims, the burden involved is lighter. However, once these claims were asserted through the filing of that complaint, the role of USACE concerning these claims was only to assist the Department of Justice in their defense, pursuant to 28 U.S.C. §§ 516-520. See Sharman Company, Inc. v. United States, 2 F.3d 1564, 1571 (Fed. Cir. 1993) ("Once a claim is in

(continued...)

Interrogatory No. 50 – concerning "all agreements, written or oral, which USACE entered into with IDF, MOD, ILA, Blank-Lehrer and/or any other entity concerning the Project." – is likewise a catch-all request that is vague, overbroad, and unduly burdensome, and the Government properly objected to the interrogatory upon this ground.

Interrogatories 26 and 42 are not only vague, but also are based upon erroneous assumptions that we believe are erroneous, including issues at the core of the dispute in this litigation. Interrogatory No. 26 calls upon the Government to "[d]escribe in detail any provision in the RFP documents that was intended to alert bidders to the lack of adequate geotechnical information in the RFP and/or to alert bidders to rely upon the differing site conditions clause in the Contract." We properly objected that this interrogatory assumed that there was a lack of adequate geotechnical information in the RFP and that there were differing site conditions. To the extent that the interrogatory is construed without any connotation concerning the existence of differing site conditions, the phrase "to alert bidders to rely upon the differing site conditions clause" is vague. In any case, it is inherent in RFPs generally that there will be a need to comply with and rely upon the provisions of the contract in question. Interrogatory No. 42 calls upon the Government to "[d]escribe in detail any report, analysis or evaluation which compared or contrasted the subsurface materials expected to be encountered at the Project with the subsurface

---

[4](...continued)
litigation, the Department of Justice gains exclusive authority to act in the pending litigation"). USACE communications concerning the claims in question since they have been in litigation have been to, from, among, or at the direction of the Government's attorneys, in connection with the defense of this action. As to these communications, the Government properly objected that these interrogatories "to the extent that [they] would require disclosure of attorney work product or information protected by the attorney-client privilege or the attorney work product doctrine."

materials actually encountered at the Project," and to provide related details similar to those requested in Interrogatories 23, 33, 34 and 35. This interrogatory is overbroad and unduly burdensome for reasons similar to those discussed above in connection with those interrogatories. Additionally, the Government properly objected to Interrogatory No. 47 because the interrogatory assumes that there was a difference between the subsurface materials expected to be encountered at the Project with the subsurface materials actually encountered at the Project – an assumption that we dispute – and because the interrogatory is vague and ambiguous in that it does not indicate whose expectations are referenced by the phrase "expected to be encountered."

II. The Government's Answers Were Sufficient under the Circumstances

In addition to the above-discussed objections, we also stated, in response to all of the above-discussed interrogatories, that, to the extent that any relevant, non-privileged information might fall within the intended scope of the interrogatory, plaintiff was referred, pursuant to RCFC 33(d), to the documents to be produced in accordance with defendant's responses to plaintiff's requests for production of documents.[5] Plaintiff argues that under the latter rule we were required to provide indices to guide plaintiff to the documents responsive to the interrogatories, rather than direct plaintiff to the documents generally. As a general proposition, we agree that reliance upon Rule 33(d) requires more than a general reference to documents being produced. However, the responding party is also not required to undergo more of a burden

[5] In No. 04-1719C, due to a typographical error, we described this referral as being pursuant to RCFC 33(c). The intended citation in both that case and No. 05-114C was RCFC 33(d).

in pointing out the documents containing the requested information than the requesting party would have to undergo to find those documents. The rule states:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . . , and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to . . . inspect such records and to make copies . . . . A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

RCFC 33(d) (emphasis added). The documents involved here were generally not indexed according to the topics defined in the interrogatories, and, accordingly, the Government could not specify the particular documents containing the requested information without taking on the burden of searching the documents themselves to ascertain which ones relate to the specified topics. This burden was no greater for the plaintiff, particularly in view of the manner in which the documents were produced. By agreement, documents inspected and designated for copying by either party were scanned for both parties by a single vendor in word-searchable format and coded by information such as date, author, recipient, and subject. Generally, the most efficient way for the Government to find the information sought by plaintiff in these interrogatories would have been to search the electronic version of these documents generated by this vendor. Plaintiff, however, possesses the same ability to do this as does the Government. Thus, the

burden of searching these documents for the information sought is essentially the same for plaintiff and defendant.

III. The Government Has Not Refused to Supplement its Responses, but Has Had Insufficient Time Within Which to Do So

Plaintiff notes the statement in the Government's letter of December 14, 2005, that the Government was in the process of preparing supplemental interrogatory responses, and asserts that "[a]s of February 22, 2006, and indeed as of the date of this motion, those supplemental responses have never been provided." Plaintiff's Brief 5. The Government did begin to work on supplementing its interrogatory responses, but was not able to complete this process because the attorneys and agency personnel involved in this process were overtaken by other litigation activities in the above-captioned cases and in 04-1792C.

These activities included the preparation of defendant's privilege log, provided to plaintiff on December 22, 2005; the December 22, 2005 filing, in Nos. 04-1719C, 04-1792C, and 05-114C, of a joint motion for a protective order governing the inadvertent disclosure of documents; the December 22, 2005 filing of a joint motion for an extension of time to complete discovery in No, 04-1792C; the filing of an answer to the complaint in No. 05-1172C on January 3, 2006; the preparation of a response to plaintiff's second set of interrogatories in No. 04-1719C, which was served upon the Government on January 9, 2006; preparation of defendant's first and second set of interrogatories and first and second request for production of documents, served in mid-January 2006, in No. 05-114C; the Government's production, on January 24, 2006, of additional documents based upon its reconsideration of previous assertions of privilege as to these documents; extended discussions between the parties in late January and early February concerning the coordination of discovery and other pre-trial activities in all five of the pending

cases relating to the contract in question; defendant's filing, on February 14, 2006, of a motion to consolidate Nos. 04-1917C, 05-114C, 05-1172C and 06-49C; the filing of the parties' Joint Preliminary Status Report in No. 05-1172C on February 24, 2006; the preparation of initial disclosures in No. 05-1172C pursuant to RCFC 26(a)(1) in early March 2006; the filing of an answer to the complaint in No. 06-49C on March 20, 2006; depositions taken by plaintiff in Tel Aviv, Israel, during late March 2006, in No. 04-1792C; the filing of the parties' Joint Status Report in No. 04-1719C on March 31, 2006; defendant's RCFC 30(b)(6) deposition of plaintiff in No. 04-1792C on April 5, 2006; the filing of a motion for summary judgment in No. 04-1792C on May 15, 2006; service of defendant's third set of interrogatories in the above-captioned consolidated cases on May 26, 2006; service on June 5, 2006, of defendant's responses to plaintiff's unnumbered set of interrogatories and unnumbered request for production of documents of May 5, 2006, in the consolidated cases; the filing of defendant's corrected response to plaintiff's motion for summary judgment in No. 04-1792C on June 18, 2006; the filing of a reply in support of defendant's motion for summary judgment in No. 04-1792C on July 3, 2006; the preparation of responses to plaintiff's sixth set of interrogatories and sixth request for production of documents, which were served upon the Government on June 30, 2006; the filing of defendant's motion to dismiss plaintiff's claim concerning subgrade material on July 21, 2006; and preparation and other arrangements relating to depositions in Tel Aviv, Israel, noticed by plaintiff for the last week of July 2006, but postponed due to the outbreak of war in Israel.

Almost all of these activities were triggered either by discovery requests or other actions taken by plaintiff, or were necessary under agreed and/or Court-ordered deadlines. Because of the substantial amount of time and attention required by these activities (in addition to the time

and attention required of Government counsel in numerous other cases during the same period), the Government has been unable to fully review its prior discovery responses and prepare any supplemental responses that might be appropriate. The Government has been and remains willing to revisit areas in which the sufficiency of discovery responses is disputed, upon a reciprocal and cooperative basis and to the extent and within a time period that is reasonable under the circumstances.

CONCLUSION

For the foregoing reasons, plaintiff's motion to compel should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

September 7, 2006

# Appendix

**DECLARATION OF PAUL O. CHEVERIE**

1. My name is Paul Cheverie. I am 59 years old and my address is USAEDE, CMR 410 BOX 623, APO, AE 09096. I am a civilian attorney employed as the Command Counsel in the Office of Counsel for the U.S. Army Corps of Engineers, Europe District (EUD) in Wiesbaden, Germany. The information contained in this affidavit is based on my personal knowledge, and if called as a witness, I could and would competently testify to the facts stated herein.

2. This declaration is written in reference to AAB Joint Venture v. the United States of America, Case No. 1719C (Consolidated) and in response to AAB's Motion to Compel (Interrogatory Responses).

3. Paragraph 1.602-2 (c) (ii) of the Engineer Federal Acquisition Regulation Supplement states that "legal counsel shall review all contract actions over $500,000 and all contractual issues that may lead to a claim regardless of dollar amount." Within Europe District, at the time the AAB REAs in question were was submitted, the district policy was that there would be legal review of any contract action over $100,000 and all contractual issues that may lead to a claim regardless of dollar amount. The REAs in question presented issues that potentially could lead to either contract actions over $100,000 or contract claims. It was also anticipated that if any such claims were to be denied, they were likely to become the subject of litigation. Accordingly, EUD'S Israel Program Office (IPO) and the contracting officer requested a legal opinion concerning the merits of the REAs. In addition, since the REAs were a potentially significant matter from a program standpoint, a legal opinion concerning the REAs was also requested by EUD and Government Of Israel (GOI) program officials.

4. In order to properly evaluate and formulate a legal opinion concerning the AAB REA, Laura Smith, Deputy Command Counsel and I requested supporting factual and technical analysis concerning the REA from appropriate technical experts within the Europe District

including Mike Roach of the IPO Nachshonim Resident Office, Doug Bonham, a geologist in the EUD Engineering Branch and Bill Thievon of the EUD Construction Division. We also requested factual and technical information, as well as legal opinions on Israeli law issues, from Eran Rotberg, then Legal Advisor to the Government of Israel Ministry of Defense. The information received from these sources was utilized in developing a legal opinion on the REA and related issues, which was subsequently provided to Corps of Engineers and GOI program officials.

I, Paul Cheverie, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 1st day of September 2006.

PAUL O. CHEVERIE

**U.S. Department of Justice**

Civil Division

SBrilliant
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.03, 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.03,
154-05-114.03

Telephone:
(202) 305-7561

*Washington, D.C. 20530*

December 22, 2005

BY FACSIMILE AND FIRST CLASS MAIL

Brian Cohen, Esq.
Bell, Boyd & Lloyd, PLLC
1615 L Street, N.W.
Suite 1200
Washington, DC 20036

Re: A.A.B Joint Venture v. United States,
Fed. Cl. Nos. 04-1719C, 04-1719C, 05-114C

Dear Brian:

Enclosed is a privilege log identifying the documents that we have withheld as privileged and the privileges applicable to each of these documents.

Upon further consideration subsequent to the document inspection conducted in October, we have determined that several documents that were initially withheld in their entirety should be produced, either in their entirety or with redactions. Copies of these documents – which are either not listed in the enclosed log or are identified as redacted – will be provided to you within the next few days.

Please let me know when we can expect to receive plaintiff's privilege log.

Sincerely,

Shalom Brilliant
Senior Trial Counsel
Commercial Litigation Branch

cc: Laura Smith, Esq.
Deputy District Counsel
Europe District
U.S. Army Corps of Engineers
CMR 410 Box 19
APO/AE 09096

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 1. | Israel Project Office | 25-Jan-05 | Michael Roach | Paul Cheverie | Memo to OC re TCN Issue | 6 | AC / AWP |
| 2. | Israel Project Office | 31-Mar-03 | Michael Roach | LTC John Rovero<br>Michael Iarosis<br>Joseph Blackburn<br>Laura Smith<br>Paul Cheverie | E-mail to OC re TCN Issue | 3 | AWP |
| 3. | Israel Project Office | 15-Aug-03 | LTC Rovero | Paul Cheverie | Memo re Labor Issues at Nachshonim Storage Base | 1 | AC |
| 4. | Israel Project Office | 25-Jun-03 | Michael Roach | Paul Cheverie | Memo and notes re TCN labor references in contract; also powerpoint slides "Labor Issues Meeting Agenda" | 6 | AC / AWP Redactions |
| 5. | Israel Project Office | 09-Aug-04 | Michael Roach | Paul Cheverie | TCN Claim and Request for COD | 2 | AC |
| 6. | USACE office Wiesbaden, Germany | Dec 05 | William Mills | Office of Counsel | Geotech report meeting notes | 1 | AWP |
| 7. | USACE office Wiesbaden, Germany | Undated | Bill Thievon | Office of Counsel | Draft CO decision on unanticipated subsurface conditions – additional pile length | 15 | AC / AWP |
| 8. | USACE office Wiesbaden, Germany | Undated | Bill Thievon | Laura Smith | Counsel comments re draft CO decision on unanticipated subsurface conditions – additional pile length | 16 | AC / AWP |
| 9. | USACE office Wiesbaden, Germany | Undated | Bill Thievon | Office of Counsel | Draft CO decision on unanticipated subsurface conditions – Subbase replacement | 5 | AC / AWP |
| 10. | Israel Project office | 21-May-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for additional pile lengths | 1 | AC |
| 11. | Israel Project office | 9-June-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for excess material disposal | 1 | AC |



4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 12. | Israel Project office | 16-June-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for Unanticipated Subsurface Conditions | 3 | AC |
| 13. | Israel Project office | 7-July-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for additional pile lengths | 1 | AC |
| 14. | Israel Project office | 24-July-03 | Michael Roach | CENAU-OC | Contractor certification for Excess Material Disposal Claim | 1 | AC |
| 15. | Israel Project office | 1-Aug-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero | Contractor REA for additional pile lengths | 1 | AC |
| 16. | Israel Project office | 15-Aug-03 | LTC John L. Rovero | Paul Cheverie<br>cc: E. Drott<br>L. Bearden | Labor Issues at Nachshonim Storage Base | 1 | AC |
| 17. | Israel Project office | 1-Mar-04 | Michael Roach | LTC John L. Rovero<br>Paul Cheverie<br>cc: E. Drott<br>L. Bearden | Geotechnical Claims – 3 Inch vs 6 Inch Material; Rolider Means and Methods | 1 | AC |
| 18. | Israel Project office | 9-Apr-04 | J.W. Blackburn | Leslie Bearden | Insulated Panel Issues | 2 | AWP |
| 19. | Israel Project office | 14-Apr-04 | Michael Roach | LTC John L. Rovero<br>J.W. Blackburn | E-mail: Insulated Panel Issues | 2 | AWP |
| 20. | Israel Project office | 21-Apr-04 | Michael Roach | LTC John L. Rovero<br>J.W. Blackburn | Insulated Panel Issues | 2 | AWP |
| 21. | Israel Project office | 29-July-02 | Michael Roach | LTC Pini Liberman<br>Uriah Ayal<br>cc: LTC Rovero<br>Michael Iarosis<br>Paul Cheverie | Contractor REA for Unanticipated Subsurface Conditions and Geotechnical Report | 1 | Rule 34(b)(3) Redactions |
| 22. | Israel Project office | 22-July-02 | Joseph Blackburn | Doug Bonham | Memorandum re: Geotechnical Assessment of Nachshonim Storage Base | 1 | AWP |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 23. | Israel Project office | 23-July-02 | Joseph Blackburn | Paul Cheverie | TCN Income Tax | 4 | AC |
| 24. | Israel Project office | 29-July-02 | Michael Roach | LTC Pini Liberman<br>Uriah Ayal<br>cc: LTC Rovero<br>Michael Iarosis<br>Paul Cheverie | Contractor REA for Unanticipated Subsurface Conditions and Geotechnical Report | 1 | Rule 34(b)(3) Redactions |
| 25. | Israel Project office | 15-Aug-03 | LTC John Rovero | Paul Cheverie, District Counsel<br>cc: E. Drott<br>L. Bearden | Labor Issues at Nachshonim Storage Base | 1 | AC / AWP |
| 26. | Israel Project office | 24-Jan-02 | LTC McCallister | COE M. Roach, others | RE: Team meeting to address Nachshonim Geotech Issue | 3 | AWP |
| 27. | Israel Project office | 29-Jan-02 | Michael Roach | Paul Cheverie, others. | Powerpoint presentation entitled "Nachshonim Storage Base Geotechnical Issues" | 13 | AC / AWP |
| 28. | Israel Project office | 14-Jun-02 | Michael Roach | Rami Kerekesh<br>Einat Rozen<br>cc: Mike Iarosis<br>Joseph Blackburn<br>Ron McPeters<br>Paul Cheverie | (E-mail) Geotechnical Issues | 1 | Rule 34(b)(3) Redactions |
| 29. | Israel Project office | 20-Jun-02 | Michael Roach | To File | Notes from Geotech Issues Meeting | 1 | Rule 34(b)(3) Redactions |
| 30. | Israel Project office | 20-Jun-02 | Michael Roach | To File | Notes from Geotech Issues Meeting | 1 | Rule 34(b)(3) Redactions |
| 31. | Israel Project office | 27-Jun-02 | J. Blackburn | Ezra Abraham<br>cc: Ron McPeters<br>Michael Roach<br>Mike Iarosis | (E-mail) re Geotechnical Issues | 2 | AWP |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG
OF
DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE
Case Nos. 04-1719, 04-1792, 05-114

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| 32. | Israel Project office | 22-Jul-02 | J. Blackburn | Doug Bonham | Geotechnical Assessment of Nachshonim Storage Base | 1 | AWP |
| 33. | Israel Project office | 26-Jul-02 | Michael Roach | File | Meeting note, Israel Klar, COE Mike Roach | 1 | Rule 34(b)(3) Redactions |
| 34. | Israel Project office | 28-Jul-02 | Michael Roach | IDF E. Rozen<br>R. Kerekesh | Geo Consultant | 2 | Rule 34(b)(3) Redactions |
| 35. | Israel Project office | 28-Jul-02 | Michael Roach | IPO Mike Iarosis<br>LTC John Rovero<br>cc: Joseph Blackburn<br>Paul Cheverie | E-mail forwarding two memos regarding Nachshonim Geotechnical Issues | 1 | AC / AWP |
| 36. | Israel Project office | 29-Jul-02 | Michael Roach | IDF P. Liberman<br>MOD U. Ayal<br>cc: LTC Rovero<br>Michael Iarosis<br>Paul Cheverie | Unanticipated Subsurface Conditions and Geotechnical Report | 2 | Rule 34(b)(3) Redactions |
| 37. | Israel Project office | 30-Jul-02 | Paul Cheverie | Michael Roach<br>Einat Rozen<br>Rami Kerekesh<br>Michael Iarosis<br>Joseph Blackburn<br>William Mills<br>cc: Ezra Abraham<br>Rob Saari | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | AC |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 38. | Israel Project office | 30-Jul-02 | Michael Roach | Einat Rozen<br>Rami Kerekesh<br>Michael Iarosis<br>Joseph Blackburn<br>William Mills<br>cc: Ezra Abraham<br>Rob Saari<br>Paul Cheverie | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | Rule 34(b)(3) Redactions |
| 39. | Israel Project office | 30-Jul-02 | Ezra Abraham | Michael Iarosis<br>Joseph Blackburn<br>LTC John Rovero<br>cc: Michael Roach | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | AWP Redactions |
| 40. | Israel Project office | 30-Jul-02 | Michael Iarosis | Paul Cheverie<br>Michael Roach<br>Joseph Blackburn<br>William Mills<br>Laura Smith<br>cc: Ezra Abraham<br>Rob Saari | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | AC / AWP |
| 41. | Israel Project office | 30-Jul-02 | Michael Roach | FILE | COE note Agenda- Geotech Briefing IPO | 1 | AWP |
| 42. | Israel Project office | 31-Jul-02 | Ann Gunzel | Michael Roach<br>cc: William Mills<br>Mike Iarosis<br>Joseph Blackburn | (E-mail) RE: Independent Geotechnical Review – Nachshonim | 3 | AWP |
| 43. | Israel Project office | 01-Aug-02 | Rami Kerekesh | Michael Roach | (E-mail) Independent Geotechnical Review – Nachshonim | 2 | AWP |
| 44. | Israel Project office | 04-Aug-02 | Michael Roach | FILE | COE Notes re: Israel Klar | 1 | AWP |
| 45. | Israel Project office | 08-Aug-02 | Michael Roach | MFR | Meeting - Informal notes Sub: Geotech mtg. w/attached emails | 3 | AWP |
| 46. | Israel Project office | 19-Aug-02 | COE | MFR | Meeting with OC and KO re: Geotechnical issues | 1 | AC / AWP |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 47. | Israel Project office | 16-Dec-02 | Michael Roach | John Rovero<br>Joseph Blackburn<br>Ezra Abraham<br>Mike Iarosis | Sub: Nachshonim Geotech Status | 1 | AWP<br>Redactions |
| 48. | Israel Project office | 21-Feb-03 | Michael Roach | Paul Cheverie<br>cc: Joseph Blackburn<br>LTC John Rovero<br>Michael Iarosis | (E-mail) Geotech Claim | 1 | AC |
| 49. | Israel Project office | 25-Feb-03 | Michael Roach | Paul Cheverie | Geotechnical Report | 1 | AC |
| 50. | Israel Project office | 16-May-03 | LTC John Rovero | Paul Cheverie | IDF Geotechnical Site Visit | 4 | AC |
| 51. | Israel Project office | 21-May-03 | Michael Roach | Paul Cheverie | Transmittal of REAs | 1 | AC |
| 52. | Israel Project office | 30-May-03 | Paul Cheverie | LTC John Rovero<br>Ernest Drott<br>Lloyd Caldwell<br>Joseph Blackburn<br>William Mills<br>Leslie Bearden<br>Laura Smith<br>Rob Saari<br>William Thievon<br>Douglas Bonham | Current Geotech Issue | 3 | AC |
| 53. | Israel Project office | 9-June-03 | Michael Roach | Paul Cheverie | Transmittal of JV REA | 1 | AC |
| 54. | Israel Project office | 16-Jun-03 | J.W. Blackburn | Paul Cheverie | Transmittal of JV letter 03-318 entitled Unanticipated Subsurface Conditions Financial Burden on Outstanding REAs | 1 | AC |
| 55. | Israel Project office | 07-Jul-03 | Michael Roach | Paul Cheverie | Transmittal of JV REA | 1 | AC |
| 56. | Israel Project office | 21-Jul-03 | Michael Roach | Office of Counsel | Transmittal of JV letter dated 18 Jul 03 with Piling Claim Certification | 1 | AC |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 57. | Israel Project office | 24-Jul-03 | Michael Roach | Office of Counsel | Transmittal of JV Letter 03-0348 w/certification of excess material disposal | 1 | AC |
| 58. | Israel Project office | 01-Aug-03 | Michael Roach | Paul Cheverie, Office of Counsel | Transmittal of JV Letters 03-360 (Segment #91) and 03-361 (Segment #11) | 1 | AC |
| 59. | Israel Project office | 07-Aug-03 | Michael Roach | Paul Cheverie, Office of Counsel | Transmittal of JV Letter 03-367 (Segment #12) | 1 | AC |
| 60. | Israel Project office | 22-Sep-03 | J.W. Blackburn | LTC John Rovero<br>Bill Thievon<br>Ernest Drott<br>Paul Cheverie | Transmittal of JV letter 03-392 dated 19 Sep 03 | 1 | AC |
| 61. | Israel Project office | 04-Oct-03 | Michael Roach | MFR | Meeting with NAU OC and CT, Claim Issues | 2 | AC |
| 62. | Israel Project office | 06-Nov-03 | Michael Roach | MFR | Meeting with NAU OC and CT, Claim Issues | 10 | AC |
| 63. | Israel Project office | 10-Nov-03 | Michael Roach | IDF Gadi Roitman<br>Uriah Ayal | Geotechnical Claims Meetings | 10 | Rule 34(b)(3) Redactions |
| 64. | Israel Project office | 12-Nov-03 | Michael Roach | Eran Rotberg, Counsel, MOD | Contractor Geotechnical Claims | 1 | Rule 34(b)(3) Redactions |
| 65. | Israel Project office | 25-Nov-03 | Michael Roach | Paul Cheverie, Office of Counsel | (E-mail) Nachshonim Geotechnical Status Letter | 1 | AC |
| 66. | Israel Project office | 01-Mar-04 | Michael Roach | Paul Cheverie, Office of Counsel | Contractor Geotechnical Claims | 2 | AC |
| 67. | Israel Project office | 25-Jan-05 | Michael Roach | Paul Cheverie, Office of Counsel | Contractor Geotechnical Claim re 3" vs 6" Fill Material | 1 | AC |