No. 04-1792C, No. 04-1719C, No. 05-114C,
No. 05-1172C, and No. 06-49C (CONSOLIDATED)
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

A.A.B JOINT VENTURE,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS IN CASE NOS. 04-1719C, 04-1792C AND 05-114C

---

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

September 8, 2006

# TABLE OF CONTENTS

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS IN CASE NOS. 04-1719C, 04-1792C AND 05-114C . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. The Government's Document Production Was Sufficient under the Circumstances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. The Government Took Reasonable Measures to Meet its Discovery Obligations . . . . . . . . . . . . . . . . . . . . . . 3

B. Much of What Plaintiff Complains Was Not Produced Actually Was Produced . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. Plaintiff's Assumptions Concerning What Documents Should Exist and Be Within the Government's Custody and Control Are Erroneous . . . . . . . . . . . . . . . . 7

II. The Government Did Not Breach a Duty to Preserve Evidence . . . . . . . . . . . . . 9

III. The Government's Assertions of Privilege Were Proper . . . . . . . . . . . . . . . . . . . 13

IV. The Government Has Not Refused to Supplement its Document Production, but Has Had Insufficient Time Within Which to Do So . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INDEX TO APPENDIX

Page

Declaration of Brett Howard ........................................ 1

Declaration of Paul O. Cheverie ........................................ 5

Letter from Shalom Brilliant to Brian Cohen,
dated November 28, 2005 ........................................ 7

Letter from Lawrence M. Prosen to Shalom Brilliant,
dated January 24, 2006 ........................................ 9

Letter from Shalom Brilliant to Brian Cohen,
dated December 22, 2005, with enclosure (privilege log) ........................................ 10

# TABLE OF AUTHORITIES

## CASES

Renda Marine, Inc. v. United States,
58 Fed. Cl. 57 (2003) . . . . . . . . . . 9, 10, 11, 12

United States v. American Tel. & Tel. Co.,
642 F.2d 1285 (D.C. Cir. 1980) . . . . . . . . . . 14

## RULES

RCFC Rule 26(b)(3) . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS IN CASE NOS. 04-1719C, 04-1792C AND 05-114C

INTRODUCTION

Plaintiff has requested that the Court compel the Government to produce various documents that plaintiff contends should have been but were not produced, in response to requests for production of documents that have been served in two of the above-captioned consolidated cases (Nos. 04-1719C and 05-114C), and in one separate case that is related to, but not consolidated with, the above-captioned cases (No. 04-1792C).

To the extent that plaintiff's motion to compel pertains to No. 04-1792C, it should be denied for two reasons: (1) if plaintiff believes it is entitled to an order compelling discovery in that case, it should request such an order in that case, not this one; and (2) plaintiff is plainly not entitled to an order compelling discovery in that case, at least in its present posture. Pursuant to prior agreement and this Court's April 12, 2006 order in that case, the parties filed simultaneous cross motions for summary judgment in that case on May 15, 2006. In its April 12, 2006 order, the Court stated: "All further discovery in this case is hereby stayed pending decision on the cross motions for summary judgment." The cross motions have been fully briefed, neither party has asserted a need for further discovery in order to support its own motion or to respond to the

other party's motion, and, subject to any oral argument that the Court may schedule in connection with the cross motions, these motions are ready for adjudication. Unless and until further discovery becomes appropriate in No. 04-1792C as a result of a ruling on the cross motions for summary judgment, there is no reason to consider, much less grant, a motion to compel discovery in that case.

To the extent that plaintiff's motion to compel pertains to Nos. 04-1719C and 05-114C, it should be denied because the Government's production of documents was reasonable and sufficient under the circumstances, and because the objections that the Government raised in its responses to plaintiff's requests for production of documents were valid. For the most part, plaintiff's motion is based not upon evidence that documents within the scope of their requests were withheld, but, rather, upon plaintiff's conjecture as to what documents ought to exist and be within the Government's custody and control, and upon unsupported statements that various kinds of documents that plaintiff expected to find were not included among the thousands of documents the Government produced. To the extent that documents were withheld as privileged, the privilege assertions were valid; indeed, the Government asserted privileges far more narrowly in its document than plaintiff did in its document production. Finally, although neither party's document production has satisfied the other, the Government has been and remains willing to revisit areas in which the sufficiency of document production is disputed, upon a reciprocal and cooperative basis and to the extent and within a time period that is reasonable under the circumstances.

# ARGUMENT

## I. The Government's Document Production Was Sufficient under the Circumstances

### A. The Government Took Reasonable Measures to Meet its Discovery Obligations

Plaintiff's first and second request for production of documents in No. 04-1719C contain a total of 110 numbered paragraphs requesting various categories of documents. Plaintiff's first request for production of documents in No 05-114C contain 93 such paragraphs. Although the Government asserted various objections to most of these requests, we also stated that, as an accommodation to plaintiff, the Government would comply with these requests to the extent of producing the documents within its custody and control that reasonably appeared to be relevant, within the scope of the requests, and not privileged. Pl. App. 1-119.[1] The Government produced these documents at the Nachshonim Military Storage Base in Elad, Israel, and plaintiff's counsel inspected them between October 23 and October 28, 2006. Plaintiff's Brief 2.

The documents produced by the Government in October 2006 – consisting of approximately 80 boxes of documents – included all relevant, responsive documents within the Government's custody and control, other than electronic documents, and other than documents identified as privileged, that the Government was able to locate and retrieve after diligent efforts to do so. Def. App. 2.[2] In January 2006, we produced an additional 206 pages of documents

---

[1] "Pl. App." refers to the appendix to plaintiff's motion to compel with respect to defendant's document production.

[2] "Def. App." refers to the appendix to this brief.

that had initially been withheld as privileged, but which we subsequently determined were not privileged. Def. App. 2.

The Government also collected the e-mails stored by individuals on their desktop computers. In the case of individuals no longer employed by the agency or no longer in a position with the Nachshonim project, any electronic documents left behind or archived were collected where possible for production. Def. App. 2-3. The parties had been discussing the format in which such documents were to be produced, and did not resolve this issue until late November 2005. Pl. App. 149. The Government transmitted its initial set of electronic documents to plaintiff on November 28, 2005. Def. App. 7. Plaintiff transmitted its initial set of electronic documents to defendant on January 24, 2006. Def. App. 9.

Although we produced thousands of electronic documents, we did not locate the e-mail files of some of the individuals who would have generated e-mails within the scope of plaintiff's requests. To determine whether the Government still possesses these files in electronic form, and, if so, to retrieve and produce them, will necessitate a time-consuming and expensive restoration of back-up tapes. Estimates received from third party vendors indicate that it would cost between $85,000 and $150,000 and require 30 days to restore all of the potentially relevant tapes, and at least an additional 30 days would be required to review the restored material to identify responsive items and privileged items. Def. App. 4. And, as explained below, it is likely that any further e-mail production would, to a large extent, simply duplicate the e-mails that have already been produced. Further, hard copies of at least some of these electronic documents were included in the October 2005 production in Israel. The Government is still exploring the possibility of restoring the back-up tapes. However, in view of the volume of

material sought and produced, and the likelihood that much of the material that has not been located would merely duplicate what has been produced, the Government's documents production efforts have been reasonable and appropriate.

B. Much of What Plaintiff Complains Was Not Produced Actually Was Produced

Plaintiff's motion to compel appear to be the result, at least in large measure, of a failure to carefully review the documents that the Government produced. The Government should not now have to undergo the burden of reviewing its entire document production in order to specifically identify all of the documents that plaintiff claims were not produced but that in fact were produced. Several examples, however, can be provided.

In the transmittal letter accompanying our November 28, 2005 production of electronic documents, we stated that the production included non-privileged documents created on or before the filing date of the complaint, for Ezra Abraham, Leslie Bearden, Joseph Blackburn, Ron McPeters, Michael Roach, and Gordon Simmons; that we were still attempting to locate responsive electronic documents for Douglas Bonham**,** William Mills, LTC John Rovero, Col. Lee Staab, and William Thievon; and that we were unable to locate any responsive electronic documents for Christopher Gatz, Michael Iarosis, and Robert Kreienheder. Def. App. 7. However, because many of the e-mails that we produced in involved communications among numerous individuals, including those whose own e-mail files were not produced, and because such e-mail communications appear in the e-mail files of the various recipients, numerous e-mail communications to and from the individuals whose own files were not produced are in fact included among the e-mails that were produced. Among these are various categories of documents that plaintiff claims were not produced.

Thus, although plaintiff asserts that "no e-mail production has been made for [21 listed] individuals, all of whom are known to have generated e-mail related to the subject matter of the litigation," Plaintiff's Brief 22 (emphasis added), copies of e-mails generated by almost all of these 21 individuals are among the e-mails that the Government produced. For example, copies of 10 e-mails generated by Doug Bonham (some with attachments) appear in the e-mail files produced for Ezra Abraham; approximately 50 e-mails from Louie Brackett appear in the e-mail files produced for Ezra Abraham and Gordon Simmons; 13 e-mails and numerous other documents from Steve Buckel appear in the files produced for Ezra Abraham and Gordon Simmons. The latter files and those for Ron McPeters and Michael Roach contain more than 70 e-mails from William Thievon, and more than 250 e-mails from LTC John Rovero. These e-mails, moreover, should not have been difficult for plaintiff to locate, despite the fact that they were contained in other individuals' e-mail folders. These e-mails were produced in a word-searchable format and were accessible in Microsoft Outlook, enabling one to easily search for or sort documents by author, regardless of the folders in which the documents appear.

Similarly, hard copy printouts of numerous e-mails were contained the approximately 80 boxes of documents that the Government produced in October 2006. Some of these are among the documents that plaintiff selected for copying.[3] If the particular e-mails with which plaintiff

[3] By agreement, documents inspected and designated for copying by either party were scanned for both parties by a single vendor in word-searchable format and coded by information such as date, author, recipient, and subject. Compact discs containing the documents selected for scanning by both parties were delivered by the vendor to plaintiff, and one set of these discs was transmitted by plaintiff to the Government. Based upon our cursory review of the portion of the discs containing documents selected by plaintiff for scanning, we cannot state that the documents of which plaintiff specifically complains were among those selected by plaintiff for scanning, but we can state that a very substantial portion of the documents produced were not among the scanned documents. This does not mean that they were not produced.

is concerned were not among the documents plaintiff selected for copying, this does not mean that they were not among the documents produced. Apart from the unsupported assertions contained in plaintiff's brief, plaintiff offers nothing to establish that the e-mails and other documents that they accuse the Government of failing to produce were not included among these voluminous documents.

### C. Plaintiff's Assumptions Concerning What Documents Should Exist and Be Within the Government's Custody and Control Are Erroneous

Although some documents that plaintiff expected to find may indeed not have been produced, this was not the result of any breach of duty upon the Government's part. Plaintiff assumes, with little or no basis, that such documents were generated, were within the Government's custody and control, and should have remained in existence and within the Government's custody and control at the time of plaintiff's requests for production of documents.

Plaintiff argues that the Government should have possessed and maintained substantial documentation concerning the "design/pre-award phase" of the project. Plaintiff's Brief 15. Plaintiff based this argument upon a Letter of Offer and Acceptance ("LOA") between the Government of Israel ("GOI") and the United States Army Corps of Engineers ("USACE"), which implemented the project in question pursuant to the Wye River Accords. According to plaintiff, "the LOA established an express obligation on the Government to review, correct, revise and/or repackage the design and bidding documents provided by the Government of Israel, and a corresponding obligation to maintain all such records in a form that may be audited in accordance with U.S. Government standards and regulations." Plaintiff's Brief 16. Plaintiff

derives the referenced obligation concerning record maintenance from Note 5 GENERAL, Section k, which states: "All records created by the USG under the terms of this LOA will be maintained in a form that may be audited, in accordance with USG standards and regulations." Pl. App. 313 (emphasis added), quoted in Plaintiff's Brief at 15. However, this provision is limited, on its face, to records that the Government is required to create pursuant to a specific term of the LOA, such as Section b, which directs the Government to create an accounting system. Pl. App. 311. One might also reasonably infer a requirement that the Government create solicitation documents, an award document, and similar contract documents that are an essential part of contract administration. Nothing in the LOA, however, requires the Government to create, much less maintain, written records of all of communications and activities involved in "review[ing], correct[ing], revis[ing] and/or repackag[ing] the design and bidding documents provided by the Government of Israel." Much of this work would inevitably be performed orally, and, to the extent that it was done in writing (such as by annotation of drafts), such writing would not constitute "records created by the USG under the terms of [the] LOA."

For similar reasons, plaintiff has no cause to complain about not having found documents from various individuals who were identified in our interrogatory answers as having "reviewed designs and specifications provided by IDF." These individuals may have reviewed such designs and specifications without commenting on them, may have communicated their comments orally, or may have made handwritten notations on drafts.[4] We also note that drafts

---

[4] Likewise, not all activities performed by Government employees in the course of contract administration involved the creation of correspondence or other documents. Nor does every (continued...)

with handwritten annotations were produced. Indeed, among the documents selected by plaintiff for scanning is a May 2000 draft of the specifications, more than 900 pages in length, containing handwritten annotations by an unidentified person or persons.

Finally, in view of the fact that, as expressly contemplated by the LOA, the design and bidding documents were provided by the GOI, it should not come as a surprise if the Government created far fewer pre-award documents than would be the case if the Government had itself created the design and bidding documents. Nor should it be assumed that the GOI participants in the review process would tend to communicate in writing to the degree customary among employees of the United States Government. In sum, what plaintiff characterizes as an unexpectedly limited volume of documents, particularly from the design/pre-award phase of the project, is not an indication that discoverable documents were not preserved or not produced.[5]

## II. The Government Did Not Breach a Duty to Preserve Evidence

Plaintiff argues that "by no later than January 2002 the United States was under an affirmative obligation requiring it to preserve any and all unique, relevant evidence that might be useful to Plaintiff." Plaintiff's Brief 21 (emphasis added), citing Renda Marine, Inc. v. United States, 58 Fed. Cl. 57 (2003). Plaintiff further contends that the Government breached this duty. In support of this contention, plaintiff asserts that "the Government failed to place a litigation hold to ensure the preservation of relevant documents;" Plaintiff's Brief 21, that the Government

[4](...continued)
allusion to the creation of a document mean that such a document was created. For example, the fact that someone requested that someone else provide written comments concerning a certain matter does not mean that written comments were in fact provided.

[5] The relevance of the documents from the design/pre-award phase of the project is, in any event, not readily apparent. This is case is not a bid protest, and the process by which the solicitation documents were developed and the award made are not at issue.

failed to produce e-mail for various individuals who, according to plaintiff, "are known to have generated e-mail related to the subject matter of the litigation" Id. at 22; and that the e-mail that were produced did not cover all periods of time that plaintiff considers relevant.

Although we do not dispute that a party is obligated to preserve "material evidence" once the party "reasonably should know that the evidence may be relevant to anticipated litigation," Renda Marine, 58 Fed. Cl. at 60, plaintiff overstates the scope and duration of this obligation, and understates the Government's actual efforts to preserve evidence. In fact, the Government did take reasonable measures to preserve evidence relevant to the claims in this case, at least from the time when it anticipated that these claims might become the subject of litigation.

From the time the differing site conditions were alleged, the Government employees involved in the Nachshonim claims were repeatedly reminded that they should not destroy records and that any notes or records they created were subject to being turned over to the contractor unless privileged. The subject was discussed at meetings, in teleconferences and telephone calls and in the regular "In Progress Reviews" that are held on the program. Def. App. 5. In addition, the Office of Counsel was told by Information Management ("IM") that all records were backed up including all e-mails. And, nearly all records created were in the form of e-mails or transmitted by e-mail. Def. App. 5.

Plaintiff mischaracterizes the Government's practice in this regard, and suggests that the Government followed a routine document destruction policy that was not discontinued with respect to documents relevant to the claims in this case until July 11, 2005, based upon a misleading reference to the Government's response to Interrogatory No. 8(c) of plaintiff's unnumbered set of interrogatories dated May 5, 2006. In that response, the Government stated

that "[o]n 11 July 2005 the Corps Office of Counsel sent a memorandum entitled 'Immediate Suspension of Document Destruction, AAB Joint Venture v. United States' to those personnel associated with the Nachshonim project. " Pl. App. 210. The same response, however, also stated that the USACE's Europe District did not have a scheduled document destruction policy to begin with. Id. This memorandum may have been agency's first formal, written directive to preserve documents relevant to this litigation, but this was a precautionary measure taken in addition to the repeated prior oral directives conveyed since the contractor first asserted the existence of differing site conditions.

Nor is any breach of the Government's duty evidenced by the Government's alleged failure to produce e-mail for various individuals who were identified in the Government's interrogatory answers as having generated e-mail related to the subject matter of the litigation. As we have demonstrated, the Government did produce numerous e-mails generated by many of these individuals, even if not from e-mail folders specifically attributed to these individuals. And, as to the other individuals, we are aware of no evidence that these individuals generated such e-mails after litigation concerning these claims was anticipated or that any such e-mails that may have been generated before that time were destroyed after that time.

It is true that the e-mails that we did produce did not cover all periods of time that plaintiff considers relevant. Plaintiff. However, overstates this period, as well as the period during which the Government was obligated to preserve documents relevant to this litigation. Plaintiff cites the Court's observation in Renda Marine that "[p]laintiff's purported oral communication in October 1999 with defendant concerning the alleged differing site condition, if proven to have occurred, could be construed as notice to defendant that a potential litigation

claim existed." Id. at 62 (emphasis added). The Court did not hold, as plaintiffs implies, that if the plaintiff in that case had proved the alleged communication, this would have constituted notice that a potential litigation claim existed. Nor did the Court hold that notice of potential litigation concerning a particular issue – such as a specific differing site condition – gives rise to an obligation to preserve all documents relating to any and all other issues.

Plaintiff argues that in this case, the preservation obligation arose by January 2002, because plaintiff "provided written notice to the Government of a differing site condition by letter dated January 22, 2002." Plaintiff's Brief 20 (emphasis added). The referenced letter gave notice of the contractor's belief that there were differing site conditions in a few specific locations. In a project as large and complex as the one at issue here, such a notification would not, in itself, be a reason for the agency to view litigation as appreciably more likely than it was prior to the notice. Neither Renda Marine nor any controlling authority holds that such a notice is sufficient to trigger an obligation to preserve documents. And, assuming that the referenced letter did trigger such an obligation, there is no basis for extending that obligation to documents other than those relevant to potential litigation concerning the particular differing site condition alleged in the letter.

An obligation to preserve records pertaining to particular claims may have arisen once the contractor submitted REAs for those claims. Various REAs relating to various claims involved in this litigation were filed at various times, beginning in July 2002. Plaintiff's Brief 12. E-mail records of various individuals were produced for time periods beginning before this date. The fact that e-mail records produced for other individuals did not extend that far into the past – or that the e-mails produced did not extend to the period after this litigation was

commenced – does not mean that such e-mails were destroyed. There is no basis for assuming that these individuals generated relevant, non-privileged documents throughout the period from 2002 to the present.

As we acknowledged above, the Government was unable to locate the e-mail files of some of the individuals who were likely to have generated e-mails within the scope of plaintiff's requests, and these e-mails may be among those stored on backup tapes that are very expensive and time-consuming to restore. Def. App. 4. In our January 13, 2006 response to plaintiff's correspondence concerning this matter, we did not refuse to restore these tapes and produce discoverable e-mails that they might contain. Rather, we sought to reduce this task to a manageable size, by agreement, but also noted that we were not ready to go to great lengths when plaintiff had not, as of that time, produced <u>any</u> electronic documents. Pl. App. 166-67.[6] However, all backup tapes relating to the Nachshonim project that could be located have been collected for restoration Def. App. 4.

III. <u>The Government's Assertions of Privilege Were Proper</u>

Plaintiff challenges the Government's assertion of the attorney-client privilege and the attorney work-product privilege with respect to various documents. Contrary to plaintiff's surmise, however, the documents that the Government has withheld pursuant to these privileges

---

[6] Likewise, we might have produced documents generated during the course of this litigation if agreement had been reached as to a reasonable ending date, but the Government could not be expected to continuously review and produce documents relating to the Nachshonim project as they were generated. We may now be in a better position to identify any discoverable documents generated during the course of the litigation, because the project is now complete, and virtually all current and recent documents concerning the project are documents created by counsel or to assist counsel in the defense of this litigation, and are plainly privileged.

are not routine business or contract administration communications.[7] The documents as to which we asserted the attorney-client privilege contained confidential communications between the agency and its attorneys for the purpose of obtaining or providing legal advice to the agency. The documents as to which we asserted the attorney work product privilege were prepared by or at the direction of the Government's attorneys, in anticipation of litigation. Def. App. 5-6, 10-17. Under the authorities cited by plaintiff, such documents are privileged.[8]

To the extent that documents as to which we asserted these privileges were communicated to persons outside the Government, this was done for the purpose of obtaining from such persons advice or information required for the formulation of appropriate legal advice or for defending against claims that were expected to be the subject of litigation. Def. App. 6. Disclosure to third parties for this purpose does not constitute a waiver of the privilege. See United States v. American Tel. & Tel. Co., 642 F.2d 1285, 1298 (D.C. Cir. 1980) (work product

---

[7] Plaintiff's assertions concerning the nature of the documents in question are based upon the brief descriptions of the documents contained in the privilege log, as well as the authors and addressees identified in that log. Ironically, plaintiff's privilege log contains very similar descriptions, and plaintiff's arguments could equally be directed at many of its own assertions of the same privileges. And, whereas the Government's privilege log is seven pages in length, plaintiff's privilege log is approximately 200 pages long. We have not yet had an opprtunity to formally challenge plaintiffs numerous claims of privilege, but, if and when we do, we assume that plaintiff will be held to the same standard as the Government in defending these assertions of privilege.

[8] Plaintiff challenges some of the items contained in the Government's privilege log, stating "Nonexistent rule cited (Rule 34(b)(3))." This reference was the result of a typographical error. The rule that we meant to cite is Rule 26(b)(3).

privilege not waived by disclosure to third party sharing common interests with the party asserting the privilege).[9]

Finally, as noted above, in January 2006, we produced an additional 206 pages of documents that had initially been withheld as privileged, but which we subsequently determined were not privileged. Def. App. 2. In the case of three documents, this determination was made after the preparation of the Government's privilege log. Consequently, although they were listed in the privilege log (entries 45, 63 and 64), Def. App. 15, 17, they were in fact among the documents produced in January 2006. (The agency prepared a revised privilege log reflecting the deletion of three items, but, through inadvertence, the revised privilege log was not provided to plaintiff.) As to these three documents, the privilege issue is moot.

## IV. The Government Has Not Refused to Supplement its Document Production, but Has Had Insufficient Time Within Which to Do So

Although neither party's document production has satisfied the other, the Government has been and remains willing to revisit areas in which the sufficiency of document production is disputed, upon a reciprocal and cooperative basis and to the extent and within a time period that is reasonable under the circumstances. And, as indicated above, we have supplemented our production to some extent. To date, we have not been able to do so to a greater extent, because

[9] A number of the documents as to which we asserted privilege were communicated to employees of the GOI. It is quite clear from the LOA that the GOI and the United States share a common interest with respect to the claims in this litigation. Under the LOA, the GOI must make funds available for payment of successful contract claims against the Government, and the Government must afford the GOI an "opportunity to review and comment on the litigation proceedings . . . ." Pl. App. 318. Treatment of disclosures to the GOI as a waiver of either the work-product privilege or the attorney-client privilege would undermine the Government's ability to comply with the LOA, and disclosures made in compliance with the LOA should not be considered voluntary disclosures for purposes of applying these privileges.

the attorneys and agency personnel involved in this process were overtaken by other litigation activities in the above-captioned cases and in 04-1792C.[10]

Almost all of these activities were triggered either by discovery requests or other actions taken by plaintiff, or were necessary under agreed and/or Court-ordered deadlines. Because of the substantial amount of time and attention required by these activities (in addition to the time

---

[10] These activities included the preparation of defendant's privilege log, provided to plaintiff on December 22, 2005; the December 22, 2005 filing, in Nos. 04-1719C, 04-1792C, and 05-114C, of a joint motion for a protective order governing the inadvertent disclosure of documents; the December 22, 2005 filing of a joint motion for an extension of time to complete discovery in No, 04-1792C; the filing of an answer to the complaint in No. 05-1172C on January 3, 2006; the preparation of a response to plaintiff's second set of interrogatories in No. 04-1719C, which was served upon the Government on January 9, 2006; preparation of defendant's first and second set of interrogatories and first and second request for production of documents, served in mid-January 2006, in No. 05-114C; the Government's production, on January 24, 2006, of additional documents based upon its reconsideration of previous assertions of privilege as to these documents; extended discussions between the parties in late January and early February concerning the coordination of discovery and other pre-trial activities in all five of the pending cases relating to the contract in question; defendant's filing, on February 14, 2006, of a motion to consolidate Nos. 04-1917C, 05-114C, 05-1172C and 06-49C; the filing of the parties' Joint Preliminary Status Report in No. 05-1172C on February 24, 2006; the preparation of initial disclosures in No. 05-1172C pursuant to RCFC 26(a)(1) in early March 2006; the filing of an answer to the complaint in No. 06-49C on March 20, 2006; depositions taken by plaintiff in Tel Aviv, Israel, during late March 2006, in No. 04-1792C; the filing of the parties' Joint Status Report in No. 04-1719C on March 31, 2006; defendant's RCFC 30(b)(6) deposition of plaintiff in No. 04-1792C on April 5, 2006; the filing of a motion for summary judgment in No. 04-1792C on May 15, 2006; service of defendant's third set of interrogatories in the above-captioned consolidated cases on May 26, 2006; service on June 5, 2006, of defendant's responses to plaintiff's unnumbered set of interrogatories and unnumbered request for production of documents of May 5, 2006, in the consolidated cases; the filing of defendant's corrected response to plaintiff's motion for summary judgment in No. 04-1792C on June 18, 2006; the filing of a reply in support of defendant's motion for summary judgment in No. 04-1792C on July 3, 2006; the preparation of responses to plaintiff's sixth set of interrogatories and sixth request for production of documents, which were served upon the Government on June 30, 2006; the filing of defendant's motion to dismiss plaintiff's claim concerning subgrade material on July 21, 2006; and preparation and other arrangements relating to depositions in Tel Aviv, Israel, noticed by plaintiff for the last week of July 2006, but postponed due to the outbreak of war in Israel.

and attention required of Government counsel in numerous other cases during the same period), the Government has been unable to fully review its prior discovery responses and prepare any supplemental responses or supplemental production that might be appropriate. The Government has been and remains willing to revisit areas in which the sufficiency of discovery responses is disputed, upon a reciprocal and cooperative basis and to the extent and within a time period that is reasonable under the circumstances.

CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

September 8, 2006

# Appendix

## DECLARATION OF BRETT R. HOWARD

1. My name is Brett Howard. I am 41 years old and my address is USAEDE, CMR 410 BOX 476, APO, AE 09096-2005. I am a civilian attorney employed in the Office of Counsel for the U.S. Army Corps of Engineers, Europe District (EUD) in Wiesbaden, Germany. The information contained in this declaration is based on my personal knowledge, and if called as a witness, I could and would competently testify to the facts stated herein.

2. This declaration is in reference to AAB Joint Venture v. the United States of America, Case No. 1719C (Consolidated) and in response to AAB's Motion to Compel (Discovery Responses).

3. Virtually all of the documents relating to the administration of the Nachshonim contract are created and maintained at the Nachshonim, Israel job site. The contracting department in Wiesbaden, Germany has two file drawers containing documents relating to the Nachshonim project. These files contain solicitation CDs (1 file); past performance evaluations of unsuccessful bidders for the contract (6 files); copies of correspondence (1 file); copies of some of AAB's requests for CODs (without other documents or analysis); copies of modifications P00001 – 91; and cost and pricing data submitted by AAB in relation to its excess material disposal, earthworks and pile length claims.

4. In response to AAB's multiple requests for discovery, in addition to the documents provided at the site and from Wiesbaden, we requested that all personnel associated with the Nachshonim project that are still employed with the Corps provide us with all documents in their possession or control. These documents were then reviewed and the privileged documents culled out.

5. These documents were produced, and inspected by Larry Prosen of Bell, Boyd & Lloyd, on October 23-28, 2005, at the Nachshonim, Israel job site. The approximately 80 boxes produced included all relevant, responsive documents within the Government's custody and control, other than electronic documents and documents withheld as privileged, that the Government was able to locate and retrieve after diligent efforts to do so. The quantity of documents from Wiesbaden that we produced was substantially less than the estimated quantity of approximately 10 boxes that we had originally communicated to plaintiff's counsel. This is because, after review of these documents, it was determined that they consisted primarily of documents concerning projects in Israel other than the Nachshonim project; proposals from other bidders, containing confidential proprietary information; and oversize copies of the design documents that were duplicative of what we were producing in Israel.

6. From the October 2006 production, 67 documents were withheld or redacted due to privilege. A privilege log was produced to AAB's attorneys on December 22, 2005.

7. In January 2006, we produced 206 pages of documents that had initially been withheld as privileged, but which we subsequently determined were not privileged. These documents were marked Bates Nos. G00001 – G00206. We also prepared a revised privilege log reflecting the deletion of three items, at entries 45, 63 and 64. Many of the documents in these 206 pages involved communications to or from Government attorneys, and were initially withheld under the attorney-client and/or attorney work produce privileges. Upon further review, we determined that many of these documents were not confidential and were business or contract administration communications, despite the involvement of counsel.

8. We also collected the e-mails stored by individuals on their desktop computers. If a person is no longer employed by the Corps or is no longer in a position with the Nachshonim

project, any documents left behind or archived have been collected where possible for production. These electronic documents were transmitted to Government counsel in November 2005, and I understand that they were provided to plaintiff on November 28, 2005. This production included the following non-privileged e-mails:

| Name | Folder\Subfolder | Items | Date start | Date end | Size | Total K |
|---|---|---|---|---|---|---|
| **Abraham, Ezra** | | | | | | **417939** |
| | Archived inbox | 1072 | 8/7/02 | 12/11/04 | 204335 | |
| | Archived sent | 671 | 6/5/02 | 12/14/04 | 158404 | |
| | Gordon's PST archive\Larry | 12 | 9/22/01 | 2/26/02 | 940 | |
| | Gordon's PST archive\Nachshonim\60% Segment 2 | 53 | 12/6/01 | 5/17/02 | 21519 | |
| | Gordon's PST archive\Nachshonim\60% Segment 4 | 34 | 3/12/02 | 4/27/02 | 17518 | |
| | Weekly IPO reports | 23 | 2/15/05 | 8/2/05 | 15224 | |
| **Bearden, Leslie** | | 5 | 3/3/03 | 11/23/04 | 573 | **573** |
| **Blackburn, Jody** | | | | | | **42303** |
| | Nachshonim | 86 | 11/1/02 | 7/13/05 | 28169 | |
| | Geotech Issues | 7 | 6/24/03 | 12/3/04 | 728 | |
| | NSB Weekly Update | 6 | 10/1/04 | 12/16/04 | 2355 | |
| | Tax Invoices | 19 | 1/22/03 | 12/11/03 | 11056 | |
| **Local e-mail** | | | | | | **53848** |
| | Inbox | 7 | 11/10/03 | 7/27/05 | 3597 | |
| | Israel reports | 8 | 10/1/04 | 12/17/04 | 9635 | |
| | Nachshonim | 46 | 11/1/02 | 12/14/04 | 15440 | |
| | Nachshonim\Geotech issues | 11 | 2/12/03 | 4/13/04 | 1909 | |
| | Nachshonim\NSB Weekly update | 6 | 10/1/04 | 12/16/04 | 2355 | |
| | Nachshonim\ Tax Invoices | 54 | 1/22/03 | 7/8/05 | 20470 | |
| | Top Ten Lists | 1 | 4/22/04 | 4/22/04 | 57 | |
| **McPeters, Ron** | | | | | | **340661** |
| | Outstanding e-mail | 791 | 5/29/02 | 5/10/04 | 184030 | |
| | QC Reports | 103 | 9/25/03 | 5/9/04 | 36010 | |
| | Ron Evac | 638 | 2/17/03 | 1/29/04 | 120621 | |
| **Roach, Michael (1)** | | | | | | **141358** |
| | Inbox | 519 | 11/9/03 | 5/12/04 | 105674 | |
| | Sent | 350 | 3/2/04 | 5/12/04 | 35622 | |
| **Roach,** | | | | | | **32401** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Michael (2)** | | | | | | |
| | Dirt issues | 201 | 3/5/02 | 9/1/04 | 3240 | |
| **Simmons, Gordon** | | | | | | **105079** |
| | Israel\Larry | 16 | 9/22/01 | 2/26/02 | 1159 | |
| | Israel\Nachshonim | 611 | 6/22/01 | 5/16/02 | 64875 | |
| | Israel\Nachshonim\60% Segment 2 | 53 | 12/6/01 | 5/17/02 | 21524 | |
| | Israel\Nachshonim\60% Segment 4 | 34 | 3/12/02 | 4/27/02 | 17521 | |
| | **Total items:** | **5437** | | | **Total size:** | **1134162** |

9. Although we produced thousands of electronic documents, we did not locate the e-mail files of some of the individuals who would have generated e-mails within the scope of plaintiff's requests. To determine whether the Government still possesses these files in electronic form, and, if so, to retrieve and produce them, will necessitate a time-consuming and expensive restoration of back-up tapes. All back-up tapes that could be located relating to the Nachshonim project have been collected for restoration. Estimates received from third party vendors indicate that it would cost between $85,000 to $150,000 and require at least 30 days to restore all of the potentially relevant tapes, and that an additional 30 days would be required to review the restored material to identify responsive items and privileged items.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of September 2006.

Brett R. Howard

BRETT R. HOWARD

**DECLARATION OF PAUL O. CHEVERIE**

1. My name is Paul Cheverie. I am 59 years old and my address is USAEDE, CMR 410 BOX 623, APO, AE 09096. I am a civilian attorney employed as the Command Counsel in the Office of Counsel for the U.S. Army Corps of Engineers, Europe District (EUD) in Wiesbaden, Germany. The information contained in this affidavit is based on my personal knowledge, and if called as a witness, I could and would competently testify to the facts stated herein.

2. This declaration is written in reference to AAB Joint Venture v. the United States of America, Case No. 1719C (Consolidated) and in response to AAB's Motion to Compel (Document Production).

3. From the time the differing site conditions were alleged, EUD and IPO employees involved in the Nachshonim claims were repeatedly reminded that they should not destroy records and that any notes or records they created were subject to being turned over to AAB unless privileged. The subject was discussed at meetings, in teleconferences and phone calls and in the regular "In Progress Reviews" that are held on the program.

4. In addition to these steps, the Office of Counsel was told by Information Management (IM) that all records were backed up including all emails. Nearly all records created were in the form of emails or transmitted by emails.

5. All of the records on this subject at the resident office were turned over other than those withheld based upon privilege. To the extent relevant records were created prior to contract award, they would, in the ordinary course of business, been included in the contract file, or in some cases may not have been preserved beyond contract award.

6. The documents that we are still withholding pursuant to these privileges, however, are not routine business or contract administration communications. The documents as to which we

asserted the attorney-client privilege contained confidential communications between the agency and its attorneys for the purpose of obtaining or providing legal advice to the agency. The documents as to which we asserted the attorney work product privilege were prepared by or at the direction of the Government's attorneys, to provide the attorneys with information necessary to enable counsel to provide legal opinions to its client, or in anticipation of litigation. Shortly after the contractor first notified us that it had encountered geotechnical conditions that might be different than those represented in the contract, agency officials specifically requested counsel to provide a legal opinion. To the extent that documents as to which we asserted these privileges were communicated to persons outside the Government, this was done for the purpose of obtaining from such persons advice or information required for the formulation of appropriate legal advice or for defending against claims that were expected to be the subject of litigation.

I, Paul Cheverie, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 8th day of September 2006.

PAUL O. CHEVERIE

U.S. Department of Justice

Civil Division

SBrilliant
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.04

Telephone:
(202) 305-7561

*Washington, D.C. 20530*

November 28, 2005

BY HAND DELIVERY

Brian Cohen, Esq.
Bell, Boyd & Lloyd, PLLC
1615 L Street, N.W.
Suite 1200
Washington, DC 20036

Re: A.A.B Joint Venture v. United States, Fed. Cl. No. 04-1719C

Dear Brian:

Enclosed please find electronic documents responsive to your requests for production in this case. The enclosed include non-privileged documents created on or before the filing date of the complaint, December 21, 2004, for Ezra Abraham, Leslie Bearden, Joseph Blackburn, Ron McPeters, Michael Roach, and Gordon Simmons.

We are still attempting to locate responsive electronic documents for Douglas Bonham, William Mills, LTC John Rovero, Col. Lee Staab, and William Thievon. We are unable to locate any responsive electronic documents for Christopher Gatz, Michael Iarosis, and Robert Kreienheder.

We are still in the process of gathering and reviewing electronic documents created subsequent to December 21, 2004, and electronic documents relating to Nos. 04-1792C and 05-114C that may note be included in the enclosed. Non-privileged documents in the latter categories will be provided to you in the near future.

Sincerely,

Shalom Brilliant
Senior Trial Counsel
Commercial Litigation Branch

Enclosures

cc: Laura Smith, Esq.
Deputy District Counsel
Europe District
U.S. Army Corps of Engineers
CMR 410 Box 19
APO/AE 09096

BELL, BOYD & LLOYD PLLC

1615 L STREET N.W., SUITE 1200
WASHINGTON, D.C. 20036-5610
202.466.6300 FAX 202.463.0678

OFFICES IN WASHINGTON, D.C.
AND CHICAGO

LAWRENCE M. PROSEN
202.955.6830
lprosen@bellboyd.com
DIRECT FAX: 202.835.4127

VIA MESSENGER

January 24, 2006

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch, Civil Division
United States Department of Justice
Attention: Classification Unit
8th Floor, 1100 L Street, NW
Washington, DC 20530

Re: Israeli Discovery Matters
Case Nos.: 04-1719C, 04-1792C and 05-114C

Dear Shalom:

Enclosed please find two (2) CD-Roms containing the first portion of the A.A.B Joint Venture's email records. These are produced pursuant to the various Requests for Production of Documents propounded by the United States on the JV in the above-referenced cases.

As we have informed you, over 16,000 emails have been located by the JV. We are actively reviewing the remaining portions (*i.e.*, those not yet produced) of the emails from the JV. We hope to have those to you in the next few weeks. We intend to prepare an email privilege log of withheld emails once our review is completed. Please note that, notwithstanding the enclosed production, Plaintiff reserves all of its rights, privileges and defenses which it may have.

You also informed me that you would travel to our offices tomorrow to review the ABB Susa New Jersey records, which are being produced in Washington, D.C. as a convenience to you. This will confirm that you will be here at 10:30 a.m. for that review.

Please call Brian or me with any questions.

Sincerely yours,

Lawrence M. Prosen

LMP:jsm

cc: Brian Cohen, Esq. w/o encl.
Philip C. Jones, Esq. w/o encl.
Devorah Patt, Esq. w/o encl.
A.A.B Joint Venture w/o encl.



85096/1/2

U.S. Department of Justice

Civil Division

SBrilliant
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.03, 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.03,
154-05-114.03

Telephone:
(202) 305-7561

*Washington, D.C. 20530*

December 22, 2005

BY FACSIMILE AND FIRST CLASS MAIL

Brian Cohen, Esq.
Bell, Boyd & Lloyd, PLLC
1615 L Street, N.W.
Suite 1200
Washington, DC 20036

Re: A.A.B Joint Venture v. United States,
Fed. Cl. Nos. 04-1719C, 04-1719C, 05-114C

Dear Brian:

Enclosed is a privilege log identifying the documents that we have withheld as privileged and the privileges applicable to each of these documents.

Upon further consideration subsequent to the document inspection conducted in October, we have determined that several documents that were initially withheld in their entirety should be produced, either in their entirety or with redactions. Copies of these documents – which are either not listed in the enclosed log or are identified as redacted – will be provided to you within the next few days.

Please let me know when we can expect to receive plaintiff's privilege log.

Sincerely,

Shalom Brilliant
Senior Trial Counsel
Commercial Litigation Branch

cc: Laura Smith, Esq.
Deputy District Counsel
Europe District
U.S. Army Corps of Engineers
CMR 410 Box 19
APO/AE 09096

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 1. | Israel Project Office | 25-Jan-05 | Michael Roach | Paul Cheverie | Memo to OC re TCN Issue | 6 | AC / AWP |
| 2. | Israel Project Office | 31-Mar-03 | Michael Roach | LTC John Rovero<br>Michael Iarosis<br>Joseph Blackburn<br>Laura Smith<br>Paul Cheverie | E-mail to OC re TCN Issue | 3 | AWP |
| 3. | Israel Project Office | 15-Aug-03 | LTC Rovero | Paul Cheverie | Memo re Labor Issues at Nachshonim Storage Base | 1 | AC |
| 4. | Israel Project Office | 25-Jun-03 | Michael Roach | Paul Cheverie | Memo and notes re TCN labor references in contract; also powerpoint slides "Labor Issues Meeting Agenda" | 6 | AC / AWP Redactions |
| 5. | Israel Project Office | 09-Aug-04 | Michael Roach | Paul Cheverie | TCN Claim and Request for COD | 2 | AC |
| 6. | USACE office Wiesbaden, Germany | Dec 05 | William Mills | Office of Counsel | Geotech report meeting notes | 1 | AWP |
| 7. | USACE office Wiesbaden, Germany | Undated | Bill Thievon | Office of Counsel | Draft CO decision on unanticipated subsurface conditions – additional pile length | 15 | AC / AWP |
| 8. | USACE office Wiesbaden, Germany | Undated | Bill Thievon | Laura Smith | Counsel comments re draft CO decision on unanticipated subsurface conditions – additional pile length | 16 | AC / AWP |
| 9. | USACE office Wiesbaden, Germany | Undated | Bill Thievon | Office of Counsel | Draft CO decision on unanticipated subsurface conditions – Subbase replacement | 5 | AC / AWP |
| 10. | Israel Project office | 21-May-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for additional pile lengths | 1 | AC |
| 11. | Israel Project office | 9-June-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for excess material disposal | 1 | AC |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 12. | Israel Project office | 16-June-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for Unanticipated Subsurface Conditions | 3 | AC |
| 13. | Israel Project office | 7-July-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero<br>Michael Iarosis | Contractor REA for additional pile lengths | 1 | AC |
| 14. | Israel Project office | 24-July-03 | Michael Roach | CENAU-OC | Contractor certification for Excess Material Disposal Claim | 1 | AC |
| 15. | Israel Project office | 1-Aug-03 | Michael Roach | Paul Cheverie<br>cc: LTC Rovero | Contractor REA for additional pile lengths | 1 | AC |
| 16. | Israel Project office | 15-Aug-03 | LTC John L. Rovero | Paul Cheverie<br>cc: E. Drott<br>L. Bearden | Labor Issues at Nachshonim Storage Base | 1 | AC |
| 17. | Israel Project office | 1-Mar-04 | Michael Roach | LTC John L. Rovero<br>Paul Cheverie<br>cc: E. Drott<br>L. Bearden | Geotechnical Claims – 3 Inch vs 6 Inch Material; Rolider Means and Methods | 1 | AC |
| 18. | Israel Project office | 9-Apr-04 | J.W. Blackburn | Leslie Bearden | Insulated Panel Issues | 2 | AWP |
| 19. | Israel Project office | 14-Apr-04 | Michael Roach | LTC John L. Rovero<br>J.W. Blackburn | E-mail: Insulated Panel Issues | 2 | AWP |
| 20. | Israel Project office | 21-Apr-04 | Michael Roach | LTC John L. Rovero<br>J.W. Blackburn | Insulated Panel Issues | 2 | AWP |
| 21. | Israel Project office | 29-July-02 | Michael Roach | LTC Pini Liberman<br>Uriah Ayal<br>cc: LTC Rovero<br>Michael Iarosis<br>Paul Cheverie | Contractor REA for Unanticipated Subsurface Conditions and Geotechnical Report | 1 | Rule 34(b)(3) Redactions |
| 22. | Israel Project office | 22-July-02 | Joseph Blackburn | Doug Bonham | Memorandum re: Geotechnical Assessment of Nachshonim Storage Base | 1 | AWP |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 23. | Israel Project office | 23-July-02 | Joseph Blackburn | Paul Cheverie | TCN Income Tax | 4 | AC |
| 24. | Israel Project office | 29-July-02 | Michael Roach | LTC Pini Liberman<br>Uriah Ayal<br>cc: LTC Rovero<br>Michael Iarosis<br>Paul Cheverie | Contractor REA for Unanticipated Subsurface Conditions and Geotechnical Report | 1 | Rule 34(b)(3) Redactions |
| 25. | Israel Project office | 15-Aug-03 | LTC John Rovero | Paul Cheverie, District Counsel<br>cc: E. Drott<br>L. Bearden | Labor Issues at Nachshonim Storage Base | 1 | AC / AWP |
| 26. | Israel Project office | 24-Jan-02 | LTC McCallister | COE M. Roach, others | RE: Team meeting to address Nachshonim Geotech Issue | 3 | AWP |
| 27. | Israel Project office | 29-Jan-02 | Michael Roach | Paul Cheverie, others. | Powerpoint presentation entitled "Nachshonim Storage Base Geotechnical Issues" | 13 | AC / AWP |
| 28. | Israel Project office | 14-Jun-02 | Michael Roach | Rami Kerekesh<br>Einat Rozen<br>cc: Mike Iarosis<br>Joseph Blackburn<br>Ron McPeters<br>Paul Cheverie | (E-mail) Geotechnical Issues | 1 | Rule 34(b)(3) Redactions |
| 29. | Israel Project office | 20-Jun-02 | Michael Roach | To File | Notes from Geotech Issues Meeting | 1 | Rule 34(b)(3) Redactions |
| 30. | Israel Project office | 20-Jun-02 | Michael Roach | To File | Notes from Geotech Issues Meeting | 1 | Rule 34(b)(3) Redactions |
| 31. | Israel Project office | 27-Jun-02 | J. Blackburn | Ezra Abraham<br>cc: Ron McPeters<br>Michael Roach<br>Mike Iarosis | (E-mail) re Geotechnical Issues | 2 | AWP |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 32. | Israel Project office | 22-Jul-02 | J. Blackburn | Doug Bonham | Geotechnical Assessment of Nachshonim Storage Base | 1 | AWP |
| 33. | Israel Project office | 26-Jul-02 | Michael Roach | File | Meeting note, Israel Klar, COE Mike Roach | 1 | Rule 34(b)(3) Redactions |
| 34. | Israel Project office | 28-Jul-02 | Michael Roach | IDF E. Rozen<br>R. Kerekesh | Geo Consultant | 2 | Rule 34(b)(3) Redactions |
| 35. | Israel Project office | 28-Jul-02 | Michael Roach | IPO Mike Iarosis<br>LTC John Rovero<br>cc: Joseph Blackburn<br>Paul Cheverie | E-mail forwarding two memos regarding Nachshonim Geotechnical Issues | 1 | AC / AWP |
| 36. | Israel Project office | 29-Jul-02 | Michael Roach | IDF P. Liberman<br>MOD U. Ayal<br>cc: LTC Rovero<br>Michael Iarosis<br>Paul Cheverie | Unanticipated Subsurface Conditions and Geotechnical Report | 2 | Rule 34(b)(3) Redactions |
| 37. | Israel Project office | 30-Jul-02 | Paul Cheverie | Michael Roach<br>Einat Rozen<br>Rami Kerekesh<br>Michael Iarosis<br>Joseph Blackburn<br>William Mills<br>cc: Ezra Abraham<br>Rob Saari | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | AC |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 38. | Israel Project office | 30-Jul-02 | Michael Roach | Einat Rozen<br>Rami Kerekesh<br>Michael Iarosis<br>Joseph Blackburn<br>William Mills<br>cc: Ezra Abraham<br>Rob Saari<br>Paul Cheverie | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | Rule 34(b)(3) Redactions |
| 39. | Israel Project office | 30-Jul-02 | Ezra Abraham | Michael Iarosis<br>Joseph Blackburn<br>LTC John Rovero<br>cc: Michael Roach | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | AWP Redactions |
| 40. | Israel Project office | 30-Jul-02 | Michael Iarosis | Paul Cheverie<br>Michael Roach<br>Joseph Blackburn<br>William Mills<br>Laura Smith<br>cc: Ezra Abraham<br>Rob Saari | (E-mail) Independent Geotechnical Review – Nachshonim | 1 | AC / AWP |
| 41. | Israel Project office | 30-Jul-02 | Michael Roach | FILE | COE note Agenda- Geotech Briefing IPO | 1 | AWP |
| 42. | Israel Project office | 31-Jul-02 | Ann Gunzel | Michael Roach<br>cc: William Mills<br>Mike Iarosis<br>Joseph Blackburn | (E-mail) RE: Independent Geotechnical Review – Nachshonim | 3 | AWP |
| 43. | Israel Project office | 01-Aug-02 | Rami Kerekesh | Michael Roach | (E-mail) Independent Geotechnical Review – Nachshonim | 2 | AWP |
| 44. | Israel Project office | 04-Aug-02 | Michael Roach | FILE | COE Notes re: Israel Klar | 1 | AWP |
| 45. | Israel Project office | 08-Aug-02 | Michael Roach | MFR | Meeting - Informal notes Sub: Geotech mtg. w/attached emails | 3 | AWP |
| 46. | Israel Project office | 19-Aug-02 | COE | MFR | Meeting with OC and KO re: Geotechnical issues | 1 | AC / AWP |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 47. | Israel Project office | 16-Dec-02 | Michael Roach | John Rovero<br>Joseph Blackburn<br>Ezra Abraham<br>Mike Iarosis | Sub: Nachshonim Geotech Status | 1 | AWP Redactions |
| 48. | Israel Project office | 21-Feb-03 | Michael Roach | Paul Cheverie<br>cc: Joseph Blackburn<br>LTC John Rovero<br>Michael Iarosis | (E-mail) Geotech Claim | 1 | AC |
| 49. | Israel Project office | 25-Feb-03 | Michael Roach | Paul Cheverie | Geotechnical Report | 1 | AC |
| 50. | Israel Project office | 16-May-03 | LTC John Rovero | Paul Cheverie | IDF Geotechnical Site Visit | 4 | AC |
| 51. | Israel Project office | 21-May-03 | Michael Roach | Paul Cheverie | Transmittal of REAs | 1 | AC |
| 52. | Israel Project office | 30-May-03 | Paul Cheverie | LTC John Rovero<br>Ernest Drott<br>Lloyd Caldwell<br>Joseph Blackburn<br>William Mills<br>Leslie Bearden<br>Laura Smith<br>Rob Saari<br>William Thievon<br>Douglas Bonham | Current Geotech Issue | 3 | AC |
| 53. | Israel Project office | 9-June-03 | Michael Roach | Paul Cheverie | Transmittal of JV REA | 1 | AC |
| 54. | Israel Project office | 16-Jun-03 | J.W. Blackburn | Paul Cheverie | Transmittal of JV letter 03-318 entitled Unanticipated Subsurface Conditions Financial Burden on Outstanding REAs | 1 | AC |
| 55. | Israel Project office | 07-Jul-03 | Michael Roach | Paul Cheverie | Transmittal of JV REA | 1 | AC |
| 56. | Israel Project office | 21-Jul-03 | Michael Roach | Office of Counsel | Transmittal of JV letter dated 18 Jul 03 with Piling Claim Certification | 1 | AC |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**RESPONDENT UNITED STATES COFC RULE 45(d)(2) PRIVILEGE LOG**
**OF**
**DEFENDANT'S PROJECT FILES PRODUCED TO A.A.B. JOINT VENTURE**
**Case Nos. 04-1719, 04-1792, 05-114**

| No. | Document/File location | Date | Author | Recipient(s) | Subject/Contents | Pages | Privilege |
|---|---|---|---|---|---|---|---|
| 57. | Israel Project office | 24-Jul-03 | Michael Roach | Office of Counsel | Transmittal of JV Letter 03-0348 w/certification of excess material disposal | 1 | AC |
| 58. | Israel Project office | 01-Aug-03 | Michael Roach | Paul Cheverie, Office of Counsel | Transmittal of JV Letters 03-360 (Segment #91) and 03-361 (Segment #11) | 1 | AC |
| 59. | Israel Project office | 07-Aug-03 | Michael Roach | Paul Cheverie, Office of Counsel | Transmittal of JV Letter 03-367 (Segment #12) | 1 | AC |
| 60. | Israel Project office | 22-Sep-03 | J.W. Blackburn | LTC John Rovero<br>Bill Thievon<br>Ernest Drott<br>Paul Cheverie | Transmittal of JV letter 03-392 dated 19 Sep 03 | 1 | AC |
| 61. | Israel Project office | 04-Oct-03 | Michael Roach | MFR | Meeting with NAU OC and CT, Claim Issues | 2 | AC |
| 62. | Israel Project office | 06-Nov-03 | Michael Roach | MFR | Meeting with NAU OC and CT, Claim Issues | 10 | AC |
| 63. | Israel Project office | 10-Nov-03 | Michael Roach | IDF Gadi Roitman<br>Uriah Ayal | Geotechnical Claims Meetings | 10 | Rule 34(b)(3) Redactions |
| 64. | Israel Project office | 12-Nov-03 | Michael Roach | Eran Rotberg, Counsel, MOD | Contractor Geotechnical Claims | 1 | Rule 34(b)(3) Redactions |
| 65. | Israel Project office | 25-Nov-03 | Michael Roach | Paul Cheverie, Office of Counsel | (E-mail) Nachshonim Geotechnical Status Letter | 1 | AC |
| 66. | Israel Project office | 01-Mar-04 | Michael Roach | Paul Cheverie, Office of Counsel | Contractor Geotechnical Claims | 2 | AC |
| 67. | Israel Project office | 25-Jan-05 | Michael Roach | Paul Cheverie, Office of Counsel | Contractor Geotechnical Claim re 3" vs 6" Fill Material | 1 | AC |