IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S CLAIM CONCERNING SUBGRADE MATERIAL,
ASSERTED IN PARAGRAPH 37 OF THE AMENDED COMPLAINT IN NO. 04-1719C

In our moving brief, we established that this Court lacked jurisdiction to entertain one of the claims pleaded by plaintiff, A.A.B. Joint Venture ("AAB"), in Count I of the amended complaint in No. 04-1719C – the claim concerning replacement of subgrade material asserted in paragraph 37 of that pleading – because the claim was not certified and presented to the contracting officer for a final decision. This Court has held, and there appears to be no dispute, that "[t]his Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision," that "a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer," and that "[a] new claim is 'one that does not arise from the same set of operative facts as the claim submitted to the contracting officer.'" AAB Joint Venture v. United States, 68 Fed. Cl. 363, 365 (2005), quoting J. Cooper & Assoc., Inc. v. United States, 47 Fed. Cl. 280, 285 (2000).

AAB has attempted to avoid this jurisdictional requirement with respect to the claim in question, by characterizing it as not a new claim, but one that arose from the same set of operative facts as a claim that was submitted to the contracting officer. In its complaint, AAB

did not specify which of the various claims that were submitted to the contracting officer involved the same operative facts as the subgrade material replacement claim, but alleged broadly that the latter claim was "based on the same underlying operative [sic] set forth herein; that is, the actual subsurface material differed materially from the conditions represented in the Geotechnical Report." Compl. ¶ 37. The only underlying facts alluded to in paragraph 37 are "the conditions described in Paragraph 23," which, in turn, concern "the thickness of subgrade layers beneath the floors that were to be cast on grades . . . ." Because the latter conditions were alleged to be the reason for the subgrade removal that was the subject of the certified claim referenced in Count I of the amended complaint, and because the subgrade replacement claim itself was pleaded in Count I, AAB appeared to be asserting that the latter claim was based upon the same operative facts as the certified claim referenced in Count I: a claim "for the unanticipated costs related to the excess material disposal on the site." Compl. ¶ 33.

In our moving brief, we established that the subgrade material replacement claim asserted in Paragraph 37 of the amended complaint did not arise from the same operative facts as the excess material disposal claim. In its response, AAB makes no attempt to demonstrate otherwise. Instead, it argues that we compared the wrong claims. Although the subgrade material replacement claim was pleaded in Count I, AAB argues that our comparison of this claim to the only other claim pleaded in Count I "overlooks Counts II through Count X of the Amended Complaint. Those counts are pile length differing site conditions claims . . . ." Plaintiff's Brief 4. According to AAB, "the appropriate analysis involves a comparison between the certified pile length claims and the subgrade replacement claim; not between the excess

material disposal claim and the subgrade replacement claim." Plaintiff's Brief 5 (footnote omitted).

Whether this identification of the claims that should be compared to the subgrade material replacement claim is viewed as a clarification of AAB's original assertion or a recent insight, it does not cure the jurisdictional defect in question. The subgrade replacement claim is distinct not only from its companion claim in Count I, but also from the various pile length claims in Counts II through X. As noted above, the only underlying facts alluded to in paragraph 37 are "the conditions described in Paragraph 23," which, in turn, concerned "the thickness of subgrade layers beneath the floors that were to be cast on grades . . . ." That is, the conditions upon which the subgrade replacement claim is based are the conditions of the material immediately below certain floor areas that were to be cast on grade. The pile length claims are based upon conditions that allegedly precluded the utilization of spread footings and required piles of greater number and length than AAB anticipated from the information and recommendations contained in the Geotechnical Report. See, e.g., Compl. ¶ 54. The feasibility of spread footings and the length required for piles are affected by conditions under foundation walls and conditions under and along side the piles, not by the subgrade material beneath floors. Conversely, the adequacy of subgrade material to support floors cast on grade is affected by the condition of the material to a very limited depth below the floor areas. Further, material that is inadequate to support a structure utilizing spread footings or short piles is not necessarily inadequate to support a slab on grade floor, and material that is unsuitable for the latter purpose does not necessarily affect the former purpose. Indeed, AAB itself states that its geotechnical designer was not even in a position to inspect a building to recommend any subgrade

replacement until "after the piling was installed . . . ." Plaintiff's Brief 5. Implicit in this statement is that neither the need for piles nor the length of the necessary piles indicated whether or to what extent subgrade replacement was warranted.

The chronology of events stated in AAB's response confirms that AAB considered the subgrade replacement claim to be separate and distinct from the various pile length claims it submitted to the contracting officer. Based upon AAB's account, AAB deliberately declined to include the subgrade replacement claim in the pile length claims that it certified and submitted to the contracting officer, and did not intend or expect the contracting officer to decide the subgrade replacement claim as part of a decision concerning any or all of the pile length claims. Thus, AAB states that in July and August 2002, it submitted requests for equitable adjustments ("REAs") for subgrade replacement costs in Segments 56 and 45; that in July and August 2003, it submitted 10 certified claims alleging differing site conditions, nine concerning pile lengths under buildings and one concerning excess material disposal; that, in January 2004, the Government issued modifications compensating AAB for subgrade replacement for certain roads; that, based upon these modifications, AAB "reasonably believed . . . that the government would negotiate the same or a similar unit price and compensate the Joint Venture . . . for the structures (DSBs);" and that, "[t]herefore, plaintiff reasonably concluded that it did not need to follow up its requests for equitable adjustment with certified claims and accordingly did not do so." Plaintiff's Brief 2-3.

Whether or not the referenced belief and conclusion were reasonable, the inescapable fact is that, according to AAB's own account, none of AAB's certified claims was intended to cover subgrade replacement. AAB anticipated compensation for subgrade replacement in response to

its 2002 REAs, and not in response to its certified claims. While the certified claims were pending, AAB received contract modifications compensating it for subgrade replacement under roads, and it was anticipating similar modifications with respect to subgrade replacement under buildings. AAB could not, at the same time, have considered the subgrade replacement claims to be part of the certified claims that it had submitted, nor could it have expected the Government to view the certified claims as encompassing the subgrade replacement claims. If the certified claims had encompassed the subgrade replacement claims, AAB would, in effect, have been seeking the same compensation twice: once through the REAs, and, again, concurrently, through the certified claims. Further, if the subgrade replacement claims were part of the certified claims, AAB would have been obligated to reduce those claims by the amount of the compensation it received under the January 2004 modifications. It did not do so because the subgrade replacement claims were simply never part of the certified claims to begin with, and never became part of those claims.

For the foregoing reasons, and for the reasons stated in our moving brief, the claim asserted in paragraph 37 of the amended complaint in No. 04-1719C, for the cost of replacing subgrade material under structures, should be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

September 14, 2006

**Filed electronically**