**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **A.A.B JOINT VENTURE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Nos. 04-1719C, 04-1792C,** |
| | ) | **05-114C (CONSOLIDATED)** |
| **THE UNITED STATES OF AMERICA** | ) | **(Chief Judge Damich)** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS IN CASE NOS. 04-1719C, 04-1792C AND 05-114C**

September 27, 2006

Brian Cohen
BELL BOYD & LLOYD, PLLC
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Attorney for Plaintiff

TABLE OF CONTENTS

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS IN CASE NOS. 04-1719C, 04-1792C AND 05-114C ....................................1

I. INTRODUCTION ....................................1

II. ARGUMENT ....................................2

A. The Court Should Issue an Immediate Order To Compel With Respect To The Items Noted Below For Which The Government Provided No Response ....................................2

B. The Government's Arguments Concerning The Wye River Accords Are Frivolous ....................................6

C. The Government Did Breach Its Duty to Preserve Evidence ....................................9

D. The Government's Assertions of Privilege Are Erroneous ....................................11

III. CONCLUSION ....................................12

Page(s)

# TABLE OF AUTHORITIES

## CASES

*Pacific Gas and Electric Co. v. United S tates*, 69 Fed. Cl. 784 (2006) .......... 11
*Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57 (2003).......... 2, 9
*Zubulake v. USB Warburg, LLC.*, 220 F.R.D. 212 ( S.D.N.Y 2003).......... 4

## STATUTES

*B.D. Click*, ASBCA Nos. 25609 et al., 83-1 BCA ¶ 16,328.......... 12
*SAE/Americon – Mid Atlantic*, GSBCA Nos. 12294 et al., 95-2 BCA ¶ 27,737.......... 12

## REGULATIONS

ER 1110-1-12.......... 6
ER-1110-18159.......... 7

Page(s)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **A.A.B JOINT VENTURE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Nos. 04-1719C, 04-1792C,** |
| | ) | **05-114C (CONSOLIDATED)** |
| **THE UNITED STATES OF AMERICA** | ) | **(Chief Judge Damich)** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS IN CASE NOS. 04-1719C, 04-1792C AND 05-114C**

## I. INTRODUCTION

The Government's response to Plaintiff's Motion for Order Compelling Discovery With Respect to Defendant's Responses to Plaintiff's Request For Production of Documents in the noted cases is a continuation of the Government's inadequate responses in discovery. In general terms, the Government's "arguments" may charitably be characterized as follows:

1. A flawed attempt to paper over its document production deficiencies by referring to the production of approximately 80 boxes of documents (Def. Resp. to Plaintiff's Mot. to Compel # 3; Affidavit of Brett Howard) when the vast majority of the documents produced in the actually 60-70 boxes were documents that both parties already possessed;[1]

2. An attempt to underplay the deficiencies in the government's electronic document production by stating ". . . we did not locate the e-mail files of some of the individuals who would have generated e-mails within the scope of Plaintiff's requests." Def. Resp. to Plaintiff's

[1] See Paragraphs 5 and 6 of the accompanying Affidavit of Lawrence M. Prosen. (Exhibit 1).

Mot. to Compel # 4; combined with the fanciful and completely unsupported conclusion that ". . . it is likely that any further e-mail production would, to a large extent, simply duplicate the e-mails that have already been produced." Response page 4;

3. A patently absurd interpretation of the Wye River Accords in an unsuccessful attempt to justify its failure to preserve virtually all of the design phase documents;

4. An erroneous interpretation of *Renda Marine* in a failed effort to argue that the Government did not breach its duty to preserve evidence;

5. A conclusory attempt to justify its assertions of privilege which fails to even address much less rebut Plaintiff's analysis of the applicable case law;

Each of these arguments and Plaintiff's reply thereto are addressed below.

## II. <u>ARGUMENT</u>

### A. The Court Should Issue an Immediate Order To Compel With Respect To The Items Noted Below For Which the Government Provided No Response

The Government's response is notable for the fact that it fails to even address numerous items in the motion. With respect to these items, noted below, Plaintiff asks that the Court pass an immediate order compelling discovery and award Plaintiff its reasonable costs:

1. The Government concedes, in what must be described as a gross understatement, that it "did not locate the e-mail files of <u>some</u> of the individuals who would have generated e-mails within the scope of Plaintiff's requests." (emphasis added). (Def. Resp. to Plaintiff's Mot. to Compel # 4).

In fact, the Government only located the e-mail files for 6 of the 35 individuals identified. It is of course true that <u>some</u> e-mails for the remaining 29 individuals have been produced

because certain e-mails were sent to multiple recipients and in some cases were sent to one or more of the six individuals (out of 35) for whom the Government has produced e-mails.

However, this argument proves far too little. In effect, this argument concedes that any e-mails authored by the remaining 29 individuals which were not sent to any of the six people for whom e-mail was produced, have not been produced. In addition, since the e-mail accounts for these 29 individuals have not been produced numerous other categories of documents have also potentially not been produced including: calendar, contacts, Israel reports, journal, top 10 lists, notes, weekly updates.

The failure to produce these e-mails is a breach of the Government's discovery obligations.

2. The Government appears to suggest, a position with which Plaintiff vigorously disagrees, that its duty to preserve "may have arisen once the contractor submitted REAs for those claims." Response at Page 12. The Government then states that REAs relating to various claims were filed beginning in July 2002. (Def. Resp. to Plaintiff's Mot. to Compel # 12).

Plaintiff disagrees, but for purposes of this section of the reply notes that the Government's apparent position is that its duty to preserve arose beginning in July 2002. Based upon the July 2002 date the Court should pass an order finding that the Government's failure to maintain its backup tapes for e-mail from July 2002 through June 2003 is a breach of the duty to preserve, and that the Government's subsequent failure to maintain its backup tapes for its e-mail for August 2003 through October 2003, April through August 2004 and February and March

2006 constitute additional breaches of the duty to preserve. The Court should impose appropriate sanctions, including reasonable attorney fees.[2]

3. The Government states that all backup tapes relating to the project that could be located have been collected for restoration at an anticipated cost of between $85,000 to $150,000. (Def. Resp. to Plaintiff's Mot. to Compel # 4, 13). The Government concedes that it does not have any backup tapes prior to July 2003.[3]

In its motion, Plaintiff specifically requested that the Government be required to produce at Government expense, including restoration, those backup tapes that were maintained commencing July 2003. (Plaintiff's Motion to Compel # 25). Plaintiff cited a number of cases and urged the Court to find that because the Government chose to put its data in a more expensive format, well after its duty to preserve arose, the cost burden should not be shifted to Plaintiff. Plaintiff further noted that under *Zubulake v. USB Warburg, LLC.*, 220 F.R.D. 212 ( S.D.N.Y 2003) the document requests were tailored to ascertain relevant and pertinent information, the information is not available from other sources, the documents were Government created documents and that the cost, relative to the claims, is insignificant. Plaintiff concluded that under any reasonable cost shifting analysis the Government should bare all costs.

---

[2] On August 25, 2006 Defendant filed a supplemental response to Plaintiff's May 5, 2006 interrogatories. (Exhibit 2). The supplemental response establishes, at a minimum, that the Government failed to preserve its Wiesbaden backup tapes for <u>e-mail</u> prior to March 2005 and for its <u>file server</u> prior to June 2004. Thus, with respect to Wiesbaden Defendant has admitted that it also breached its duty to preserve e-mail backup tapes for almost three years (July 2002 – February 2005), and file server tapes for two years.

[3] As noted in Plaintiff's motion the Government at one point stated that it had e-mails prior to <u>June 2001</u> on magnetic tape, more than two years earlier than it now contends.

The Government has not even attempted to rebut Plaintiff's position that the Government should bare the cost burden. Accordingly, Plaintiff requests that the Court issue an immediate order requiring the restoration of all backup tapes which have been located by the Government, (including the Wiesbaden tapes), with costs to be borne by defendant.[4]

4. The Government's response also failed to address the following items. Plaintiff requests the Court to pass an immediate order compelling the production of these items or require the Government to submit a declaration stating that they do not exist:

a. Videos which the Government stated would be produced;

b. Personal files, diaries, logs and notes;

c. QA/QC files;

d. The ten boxes of documents from Wiesbaden;

e. Internal notes, internal meeting memoranda or diaries of Mr. Mills;

f. Documents supporting or relating to the Geotechnical Report;[5]

g. The other bids that were submitted;

h. Power Point presentations or status reports;

i. The original boring cores depicted in the Geotechnical Report.

---

[4] An obvious question arises: If the Government from the time the differing site conditions were alleged "repeatedly reminded" its employees that they should not destroy records and that any notes or records they created were subject to being turned over to Plaintiff unless privileged, why did the Government fail to maintain its backup tapes between July 2002 and June 2003 in addition to the other periods noted? The Government cannot have it both ways. Defendant argues that it knew right away that litigation was likely, yet failed miserably in fulfilling its duty to preserve with respect to e-mails and backup tapes.

[5] The only such documents produced to date are a July 27, 2002 report by Doug Bonham and the final version of the Geotechnical Report.

### B. The Government's Arguments Concerning The Wye River Accords Are Frivolous

Faced with the fact that it produced virtually no documents from the design phase the Government, without any supporting documentation, speculates that the several Government employees who reviewed the designs and specifications ". . . may have reviewed such designs and specifications without commenting on them, may have communicated their comments orally, or may have made handwritten notations on drafts."[6] (Def. Resp. to Plaintiff's Mot. to Compel # 8).

The Court should give no weight to such unsupported speculation, and notes the conspicuous absence of affidavits from any Government employee including Messrs. Brackett, Brady, Glandon, Gunzel, Noble, Saari, Simmons or Shore. Plaintiff believes it would be appropriate for the Court to either order these individuals to provide declarations and/or be deposed with respect to the manner in which they conducted their reviews, and in particular whether or not they produced any written documents in connection therewith and where such documents reside today.

Further, even a cursory review of COE regulations demonstrates that it is virtually certain that substantial documentation was generated by the above-referenced employees in reviewing the design. For example ER 1110-1-12, which superseded ER 1110-1-12 dated June 1, 1993 and EC 1110-1-105 dated December 31, 2004, imposed significant design oversight obligations.

---

[6] Mr. Cheverie's declaration on this point is equally troubling. He states at paragraph 5 "to the <u>extent relevant records</u> were created prior to contract award, they would, in the ordinary course of business, been included in the contract file, <u>or in some cases may not have been preserved beyond contract award</u>." First, it is not the Government's right to determine what pre-award documents are relevant. Second, it is obvious that Mr. Cheverie has no idea what happened to the documents and he too merely speculates that "in some cases they 'may not have been preserved beyond contract award.'"

(Exhibit 3). Specifically Paragraph 5-8 Documentation, states "When another District, government agency, or A-E completes product development, the following information will be kept with the project file: QAP; QCP; annotated comments in DrChecks for QA reviews; another District, government agency or A-E statement of technical review; and QA Certifications . . .".

ER-1110-18159 sets forth the policies and procedures for implementing the design review and checking system (DrChecks). (Exhibit 4). DrChecks facilitates the formal review of project documents. It automatically tracks, collates and documents technical discussions by capturing the continuing dialogue between reviewer and designer. It also allows reviewers to add comments, provide file attachments, apply discipline specific check list items and easily accomplish comment entry.

DrChecks is mandatory for all military projects requiring design review. Prior to the adoption of DrChecks the Automated Review Management System (ARMS) was the required repository for collating and transmitting project review comments.

Clearly, whether the design review was performed utilizing ARMS or DrChecks it is manifest that substantial documentation should have been generated.

The Government also argues that to the extent the review, correction, revisions, and/or repackaging of the design was accomplished in writing ". . . such writing would not constitute "records created by the USG under the terms of the LOA." (Def. Resp. to Plaintiff's Mot. to Compel # 8).

This "argument" is a classic example of sophistic reasoning. Note 5, General, Section H at page 5 of 19 of the LOA obligated the U.S. Government to "review, correct, revise and/or repackage designs and bidding documents provided by the government of Israel. It further

provided a specific funding mechanism to compensate defendant for any design or engineering design services it provided. Note 5, General, Section K at page 6 of 19 required that all records created by the U.S. Government under the terms of this LOA be maintained in a form that may be audited in accordance with U.S. Government Standards and Regulations.

Thus, Note 5 established an obligation for the U.S. Government to review correct, revise and/or repackage the designs. This is a term of the LOA. Therefore, any and all written records created would perforce be created under the terms of the LOA, and as such were required to be maintained in a form that may be audited. To suggest that written records created in connection with the review, correction, revision and/or repackaging of the design are not records created under the terms of the LOA, in light of the fact that Note 5 is one of the terms of the LOA, is simply absurd on its face and should be treated as such by the Court.

Finally, in footnote 5 the Government actually appears to argue that the relevance of the design/pre-award phase is not readily apparent because this is not a bid protest case. This argument too is fallacious. It is well known in construction contracting that design documents are often highly relevant, and clearly such requests are reasonably calculated to lead to the discovery of admissible evidence.

As noted at pages 18 and 19 of the motion to compel, the relevance, particularly from the standpoint of discovery is obvious. For example, document requests relating to review, preparation, and analysis pertaining to the development of the Geotechnical Report, review and analysis of the pre-proposal geological borings and subsurface conditions and documents pertaining to the planned removal or disposal, reuse or sale of excessive soils and excavated material are clearly relevant to the material issues in 1719.

In like manner many of the document requests in 05-114 and 05-1172 are highly relevant to the issues in those cases. For example, and not by way of limitation, discovery already undertaken including Defendant's answers to interrogatories establishes that in the pre-bid period one or more Government individuals believed that the specified pressure test requirement at issue in 05-1172 was impossible or otherwise unachievable. All documents related to this are highly relevant and relate directly to Plaintiff's defective specifications/impossibility causes of action.

The Government's arguments are completely without merit and should be rejected. Plaintiff is entitled to the relief it requested at Page 19 of its Motion to Compel.

**C. The Government Did Breach Its Duty to Preserve Evidence**

The Government's arguments concerning *Renda Marine, Inc. v. United States,* 58 Fed. Cl. 57 (2003) are also erroneous.

First, the Government states that it does not dispute that a party is obligated to preserve material evidence once the party "reasonably should know that the evidence may be relevant to anticipated litigation." (Def. Resp. to Plaintiff's Mot. to Compel # 10). However, this is not the standard adopted by the court in *Renda Marine*. The quote cited by the Government at page 60 is a reference by the Court to the contentions of the parties in their supplemental briefing on this issue. It is not the court's holding. The standard adopted by the court is set forth at page 61 where the court stated:

> The court is persuaded that defendant had a legal obligation to preserve evidence related to plaintiff's claim for differing site conditions upon notice that litigation might occur. (emphasis added)

Further, the Government's suggestion that Plaintiff mischaracterized the Government's practice regarding document preservation is incorrect. Defendant asserts that Plaintiff suggested that the Government followed a routine document destruction policy that was not discontinued until July 11, 2005. Plaintiff made no such suggestion nor was it in a position to do so. Indeed, it is obvious from the Government's answers to interrogatories that it has no idea what if any documents were destroyed.[7]

More importantly, the Government suggests that Plaintiff mischaracterized the Government's answer to Interrogatory 8(c) by asserting that the Government did not issue any instruction regarding the suspension of data destruction until July 11, 2005. In that regard, the Government now states for the first time that the July 11, 2005 memorandum "may have been agency first formal written directive to preserve documents relevant to this litigation, but this was a precautionary measure taken in addition to the repeated prior oral directives conveyed since the contractor first asserted the existence of differing site conditions." (Def. Resp. to Plaintiff's Mot. to Compel # 11).

The Government's new position is at variance with its answer to this interrogatory. The interrogatory was not limited to formal or even written instructions. In fact, the interrogatory asked "whether any Government instruction regarding the suspension of said data retention/destruction policy occurred after June 2001." Thus, the interrogatory called for any directive either formal, informal written or oral. The Government's response identified only the

---

[7] In response to Interrogatory No. 11 concerning deletion/destruction of documents the Government stated that it did not maintain a record and therefore lacks knowledge of the requested information.

July 11, 2005 memorandum and a similar memorandum issued on February 1, 2006, neither of which has been produced.

**D. The Government's Assertions of Privilege Are Erroneous**

The Government's attempt to justify its claims of privilege consists of the following:

1. Stating, without discussion of any case law, including the cases cited by Plaintiff, that the documents withheld were "not routine business or contract administration communications and were prepared in anticipation of litigation." (Def. Resp. to Plaintiff's Mot. to Compel # 14);

2. Stating that the documents for which attorney client privilege was asserted contained confidential communications for the purpose of obtaining or providing legal advice to the agency. This is followed by the equally conclusory and unsupported claim that "Under the authorities cited by plaintiff, such documents are privileged." (Def. Resp. to Plaintiff's Mot. to Compel # 14).

These conclusory statements of course, do not constitute argument. The Government has completely failed to address Plaintiff's analysis, including this Court's decision in *Pacific Gas and Electric Co. v. United States,* 69 Fed. Cl. 784 (2006) and whether the documents at issue were prepared because of a public or business duty or whether the documents would have been created in essentially similar form irrespective of the litigation. [8]

Further, the conclusory statement that the documents were not prepared in the ordinary course of business omits any discussion of the board decisions cited in the motion; *B.D. Click,*

---

[8] See generally Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Order Compelling Discovery With Respect to Defendant's Answers to Interrogatories at Pages 4-9.

ASBCA Nos. 25609 et al., 83-1 BCA ¶ 16,328 and *SAE/Americon – Mid Atlantic*, GSBCA Nos. 12294 et al., 95-2 BCA ¶ 27,737.

Plaintiff submits that under *SAE* and *B.D. Click* the overwhelming majority of the documents for which the Government asserts work-product immunity are not privileged.

In that regard it appears evident that the immediate purpose these documents were created was to assist the contracting officer in his contract administration duties, not to defend against litigation and that the documents would have been created in essentially similar form irrespective of the litigation. Moreover, the Government has admitted that these documents were generated in "the process of analyzing and evaluating the referenced requests for equitable adjustments and certified claims." (Def. Resp. to Plaintiff's Mot. to Compel Answers to Interrogs. # 5).

Specifically, 24 documents for which the Government claims attorney work-product protection (Nos. 2, 18, 19, 20, 21, 22, 24, 26, 28, 29, 30, 31, 32, 33, 34, 36, 38, 39, 41, 42, 43, 44, and 47) were all generated (with the exception of Nos. 18, 19 and 20) well before Plaintiff even submitted certified claims. In fact, 18 of the documents were created by August 4, 2002 almost a year before any certified claims were submitted.[9]

Finally, Defendant has not carried its burden with respect to those documents for which it claims attorney-client privilege. Plaintiff requests that the Court make an *in camera* inspection of these documents and determine to what extent, if any, these documents are protected by the attorney-client privilege.

## III. **<u>CONCLUSION</u>**

---

[9] In like manner, the documents listed in II E of the motion are also not privileged.

For the foregoing reasons, Plaintiff's motion to compel should be granted.

Dated: September 27, 2006

Respectfully submitted,

s/ Brian Cohen

Brian Cohen
BELL BOYD & LLOYD, PLLC
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiff's Reply To Defendant's Response To Plaintiff's Motion For Order Compelling Discovery With Respect To Defendant's Responses To Plaintiff's Request For Production Of Documents In Case Nos. 04-1719C, 04-1792C and 05-114C was served by electronic transmission this 27th day of September, 2006 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

__s/ Brian Cohen_____
Brian Cohen

# INDEX TO APPENDIX

Page

Declaration of Lawrence M. Prosen ............................................................................1

Defendant's Supplemental Response to Plaintiff's Unnumbered Set of Interrogatories dated May 5, 2006............................................................................6

Engineering Regulation 1110-1-12, 21 July 2006 ..........................................................11

Engineering Regulation 1110-1-8159, 10 May 2001 .....................................................67

# Appendix