**DECLARATION OF LAWRENCE M. PROSEN**

I, Lawrence M. Prosen, am at least eighteen (18) years of age, possess first-hand personal knowledge of the facts and statements set forth herein, am competent to testify to those facts and statements, and do hereby state as follows:

1. At all times relevant to this action, I have been a member of the bar for the United States Court of Federal Claims and have acted as co-counsel/of counsel to Plaintiff A.A.B Joint Venture in the case of *A.A.B Joint Venture v. United States of America*, Case No. 1:04-CV-01719-EJD (consolidated).

2. I hold a Bachelor of Science degree in Architecture from the University of Maryland School of Architecture. I worked as a law clerk for a boutique construction litigation firm from May 1995 until my graduation from law school in May 1997. I continued in my capacity as a non-lawyer associate, and upon my admission to the bar, I continued as an associate until May 1997. From May 1997 until the present I have practiced construction litigation and government contracts law. Over these ten-plus years, I have worked on dozens of United States Government Construction Contracts for various agencies, including the USACE.

3. This affidavit is filed in response to the declaration of Brett R. Howard, which is denoted as page 23 of 39 under Docket No. 54, the United States Government's Opposition to Plaintiff's Motion to Compel as relates to the Government's document productions.

4. This affidavit is directed predominantly at ¶ 5 of Mr. Howard's declaration.

5. While the USACE did produce a number of boxes at its Israel document production of October 23-28, 2005 (the "Production"), I do not believe that 80 boxes is accurate. I have confirmed this belief by reviewing a detailed a spreadsheet (redacted for privilege), that I prepared contemporaneously with the Production. That spreadsheet indicates that the quantity of

96758/F/1

EXHIBIT 1

boxes appears closer to 60 to 70, including some bound submittal materials produced loose in a cabinet and on a neighboring table. Given the contemporaneous record, it appears that Mr. Howard's statement that the "80 boxes produced included all relevant, responsive documents within the Government's custody and control, . . ." (Howard Decl. at ¶ 5), is inaccurate.

6. Based upon my experience in prior government construction contracts cases, both involving the United States Army Corps of Engineers and other agencies, including The General Services Administration, United States Naval Facilities Command, as well as other state and local government projects, the Government's Production was significantly lacking. Based upon my and my team's review, the vast majority of the Production materials consisted of correspondence and documentation either produced by the Plaintiff, Joint Venture, or exchanged with the Joint Venture. In other words, these were materials that both parties already possessed. A detailed review of the documents produced by the USACE reveals that very few documents produced were created prior to contract award.

7. With regard to the USACE documents from Wiesbaden, it was originally represented by the Government that ten (10) boxes of material were to be produced in Wiesbaden. In fact, I had arranged travel to Wiesbaden on or around October 19, 2005 on my way to Israel for the USACE Production, to review these ten (10) boxes of Wiesbaden-based materials. Based upon my discussions with Mr. Brilliant, I understood that those ten (10) boxes included, for example, the files of contracting officer William Mills and other documents. Instead, shortly before I was to travel to Wiesbaden, I was notified by Defendant's counsel that the files would instead be produced in a consolidated format in Israel. Upon my initial meeting for the Production in Israel, Mr. Howard informed me that only approximately 1-1/2 boxes of materials were to be produced, which represented the entire Wiesbaden files. When I inquired as

to what constituted the difference between the original ten (10) boxes and the now 1-1/2 boxes, I was informed that there was some degree of duplication in the materials, that there were some oversize documents, and that there was some "confidential proprietary information" contained in various materials. When I inquired as to what confidential proprietary information there was, I was informed by Mr. Howard that in response to Plaintiff's Requests for Production seeking other bidders' submissions, those documents were contained in the Wiesbaden files and that they would not be produced due to their purportedly confidential nature. I responded by stating that I disputed the confidentiality of those materials, given that they were five years old (*i.e.*, stale). I then mentioned that I had in fact prepared a protective order and submitted it in late September 2005 to Mr. Brilliant for his review and that such an order would deal with Mr. Howard's concerns as to the proprietary nature of the other offerors' documents. I also stated that I had not yet heard back from Mr. Brilliant with any substantive comments on the proposed protective order. In fact, to the best of my recollection, as of this date I have not received any response to the proposed protective order from government counsel. As of this date the "confidential proprietary information" has not been produced by the Government.

8. During the course of the late October Production, undersigned counsel had several discussions both with the Government's lead counsel Shalom Brilliant, and Mr. Howard regarding the significant lack of documents produced by the Government related specifically to the pre-award period. In fact, with the exception of a single binder of material with some limited markups, almost no other pre-award documentation was produced. I expressed my concern repeatedly to Messrs. Brilliant and Howard regarding the almost complete lack of pre-award document production by the Agency. Mr. Brilliant responded that it was possible no such documents existed, and that it was possible that a lot of the pre-award activities were done

verbally. I disputed this claim, given my prior experience. Mr. Brilliant further stated that this might especially be the case given his belief that the Israeli government did a lot of this verbally and was not particularly good at record keeping. I again responded by stating that I was not familiar with Israeli practice but was quite familiar with USACE and other government agency construction practices both pre- and post-award, and that I would fully expect extensive files relating to the design and development of the contract documents, the underlying design, and the Division 5 Geotechnical Report upon which the RFP so heavily relied. They responded by stating that they would look again to see if any such documents existed.

9. Upon my return to the United States, I prepared a letter dated November 11, 2005 which reflected Plaintiff's concerns and objections regarding the failure of the Government to respond to various requests for production of documents. That letter is located in the Appendix at Exhibit 8 and was signed by Brian Cohen as lead counsel.

10. As of this date, for the most part, the statements and objections set forth in that letter remain, as the Government has not produced any documentation in response thereto.

11. In addition, a follow-up letter dated December 8, 2005 was sent to the Government. That letter is located at Motion Appendix Exhibit 10. Again, that letter remains accurate to the best of my knowledge and belief, as no other documentation responsive to our renewed requests and objections set forth in both that and the earlier letter has been produced by the Government.

12. To be clear, and as a caveat to my statements in paragraphs 10 and 11, above, I am aware that the government produced some emails and 206 pages of documents previously claimed as privileged. None of those materials, however, address the crux of the Joint Venture's

objections, as they were neither pre-award materials nor otherwise addressed the objections set forth in the November 11 and December 8, 2005 letters.

13. While I understand that the Government may have made efforts to produce documents readily obtainable by it, as articulated to Messrs. Brilliant and Howard during the October 2005 Production, my concerns revolve more around the fact that the Wye River Accords and pertinent USACE regulations required that the Agency maintain records which were not produced, particularly design phase documents. Given my construction litigation experience both as a law clerk/intern and attorney of over ten years, it has been my general experience that the Government maintains excellent records with regard to both contract administration, as well as design development and solicitation/contract preparation and review. However, virtually no documents were produced for the latter two categories.

I hereby affirm under the penalty of perjury that the statements made above are true and correct to my knowledge, information and belief.

Lawrence M. Prosen