**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **A.A.B JOINT VENTURE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Nos. 04-1719C, 04-1792C,** |
| | ) | **05-114C (CONSOLIDATED)** |
| **THE UNITED STATES OF AMERICA** | ) | **(Chief Judge Damich)** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S ANSWERS TO INTERROGATORIES IN CASE NOS. 04-1719C, 04-1792C AND 05-114C**

September 27, 2006

Brian Cohen
BELL BOYD & LLOYD, PLLC
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Attorney for Plaintiff

Page(s)

TABLE OF CONTENTS

Page

PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S ANSWERS TO INTERROGATORIES IN CASE NOS. 04-1719C, 04-1792C AND 05-114C ....................1

I. INTRODUCTION ....................1

II. ARGUMENT ....................1

A. The Government's General Objections Are Not Proper and in Any Event Have Been Waived ....................1

B. The Government's Undue Burden, Overbroad and Vagueness Objections Must be Rejected....................2

C. Defendant's Privilege Objections to Interrogatories 8 Through 17 And 20 In Case No. 04-1792C And Interrogatories 5 And 6 In Case No. 05-114C Are Erroneous ....................4

D. Defendant's Objections to Interrogatories 23 Through 25, 27, 33 Through 36, 38 Through 40, 47 And 50 Are Without Merit....................9

E. The Government's Answers Were Clearly Insufficient Under the Circumstances....................14

F. The Government's Assertion That It Has Had Insufficient Time To Supplement Its Responses Must Be Rejected....................16

III. CONCLUSION....................17

TABLE OF AUTHORITIES

Page(s)

CASES

*Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181 (D.D.C. 1998) .......... 3

*B.D. Click*, ASBCA Nos. 25609 et al., 83-1 BCA ¶ 16,328 .......... 5, 6

*Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589 (W.D.N.Y. 1996) .......... 2, 3

*Chubb Integrated Sys., Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52 (D.D.C. 1984) .......... 4

*Colorado ex rel. Woodard v. Schmidt-Tiago Constr. Co.*, 108 F.R.D. 731 (D. Colo. 1985) .......... 17

Energy Capital Corp. v. United States, 45 Fed. Cl. 481 (2000) .......... 7, 8, 10

*ERA Franchise Sys., Inc. v. N. Ins. Co.*, 183 F.R.D. 276 (Kan. 1998) .......... 9

*Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666 (Kan. 2003) .......... 11

*Herdlein Techs. Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104 (W.D.N.C. 1993) .......... 2

*Ingalls Shipbuilding Div. Litton Sys, Inc.*, ASBCA No. 17717, 73-2 BCA ¶ 10,205 at 48,103-04 .......... 9

*Oleson v. Kmart Corp.*, 175 F.R.D. 560 (D. Kan. 1997) .......... 3

*Pac. Gas and Elec. Co. v. United States*, 69 Fed. Cl. 323 (2005) .......... 3, 4, 14

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995) .......... 8

*SAE/AMERICON – Mid Atlantic, Inc. v. General Services Administration*, GSBCA Nos. 12294 et al., 95-2 BCA ¶ 27,737 at 138, 274 .......... 5

*SEC v. Elfindepan*, 206 F.R.D. 574 (M.D.N.C. 2002) .......... 17

*Starlight Int'l., Inc. v. Herlihy*, 186 F.R.D. 626, (Kan. 1999) .......... 9

*Swarthmore Radiation Oncology, Inc. v. Lapes*, 155 F.R.D. 90 (E.D. Pa 1994) .......... 8

*United Oil Co. v. Parts Assoc., Inc.*, 227 F.R.D. 404 (D. Md. 2005) .......... 3

*Walt Disney Co. v. DeFabiis*, 168 F.R.D 281, 284 (C. D. Cal. 1996) .......... 17

Page(s)

RULES

RCFC 26(b)(3). .......... 7

RCFC 33 .......... 12, 14, 16

RCFC 33(d).......... 12, 14, 15

TREATISES

6 *Moore's Federal Practice* § 33.174[1] .......... 2

6 *Moore's Federal Practice* §33.101, 33-67 .......... 11

6 *Moore's Federal Practice* §33.173(3)(a).......... 3

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil,* § 2178, 330 ( 2d 1994). .......... 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

A.A.B JOINT VENTURE

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendants.

Case Nos. 04-1719C, 04-1792C, 05-114C (CONSOLIDATED) (Chief Judge Damich)

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY WITH RESPECT TO DEFENDANT'S ANSWERS TO INTERROGATORIES IN CASE NOS. 04-1719C, 04-1792C AND 05-114C**

## I. INTRODUCTION

The Government's response is erroneous, based upon an incorrect understanding of applicable law and is nothing more than a continuing effort to avoid its obligations under the discovery rules. Each argument is discussed below.

## II. ARGUMENT

### A. The Government's General Objections Are Not Proper and in Any Event Have Been Waived

The Government's assertions regarding the number of interrogatories should be rejected. The Government itself filed two sets of interrogatories in Case No. 04-1719, which combined included 43 numbered interrogatories, many of which included numerous discrete subparts. Indeed, a significant percentage of Defendant's interrogatories were "lifted," with necessary

changes, from Plaintiff's interrogatories, including many of the same interrogatories that Defendant now complains of.[1]

It has also been held that a responding party objecting to the number of interrogatories must object to the Court before responding or the objection is waived. *Herdlein Techs. Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104 (W.D.N.C. 1993) (party served with interrogatories in excess of number permitted by court's pretrial order, who answered some interrogatories without first moving for protective order, could not use excessive number as objection to motion to compel answers to remainder of interrogatories) 6 *Moore's Federal Practice* § 33.174[1] (Mathew Bender 3d ed.).

Accordingly, the Government clearly waived its general objection that the number of interrogatories was excessive by failing to bring the matter to the Court's attention by filing answers.

**B. The Government's Undue Burden, Overbroad and Vagueness Objections Must be Rejected**

The Government states that on Page 8 of its Response that interrogatories 23 through 25, 27, 33 through 36, 38 through 40, 47 and 50 are unduly burdensome, vague and/or overbroad. These objections are insufficient for the following reasons.

It is well established that objections to interrogatories must be specific and supported by detailed explanation of why the interrogatories are objectionable. *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996). In other words, to successfully object to an

1 See for example, Defendant's interrogatories, 32 through 42 which asked Plaintiff to "Describe in detail any review or analysis performed by or on behalf of A.A.B or any of its subcontractors in connection with the preparation of the claim." Surely the Government would not have propounded these interrogatories if it believed them to be improper. Plaintiff also notes that it provided full and detailed responses to these interrogatories on December 19, 2005.

interrogatory a party cannot simply state that the interrogatory is overbroad, burdensome, oppressive and irrelevant. Rather, the responding party must specifically demonstrate how each interrogatory was overbroad, burdensome, oppressive or irrelevant.[2]

Moreover, the responding party can only sustain the burden of showing that a discovery request is overbroad and burdensome by setting forth facts that demonstrate the extent and nature of the burden by submitting affidavits or supplying other evidence in support of its objections. 6 *Moore's Federal Practice* §33.173(3)(a) (Matthew Bender 3d ed.); *Pac. Gas and Elec. Co. v. United States*, 69 Fed. Cl. 323, 325-26 (2005) (to prevail on objection of irrelevance, overbroad or unduly burdensome responding party must submit affidavits or other evidence revealing the nature of the burden). *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997); *United Oil Co. v. Parts Assoc., Inc.*, 227 F.R.D. 404, 413 (D. Md. 2005); *Chubb Integrated Sys., Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 60 (D.D.C. 1984) (burden on responding party may be met with affidavits).

Accordingly, the Government's objections are unavailing. First, the government's objections are not specific and do not provide the required detailed explanation. Also, even if such an explanation had been provided the Government failed to submit an affidavit or other evidence.

---

[2] The fact that answering the interrogatories will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object. *See Burns*, 164 F.R.D. 593. *Accord Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181, 190-91 (D.D.C. 1998) (general boiler plate objections are ineffective).

### C. Defendant's Privilege Objections to Interrogatories 8 Through 17 And 20 In Case No. 04-1792C And Interrogatories 5 And 6 In Case No. 05-114C Are Erroneous

Defendant's privilege arguments completely ignore this Court's holding in *Pac. Gas and Elec. Co v. United States*. 69 Fed. Cl. 784 (2006). In that case the court made it clear that whether the "primary motivating purpose" or the "because of" approach is utilized, any documents prepared in the ordinary course of business, generated "because of a public or business duty" or that would have been created in essentially similar form irrespective of the litigation, are not protected *Id.* at 798, 808.

The Government's response omits any discussion of these significant issues, namely: whether the documents for which it seeks privilege and refuses to answer the interrogatories were prepared (1) in the ordinary course of business; (2) because of a public or business duty; or (3) whether the documents would have been created in essentially similar form irrespective of the litigation. On this basis alone, the Government has failed to meet its burden of establishing work-product immunity.

Defendant completely ignores its obligation to address these three key factors in establishing work-product privilege and instead argues that the analysis and evaluation of Plaintiff's REAs and certified claims is privileged by asserting that the analyses were performed under the guidance of attorneys. However, Defendant has cited no legal authority in support of this position.

In fact, the pertinent case law is to the contrary. In *SAE/AMERICON – Mid Atlantic, Inc. v. General Services Administration,* GSBCA Nos. 12294 et al., 95-2 BCA ¶ 27,737 at 138, 274 the Board noted that a review of the documents for which the Government claimed privilege did not create the impression that the initial filing of the claims automatically triggered an

expectation on the part of the Government that litigation would ensue. It observed that as pointed out in *B.D. Click*, ASBCA Nos. 25609 et al., 83-1 BCA ¶ 16,328, the expression of disagreement with claims submitted by a contractor does not necessarily trigger application of the work-product rule, and stated "Even if we accepted respondent's argument, however, as a practical matter it seems clear that many of the withheld documents were generated in response to the contracting officer's request for input to assist in formulating decisions on the various claims submitted by SAE. The immediate purpose of the materials so created was to assist the contracting officer in his contract administration duties, not to defend against litigation. These do not fall into the category of documents that would not have been created "but for" the probability or pendency of litigation."

In discussing the applicable case law the board observed:

> Notably, not every document generated by the parties once litigation becomes likely is protected by the work product doctrine. The notes to FRCP 26(b)(3), *citing Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45 (4th Cir. 1963), recognize that the privilege does not extend to documents and materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes. *See also B.D. Click Co.*, ASBCA 25609, et al., 83-1 BCA P 16,328, at 81,176-77. Rather, the work product doctrine applies to material generated for use in litigation – i.e., <u>to documents that would not have been created but for the pendency or imminence of litigation</u>. *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987). (emphasis added).
>
> The Armed Services Board, in *B.D. Click*, recognized that it is not always clear when materials evaluating a claim for an equitable adjustment become entitled to the protection of the work product privilege:
>
> We do not view the contracting officer's final decision as the automatic line of demarcation between routine contract administration and preparation for litigation. Obviously, there may be instances where there is considerable preparation for litigation before the contracting officer's final decision has been issued.

> However, as we stated in *Ingalls [Shipbuilding Division, Litton Systems, Inc.***,** ASBCA 17717, 73-2 BCA P 10,205], the mere fact that a request for equitable adjustment, a term synonymous with a claim, has been filed and is being analyzed does not bring the matter in close enough proximity to litigation to trigger the automatic application of the work product rule. Even where there may be initial disagreement with the claim by the opposing party litigation may not be anticipated to the extent necessary to bring the rule into play. We are again faced with a question which does not lend itself to hard rules but requires a case by case examination.
>
> 83-1 BCA at 81,177. Reading *B.D. Click* together with *Kelly* and *Goosman*, documents necessitated by contract administration requirements are not generally privileged simply by reason of the pendency or prospect of litigation. (emphasis added). *Id*. at 138, 273

*Accord Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000) (if the primary motivating purpose behind the creation of a document is not to assist in pending or impending litigation, then a finding that the document enjoys work-product immunity is not mandated).

Thus, the disputed interrogatories seek proper information, and the documents to which defendant refers are not privileged. By the Government's own admission the information and documents for which privilege is claimed were generated in "the process of analyzing and evaluating the referenced requests for equitable adjustments and certified claims." (Def. Resp. to Plaintiff's Mot. to Compel # 5).

As such, it is obvious that the immediate purpose the documents were created was to assist the contracting officer in his contract administration duties, not to defend against litigation. Such documents do not fall into the category of documents that would not have been created "but for" the pendency or imminence of litigation. That is so even if the party is aware that the document may also be useful in the event of litigation. *Id.* Indeed, these documents were

presumably prepared and the analyses and evaluations undertaken, both in the ordinary course of business and pursuant to the Government's public duty, imposed by the Contract Disputes Act, to review and issue contracting officer's decisions on the subject claims.

Further, the fact that the factual and technical analyses were prepared "under the guidance of attorneys" is irrelevant. Responding to REAs and certified claims is a normal contract administration function, i.e. ordinary course of business, and the information and documents generated therefrom are not rendered non-discoverable by the involvement of attorneys. *See Energy Capital Corp.*, *supra*, at 485 (noting that if a party or its attorney prepares a document in the ordinary course of business it will not be protected).[3]

Moreover, even if the work-product doctrine did apply the doctrine generally does not protect from disclosure relevant facts known to or available to the person from whom disclosure is sought even though such facts may be contained in a document that is itself protected by the doctrine. *Swarthmore Radiation Oncology, Inc. v. Lapes*, 155 F.R.D. 90, 92 (E.D. Pa 1994) (facts acquired through investigative efforts, as opposed to the documents containing those facts are not protected by the doctrine); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Should any given document contain facts and opinion work-product, appropriate redactions can be made so that full disclosure of the facts may be made without destroying the protection accorded to opinion work- product. In that regard Plaintiff requests that, if necessary, the Court consider *in camera* examination of the documents.

[3] Plaintiff does not seek and concedes that it would not be entitled to disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation. RCFC 26(b)(3). Such opinion work-product is viewed as enjoying nearly absolute immunity, resulting in disclosure only in very rare and extraordinary circumstances.

Defendant's argument that to describe in detail any review, analysis or evaluation is to disclose the content of any document in which the review, analysis or evaluation is contained and that the interrogatories do not request the underlying factual information is both incorrect and misses the mark. First, the interrogatories do request factual information including the dates of each review, analysis or evaluation; the identity of any documents, and the identify of all persons with knowledge of such review, analysis or evaluation. Further, Plaintiff submits that it is entitled to all the details concerning the review, analysis or evaluation with the exception of opinion work-product.[4]

Finally, it has been held that unless an interrogatory specifically asks for the content of a document protectable as work-product, it is inappropriate to raise an objection of work-product against an interrogatory which includes no request for production of documents[5]. *ERA Franchise Sys., Inc. v. N. Ins. Co.*, 183 F.R.D. 276, 280 (Kan. 1998). Also, unless an interrogatory specifically inquires into an attorney's mental impressions, conclusions, opinions or legal theories it is inappropriate to raise an objection of work-product. *Starlight Int'l., Inc. v. Herlihy*, 186 F.R.D. 626, 645 (Kan. 1999). The interrogatories at issue do not request production of documents, do not specifically ask for the content of a document protected by the work-product doctrine, and do not seek opinion work-product. Thus, any objection to the interrogatories based upon work-product is invalid.

---

4 *Ingalls Shipbuilding Div. Litton Sys, Inc.*, ASBCA No. 17717, 73-2 BCA ¶ 10,205 at 48,103-04 (188 page Technical Advisory Report evaluating appellant's claims which was the work-product of technicians, auditors and counsel was discoverable except for a legal memo prepared by counsel).

5 For reasons noted herein Plaintiff also asserts that Defendant's claims of privilege with respect to the documents are meritless.

Accordingly, for the reasons set forth above, the documents referred to by Defendant are not protected by the work-product immunity; work-product is an invalid objection to the interrogatories, and Plaintiff is entitled to full and complete responses to the interrogatories at issue with the exclusion of opinion work-product, which can be excised by the Court based upon *in camera* examination of the documents.[6]

**D. Defendant's Objections to Interrogatories 23 Through 25, 27, 33 Through 36, 38 Through 40, 47 And 50 Are Without Merit**

Defendant's objection that these interrogatories are "unduly burdensome, vague and/or overbroad in various respects" was addressed infra in Section B. Plaintiff discusses the Government's specific objections to each interrogatory below:

1. Interrogatory 23. Defendant objects that Plaintiff's March 2, 2004 answers "was a 46 page document containing answers to 62 separate questions, accompanied by various attachments." (Def. Resp. to Plaintiff's Mot. to Compel # 9). There is no basis for Defendant's untimely objection. Plaintiff provided a 46 page document to the Government in response to the Government's request for answers to 62 questions pertaining to the differing site conditions claim. The Government can hardly be heard to object to the fact that Plaintiff provided detailed responses to the inordinate number of questions it asked.

2. Interrogatory 24. This interrogatory seeks information which is obviously material to the differing site conditions claim. The interrogatory seeks information pertaining to pre-award exploration, testing, analysis and/or evaluations performed of the subsurface

6 The attorney client privilege is also inapplicable for similar reasons. Information does not become privileged simply because it came from counsel and when documents or conversations are created pursuant to business matters they must be disclosed. Further, when an attorney conveys to his client facts acquired from other persons or sources those facts are not privileged. *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000).

conditions at the project site. This information is clearly relevant to the manner in which the Geotechnical Report was prepared, which in turn relates directly to the subsurface conditions which should have been reasonably anticipated based upon that report.

Defendant objects on two grounds: First, the interrogatory applies to areas outside the scope of Plaintiff's work, and second, that the interrogatory pertains to a period that "has no particular beginning point."

First, the interrogatory does refer to areas "not in the scope of A.A.B's work." However, the information is only sought with respect to subsurface conditions "at the project." The definitions section defines the word "project" to mean "the Nachshonim Military Storage Base being constructed by A.A.B. near Elad, Israel." Therefore, it is obvious that the interrogatory applies only to the actual limits of the project and is not unduly burdensome.

Second, Defendant was obligated to give a reasonable interpretation to the phrase "at any time prior to award of the contract." Rather than allow the Government to refuse to answer this interrogatory, which seeks highly relevant information, Plaintiff asks that the Court limit the temporal scope to the period from January 1, 1999 to June 5, 2001. *See Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 672 (Kan. 2003) ("The Court agrees that plaintiffs' failure to limit the temporal scope of the interrogatories makes them overly broad on their face. But rather than allowing Defendant to not answer the interrogatories, the Court will instead limit the temporal scope of Interrogatory Nos. 2 and 3 to three years . . .").

3. Interrogatory No. 27. This interrogatory seeks highly material information. Specifically, the interrogatory requires Defendant to describe in detail any review, testing, analysis or evaluation of the subsurface conditions actually encountered during performance of the contract. Specific information requested includes the dates of such review, testing, analysis

or evaluation; the results; the identity of any documents; and the identity of any persons with knowledge of the review, testing, analysis or evaluation.

The project site is a limited and well defined area. The differing site conditions claims extend over virtually the entire project site. Therefore the attempt by Defendant to distinguish the "claims" from "any and all subsurface conditions encountered during performance of the contract" is disingenuous at best. Defendant was required to provide the requested information, subject to any possible objection as to any subsurface conditions encountered which it believed were not reasonably calculated to lead to the discovery of admissible evidence. Also, Defendant's objections to the terms "analysis or evaluation" and "testing, analysis or evaluation" are both untimely and strained. Defendant has itself used this terminology and presumably would not have done so had it considered those terms to be objectionable. Finally, a sufficient answer generally entails a conscientious and good faith effort to comprehend the question and to answer it explicitly. 6 *Moore's Federal Practice* §33.101, 33-67 (Matthew Bender 3d ed.). The Government's after the fact hair splitting is nothing more than an attempt to evade its responsibility to provide responsive, complete and non-evasive answers. *Id.* at 33-66.

4. Interrogatory 33[7]. This interrogatory seeks factual information, including dates of any review, analysis or evaluation, results of the review, and identification of documents and individuals pertaining to any review, analysis or evaluation of Plaintiff's subgrade replacement operations. Plaintiff has asserted a claim for $412,239 that relates specifically to subgrade replacement at most segments of the project. Clearly, any review, analysis or evaluation of Plaintiff's subgrade replacement operations is relevant to the claim. To the extent Defendant

[7] This discussion is subject to the Court's ruling on the pending Motion to Dismiss.

believed that information required to be supplied in its answer was beyond the permissible scope of discovery it could have objected. Instead, Defendant provided no answer.

5. Interrogatories 34 and 35. These interrogatories seek the same information as set forth in Interrogatory 33 pertaining to Plaintiff's sorting, screening and/or crushing operations to produce fill material (34) and its excess material disposal operations at the project (35). Both of these interrogatories relate directly to Plaintiff's claim for excess material disposal; a $6.5 million claim, and Rolider's claim for additional earthworks costs, a $4.0 million claim, and should have been answered. As with Interrogatory 33 Defendant's failure to provide any information, when clearly relevant information is sought is improper. Defendant compounds the insufficiency of its responses by its erroneous invocation of RCFC 33(d).

6. Interrogatory 36. This interrogatory seeks factual information including dates, results, and identification of documents and individuals with knowledge of the review, analysis, evaluation and/or any estimate of the cost of removal and/or disposal of the excess excavated material from the project. The information sought is clearly discoverable and Plaintiff is entitled to know the manner in which the Government itself estimated the cost of and/or disposal of excess excavated material from the project. This information is material and goes directly to the reasonableness of the assumptions that Plaintiff made in bidding and estimating the cost of the removal and disposal of excess excavated material.

7. Interrogatories 38, 39, 40, 47 and 50. These interrogatories seek discoverable information concerning communications among or between various pertinent entities concerning the claims by A.A.B (38), Rolider (39), Barashi (40)[8], the requirements for disposal, sale or use of excess material (47), and agreements between Defendant and various entities (50). Plaintiff

8 As Barashi's claim is no longer before the Court, Plaintiff withdraws Interrogatory 40.

recognizes that neither side can be expected to recall every informal, oral conversation concerning these topics. However, as with any interrogatory defendant was required to give a reasonable interpretation and make a conscientious and good faith effort to answer it explicitly. Rather than do this, Defendant has provided no information. Further, as noted above, the vague overbroad and unduly burdensome objection interposed is insufficient since the Government had the burden of setting forth facts that demonstrate the extent and nature of the burden by answering in affidavits or supplying other evidence in support of its objections, which it failed to do. *Pac. Gas and Elec. Co. v. United States*, 69 Fed. Cl. 323, 325-26 (2005). Finally, the Government asked a virtually identical set of interrogatories, utilizing the same language. *See* Defendant's first set of Interrogatories No. 22 (equivalent to Plaintiff's Interrogatory No. 38); No. 23 (equivalent to Plaintiff's Interrogatory 39); No. 24 (equivalent to Plaintiff's Interrogatory 40); and No. 29 (equivalent to Plaintiff's Interrogatory 47). While noting objections as to vagueness, over breadth and undue burden, Plaintiff reasonably interpreted these interrogatories and provided adequate responses.

8. Interrogatory 42. This interrogatory seeks material information pertaining to the differing site conditions claim. The interrogatory seeks factual information including dates, results, and identification of documents and persons with knowledge of any report, analysis or evaluation which "compared or contrasted the subsurface materials expected to be encountered at the project with the subsurface materials actually encountered at the project."

It is difficult to imagine a more pertinent interrogatory since the comparison between the actually encountered subsurface materials and the subsurface materials expected to be encountered is at the core of the dispute. Defendant's objections warrant little discussion. The interrogatory is clearly not overbroad and unduly burdensome and as noted many times

previously Defendant has fallen far short of meeting its burden with respect to such an objection. Second, any objection that the phrase "expected to be encountered" is vague and ambiguous is both untimely and disingenuous. Finally, it is fallacious to assert that the interrogatory "assumes that there was a difference between the subsurface materials expected to be encountered at the project with the subsurface materials actually encountered at the project." The interrogatory merely seeks information concerning any report, analysis or evaluation which "compared or contrasted" the actual versus expected materials. There is nothing in the language from which it can be credibly argued that any assumption is made with respect to whether or not there was a difference between the actual and expected conditions.

**E. The Government's Answers Were Clearly Insufficient Under the Circumstances**

The Government argues at Pages 13-15 that though it agrees as a general proposition that RCFC 33(d) requires more than a general reference to documents it was not required to undergo "more of a burden in pointing out the documents containing the requested information then the requesting party would have to undergo to find those documents."

The Government's point is not well taken. It is either disingenuous or based on a complete misunderstanding of RCFC 33 and the case law interpreting that rule.

RCFC 33(d) has nothing to do with the burden "in pointing out the documents containing the requested information" as argued by the Government. Rather, the rule is correctly invoked where the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served. RCFC 33(d).

In other words, the rule is not premised upon whether Plaintiff could find the applicable documents as readily as the Government.[9] Rather, the rule can be invoked under certain circumstances, where the responding party has specified the records from which the answer may be derived or ascertained, if the burden of deriving or ascertaining the answer would be substantially the same for both parties; assuming as a precondition that the Government specifies the records from which the answer may be derived or ascertained.

The Government apparently believes that it was not obligated to specify the records from which the answers may be derived of ascertained. But that is clearly at odds with the entire body of case law interpreting this rule as discussed below.

There are a number of prerequisites for use of the RCFC 33(d) option. First, the responding party must affirm that the information sought by the interrogatory in fact is available in the specified records. 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil*, § 2178, 330 ( 2d 1994). Second, the responding party must be able to demonstrate that answering the interrogatory in the traditional manner would impose a burden on it. *Id.* at 332. Third, the burden of compiling the information must be substantially the same for the inquiring and the responding parties. *Id.* at 334. Fourth, the responding party must specify which records contain the information sought by the interrogatory. *Id.* at 336.

With regard to the fourth prerequisite, some courts have held that the party from whom discovery is sought may have to list exact documents or even indicate the page or paragraphs that are responsive to the interrogatory. *See, e.g., Colorado ex rel. Woodard v. Schmidt-Tiago*

---

9 Even thought that is not the relevant inquiry Plaintiff does not concede that it could find the applicable documents as readily as the Government.

*Constr. Co.,* 108 F.R.D. 731, 735 (D. Colo. 1985) and other cases cited in Plaintiff's Motion to Compel. What is clear beyond question is that a simple offer to produce unspecified responsive materials is not a sufficient designation to satisfy the rule. *Accord Walt Disney Co. v. DeFabiis*, 168 F.R.D 281, 284 (C. D. Cal. 1996) (responding party has a duty to specify, by category and location, the records from which answers to interrogatories can be derived); *SEC v. Elfindepan*, 206 F.R.D. 574, 576 (M.D.N.C. 2002) (producing party must have adequately and precisely specified for each interrogatory, the actual documents where information will be found; document dumps or vague references to documents do not suffice).

In short, the Government's argument simply does not wash. It had two choices: either answer the interrogatories fully completely and responsively without reference to the documents, or specify in detail the precise documents from which the answers could be derived with equal burden by either Plaintiff or Defendant. Defendant's interpretation of RCFC 33(d) is not supported by the case law and would, if adopted, completely eviscerate the rule. That is, if the Government's position was adopted it would simply be able to avoid answering interrogatories by stating that if either party could find the documents in the same amount of time it had no obligation to either specify the documents or answer the interrogatories. Such a construction must fail.

**F. The Government's Assertion That It Has Had Insufficient Time To Supplement Its Responses Must Be Rejected**

The Government's argument that it has not refused to supplement its responses, but has had insufficient time within which to do so, warrants little discussion. As of December 14, 2005 Defendant was in the process of preparing supplemental interrogatory responses, presumably to meet the original scheduling order under which fact discovery was to be completed by February 28, 2006. It has now been more than nine months and the supplemental responses have not been

provided. Had the Government provided adequate answers to the interrogatories in the first place there would have been no need to supplement. The fact that there has been significant other activity in these cases is irrelevant. Nine months is far too long. Pursuant to the Court's revised scheduling order, fact discovery is to be completed by December 15, 2006. The Government's failure to supplement for nine months, particularly in light of the fact that there are less than three months until the completion of fact discovery, is inexcusable and should not be countenanced by the Court.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel should be granted.

Dated: September 27, 2006

Respectfully submitted,

s/ Brian Cohen

Brian Cohen
BELL BOYD & LLOYD, PLLC
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Plaintiff's Reply to Defendant's Response to Plaintiff's Motion For Order Compelling Discovery With Respect To Defendant's Answers To Interrogatories In Case Nos. 04-1719C, 04-1792C and 05-114C was served by electronic transmission this 27th day of September, 2006 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

s/ Brian Cohen
Brian Cohen