IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME TO COMPLETE OUTSTANDING DISCOVERY AND PREVIOUSLY NOTICED DEPOSITIONS

INTRODUCTION

In the guise of a motion for an enlargement of time within which to complete discovery, plaintiff requests two different things, one of which is ambiguous. First, plaintiff requests a unilateral enlargement of time until January 15, 2007, within which to take certain depositions. Second, with respect to document production by the Government, plaintiff requests not an enlargement of time, but the imposition of a deadline. In the second paragraph of its motion, plaintiff requests that the deadline be "fifteen (15) days from the date of [t]he Court's ruling on A.A.B's pending Motion To Compel, if granted," but in the last paragraph of the motion (the conclusion), plaintiff requests that the deadline be January 15, 2007. Plaintiff's motion should be denied. A unilateral enlargement of time to take the depositions in question is not warranted under the circumstances, and the imposition of a deadline for the production of the referenced documents is, at best, premature.

I. Depositions

Plaintiff's failure to complete the depositions it wished to take was the result of plaintiff's own choices, not any act or omission by the Government. Plaintiff insisted upon a stricter discovery schedule than was realistic in light of the nature and quantity of the discovery it

wished to take. From the establishment of the initial discovery schedules in these consolidated cases through their subsequent revisions, the Government consistently took the position that it would be difficult to complete discovery within these schedules. Given these schedules, the Government attempted to tailor its discovery to the time available. It is only for this reason that, as plaintiff notes, "there are no outstanding Government discovery requests." Plaintiff's Motion 4. Plaintiff, however, pursued expansive discovery without regard to the time available, and attempted, at the eleventh hour, to pack an unrealistic number of depositions into the remaining time.

As reflected in plaintiff's motion, plaintiff's initial effort to schedule the depositions in question began in or around October 2006, two months before the close of discovery, and consisted of several conversations concerning the scheduling of depositions of more than a dozen individuals in various locations in the United States and elsewhere. Plaintiff could not reasonably have expected a quick resolution of this complex logistics involved, in view of the fact that the parties were already scheduled to conduct depositions in Tel Aviv, Israel, in late October 2006. (With the exception of two depositions taken by the Government on October 24, 2006, all of these depositions were taken by plaintiff.) Then, on November 1, 2006, when Government counsel was still in transit, plaintiff served the Government with the deposition notice appearing at Exhibit B to plaintiff's motion. The notice listed 13 current and former employees of the agency involved in this litigation, the United States Army Corps of Engineers ("USACE"). According to the notice, all 13 were to be deposed in Washington, D.C., on December 4, 2006. By this time, however, counsel were already scheduled to conduct further depositions in Tel Aviv, Israel, in late November through the first few days of December 2006. Only two of these individuals were located in or near Washington, D.C., however, and two were

located overseas. (The latter two individuals – Ezra Abraham and William Thievon – were deposed, respectively, in Israel on December 4 and in Germany on December 6, 2006.) Under these circumstances, plaintiff must have known, when the notice was served, that it would be impossible to proceed with these depositions as noticed, and that the possibility of scheduling most of these 13 individuals for depositions prior to the close of discovery was slim at best.

Further, one of the individuals listed in the notice was retired from Federal service, several others were no longer employed by USACE, and, of those still employed by USACE, few occupied positions that would justify requiring their appearance pursuant to a mere notice without a subpoena.

> Except where the employee has been designated by the corporation under Rule 30(b)(6), an employee is treated in the same way as any other witness. His or her presence must be obtained by subpoena rather than by notice, sanctions cannot be imposed against the corporation if he or she fails to appear, and the deposition is not considered to be that of the corporation and is usable only under the same circumstances as that of any other nonparty witness. It is different if the deponent is an officer, director, or managing agent of a corporation or other organization that is a party to the suit.

8 C. Wright & A. Miller, Federal Practice and Procedure § 2103 (2006) (footnote omitted). None of the witnesses listed in the notice was served with a subpoena.[1] Nevertheless, six of these witnesses were deposed during the first two weeks of December 2006. That plaintiff did not manage to take the remainder of the desired depositions was not the result not of any fault on the Government's part, but of the fact that plaintiff started too late to do too much within a discovery period that was, by plaintiff's choice, too short.

---

[1] The contracting officer is no longer employed by USACE. The contracting officer's representative, who was far more deeply involved in the day-to-day administration of the contract in question, was deposed.

II. Document Production

Plaintiff's motion contains a litany of complaints concerning document production that is largely a reiteration of plaintiff's pending motion to compel. If and to the extent that the Court grants that motion, it may be appropriate, in the context of such a ruling, to set a time for the Government to produce whatever it may be required to produce, or to permit such additional discovery as might be warranted by the nature of the ruling. To impose such a time limit now would be premature.

To the extent that the Government, in its continuing effort to meet its discovery obligations, locates responsive documents that it previously did not know existed or otherwise could not locate, the Government will produce these documents (after appropriate review for privileged material) without awaiting a ruling on the motion to compel. To impose the time limit requested by plaintiff with respect to these documents would also be premature. The same is true of documents that are the subject of the pending motion to compel but that we have undertaken to produce in order to eliminate or narrow the dispute reflected in that motion. Plaintiff notes an October 19, 2006 letter from Government counsel (Exhibit A to plaintiff's present motion) containing various undertakings in this regard, and plaintiff complains that these undertakings have not yet been fulfilled. However, we noted in that letter:

> Our expression of willingness to take these steps should not be construed as a waiver of any privilege or as a concession concerning any of the arguments made by the parties in connection with the pending motions to compel. The purpose of taking these steps would be to avoid unnecessary litigation concerning these matters. We do not have the resources, however, to engage in both cooperation and contention over the same matters at the same time. Therefore, in return for our agreeing to take these steps, we would request that plaintiff either withdraw its motions to compel without prejudice, or, at least, to request that the Court suspend consideration or the motions pending our efforts to resolve this matter.

Plaintiff did not agree to this.

Nevertheless, the Government unilaterally took some of the steps noted in the letter, including restoring – at substantial expense to the Government – backup tapes referenced in the letter. The directory of documents stored on these tapes is itself more than 2,000 pages long. In mid-November 2006, we provided this directory to plaintiff and suggested that plaintiff propose keywords or search terms to enable us to identify the documents plaintiff considered relevant. See attached e-mail messages. Despite the urgency claimed by plaintiff, plaintiff first responded with a list of proposed search terms by letter of December 20, 2006. Additionally, with respect to certain boxes of documents located in Wiesbaden, Germany, which were among the documents sought in plaintiff's motion to compel, Government counsel stated in the October 19, 2006 letter: "[A]s I stated in my e-mail message of October 13, 2006, we are prepared to make the remainder of the 'ten boxes' available for inspection and copying in Wiesbaden, except for proposals from other bidders." Thereafter, plaintiff noticed the deposition of William Thievon to be conducted in Wiesbaden, and could have inspected these documents on the same trip. However, plaintiff did not ask to do so; in fact, some time after the deposition was noticed, its location was changed to Frankfurt, Germany, upon the initiative of plaintiff's counsel. Here again, the urgency of the production in question appears far greater in the rhetoric of plaintiff's motions than in plaintiff's actual practice.

Finally, from the date of that letter through December 15, 2006, Government counsel and agency counsel were fully occupied with the continuing discovery in this litigation, including depositions which, as noted above, occupied most of the period from late October through December 15, 2006. Since December 15, 2006, various Government personnel involved in this

matter – including Government counsel – have been on annual leave. Plaintiff's discontent with the pace of the Government's production is not the result of any undue delay or lack of diligence upon the Government's part; it is the result of unrealistic demands and expectations upon plaintiff's part.

CONCLUSION

For the foregoing reasons, plaintiff's ' motion for an enlargement of time to complete outstanding discovery and previously noticed depositions should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/David M. Cohen**
DAVID M. COHEN
Director

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

Attorneys for Defendant

January 3, 2007

## Brilliant, Shalom (CIV)

**From:** Brilliant, Shalom (CIV)
**Sent:** Wednesday, November 15, 2006 5:57 PM
**To:** 'BCohen@bellboyd.com'
**Cc:** 'Brett.R.Howard@nau02.usace.army.mil'
**Subject:** RE: discovery
**Attachments:** NDC41223_uniquefiles_part1.doc

Brian,

Following up on my 11/9/06 e-mail (below) and our brief conversation yesterday on the way out of the courthouse, here's an update on our additional document production.

1. Attached is the first directory received from the electronic data restoration, in MS Word. As you can see, it is 1400 pages long. Restoration of the second set of tapes is near completion, and these will be de-duped against first set of restored documents to create a single list of restored documents. The directory reflecting the combined results is expected to be roughly 2500 pages. We do not intend, and it would serve no one's interests, to produce every document on the attached list or the combined list. (It's my understanding that, to produce the documents themselves, there's a separate step necessary: repopulating the individual documents. The more documents are repopulated, the longer the process takes.) It would be difficult, if not impossible, to accurately identify the relevant and responsive documents from the titles in the list, but these titles are informative enough to indicate that most of the documents are entirely irrelevant. If you believe you can identify the relevant and responsive documents from the titles in the list, please let me know. But, the best approach might be to use keywords. If you can give us 10-20 keywords (e.g., Nachshonim, DSB, TCN, Geotech, Panel, etc.), we will restore the documents containing those keywords. We'll also need to do a privilege review of the restored documents. If you give us an order of priority, we could do rolling production that way.

2. Concerning the documents we withheld as privileged: Brett Howard is out of the office, and won't be able to complete his review of the documents until he returns on Monday, 11/20. By that day or the next, we expect to identify which of the withheld documents we are prepared to produce. If this includes any significant number of documents that I don't presently have copies of, it will take another few days to actually provide you with copies. Because I will be out of the office the Friday after Thanksgiving and will be in Tel Aviv and Wiesbaden for the next round of depositions from 11/27 through 12/6, it's unlikely that I'll be able to provide you with copies before I return, but I should be able to provide copies to Phil when we're in Wiesbaden. Let me know which way you'd rather receive them.

3. Any supplementation of interrogatory answers will require substantial work time from some of the same people involved in the above-discussed document effort - especially Brett Howard. We want to do all of this as quickly as possible, but it can't all be done at the same time. At present, we're giving priority to the documents. It's possible that the document effort will also be a source of information pertinent to the interrogatories, whereas anything we do now on the interrogatories won't help the document effort. If you think otherwise, let me know.

Shalom

---

**From:** Brilliant, Shalom (CIV)
**Sent:** Thursday, November 09, 2006 6:17 PM
**To:** 'BCohen@bellboyd.com'
**Cc:** 'Brett.R.Howard@nau02.usace.army.mil'

**Subject:** discovery

Brian,

I had hoped to respond to your 10/30/06 letter sooner, but have only barely caught up with the backlog that accumulated while I was in Tel Aviv, and didn't manage to get my letter out.

As I mentioned in a telephone conversation, the understanding expressed in your letter of the steps we propose to take is generally, but not entirely, correct. In particular, we won't be able to do many of these things quite as quickly as indicated in your letter. The letter I hoped to send you would provide more specifics, but, since tomorrow is a federal holiday, the best I can do is Monday. I'm sending you this e-mail as a sort of preliminary response, because your letter indicates an expecation of receiving certain things by 11/10 - i.e., tomorrow. We won't be able to meet that expectation, but I didn't want that date to pass without any response at all. More to follow next week.

Shalom

**Brilliant, Shalom (CIV)**

**From:** Brilliant, Shalom (CIV)
**Sent:** Thursday, November 16, 2006 1:22 PM
**To:** 'BCohen@bellboyd.com'
**Cc:** 'Brett.R.Howard@nau02.usace.army.mil'
**Subject:** document production

Brian,

My latest information from USACE is that, according to the vendor, all the documents on the backup tapes have now been restored. They said they should all fit on a 300 GB hard-drive, which they are going to send to USACE (in Wiesbaden). The restoration issue is now moot.

The question is how to wade through 300 GB (One GB = 50,000 pages or 20 boxes). We should have a complete, "de-duped" directory within a few days. As I mentioned in my previous e-mail, it's estimated that the final, combined directory will be about 2500 pages long, and keyword searching seems to be the most efficient way to go. If you have any other ideas based on a review of the 1400 page directory I sent you yesterday, let me know.

Shalom