# In the United States Court of Federal Claims

No. 04-1719 C, No. 05-114 C, No. 05-1172 C, and No. 06-49 C
(CONSOLIDATED)

(Filed: January 26, 2007)

| | |
|---|---|
| **AAB JOINT VENTURE,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | Subject matter jurisdiction; presentment and certification to contracting officer for final decision; equitable adjustment for differing site conditions; subsurface conditions; subgrade replacement; added pile lengths |

*Brian Cohen*, of Bell, Boyd & Lloyd, Washington, D.C., for Plaintiff.

*Shalom Brilliant*, Senior Trial Counsel, with whom were *David M. Cohen*, Director, *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant. *Paul Cheverie*, Command Counsel, *Brett R. Howard*, Assistant Command Counsel, Europe District, U.S. Army Corps of Engineers, of counsel.

## OPINION

**DAMICH**, Chief Judge.

This case is before the Court on Defendant's Motion to Dismiss Plaintiff's Claim Concerning Subgrade Material, Asserted in Paragraph 37 of the Amended Complaint in No. 04-1719. In paragraph 37, Plaintiff seeks to recover $412,239 in additional costs it allegedly incurred, during performance of a construction contract, for replacement of subgrade material under structures as a result of differing site conditions. In its motion, Defendant requests that the Court dismiss paragraph 37 for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC"), because the claim was not previously certified and presented to the contracting officer for final decision. For the reasons set forth below, Defendant's Motion to Dismiss is hereby GRANTED.

## I. Background

On June 5, 2001, AAB Joint Venture ("AAB") entered into Contract No. DACA90-01-C-0043 (the "Contract") with the U.S. Army Engineer Corps-Europe ("USACE") to design and construct a storage and logistics base complex, known as the Nachshonim Military Storage Base, near Elad, Israel for use by the Israeli Defense Force. Am. Compl. ¶ 4, 6.

Attached to the government's Request for Proposals was a Geotechnical Report. *Id.* ¶ 7. The Contract specifications contained numerous references to the Geotechnical Report in its instructions on design and placement of piles and beams in construction of the foundations for buildings. *Id.* ¶ 11. The Geotechnical Report characterized the sub-surface material in most of the building areas as "limy dolomite rock, mostly massive and hard." *Id.* ¶ 7. The Geotechnical Report also contained extensive directions and recommendations for construction, including recommendations on spread footings and pile design. *Id.* ¶ 8. Amendment No. 3 to the Request for Proposals referred bidders to the Geotechnical Report, stating that "subgrade and excavation requirements are well defined in the Geotechnical Report." *Id.* ¶ 10. During the bidding process, the government directed bidders to nearby existing quarries for comparison of similar subsurface conditions. *Id.* ¶ 14.

AAB prepared its bid, and its calculations for earthwork and structure foundations, in reliance on the Geotechnical Report. *Id.* ¶ 12.

After entering into the Contract, AAB performed exploratory borings, which revealed different subsurface conditions from those shown in the Geotechnical Report. *Id.* ¶ 16. On January 22, 2002, AAB gave written notice to the government of differing site conditions, noting that the subsurface conditions encountered differed materially from those indicated in the contract (Type I), and from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract (Type II). *Id.* ¶ 17.

On July 23, 2003, AAB submitted a certified claim to the contracting officer for an equitable adjustment of $6,885,115 (which it later revised to $6,510,301) for the unanticipated costs relating to excess material disposal on the site. *Id.* ¶ 33. The costs were attributed to the unrealized commercial value of the excess excavated material, the added costs of processing materials for reuse, and the added costs of removing the excess usable material. *Id.* ¶ 32. The contracting officer failed to issue a final decision within 60 days of receipt of the certified claim. *Id.* ¶ 35.

During July-August 2003, AAB also submitted certified claims to the contracting officer for an equitable adjustment for the unanticipated costs relating to added pile lengths in Segments #67, #45, #56, #34, #10, #78, #89, #91, #11, #12, and #23.[1] *Id.* ¶¶ 57, 76, 95, 114, 152, 171, 190,

[1] The amount of each equitable adjustment was $225,474 (later revised to $114,963); $285,667 (later revised to $99,679); $212,407 (later revised to $117,205); $195,068 (later revised

209. The contracting officer failed to issue a final decision within 60 days of receipt of each of the certified claims. *Id.* ¶¶ 59, 78, 97, 116, 133, 135, 154, 173, 192, 211.

In Count I of its Amended Complaint, AAB requests $11,588,813 total compensation as a result of differing site conditions. *Id.* ¶ 42. The total includes the previously requested $6,510,301 in the certified claim for excess material disposal, as well as : (1) $412,239 to replace unsuitable subgrade material under structures required as a result of the differing site conditions; (2) $4,037,203 to compensate subcontractor Rolider for its added costs and delay costs due to the differing site conditions; and (3) $629,070 to compensate subcontractor Barashi for delays in its operations due to the required removal of unsuitable subsurface material. *Id.* ¶ 37-39.

The claim on behalf of subcontractor Barashi was dismissed by this Court in an opinion issued November 1, 2005. *AAB Joint Venture v. United States*, No. 04-1719 C, 2005 WL 5050114 (Fed. Cl. November 1, 2005).

The claim for $412,239 to replace unsuitable subgrade material under structures is the subject of the pending motion. Specifically, in paragraph 37 of Count I, Plaintiff alleges:

> In addition, due to the conditions described in Paragraph 23,[2] the subgrade material under many of the structures could not be used for foundation support and had to be replaced with suitable subgrade material. In areas under some roads and slopes, USACE issued change orders to compensate the Contractor for the cost of replacing the unsuitable subgrade material, the content of which contained significantly more clay than represented in the Geotechnical Report. USACE agreed to compensate the Contractor for subgrade replacement under some roads and slopes but refused to compensate the Contractor for replacement of unsuitable subgrade material under structures. Contractor incurred additional costs of $412,239 to replace unsuitable material under structures, which material was not as represented in the Geotechnical Report. The replacement of this

---

to $118,836); $467,809 (later revised to $292,089); $297,088 (later revised to $117,828); $180,335 (later revised to $91,123); $591,049 (later revised to $417,471); $230,457 (later revised to $89,360), respectively.

[2] Paragraph 23 states:

> The large amount of shallow layers and pockets of expansive clay increased the thickness of subgrade layers beneath the floors that were to be cast on grades; in some cases this necessitated subgrade removal, disposal, and replacement, thereby doubling or tripling the layers of subgrade. Even more critical, due to the heterogeneity of the material, each building foundation had to be individually evaluated.

> unsuitable material under the structures was a differing site condition/change to the Contract, and is based on the same underlying operative [sic] set forth herein; that is, the actual subsurface material differed materially from the conditions represented in the Geotechnical Report.

Am. Compl. ¶ 37.

In Counts II-X, AAB requests compensation in the amount of $114,963; $99,679; $117,205; $118,836; $292,089; $117,828; $91,123; $417,471; and $89,360, respectively, for the additional pile lengths. *Id.* ¶¶ 61, 80, 99, 118, 156, 175, 194, 213.

In the motion pending before the Court, Defendant asks the Court to dismiss paragraph 37 of Count I of the Amended Complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

## II. Standard of Review

Subject matter jurisdiction may be challenged at any time by a party. *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998); *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n.1 (Fed. Cir. 1990). When deciding Defendant's motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of Plaintiff's well-pleaded facts alleged in the complaint, and draw all reasonable inferences in the Plaintiff's favor. *Goodwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed. Cir. 1998). Plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Fed. Nat'l Mortgage Assoc. v. United States*, 379 F.3d 1303, 1311 (Fed. Cir. 2004) (citing *United States v. King*, 395 U.S. 1, 4 (1969)).

The Tucker Act provides:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in

> tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2000).[3] The United States, therefore, waives its sovereign immunity and gives its consent to be sued by private parties over contract disputes under the Tucker Act. *United States v. Mitchell*, 463 U.S. 206, 215 (1983).

Under the Contract Disputes Act, a contractor must first submit a claim against the government relating to a contract to the contracting officer for a decision. 41 U.S.C. § 605(a) (2002). For claims of more than $100,000, the contractor must certify to the contracting officer that

> the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1) (2000). A final decision by the contracting officer, or the failure of the contracting officer to render a decision within the specified time period, serves as the basis for appeal to this court. 41 U.S.C. § 609(a) (2002); 41 U.S.C. § 605(c)(5) (2000).

## III. Analysis

Defendant argues that the claim set forth in paragraph 37 of Count I of the Amended Complaint, requesting an equitable adjustment for replacement of subgrade material under structures, was never presented and certified to the contracting officer for final decision.[4]

---

[3] Section 10(a)(1) of the Contract Disputes Act is codified at 41 U.S.C. § 609(a)(1), and section 6 is codified at 41 U.S.C. § 605.

[4] Plaintiff appears to attempt to explain away the certification requirement by recounting that, on January 22, 2002, Plaintiff informed Defendant by letter that it had encountered unanticipated subsurface conditions and that additional fill would be required to "attain an adequate subgrade and foundation for structure stability." Pl.'s Resp. to Def.'s Mot. to Dismiss at 1-2. Then, on July 29, 2002, and August 11, 2002, Plaintiff submitted a request for equitable adjustment for subbase replacement under Segment #56 and Segment #45, respectively. *Id*. at 2. Defendant issued Change Orders 46 and 47 to compensate Plaintiff for subgrade replacement under roads and slopes. *Id*. at 3. Consequently, Plaintiff believed that Defendant would similarly compensate Plaintiff for subgrade replacement under structures and concluded that it did not need to follow up its requests for equitable adjustment with certified claims. The plain language of the CDA, however, requires that a certified claim be presented to the contracting officer for

Therefore, Defendant contends that the Court lacks subject matter jurisdiction over the claim and the claim should be dismissed pursuant to RCFC 12(b)(1). Plaintiff argues, in contrast, that paragraph 37 of Count I involves the same factual and legal bases as the certified claims submitted to the contracting officer relating to additional pile length for Segments 67, 45, 56, 34, 10, 78, 89, 91, 11, 12, and 23, which are included in Counts II-X of the Amended Complaint.[5]

As summarized by this Court in its earlier opinion in this case:

> This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. *Santa Fe Eng'r v. United States*, 818 F.2d 856, 859 (Fed. Cir. 1987). Although a contractor is not precluded from increasing the amount of a claim, a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer. *Id.* at 858; *J.F. Shea Co., Inc. v. United States*, 4 Cl.Ct. 46, 54 (Cl. Ct. 1983). A new claim is "one that does not arise from the same set of operative facts as the claim submitted to the contracting officer." *J. Cooper & Assoc., Inc. v. United States*, 47 Fed.Cl. 280, 285 (2000) (*citing Tecom, Inc. v. United States*, 732 F.2d 935, 936-937 (Fed. Cir. 1984); *see also Foley Co. v. United States*, 26 Cl.Ct. 936, 940 (1992); *Cerebronics, Inc. v. United States*, 13 Cl.Ct. 415, 417 (1987). The same set of operative facts has been found where the contractor submits additional evidence pertaining to damages to support the same factual claim, *Shea*, 4 Cl.Ct. at 55, or where the claim merely "augments the legal theories" underlying the certified claim. *Cerebronics*, 13 Cl.Ct. at 418-419; *Thermocor, Inc. v. United States*, 35 Fed.Cl. 480, 489-490 (1996). In contrast, the same set of operative facts has not been found where the contractor files a different type of claim from that presented to the contracting officer,

---

final decision in order for this Court to have jurisdiction.

[5] In its motion to dismiss, Defendant compares the claim in paragraph 37 of Count I of the Amended Complaint, for an equitable adjustment associated with replacement of subgrade, to the certified claim submitted to the contracting officer on July 23, 2003 (and referenced in Count I), for an equitable adjustment associated with excess material disposal on the site. Defendant argues that the paragraph 37 claim is a new claim distinct from the excess material disposal claim. In its response to Defendant's motion to dismiss, however, Plaintiff argues that Defendant is comparing the claim in paragraph 37 of Count I of the Amended Complaint to the wrong certified claim. Plaintiff instead relies for support on the certified claims referenced in Counts II-X of the Amended Complaint.

> *Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1570 (Fed. Cir. 1993); *J. Cooper*, 47 Fed. Cl. at 285-286; *Metric Constr. v. United States*, 44 Fed.Cl. 513, 518-519 (1999); *Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 91 (1989), or where the facts require different kinds of proof. *Placeway Constr. v. United States*, 920 F.2d 903, 909 (Fed. Cir. 1990); *Foley*, 26 Cl.Ct. at 940.

*AAB Joint Venture v. United States*, No. 04-1719 C, 2005 WL 5050114, *4-5 (Fed. Cl. November 1, 2005).

Plaintiff argues that the claim in paragraph 37 of the Amended Complaint is distinguishable from the claim dismissed by the Court in the prior decision in this case because in that decision the Court distinguished between claims brought by the prime contractor on its own behalf as compared to claims brought on behalf of two subcontractors, and the Court found differences in the factual evidence and proof required. In contrast, Plaintiff contends that, here, both claims are by the prime contractor, AAB, on its own behalf, and both claims involve the same factual evidence and the same proof relating to differing site conditions and AAB's reliance on the Geotechnical Report. According to Plaintiff, the subgrade replacement claim of paragraph 37 relates to subgrade preparation under structures in Segments 11, 23, 34, 45, 56, 67 and 91, precisely the same locations as the certified claims for additional pile length. Plaintiff argues that the piling goes under and forms a part of the foundation of each of the structures. In fact, Plaintiff asserts, AAB's geotechnical designer would inspect each building lot to recommend subgrade replacement only after the piling was installed and the tailings from the pile drilling were visible so that he could evaluate unsuitable subsurface conditions. According to Plaintiff, the subgrade replacement claim arises from the same set of operative facts as the certified pile length claims—difference between the subsurface conditions actually encountered at the site as compared to the anticipated subsurface conditions—and involves the same legal theory—differing site conditions.

Defendant counters that the only underlying facts alluded to in paragraph 37 are "the conditions described in Paragraph 23," which in turn relate to the "thickness of subgrade layers beneath the floors that were to be cast on grades," i.e. the subgrade material beneath the floors. In contrast, Defendant contends, the facts underlying the pile length certified claims are the conditions under foundation walls and alongside the piles that precluded the utilization of spread footings and required piles of greater number and length. According to Defendant, material that is inadequate to support a structure utilizing spread footings or short piles may not be inadequate to support a slab on grade floor, and vice versa. Defendant argues that Plaintiff's statement that AAB's geotechnical designer could not assess the need for subgrade replacement until after installation of piling supports this contention.

The Court agrees that the fact that paragraph 37 of the Amended Complaint and the certified claims have the same legal basis, namely the Differing Site Conditions clause, is not enough. The certified claims before the contracting officer requested an equitable adjustment of

a specified amount for the additional pile lengths required in Sections #67, #45, #56, #34, #10, #78, #89, #91, #11, #12, and #23 due to unanticipated subsurface conditions. App. to J. Prelim. Status Rep., Attach. 21-29. The certified claims stated nothing about costs incurred as a result of replacement of subgrade under structures and did not estimate the amount of such costs. The contractor must "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). The purpose of the certification requirement under the CDA is to push contractors to be precise in the claim that they submit to the contracting officer. *Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed. Cir. 1984). Plaintiff failed to provide the contracting officer with adequate notice of its subgrade replacement claim and, by bringing the claim directly to this Court, is effectively "circumventing the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim." *Cerebronics, Inc. v. United States*, 13 Cl. Ct. 415, 418 (1987). Moreover, the factual evidence required to prove the need for subgrade replacement under structures is distinct from that required to prove the need for additional pile length, and the costs associated with each are distinct. As acknowledged by Plaintiff, assessment of the need for subgrade replacement under structures was separate and independent of assessment of the need to add pile length. Although there may be a "common *type* of fact . . . that does not necessarily mean that each claim involves proof of a common or related set of operative facts." *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 909 (Fed. Cir. 1990) (emphasis in original).

Plaintiff avers, citing *Santa Fe Eng'rs*, 818 F.2d at 858, that although the contractor may not raise a new claim that has not been certified and presented to the contracting officer, the contractor may increase the amount of its claim. Pointing to several Board of Contract Appeals decisions, Plaintiff maintains that the Court has jurisdiction to consider additional damages relating to the same operative facts. Plaintiff contends that the subgrade replacement claim is merely a request for additional damages arising from the same operative facts as the pile length claims that were certified and presented to the contracting officer for final decision. The Court finds, however, Plaintiff's claim for added costs of subgrade replacement under structures is much more than an "increase [in] monetary demand." *Tecom*, 732 F.2d at 937. The increased amount is not explained by "a computational error in calculating the original claim" or an "audit of the claim." *J.F. Shea Co. v. United States*, 4 Cl. Ct. 46, 54 (1983). The fact that Plaintiff anticipated receiving compensation from Defendant for the replacement of subgrade under structures after Defendant issued change orders to compensate Plaintiff for replacement of subgrade for roads and slopes is additional evidence that Plaintiff considered the claim to be a separate and distinct one for which Plaintiff remained uncompensated. The Court, therefore, finds that Plaintiff's claim set forth in paragraph 37 of Count I of the Amended Complaint is a new claim which was never certified and presented to the contracting officer for final decision. Accordingly, the Court lacks subject matter jurisdiction over the claim.[6]

---

[6] Plaintiff further urges that considerations of judicial economy and common sense weigh in favor of not dismissing the claim. However, such considerations cannot override the limitations on the jurisdiction of the court imposed by statute.

## IV. Conclusion

Defendant's Defendant's Motion to Dismiss Plaintiff's Claim Concerning Subgrade Material, Asserted in Paragraph 37 of the Amended Complaint in No. 04-1719, is hereby GRANTED.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge