# In the United States Court of Federal Claims

No. 04-1719 C, No. 05-114 C, No. 05-1172 C, and No. 06-49 C
(CONSOLIDATED)

(Filed: February 28, 2007)

| | | |
|---|---|---|
| **AAB JOINT VENTURE,** Plaintiff, v. **THE UNITED STATES,** Defendant. | * | Motion to compel answers to interrogatories; RCFC 26; RCFC 33; RCFC 37; work product privilege; attorney-client privilege; objections based on unduly burdensome, overbroad, vague |

*Brian Cohen*, of Bell, Boyd & Lloyd, Washington, D.C., for Plaintiff.

*Shalom Brilliant*, Senior Trial Counsel, with whom were *David M. Cohen*, Director, *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant. *Paul Cheverie*, Command Counsel, *Brett R. Howard*, Assistant Command Counsel, Europe District, U.S. Army Corps of Engineers, of counsel.

## OPINION AND ORDER

**DAMICH**, Chief Judge.

Before the Court in this government contract case is Plaintiff's Motion for Order Compelling Discovery with Respect to Defendant's Answers to Interrogatories in Case Nos. 04-1719C, 04-1792C[1] and 05-144C. For the reasons set forth below Plaintiff's motion is GRANTED-IN-PART and DENIED-IN-PART.

[1] To the extent that Plaintiff seeks relief in Case No. 04-1792, the motion filed in this consolidated case (Case Nos. 04-1719, 05-114, 05-1172, and 06-49) is improper.

## I. Background

A.A.B. Joint Venture ("AAB") entered into a contract with the government on June 5, 2001, to design and construct a storage and logistics base in Elad, Israel for use by the Israeli Defense Force ("IDF"). Am. Compl. in Case No. 04-1719, ¶ 4, 6. Attached to the government's Request for Proposal ("RFP") was a Geotechnical Report, which characterized the sub-surface in most of the building areas as mostly massive and hard, consisting of limy dolomite rock. *Id.* ¶ 7. In January 2002, AAB performed exploratory borings, which revealed different subsurface conditions from those shown in the Geotechnical Report. *Id.* ¶ 16.

On November 30, 2004, AAB filed suit in this court (Case No. 04-1719), requesting compensation for the increased costs incurred as a result of the alleged differing site conditions encountered at the work site. *Id.* ¶ 42, 60, 80, 99, 118, 137, 156, 175, 194, 213. On January 15, 2005, AAB filed another complaint (Case No. 05-114), requesting an equitable adjustment for alleged changes and suspension of work as a result of the disallowance of the use of third country national ("TCN") construction workers and the requirement of an alternate paint system on the insulated panels. Compl. in Case No. 05-114, ¶ 8-10, 65. AAB filed three additional complaints, which are currently pending before this Court (Case Nos. 04-1792, 05-1172 and 06-49). Case Nos. 04-1719, 05-114, 05-1172, and 06-49 were consolidated on April 12, 2006, Case No. 04-1719 being the lead case.

On August 12, 2005, Plaintiff served on Defendant its First Set of Interrogatories in Case No. 04-1719. App. to Pl.'s Mot. to Compel ("Pl.'s App.") at 1-19. Defendant served an answer to the interrogatories on September 12, 2005. *Id.* at 20-60.

On September 20, 2005, Plaintiff sent a letter to Defendant stating that Plaintiff considered many of Defendant's responses to interrogatories in Case No. 04-1719 to be incomplete or deficient. Pl.'s App. at 73-74. In particular, Plaintiff noted that it considered Defendant's invocation of Rule 33(d) of the Rules of the U.S. Court of Federal Claims ("RCFC") in its responses to Interrogatories 4, 8-17, 20, 23-25, 27-30, 33-36, 38-40, 42, 47, and 50 of Plaintiff's First Set of Interrogatories to be misplaced. *Id.*

In response to Plaintiff's letter, Defendant sent a letter asserting that Plaintiff had overlooked Defendant's primary objections to the interrogatories, namely that they were unduly burdensome, vague or overbroad, and that responsive material was protected by the attorney-client privilege or the work product doctrine. *Id.* at 75-77. Defendant nonetheless offered to supplement its responses to interrogatories if Plaintiff narrowed its requests. *Id.*

On September 19, 2005, Plaintiff served on Defendant its First Set of Interrogatories in Case No. 05-114. *Id.* at 61-72. Defendant served an answer to the interrogatories on October 21, 2005. *Id.* at 91-111.

On November 10, 2005, Plaintiff sent a letter to Defendant reiterating its concern that Defendant's responses to interrogatories in Case No. 04-1719 were deficient and that Defendant's reliance on RCFC 33(d) was baseless. *Id*. at 128-32. Plaintiff further argued that Defendant's objections to interrogatories in Case No. 04-1719 as unduly burdensome or vague were meritless and that Defendant's blanket assertion of privilege with respect to Interrogatories 8-17 was unsupported. *Id*. Lastly, Plaintiff set forth objections to Defendant's responses to interrogatories in Case No. 05-114.

On December 12, 2005, Plaintiff sent a letter to Defendant again noting the deficiencies in Defendant's responses to interrogatories in Case Nos. 04-1719 and 05-114 and noting that Defendant had failed to supplement its responses. *Id*. at 137-38.

Defendant indicated in a letter dated November 23, 2005, that it would respond to Plaintiff's November 10, 2005, letter under separate cover. *Id*. at 133-36. Defendant did respond on December 14, 2005, largely reiterating its earlier arguments and defending its responses to the interrogatories in Case No. 05-114. *Id*. at 139-43.

Finally, on February 22, 2006, Plaintiff sent another letter to Defendant, asserting again that Defendant's responses to interrogatories were deficient and noting that Defendant had not provided any supplemental responses. *Id*. at 144-48.

## II. Analysis

Plaintiff contends that Defendant's answers to interrogatories were deficient in several regards. First, Plaintiff contends that Defendant has erroneously applied RCFC 33(d). Second, Plaintiff avers that Defendant has erroneously asserted the attorney-client privilege and the work product doctrine. Plaintiff asks the Court to issue an order directing Defendant to supplement its answers to interrogatories. Plaintiff further asks the Court to impose sanctions against Defendant because its answers to interrogatories have been materially deficient.

RCFC 26(a)(5) provides that one of the methods by which parties may obtain discovery is by written interrogatories. Pursuant to RCFC 37(a)(2)(A), "[i]f a party fails to make a disclosure required by RCFC 26(a), any other party may move to compel disclosure and for appropriate sanctions." The basis for imposition of sanctions is set out in RCFC 37(a)(4). [2]

---

[2] RCFC 26 and 37 largely track Fed. R. Civ. P. 26 and 37, respectively, and interpretation of Fed. R. Civ. P. 26 and 37 informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

**A. RCFC 33(d)**

Plaintiff contends that Defendant, in its responses to Plaintiff's interrogatories, improperly invokes RCFC 33(d). In particular, Plaintiff points to Defendant's answers to Interrogatories 4, 8-17, 23-25, 27-30, 33-36, 38-40, 42, 47, and 50 in Case No. 04-1719 and Interrogatories 5 and 6 in Case No. 05-114. Defendant's response to Interrogatory No. 23 in Case No. 04-1719 is representative:

> Defendant objects to this interrogatory upon the ground that it is overbroad, unduly burdensome. Defendant further objects to this interrogatory to the extent that it would require disclosure of attorney work product or information protected by the attorney-client privilege or the attorney work product doctrine. *To the extent that any relevant, non-privileged information may fall within the intended scope of this interrogatory, plaintiff is referred, pursuant to RCFC 33(c),*[3] *to the documents to be produced in accordance with defendant's responses to plaintiff's requests for production of documents in this case.*

Pl.'s App. at 37 (emphasis added). Plaintiff argues that Defendant has abused RCFC 33(d) by simply directing Plaintiff to a mass of business records without providing more specific guidance for how to locate responsive documents. According to Plaintiff, Defendant must either specify which documents contain answers to the interrogatories or answer the interrogatories directly. Defendant has done neither. Plaintiff refers to 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2178, at 330-37 (2d ed. 1994), to argue that Defendant, as the responding party, must satisfy several prerequisites in order to invoke RCFC 33(d), including specifying which records contain the information sought by the interrogatory. Plaintiff contends that an offer to produce unspecified responsive materials is not enough.

Defendant concurs that RCFC 33(d) requires the party responding to the interrogatory to make more than a general reference to produced documents; however, Defendant avers that the rule also provides that the responding party need not pinpoint documents when the burden to search through documents is the same for the responding party as for the requesting party. Here, Defendant contends, Defendant's documents were not indexed according to the topics specified by Plaintiff in its interrogatories. Moreover, by agreement between the parties, all documents were coded with information such as date, author, recipient, and subject, and scanned in a word-searchable format. Thus, according to Defendant, both parties have the same capability to search the scanned documents. Because the burden would be no greater for Plaintiff than for Defendant

---

[3] Defendant mistakenly refers to RCFC 33(c) throughout its answers to interrogatories, but, in response to the Plaintiff's motion to compel, Defendant clarifies that RCFC 33(d) was intended.

to search the stack of documents to find those responsive to the interrogatories, Defendant asserts that it properly invoked the rule.

Plaintiff replies that Defendant misreads RCFC 33(d). According to Plaintiff, the rule does not refer to the comparative burden of pointing out the documents, but rather to the comparative burden of deriving answers to interrogatories from the documents. Plaintiff argues that to adopt Defendant's interpretation would completely eviscerate the rule because it would allow a party to avoid answering interrogatories or specifying documents simply by alleging that either party could find the documents in the same amount of time. Plaintiff urges the Court to require Defendant to either specify precisely which documents contain the answers to the interrogatories or to answer the interrogatories without reference to the documents.

RCFC 33(d) provides:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and *the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served*, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. *A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.*

RCFC 33(d) (emphases added). RCFC 33(d) is identical to Fed. R. Civ. P. 33(d). The last sentence of the federal rule was added with the 1980 amendment. As explained by the Advisory Committee:

> The Committee is advised that parties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option. . . . The final sentence is added to make it clear that a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived.

Fed. R. Civ. P. 33, Notes of Advisory Committee, 1980 Amendment.[4] Since adoption of the amendment, federal courts have strictly construed the rule to require a responding party to specifically direct the requesting party to the documents which contain the answer to the interrogatory. *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983); *Cambridge Elec. Corp. v. MGA Elec., Inc.*, 227 F.R.D. 313, 322-23 (C.D. Cal. 2004); *SEC v. Elfindepan, S.A.*, 206 F.R.D. 574, 576-77 (M.D.N.C. 2002); *Capacchione v. Charlotte-Mecklenberg Schools*, 182 F.R.D. 486, 490-91 (W.D.N.C. 1998); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996); *Blake Assocs., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 288 (D. Mass. 1988); *Colo. ex rel. Woodard v. Schmidt-Tiago Constr. Co.*, 108 F.R.D. 731, 735 (D. Colo. 1985); *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 109 F.R.D. 263, 266 (E.D.N.C. 1985). A simple offer to produce unspecified documents or a general reference to a pile of documents will not suffice. *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996); *Matthews v. USAir, Inc.*, 882 F. Supp. 274, 275 (N.D.N.Y. 1995); *T.N. Taube Corp. v. Marine Midland Mortgage Co.*, 136 F.R.D. 449, 455 (W.D.N.C. 1991); *Blake Assocs.*, 118 F.R.D. at 289-90; *Am. Rockwool*, 109 F.R.D. at 266. Here, Defendant refers broadly to all documents produced in response to requests for production of documents by Plaintiff. Clearly, Defendant has not met its duty of specificity in order to rely on RCFC 33(d) in answering Plaintiff's interrogatories.

However, Defendant contends that, first and foremost, it objected to each of the interrogatories on the grounds of work product and attorney-client privilege, as well as the grounds that they were vague and unduly burdensome. Therefore, the Court must first consider those objections before deciding whether ordering supplemental interrogatory answers by Defendant is warranted.

### B. Assertions of Privilege

Plaintiff contends that Defendant improperly asserts the work product doctrine and the attorney-client privilege in its answers to Interrogatories 8-17, 20, 23-25,[5] 27, 33-36, 38-40,[6] 42, and 47 in Case No. 04-1719 and Interrogatories 5 and 6 in Case No. 05-114.

---

[4] The Notes refer to the amendment to Fed. R. Civ. P. 33(c); however, Fed. R. Civ. P. 33(c) became Fed. R. Civ. P. 33(d) by further amendment in 1993.

[5] Although Plaintiff contests Defendant's objection to Interrogatory No. 24, the basis for Defendant's objection to that interrogatory is not the work product doctrine or the attorney-client privilege. Therefore, Defendant's response to Interrogatory No. 24 is not relevant to this dispute regarding the work product doctrine and the attorney-client privilege.

[6] Because Interrogatory No. 40 in Case No. 04-1719 concerns the claim by Barashi which was dismissed by the Court in an earlier opinion, *AAB Joint Venture v. United States*, No. 04-1719 C, 2005 WL 5050114 (Fed. Cl. November 1, 2005), the dispute regarding Interrogatory No. 40 is deemed to be moot.

Interrogatory No. 8 in Case No. 04-1719 states:

> Describe in detail any review, analysis or evaluation of A.A.B.'s claim for equitable adjustment (including any subsequent revision) and/or certified claim for the additional costs associated with disposal of excess materials at the site (Count I), including (a) the dates of such review, analysis or evaluation; (b) the result of the review, analysis or evaluation; (c) the identity of any documents concerning such review, analysis or evaluation; and (d) the identity of all persons with knowledge of such review, analysis or evaluation.

Pl.'s App. at 9. Interrogatory Nos. 9-20, 23, 24, 27, 33-36 and 42 in Case No. 04-1719 and Interrogatory No. 6 in Case No. 05-114 similarly request Defendant to describe any review, analysis or evaluation regarding: equitable adjustment for added pile lengths; equitable adjustment for unanticipated subsurface conditions; equitable adjustment for TCN labor; subsurface conditions at the site; cost of removal/disposal of excess materials; AAB's presentation at the December 3, 2004, meeting; AAB's March 2, 2004, answers; and AAB's and its subcontractors' operations involving subgrade soil replacement, excess material disposal, and sorting, screening and crushing of fill. *Id*. at 9-16, 68.

Interrogatory No. 25 in Case No. 04-1719 states:

> Describe in detail any pre-bid USACE or U.S. Government internal analysis or evaluation of the adequacy of (a) the Geotechnical Report; (b) use of seven to ten bore holes as the basis of the geotechnical analysis of the Project site; (c) the lack of access to the site prior to bid; and/or (d) whether the Geotechnical Report met or conformed to the FAR requirements.

*Id*. at 13.

Interrogatory Nos. 38, 39, and 47 in Case No. 04-1719 request Defendant to "[d]escribe in detail any communications, written or oral, among or between USACE, IDF, ILA, MOD, Blank-Lehrer and/or any other entity" concerning claims by AAB or Rolider, or concerning the "legal and/or contractual requirements for disposal, sale or use of excess materials from the Project site." *Id*. at 16-17.

Interrogatory No. 5 in Case No. 05-114 states:

> Identify and produce any schedules or schedule analyses prepared, reviewed or which were prepared for the use of defendant, relating or pertaining to the TCN labor claim.

*Id*. at 68.

Defendant objected to each of the above interrogatories on the basis that answering them would require disclosure of information protected by the attorney-client privilege or the attorney work product doctrine.

**1. Work Product**

Plaintiff avers that the work product doctrine only protects documents and tangible things and, therefore, it is inappropriate to object to an interrogatory on the basis of the work product doctrine unless the interrogatory requests production of documents. Plaintiff contends that its interrogatories do not request production of documents, do not request the content of documents protected by the work product doctrine, and do not request the attorney's mental impressions, conclusions, opinions or legal theories. Rather, the interrogatories request factual information such as the dates reviews were conducted, the identity of documents and the identity of persons involved. According to Plaintiff, the protection afforded under the work product doctrine does not extend to facts even if the facts are contained in documents that are protected. Therefore, Plaintiff contends that Defendant's objections based on the work product privilege must fail.

Although Defendant acknowledges that the work product doctrine generally protects only documents and tangible things, Defendant argues, citing *Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 816 (2006), that the doctrine also protects mental impressions, legal theories and thought processes of an attorney concerning the litigation—and this protection extends to material prepared by an attorney's agents and consultants. Defendant asserts that the information requested by Plaintiff in the interrogatories is the content of the documents themselves. According to Defendant, the evaluation of requests for equitable adjustment and certified claims, which was the subject of the interrogatories, was performed with the guidance of attorneys in the Office of Counsel of the Europe District of the U.S. Army Corps of Engineers. Defendant further avers that the Israel Program Office and the contracting officer requested a legal opinion from the attorneys concerning the merits of the requests for equitable adjustment ("REAs") because they anticipated that if the claims were denied the claims were likely to become the subject of litigation. In addition, officials from the Europe District and the Government of Israel also requested a legal opinion. Defendant asserts that the Office of Counsel then sought factual and technical analysis from technical experts in the Europe District and information from the Government of Israel Ministry of Defense in order to formulate its legal opinion regarding the REAs. Therefore, Defendant contends that the interrogatories seek information protected by the work product doctrine.

The work product doctrine applies to attorney work product prepared in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947); *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000). Under RCFC 26(b)(3), the scope of the privilege is limited to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney,

consultant, surety, indemnitor, insurer, or agent)." RCFC 26(b)(3). Although the privilege can be overcome upon a showing of substantial need or undue hardship, there is an absolute privilege "against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id*. The purpose of the privilege is to "encourage[] attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).

The work product privilege may also apply to nontangible work product. As explained by the Sixth Circuit in a widely cited opinion:

> Although courts most commonly apply the work product privilege to documents and things, the Supreme Court in *Hickman* made clear that disclosure of the opinions or mental processes of counsel may occur when nontangible work product is sought through depositions, interrogatories, and requests for admissions. When applying the work product privilege to such nontangible information, the principles enunciated in *Hickman* apply, as opposed to Rule 26(b)(3) of the Federal Rules of Civil Procedure, which applies only to "documents and tangible things."

*United States v. One Tract of Real Prop. Together With All Bldgs., Improvements, Appurtenances, and Fixtures*, 95 F.3d 422, 428 n.10 (6th Cir. 1996) (citations omitted).

Although the work product privilege protects work product created by the attorney, the privilege does not protect facts contained within or underlying attorney work product. *In re Unilin Decor N.V.*, 153 Fed. App. 726, 728 (Fed. Cir. 2005); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995); *Dunkin' Donuts Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 520-21 (S.D. Fla. 2002); *Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 515 (D. Minn. 1997); *Phillips Elecs. N. Am. Corp. v. Universal Elecs. Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995); *Swarthmore Radiation Oncology, Inc. v. Lapes*, 155 F.R.D. 90, 92 (E.D. Pa. 1994).

At stake here are interrogatories, not requests for production of documents. And, the interrogatories do not ask for disclosure of documents. In part, the interrogatories only request facts such as the date of any review, analysis or evaluation, the identity of documents or schedules, and the names of individuals. Such information is not protected under the work product doctrine and is discoverable. *See, e.g.*, *Kobell v. NLRB*, 136 F.R.D. 575, 580 (W.D. Pa. 1991); *Manville Sales Corp. v. Paramount Sys., Inc.*, 118 F.R.D. 420, 422 (E.D. Pa. 1987); *Dow Chem. Co. v. S. Martin Taylor*, No. 38644, 1974 WL 1294, at *4 (E.D. Mich. July 1, 1974); *Lincoln Gateway Realty Co. v. Carri-Craft, Inc.*, 53 F.R.D. 303, 307 (W.D. Mo. 1971). In part, however, the interrogatories request Defendant to describe in detail any review, analysis or evaluation, and ask for the result of such review, analysis, or evaluation. In essence, the interrogatories seek the content of certain documents, which documents may include attorney

opinions or mental processes. Such requests may clearly impinge on material protected under the work product privilege. *See*, *e.g.*, *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 645-46 (D. Kan. 1999); *ERA Franchise Sys., Inc. v. N. Ins. Co. of New York*, 183 F.R.D. 276, 280 (D. Kan. 1998); *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 674007, at *9 (D. Kan. Nov. 14, 1996); *Kobell*, 136 F.R.D. at 580; *Manville Sales*, 118 F.R.D. at 422; *Dow Chem.*, 1974 WL 1294, at *4.

Plaintiff contends that Defendant, in asserting the work product privilege, states only that the analysis and evaluation of Plaintiff's REAs and certified claims was done under the guidance of attorneys. Instead, Plaintiff argues that Defendant must show that the primary purpose for creation of the documents was to assist in litigation. Documents that would have been created in essentially similar form irrespective of the litigation are not protected under the work product doctrine. Here, Plaintiff contends, Defendant admits that the documents were generated in "the process of analyzing and evaluating the referenced requests for equitable adjustments and certified claims." Hence, Plaintiff avers that the primary purpose for which the documents were generated was to assist the contracting officer in performing his contract administration duties, i.e., they were prepared in the ordinary course of business and/or pursuant to the government's public duty imposed under the Contract Disputes Act.

The Court agrees that Defendant has not met its burden of establishing its entitlement to protection under the work product doctrine. The party asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough. *In re Smithkline Beecham Corp.*, No. MISC. NO. 01-632, 2000 WL 1717167, at *3 (Fed. Cir. Nov. 1, 2000); *FTC v. GlaxoSmithKline*, 294 F.3d 141, 144 (D.C. Cir. 2002). "The protection from disclosure offered by Rule 26(b)(3) requires a more immediate showing than the remote possibility of litigation. . . . Litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation." *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (Fed. Cl. 2000) (quoting *Occidental Chem. v. OHM Remediation Servs.*, 175 F.R.D. 431, 434 (W.D.N.Y. 1997)). Defendant objects in a conclusory fashion to each of the interrogatories on the basis that the interrogatories seek attorney work product protected under the work product doctrine. *See*, *e.g.*, Pl. App. at 27-33, Def.'s Resp. to Interrogatory Nos. 8-17 ("Defendant objects to this interrogatory upon the ground that the requested information consists of attorney work product and material protected by the attorney-client privilege or the attorney work product doctrine."). Defendant fails to set forth objective facts to support its claim for privilege and does not show that there was a *real* possibility, rather than a just a remote possibility, of litigation at the time of preparation of the work product. Accordingly, the Court finds Defendant's invocation of the work product doctrine to be deficient.

### 2. Attorney-Client

In a similar vein, Plaintiff avers that while the attorney-client privilege may attach to communications between an attorney and his client, when such communications refer to factual information the privilege does not generally attach to the underlying factual information itself.

Therefore, Plaintiff contends that the information sought by Plaintiff in its interrogatories was not protected by the attorney client privilege.

Defendant counters that Plaintiff's interrogatories do not request underlying factual information, but rather request the substance of evaluations of factual information by the attorneys in the Office of Counsel as part of their role in rendering legal advice to the agency. According to Defendant, by the time the REAs or certified claims were submitted to the agency, the likelihood of litigation was apparent and analysis of the claims was performed with litigation in mind. Therefore, for Defendant to respond to the interrogatories would reveal the mental processes of Defendant's attorneys and would reveal the substance of privileged attorney-client communications.

The attorney-client privilege protects communications between the attorney and his client for the purpose of obtaining legal advice. *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *In re Echostar Commc'n Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409,1415 (Fed. Cir. 1997). The requirements for asserting the attorney-client privilege have been reviewed by this Court:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . ; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484-85 (2000) (quoting *United States v. United Shoe Mach. Corp*., 89 F.Supp. 357, 358-59 (D. Mass. 1950)); accord *First Fed. Sav. Bank of Hegewisch v. United States*, 55 Fed. Cl. 263, 266 (2003). The protection extends only to the communications themselves and not to underlying factual information. *Upjohn*, 449 U.S. at 395-96 (1981); *In re Unilin Cecor N.V.*, 153 Fed. Appx. 726, 728 (Fed. Cir. 2005); *Energy Capital*, 45 Fed. Cl. at 485; *Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 314 (2002). "The burden of establishing the attorney-client privilege rests upon the party claiming privilege." *Energy Capital*, 45 Fed. Cl. at 484; *First Fed. Sav. Bank*, 55 Fed. Cl. at 267; *Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450-51 (6th Cir. 1983) (reviewing law from circuit courts); Paul R. Rice, 2 Attorney-Client Privilege in the U.S. § 11:9, at 76-78 (2d ed. 1999). In response to each of the interrogatories, Defendant merely states that to answer the interrogatories would require disclosure of information protected by the attorney-client privilege. Such a conclusory statement does not

satisfy Defendant's burden. Instead, for each of the interrogatories for which Defendant seeks to invoke the privilege, Defendant must set forth objective facts to establish that the requirements set forth above are met. To the extent that Plaintiff's interrogatories request dates of reviews, identity of documents and names of individuals, the attorney-client privilege surely does not apply. To the extent that Plaintiff's interrogatories request a description of any review, analysis or evaluation, and the result thereof, Defendant must establish that the requested reviews, analyses or evaluations are encompassed within attorney-client communications made for the purpose of obtaining legal advice.

**C. Unduly Burdensome**

Defendant avers that, in Case No. 04-1719, the total number and scope of the interrogatories rendered them unduly burdensome. Defendant asserts that Plaintiff's First Set of Interrogatories included fifty interrogatories, many of which included numerous, discrete subparts. According to Defendant, the interrogatories were extensive, covered a broad range of subject matter, and required extremely detailed responses. Defendant further asserts that subsequent sets of interrogatories likewise included numerous, discrete subparts. Hence, Defendant asserts that Plaintiff's interrogatories in Case No. 04-1719 were collectively unduly burdensome. Plaintiff responds that Defendant waived its right to object to the number of interrogatories by not objecting to the Court before responding to the interrogatories.[7]

RCFC 33(b)(4) states:

> All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

Several federal courts have held that if the responding party wishes to object to the number of interrogatories as excessive, the responding party must object to the court before responding to the interrogatories; otherwise, the objection is waived. *Allahverdi v. Regents of the Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005); *Herdlein Tech., Inc. v. Century Contractors, Inc.*, 147 F.R.D. 103, 104-05 (W.D.N.C. 1993). This Court finds that here, too, Defendant has waited too long to object to the overall magnitude of Plaintiff's interrogatories. Accordingly, Defendant's objection has been waived.

In addition to its general objection to the number of interrogatories, Defendant also makes specific objections to certain interrogatories in Case No. 04-1719 on the grounds that they are

[7] Plaintiff also argues that Defendant's interrogatories in Case No. 04-1719 are similarly extensive, consisting of forty-three interrogatories, many containing numerous, discrete subparts. Defendant's interrogatories, however, are not a part of this motion to compel and are not before the Court for consideration.

unduly burdensome, vague and/or overbroad.[8] Plaintiff counters that Defendant's objections to the interrogatories are improper because they do not provide a detailed explanation of why each of the interrogatories is overbroad or unduly burdensome, and they do not set forth facts demonstrating the extent and nature of the burden, supported by affidavits or other evidence.

As a starting point, the scope of discovery is set forth in RCFC 26(b)(1):

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

A party's right to discovery is not unlimited, however. RCFC 26(b)(2) provides:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under RCFC 26(c).

Here, Defendant did not move for a protective order under RCFC 26(c) to avoid having to answer Plaintiff's interrogatories. Instead, Defendant answered some interrogatories and objected to others on the grounds that they were vague, overbroad and/or unduly burdensome. Now that Plaintiff has filed a motion to compel answers to the interrogatories, Defendant points to its prior objections as a defense to Plaintiff's motion to compel and asks the Court to act on its own initiative, based on Defendant's objections, to limit the scope of Plaintiff's interrogatories.

---

[8] Defendant notes that although it articulated its specific objections to the interrogatories in a letter dated December 14, 2006, Plaintiff did not address the merits of these objections or clarify or narrow the interrogatories in response.

RCFC 33(b)(4) mandates that "[a]ll grounds for an objection to an interrogatory shall be stated with specificity."[9] Consistent with that, most federal courts have required that a party objecting to an interrogatory on the grounds of undue burden specifically show how the interrogatory is overly broad, burdensome or oppressive; a mere statement that the interrogatory is overly broad, burdensome or oppressive has been held inadequate. *McLeod v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *Panola Land Buyers Assoc. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982); *Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996). Some court have even required the objecting party to produce affidavits or offer other evidence to show the nature of the burden. *Pac. Gas & Elec. Co.*, 69 Fed. Cl. at 325-26; *United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 413 (D. Md. 2005); *Oleson v. K-Mart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984). In response to each of Plaintiff's interrogatories, Defendant merely stated in conclusory fashion that it objected to the interrogatory on the grounds that the interrogatory was vague, overbroad, and/or unduly burdensome. Such was clearly not enough, pursuant to RCFC 33(b)(4). However, Defendant now tries to make up for its earlier deficiency by providing, in its response to Plaintiff's motion to compel, a more detailed explanation for why each of the interrogatories in Case No. 04-1719 is improper.

**1. Interrogatory Nos. 23, 34 and 35**[10]

Interrogatory Nos. 23, 34, and 35 are as follows:

> Interrogatory No. 23
> Identify *any review, analysis and/or evaluation* of A.A.B's March 2, 2004 answers in response to the questions in the aforementioned December 19, 2003 letter, including (a) the date(s) of the review, analysis and/or evaluation; (b) the results of the review, analysis or evaluation; (c) the result of the review, analysis and/or evaluation [sic]; (d) all documents concerning the review, analysis and/or evaluation; and (e) the identity of all persons with knowledge of the review, analysis and/or evaluation.

---

[9] Fed. R. Civ. Proc. 33(b)(4) is identical to RCFC 33(b)(4).

[10] Although Defendant also objects to Interrogatory No. 33, Plaintiff notes that the relevance of Interrogatory No. 33 hinges on the Court's decision on Defendant's motion to dismiss the subgrade replacement claim. Since the Court granted Defendant's motion, the dispute regarding Interrogatory No. 33 is now moot. *AAB Joint Venture v. United States*, Nos. 04-1719 C, 06-49 C, 05-114 C, 05-1172 C, 2007 WL 259896 (Fed. Cl. January 26, 2007).

> <u>Interrogatory No. 34</u>
> Describe *any review, analysis and/or evaluation* of A.A.B's and/or its subcontractors' sorting, screening and/or crushing operations to produce fill material at the Project, including (a) the date(s) of such review, analysis or evaluation; (b) the results of such review, analysis and/or evaluation; (c) the identity of any documents concerning the review, analysis and/or evaluation; and (d) the identity of any person with knowledge of the review, analysis and/or evaluation.
>
> <u>Interrogatory No. 35</u>
> Describe in detail *any review, analysis and/or evaluation* of A.A.B's and/or its subcontractors' excess material disposal operations at the Project, including (a) the date(s) of such review, analysis and/or evaluation; (b) the results of such review, analysis and/or evaluation; (c) the identity of any documents concerning the review, analysis and/or evaluation; and (d) the identity of any persons with knowledge of the review, analysis and/or evaluation.

Pl.'s App. at 12, 15 (emphases added).

Defendant objects to these interrogatories because a "review, analysis and/or evaluation" could include everything from a formal, written report to an oral comment. Furthermore, according to Defendant, the March 2, 2004, letter, is a forty-six page document containing answers to sixty-two questions and with numerous attachments, and the referenced project operations are broad areas of operations conducted by many individuals at many locations over an extended period of time. Defendant avers that although the referenced operations may have been affected by the alleged differing site conditions, not every review, analysis and/or evaluation of these operations is relevant. Defendant asserts that the interrogatories exceed relevant subject matter and, therefore, to require Defendant to respond to each subsection of the interrogatories would be unduly burdensome.

Plaintiff responds that the March 2, 2004, letter was in essence a reply by Plaintiff to sixty-two questions propounded by Defendant. Plaintiff contends that it is absurd for Defendant to complain about an interrogatory based on that letter, since the length and complexity of the letter is due entirely to the length and complexity of Defendant's own questions. With regard to Interrogatories Nos. 33 and 34, Plaintiff contends that the interrogatories pertain to Plaintiff's claim for excess material disposal and Rolider's claim for added costs for earthworks. Since the interrogatories clearly requested relevant information, Plaintiff avers that Defendant's failure to provide any information in response was improper.

The Court agrees that the interrogatories are reasonably likely to lead to relevant subject matter and that Defendant's objection is, at least in part, unwarranted. To the extent that the interrogatories request information regarding "any review, analysis and/or evaluation," the Court

reasonably construes that to mean any *written* review, analysis and/or evaluation, and Defendant is required to answer the interrogatory accordingly. Defendant need not answer the interrogatories with regard to any oral communications.

**2. Interrogatory No. 24**

Interrogatory No. 24 is as follows:

> Interrogatory No. 24
> Describe in detail any exploration, testing, analysis and/or evaluation, which was performed *at any time prior to award of the Contract*, of the subsurface conditions at the Project (*including areas not in the scope of A.A.B.'s work*), including (a) the dates of such exploration, analysis and/or evaluation; (b) result of the exploration, testing, analysis and/or evaluation; (c) identity of any documents concerning the exploration, testing, analysis and/or evaluation; (d) the documents concerning the request for proposal for the exploration, testing, analysis and/or evaluation; (e) the scope of the exploration, testing, analysis and/or evaluation; (f) any bids received for such exploration, testing, analysis and/or evaluation; (g) the person(s) or entity(ies) who performed the exploration, analysis, testing and/or evaluation; (h) the contract for the exploration, analysis, testing and/or evaluation; and (i) the identity of any persons with knowledge of the exploration, testing, analysis or evaluation.

*Id*. at 12-13 (emphases added).

Defendant contends that to provide the requested information for a time period with no designated starting point and including areas outside of the scope of Plaintiff's work is plainly overbroad and unduly burdensome. Plaintiff counters that although the interrogatory requests information outside the scope of Plaintiff's work, the information is limited to subsurface conditions at the Project. With respect to the time period, Plaintiff contends that Defendant should have made a reasonable interpretation of the phrase "at any time prior to award of the contract," rather than refusing to answer the interrogatory at all. Plaintiff recommends that the Court limit the time period from January 1, 1999, to June 5, 2001.

The Court finds the language "at any time prior to award of the contract" to be overbroad. Therefore, the Court substitutes the dates recommended by Plaintiff, namely January 1, 1999, to June 5, 2001. In addition, the Court finds that to the extent the interrogatory requests information regarding the subsurface conditions outside the scope of AAB's work, the interrogatory is overbroad. Therefore, Defendant may limit its answer to the subsurface conditions within the scope of AAB's work.

**3. Interrogatory No. 27**

Interrogatory No. 27 is as follows:

> Interrogatory No. 27
> Describe in detail *any review, testing, analysis or evaluation* of the *subsurface conditions* actually *encountered during performance of the Contract*, including (a) the dates of such review, testing, analysis or evaluation; (b) the results of the review, testing, analysis or evaluation; (c) the identity of any documents concerning the review, testing, analysis or evaluation; and (d) the identity of any persons with knowledge of the review, testing, analysis or evaluation.

*Id*. at 13 (emphases added).

Defendant again objects that an "analysis or evaluation" could consist of anything from a formal, written report to an oral comment. Moreover, according to Defendant, this case concerns only those subsurface conditions encountered during contract performance that allegedly differed from the conditions represented in Defendant's solicitation, not all subsurface conditions encountered during contract performance. Further, Defendant avers that the term "subsurface conditions" could encompass general widespread conditions or specific local conditions. For these reasons, Defendant avers that the interrogatory is overbroad and unduly burdensome. Plaintiff replies that Defendant's objection to "analysis or evaluation" is without merit.[11] Furthermore, Plaintiff avers that Defendant is required to make a conscientious, good-faith effort to comprehend the interrogatory and answer it explicitly.

As discussed above, the Court construes "analysis or evaluation" to be limited to a *written* analysis or evaluation. Moreover, in reasonably interpreting the interrogatory, the Court deems an adequate response by Defendant to be limited to those conditions that allegedly differed from the conditions in Defendant's solicitation.

**4. Interrogatory No. 36**

Interrogatory No. 36 is as follows:

> Interrogatory No. 36
> Describe in detail *any pre-bid review, analysis, evaluation* and/or estimate of the costs of removal and/or disposal of the excess excavated material from the Project in accordance with the Contract

[11] Plaintiff also asserts that Defendant has used the same terms in its own interrogatories. But, Defendant's interrogatories are not currently before the Court, so the Court will not consider that argument.

> requirements, including (a) the date(s) of such review, analysis, evaluation and/or estimate; (b) the results of such review, analysis, evaluation and/or estimate; (c) the identity of any documents concerning the review, analysis, evaluation and/or estimate; and (d) the identity of any person with knowledge of the review, analysis, evaluation and/or estimate.

*Id*. at 15 (emphasis added).

Defendant contends that this interrogatory is overbroad and unduly burdensome for reasons similar to those discussed for Interrogatory Nos. 23, and 33-35. Plaintiff contends that the information sought in Interrogatory 36 is relevant to the reasonableness of Plaintiff's assumptions in arriving at its bid price for removal and disposal of excess material.

For reasons discussed above, the Court interprets the interrogatory to be limited to information pertaining to any *written* review, analysis, or evaluation, and requires Defendant to answer accordingly.

**5. Interrogatory Nos. 38, 39 and 47**[12]

Interrogatories Nos. 38, 39 and 47 are as follows:

> Interrogatory No. 38
> Describe in detail *any communications, written or oral*, among or between USACE, IDF, ILA, MOD, Blank-Lehrer and/or any other entity concerning the claims by A.A.B which are the subject of this action.
>
> Interrogatory No. 39
> Describe in detail *any communications, written or oral*, between or among USACE, IDF, MOD, Blank-Lehrer and/or any other entity concerning the claims by Rolider which are included in Count I of this action.
>
> Interrogatory No. 47
> Identify *all communications, written or oral*, between or among USACE, MOD, IDF, ILA, Blank-Lehrer, and/or any other entity

[12] Although Defendant also objects to Interrogatory No. 40, Defendant acknowledges that the interrogatory is irrelevant because the claim on behalf of Barashi has been dismissed by the Court for lack of subject matter jurisdiction. *AAB Joint Venture v. United States*, No. 04-1719 C, 2005 WL 5050114 (Fed. Cl. November 1, 2005). Therefore, the Court considers any dispute with respect to Interrogatory No. 40 to be moot.

> concerning the legal and/or contractual requirements for disposal, sale or use of excess materials from the Project site.

*Id*. at 16-17 (emphases added).

Defendant objects to each of Interrogatory Nos. 38, 39 and 47 because they are catch-all requests asking for description or identification of any and all communications related to the case. Defendant contends that it would be impossible to recall all informal, oral communications concerning the named topics. Therefore, Defendant asserts that the interrogatories are vague, overbroad and unduly burdensome. To the extent that the interrogatories are directed to communications directly related to the claims in the complaint, Defendant contends that communications to/from USACE are protected by the attorney-client privilege and/or work product doctrine.

Plaintiff concedes that neither party can be expected to recall every informal, oral conversation regarding the topics; however, Defendant was still required to reasonably interpret the interrogatories and make a conscientious, good-faith effort to answer them explicitly.[13]

The Court agrees that Defendant's response is inadequate. But, the Court finds the interrogatories to be overbroad to the extent that they relate to oral communications. Therefore, the Court limits the interrogatories to *written* communications. Defendant shall answer the interrogatories accordingly. Any objections based on the attorney-client privilege or the work product doctrine are deficient for the reasons discussed above. If Defendant wishes to make such privilege objections, Defendant shall comply with the requirements set forth above.

### 6. Interrogatory No. 50

Interrogatory No. 50 is as follows:

> Interrogatory No. 50
> Identify *all agreements, written or oral*, which USACE entered into with IDF, MOD, ILA, Blank-Lehrer and/or any other entity concerning the Project.

*Id*. at 18 (emphasis added).

---

[13] Plaintiff alleges that Defendant utilized identical language in its own interrogatories (specifically Interrogatories Nos. 22-24 and 29 of Defendant's First Set of Interrogatories) and that Plaintiff, although objecting on the basis of overbreadth and undue burden, provided adequate responses. Since Defendant's interrogatories are not the subject of this motion and are not before Court, the Court will not consider them. However, the Court advises both parties to exercise consistency between their interrogatories and responses thereto.

Defendant argues that the Interrogatory No. 50 is also a catch-all request that is vague, overbroad, and unduly burdensome. Plaintiff argues as above for Interrogatories Nos. 38, 39 and 47.

Like Defendant's response to Interrogatories Nos. 38, 39 and 47, the Court finds Defendant's response to Interrogatory No. 50 to be deficient. Moreover, the Court finds that this interrogatory, even though directed to *written or oral* agreements, is not overly burdensome. Defendant shall answer the interrogatory accordingly.

**7. Interrogatory Nos. 26 and 42**

Interrogatory Nos. 26 and 42 are as follows:

> <u>Interrogatory No. 26</u>
> Describe in detail any provision in the RFP documents that was intended *to alert bidders to the lack of adequate geotechnical information in the RFP* and/or *to alert bidders to rely upon the differing site conditions clause in the Contract*.
>
> <u>Interrogatory No. 42</u>
> Describe in detail *any report, analysis or evaluation* which compared or contrasted the *subsurface materials expected to be encountered* at the Project with the subsurface materials actually encountered at the Project, including (a) the dates of such report, analysis or evaluation; (b) the results of such report, analysis or evaluation; (c) the identity of any documents concerning the report, analysis or evaluation; and (d) the identity of any persons with knowledge of the report, analysis or evaluation.

*Id*. at 13, 16 (emphases added).

Defendant contends that Interrogatory Nos. 26 and 42 are improperly based on erroneous assumptions regarding core disputed issues in the litigation, i.e., that there was a lack of adequate geotechnical information, that there were differing site conditions, and that the subsurface materials actually encountered at the Project differed from those expected. Further, Defendant contends that the phrase "to alert bidders to rely upon differing site conditions" in Interrogatory No. 26 is vague. And, Defendant notes that bidders always have a duty to comply with the contract provisions, even when there are RFPs. Defendant argues that Interrogatory No. 42 is overbroad and unduly burdensome for reasons similar to Interrogatory Nos. 23 and 33-35. Further, Defendant contends that the phrase "expected to be encountered" is vague in that it is not clear whose expectations are intended.

Plaintiff again contends that Defendant has not met its burden with respect to making an overbroad, unduly burdensome objection, and Defendant's objection to the phraseology, "expected to be encountered," as vague is disingenuous. Plaintiff also asserts that there is simply no basis for contending that the language of the interrogatories implies that there was a difference between the actual and expected conditions.

The Court agrees that Interrogatory No. 26 makes too many assumptions and is vague. Therefore, Defendant need not answer Interrogatory No. 26. The Court construes "expected to be encountered" in Interrogatory No. 42 to mean based on Defendant's solicitation, and construes "any report, analysis or evaluation" to be limited to any *written* report, analysis or evaluation. Defendant shall answer Interrogatory No. 42 accordingly.

## III. Conclusion

Plaintiff's Motion for Order Compelling Discovery with Respect to Defendant's Responses to Plaintiff's Answers to Interrogatories in Case Nos. 04-1719, 04-1792 and 05-144 is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff's motion with respect to Case No. 04-1792 is denied. Plaintiff's motion with respect to Case Nos. 04-1719 and 05-144 is granted to the extent that the Court orders Defendant to supplement its answers as set forth below. Because Defendant's response was justified at least in part, Plaintiff's motion for award of sanctions is denied.

The Court ORDERS Defendant, on or before **March 28, 2006**, to supplement its answers to Plaintiff's interrogatories in accordance with the guidance set forth in this opinion. If Defendant wishes to make objections to any of the interrogatories as vague, overbroad, or unduly burdensome, or wishes to assert the work product or attorney-client privilege, Defendant shall comply with the requirements for such objections or privileges as set forth in this opinion.

The Court ORDERS the parties, on or before **April 25, 2006**, to file a Joint Status Report, discussing what, if any, outstanding disputes remain regarding answers to interrogatories. In the Joint Status Report, the parties shall also propose a revised discovery schedule including a deadline for completion of additional fact witness depositions, made necessary by this order, and deadlines for completion of expert discovery.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge