# In the United States Court of Federal Claims

No. 04-1719 C, No. 05-114 C, No. 05-1172 C, and No. 06-49 C
(CONSOLIDATED)

(Filed: February 28, 2007)

| | |
|---|---|
| **AAB JOINT VENTURE,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | Motion to compel responses to requests for production of documents; RCFC 26; RCFC 37; work product privilege; attorney-client privilege; duty to preserve evidence; restoration of back-up tapes |

*Brian Cohen*, of Bell, Boyd & Lloyd, Washington, D.C., for Plaintiff.

*Shalom Brilliant*, Senior Trial Counsel, with whom were *David M. Cohen*, Director, *Peter D. Keisler*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant. *Paul Cheverie*, Command Counsel, *Brett R. Howard*, Assistant Command Counsel, Europe District, U.S. Army Corps of Engineers, of counsel.

## OPINION AND ORDER

**DAMICH**, Chief Judge.

Before the Court in this government contract case is Plaintiff's Motion for Order Compelling Discovery with Respect to Defendant's Responses to Plaintiff's Requests for Production of Documents in Case Nos. 04-1719C, 04-1792C[1] and 05-144C. For the reasons set forth below Plaintiff's motion is GRANTED-IN-PART and DENIED-IN-PART.

---

[1] To the extent that Plaintiff seeks relief in Case No. 04-1792, the motion filed in this consolidated case (Case Nos. 04-1719, 05-114, 05-1172, and 06-49) is improper.

## I. Background

AAB entered into a contract with the government on June 5, 2001, to design and construct a storage and logistics base in Elad, Israel for use by the Israeli Defense Force ("IDF"). Am. Compl. in Case No. 04-1719, ¶ 4, 6. Attached to the government's Request for Proposal ("RFP") was a Geotechnical Report, which characterized the sub-surface in most of the building areas as mostly massive and hard, consisting of limy dolomite rock. *Id.* ¶ 7. In January 2002, AAB performed exploratory borings, which revealed different subsurface conditions from those shown in the Geotechnical Report. *Id.* ¶ 16.

On November 30, 2004, AAB filed suit in this court (Case No. 04-1719), requesting compensation for the increased costs incurred as a result of the alleged differing site conditions encountered at the work site. *Id.* ¶ 42, 60, 80, 99, 118, 137, 156, 175, 194, 213. On January 15, 2005, AAB filed another complaint (Case No. 05-114), requesting an equitable adjustment for alleged changes and suspension of work as a result of the disallowance of the use of third country national ("TCN") construction workers and the requirement of an alternate paint system on the insulated panels. Compl. in Case No. 05-114, ¶ 8-10, 65. AAB filed three additional complaints, which are currently pending before this Court (Case Nos. 04-1792, 05-1172 and 06-49). Case Nos. 04-1719, 05-114, 05-1172, and 06-49 were consolidated on April 12, 2006, Case No. 04-1719 being the lead case.

During the summer of 2005, Plaintiff served on Defendant numerous requests for production of documents and interrogatories in Case Nos. 04-1719 and 05-114. App. to Pl.'s Mot. to Compel ("Pl.'s App.") at 1-25, 83-99.

In response to Interrogatory No. 1 of Plaintiff's First Set of Interrogatories in Case No. 04-1719, Defendant identified the following individuals who participated in preparing answers to the interrogatories: (1) Leslie Bearden; (2) Mike Iarosi; and (3) William Thievon. Pl.'s Mot. to Compel ("Pl.'s Mot.") at 5.[2]

In response to Interrogatory No. 2 of Plaintiff's First Set of Interrogatories in Case No. 04-1719, Defendant identified the following individuals who participated in the preparation of the RFP: (1) Louis Bracket; (2) Pat Brady; (3) Ragan Glandon; (4) Anne Gunzel; (5) Jim Noble; (6) Rob Saari; and (7) Mark Shore. *Id.*

In response to Interrogatory No. 28 of Plaintiff's First Set of Interrogatories in Case No. 04-1719, Defendant identified the following individuals principally involved in the preparation

[2] Plaintiff fails to include, as an attachment to its motion, Defendant's response to Plaintiff's First Set of Interrogatories in Case No. 04-1719; however, Defendant's response is included in the Appendix to Plaintiff's concurrently filed Motion for Order Compelling Discovery with Respect to Defendant's Answers to Interrogatories in Case Nos. 04-1719C, 04-1792C and 05-144C. App. at 20-60.

of estimates for the cost of earthworks and/or foundation excavation operations, and cut and fill quantities, for the contract: (1) Mark Fascher; (2) Raoul Gonzales; (3) Reemt Pauw; (4) Dagobert Goebel; (5) Mark Shore; and (6) Wolf Wolfram. *Id*. at 5-6.

In response to Interrogatory 29 of Plaintiff's First Set of Interrogatories in Case No. 04-1719, Defendant identified the following individuals who observed Plaintiff's, and/or its subcontractor's, earthwork and/or foundation excavation operations on the project: (1) Colonel Lieberman, (2) Lt. Colonel Einat Rozen, (3) Lt. Colonel Roitman, and (4) Rami Kerekesh (all of the Israeli Defense Force); (1) Tsimchi Manoach, and (2) Uria Ayal (both of the Ministry of Defense); (1) August Carrillo, (2) Bryan Jordan, (3) Douglas Bonham, (4) Helmut Walter, (5) LTC John Rovero, (6) William Granderson, (7) Yacov Shafat, (8) Yair Shani, and (9) Zvi Sarti (all of the U.S. Army Corps of Engineers ("USACE")). *Id*. at 6.

On November 11, 2005, Plaintiff sent a letter to Defendant setting forth what Plaintiff considered to be deficiencies in Defendant's responses to Plaintiff's requests for production of documents. Pl.'s App. at 120-45. Plaintiff noted seventy-seven document deficiencies with respect to Case No. 04-1719 and fifty deficiencies with respect to Case No. 05-114. *Id*. at 120-31, 137-42. Plaintiff further complained that Defendant had not produced any documents regarding analyses of claims submitted by Plaintiff nor any pre-award documents. *Id*. In the letter, Plaintiff specifically identified the following documents which had not been produced: (1) videos; (2) progress photos; (3) personal files, diaries, logs, and notes; (4) documents referenced in responses to interrogatories in Case No. 04-1719; (5) files from QC box 1, section 09-quality QA/QC file; (6) boxes from Wiesbaden; and (7) internal notes, internal meeting memoranda, and diaries from contracting officer Mills. *Id*. at 142-45. Lastly, Plaintiff noted that no documents or e-mails had been produced for the individuals identified by the government in its response to Interrogatory Nos. 1 and 2 of Plaintiff's First Set of Interrogatories. *Id*. at 125-26, 129-30. Defendant responded to Plaintiff's November 11, 2005, letter by stating that Defendant would investigate whether the purportedly missing documents were available in paper or electronic format. *Id*. at 146-49. Defendant also stated that e-mails prior to June 2001 were only available on magnetic tape, which would be expensive and time-consuming to restore, and that there was a period of time prior to June 2001 for which there was no e-mail connectivity. *Id*.

On December 8, 2005, Plaintiff sent a letter to Defendant reiterating its concern that Defendant had not produced pre-award documents, Wiesbaden documents, and documents of persons identified in the government's response to Interrogatory 2 of Plaintiff's First Set of Interrogatories. Pl.'s App. at 150-57. Plaintiff also asked Defendant to provide access to the original borings depicted in the Geotechnical Report. *Id*.

Defendant produced a privilege log on December 22, 2005. Pl.'s App. at 158-65. Thereafter, Defendant informed Plaintiff that, in contrast to its earlier letter, there were no back-up magnetic tapes for e-mails prior to 2003 and that recovering e-mails prior to March 2004 for Wiesbaden would be costly and time-consuming. *Id*. at 166-67.

On February 22, 2006, Plaintiff sent another letter to Defendant again pointing out Defendant's failure to produce any pre-award documents and noting Defendant's duty to preserve evidence, even evidence in electronic format. *Id*. at 168-72.

On May 5, 2006, Plaintiff served a request for production of documents and a set of interrogatories in Case No. 04-1719, after consolidation of Case Nos. 04-1719, 05-114, 05-1172, and 06-49. Pl.'s App. at 173-92.

In response to Interrogatory 1(f), Defendant identified the following 27 individuals "known to have generated email related to the subject matter of this litigation": (1) Ezra Abraham; (2) Leslie Bearden; (3) Joseph Blackburn, Jr.; (4) Doug Bonham; (5) Lewis Brackett; (6) Pat Brady; (7) Steven J. Buckel; (8) August Carrillo; (9) Mark Fascher; (10) Ragan Glandon; (11) William Granderson; (12) Anne Gunzel; (13) Michael Iarosis; (14) Bryan Jordan; (15) Robert Kreienheder; (16) Colonel Larry D. McCallister; (17) Ronald McPeters; (18) William Mills; (19) James Noble; (20) Michael Roach; (21) John Rovero; (22) Robert Saari; (23) Mark Shore; (24) Gordon L. Simmons; (25) Colonel Lee A. Staab; (26) William Theivon; and (27) Helmut Walter. *Id*. at 197-99.

In response to Interrogatory No. 5, Defendant states that "[n]o backup tapes exist prior to July 2003." Pl.'s App. at 205. Defendant then provides a chart listing all back-up tapes that do exist and for what time periods. *Id*. at 206.

## II. Analysis

### A. Document Production

#### 1. Documents Pertaining to Design Phase

Plaintiff contends that it has not received any response from Defendant on numerous document requests in Case Nos. 04-1719 and 05-114, pertaining to the design phase of the project. In particular, Plaintiff contends that the following documents have not been produced:

> <u>Case No. 04-1719</u>[3]
>
> a. Documents concerning the review, preparation, analysis and all aspects pertaining to the development of the Geotechnical Report;

[3] The relevant Requests for Production of Documents are No. 24, 29, 30, 34-36, 50, 52, 53, 62-73, 85, 86, 88, 91, 94, 97-100, and 102. Pl.'s Mot. at 18. Although Plaintiff indicates that its First Request for Production of Documents is attached as Exhibit 1, *id*. at 1, Exhibit 1 is Plaintiff's First Set of Interrogatories. Plaintiff fails to attach a copy of its First Request for Production of Documents in Case No. 04-1719; however, Defendant's response is attached as Exhibit 5. Pl.'s App. at 60-82.

b. Documents pertaining to the analysis of pre-proposal geological borings and subsurface conditions;
c. Documents pertaining to all aspects of the development of the request for proposals; and
d. Documents pertaining to the planned removal or disposal, reuse or sale of excess soils and excavated material.

Case No. 05-114[4]
a. Documents concerning AAB's technical and management proposal;
b. Documents concerning or analyzing contract provisions SR-13, SR-14, SR-22 or the third country national tax plan;
c. Documents pertaining to the design, drawings and/or specifications relating to the paint system;
d. Documents pertaining to the development of the RFP with regard to labor and/or the use of TCN labor; and
e. Documents pertaining to communications from bidders concerning either TCN labor or the paint system.
f. Documents pertaining to criteria for the DSB insulated panel exterior facing paint system.

**2. Specific Requested Documents**

Plaintiff further contends that the following documents remain unproduced by Defendant despite several letters from Plaintiff requesting the documents:

a. Videos;
b. Personal files, diaries, logs and notes;
c. QA/QC files
d. Ten boxes from Wiesbaden;
e. Internal notes, internal meeting memoranda or diaries of Mr. Mills;
f. Documents supporting or relating to the Geotechnical Report;
g. Other bids;
h. Power Point presentations or status reports; and
i. Original boring cores depicted in the Geotechnical Report.

---

[4] The relevant Requests for Production of Documents are No. 23-29, 46-50, 64-67, and 73. Pl.'s Mot. at 18-19; Pl.'s App. at 83-99.

Pl.'s Mot. at 33-34.[5]

### 3. Documents Referenced in Other Documents

Plaintiff also avers that several documents produced by Defendant request or refer to comments, analyses and reports, yet none of these referenced documents have been produced by Defendant despite requests from Plaintiff. The documents produced by Defendant, and the referenced documents therein which have not been produced, are as follows:

a. July 26, 2002, memo, which requests comments from IDF and Ministry of Defense ("MOD") on segment 56 claim;
b. March 2, 2004, memo, which refers to December 23, 2003, fax from MOD to Government;
c. March 5, 2004, memo from Roach to counsel for MOD, which refers to analysis of 3-inch/6-inch and Rolider claims;
d. May 10, 2004, memo, from Roach to counsel for MOD, requesting comments on insulated panel reprocurement;
e. June 14, 2002, e-mail from Roach to Kerekesh, which directs Kerekesh to record the actual conditions at each building site;
f. December 16, 2002, e-mail from Roach to Rovero, Blackburn, Abraham, and Iarosis, which refers to the IDF consolidated report;
g. February 18, 2003, memo from Col. Staab to MOD, which refers to February 10, 2003, letter from MOD regarding geotechnical issues;
h. November 12, 2003, memo from Roach to counsel for MOD, which refers to field analysis; and
i. December 3, 2003, memo from Roach to counsel for MOD, which refers to ten binders pertaining to geotechnical claims.

*Id*. at 31-33.

### 4. Electronic Documents

Finally, Plaintiff asserts that, in responses to Plaintiff's interrogatories, Defendant identified numerous individuals who were active participants in the review of the project design and/or in the preparation of the U.S. Government estimate, yet Defendant has produced no e-

---

[5] According to Plaintiff, the letters of November 11, 2005, December 8, 2005, and February 22, 2006, each address the production failures by Defendant.

mails, correspondence, or other documents from these individuals. In particular, Plaintiff asserts that Defendant has failed to produce e-mails for eight individuals employed by the USACE who were identified as being involved in the design phase of the project in Defendant's response to Interrogatories 1, 28, and 29 of Plaintiff's First Set of Interrogatories in Case No. 04-1719.[6] Further, Plaintiff asserts that Defendant has produced e-mails for only six of the twenty-seven individuals identified by Defendant as "known to have generated e-mail related to the subject matter of this litigation" in its response to Interrogatory No. 1(f) of Plaintiff's May 5, 2006, interrogatories.[7] No e-mails have been produced for the other twenty-one individuals.[8] Even for the six individuals for whom e-mails have been produced, Plaintiff contends that production is incomplete because e-mails were not produced for certain time periods as follows:

a. Ezra Abraham—no e-mails after December 14, 2004
b. Leslie Bearden—no e-mails before March 3, 2003, and after November 23, 2004; only five e-mails total.
c. Jody Blackburn—no e-mails before November 1, 2002, or after July 13, 2005.
d. Ron McPeters—no e-mails before May 29, 2002, or after May 10, 2004.
e. Michael Roach—no e-mails before March 5, 2002, or after September 1, 2004.
f. Gordon Simms—no e-mails after May 17, 2002.

*Id*. at 23-24.

**5. The Arguments**

Plaintiff asks the Court to issue an order directing Defendant to produce all of the above documents or to certify under oath that the documents do not exist. Plaintiff further asks the

---

[6] The eight individuals identified by Plaintiff are Yacov Shafat, Yair Shani, Zvi Sarti, Leslie Bearden, Raoul Gonzales, Reemt Pauw, Dagobert Goebel, and Wolf Wolfram. Pl.'s Mot. at 23. The inclusion of Leslie Bearden appears to be in error, however. Plaintiff states elsewhere in its motion that e-mails have been produced for Leslie Bearden, *id*. at 22-23.

[7] The individuals for whom e-mails have been produced, according to Plaintiff, are Ezra Abraham, Leslie Bearden, Joseph Blackburn, Jr., Ronald McPeters, Michael Roach, and Gordon L. Simmons. Pl.'s Mot. at 22.

[8] The individuals for whom no e-mails have been produced, according to Plaintiff, are Doug Bonham, Lewis Brackett, Pat Brady, Steven Buckel, August Carrillo, Mark Fascher, Ragan Glandon, William Granderson, Anne Gunzel, Michael Iarosis, Bryan Jordan, Colonel Larry D. McCallister, William Mills, James Noble, Robert Kreienheder, John Rovero, Robert Saari, Mark Shore, Colonel Lee A. Staab, William Thievon, and Helmut Walter. Pl.'s Mot. at 22.

Court to impose sanctions against Defendant because its production of documents has been materially deficient.

RCFC 26(a)(5) provides that one of the methods by which parties may obtain discovery is by requests for production of documents. RCFC 37(a)(2)(A) provides that "[i]f a party fails to make a disclosure required by RCFC 26(a), any other party may move to compel disclosure and for appropriate sanctions." The basis for imposition of sanctions is set out in RCFC 37(a)(4).[9]

Defendant argues that Plaintiff's document requests were extensive, Plaintiff's First and Second Requests for Production of Documents in Case No. 04-1719 containing 110 paragraphs and Plaintiff's First Request for Production of Documents in Case No. 05-114 containing 93 paragraphs. In response to Plaintiff's extensive document requests, Defendant contends that in October 2005 Defendant produced eighty boxes of documents, which included all relevant and responsive documents within Defendant's control, with the exception of privileged and electronic documents.[10] Further, Defendant contends that Defendant produced an additional 206 pages of documents in January 2006, after determining that the documents were not privileged. Defendant, therefore, asserts that its production efforts have been more than adequate. Plaintiff replies that the vast majority of the documents produced in the boxes were documents that the parties already possessed.

The Court finds that the parties' dispute about the number of boxes of documents produced and whether the documents are duplicative of documents already in the parties' possession does not get to the core issue of whether or not Defendant's response to Plaintiff's requests for production of documents has been deficient. Based on this alone, the Court cannot determine that Defendant was in violation of the discovery rules. Defendant does not specifically address any of the individual documents listed by Plaintiff in its motion. Accordingly, the Court deems it appropriate to order Defendant to address each of these specific documents, which were referenced in earlier requests for production of documents and/or letters of request from Plaintiff.

Defendant further proffers that individuals whom Defendant identified as having reviewed designs may have reviewed the designs without commenting, by commenting orally, or by putting notations on drafts, and therefore there would be no documents that meet Plaintiff's

---

[9] RCFC 26 and 37 largely track Fed. R. Civ. P. 26 and 37, respectively, and interpretation of Fed. R. Civ. P. 26 and 37 informs the Court's analysis. *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended June 20, 2006) (stating that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

[10] Plaintiff disputes the number of boxes, maintaining that there were actually only sixty or seventy boxes.

requests for production.[11] In addition, Defendant asserts that because the design and bidding documents for this project were provided by the Government of Israel, Defendant produced far fewer pre-award documents than would be produced if Defendant had created the design and bidding documents itself. Defendant also questions the relevance of documents from the design phase of the project.

Plaintiff replies that Defendant's arguments are mere unsupported speculation. Plaintiff contends that substantial documentation should have been generated during review pursuant to USACE regulations and procedures. According to Plaintiff, design documents are indeed relevant because they are likely to lead to admissible evidence pertaining to Plaintiff's differing site conditions and defective specification claims. Plaintiff urges the Court to order Defendant to provide affidavits by the individuals who conducted the reviews—such as, Louis Bracket, Pat Brady, Ragan Glandon, Anne Gunzel, Jim Noble, Rob Saari, Gordon L. Simmons, or Mark Shore—to address how they conducted their reviews.

The Court agrees that Plaintiff's requests for production of documents pertaining to design review are indeed relevant to the instant litigation. "Relevancy for the purposes of Rule 26 is broadly construed." *Batvia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993). Defendant's thoughts during design review are relevant to establish Defendant's beliefs as to conditions at the work site and the meaning of the design specifications at the inception of the project. In fact, Defendant has conceded that many of the individuals involved in design review generated e-mails relevant to the subject matter of the litigation. Defendant's speculation regarding how reviews may have been carried out and why fewer documents may have been produced for this project as compared to other projects does not obviate its duty to produce. It is inconceivable that the people intimately involved in design review did not produce any written documents concerning their reviews. The Court, therefore, finds that Defendant has not met its burden of production and that supplementation of document production to address each of the alleged deficiencies is appropriate under the circumstances.[12]

Although Defendant maintains that thousands of electronic documents were produced, Defendant concedes that it was unable to locate e-mails of some individuals who presumably generated e-mails within the scope of Plaintiff's document requests. Nevertheless, Defendant argues that to restore back-up tapes that may contain such e-mails would cost between $85,000

---

[11] For example, Defendant notes that the May 2000 draft of the specification contains handwritten annotations by unidentified person(s).

[12] Defendant indicates in its response that Defendant is willing to attempt to supplement its document production, provided such supplementation is reciprocal and a reasonable time period is set.

and $150,000 and take thirty days.[13] Defendant notes that many of the e-mails which were produced contained communications to/from numerous individuals, including those individuals whose own e-mails were not produced. Therefore, Defendant contends that Defendant has in fact produced e-mails for almost all of the twenty-one individuals for whom Plaintiff claims Defendant has not yet produced e-mails.[14] Defendant, therefore, concludes that production of additional e-mails would likely only duplicate e-mails which have already been produced. Moreover, Defendant avers that hard copies of numerous e-mails were contained in the boxes of documents produced by Defendant in October 2005, even if they were not selected for scanning by Plaintiff. Defendant argues that Plaintiff provides no evidence that the e-mails it accuses Defendant of failing to produce were not among the documents produced in October 2005.

Plaintiff replies that Defendant has still not produced e-mails generated by twenty-nine of the thirty-five individuals identified by Defendant,[15] with the exception of those e-mails which were sent to the six individuals for whom Defendant has produced e-mails. Plaintiff also objects that other documents contained in the e-mail accounts of the twenty-nine individuals have not been produced, including calendar, contacts, Israel reports, journal, top 10 lists, notes, and weekly updates.

The Court finds Defendant's arguments unpersuasive. While the presence of some e-mails of the requested individuals in the total e-mails that were produced does serve to lessen Defendant's production deficiencies, the Court agrees with Plaintiff that Defendant's overall production of e-mails has been far from adequate. If there are additional documents among the documents produced in October 2005 that Defendant can point to that meet the requests for production of documents, the Court will consider those in its overall assessment of Defendant's compliance with the discovery rules. Moreover, while cost is an issue for the court to consider in addressing a motion to compel, it is not the only consideration. Here, because the Court finds that defendant had a duty to preserve evidence, as set forth below, the Court cannot relieve Defendant of its duty to produce those documents merely because Defendant has chosen a means to preserve the evidence which makes ultimate production of relevant documents expensive. Accordingly, the Court concludes that Defendant has not adequately responded to Plaintiff's

---

[13] Defendant estimates that another thirty days would be required to review the restored documents to determine which documents are responsive to the document requests.

[14] Specifically, Defendant contends that included in the documents produced by Defendant are 10 e-mails from Doug Bohnam, 50 e-mails from Lewis Bracket, 13 e-mails from Steven Buckel, 70 e-mails from William Thievon, and 250 e-mails from John Rovero.

[15] The thirty-five individuals presumably are the eight USACE employees identified by Defendant in its responses to Interrogatory Nos. 1, 28, and 29 of Plaintiff's First Set of Interrogatories in Case No. 04-1719, and twenty-seven individuals identified by Defendant as having generated e-mails related to the subject matter of the litigation in its response to Interrogatory No. 1(f) of Plaintiff's May 5, 2006, Interrogatories in Case No. 04-1719.

requests for production of electronic documents and that supplementation of its response to Plaintiff's requests is necessary.

**B. Duty to Preserve Evidence**

Plaintiff contends that Defendant failed in its duty to preserve evidence. First, Plaintiff points out that the Nachshonim Project was authorized by the Wye River Accords and implemented by a letter of offer and acceptance ("LOA") between the Government of Israel and the USACE, which states that the contract is for design and design review. Pl.'s App. at 309. Note 5 ("GENERAL"), paragraph h of the LOA specifies that "[t]he USG [U.S. Government] shall review, correct, revise, and/or repackage designs and bidding documents provided by the GOI [Government of Israel]." *Id*. at 312. Note 5, paragraph k of the LOA stipulates that "[a]ll records created by the USG under the terms of this LOA will be maintained in a form that may be audited in accordance with USG standards and regulations." *Id*. at 313. Based on the LOA, Plaintiff argues that Defendant was obligated to review, correct and/or repackage the design and bidding documents provided by the Government of Israel and any documents created to that end would necessarily be records created "under the terms of th[e] LOA," which had to be maintained in a form that could be audited in accordance with U.S. Government standards and regulations. According to Plaintiff, Defendant has failed in that obligation.

Defendant argues that Note 5, paragraph k, is limited on its face to records that the government is required to keep pursuant to some other paragraph of the LOA.[16] Defendant contends that there is nothing in the LOA that requires the government to create and maintain written records of all communications related to its duty to "review, correct, revise, and/or repackage designs and bidding documents provided by the GOI." According to Defendant, any written records which may have been created pursuant to such activity do not constitute "records created by the USG under the terms of the LOA." The Court agrees that Plaintiff reads the LOA's requirement for maintenance of documents much too broadly. Moreover, the LOA imposes no duty on the government to preserve documents for the purpose of discovery in potential future litigation, and no penalty for the government's failure to do so. The proper basis for Plaintiff to seek a judicial remedy for failure to preserve evidence is through case law pertaining to the obligations of the parties with respect to discovery.

Federal courts have long recognized a duty of the parties to preserve relevant evidence for litigation. *Sesonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1573 (Fed. Cir. 1996); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001); *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004); *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 60 (2003); *Zubulake v. UBS Warburg LLC*, 220

[16] For example, Defendant points to Note 4 ("CONTRACT ADMINISTRATION SERVICES"), paragraph b, which recites: "The USG shall establish appropriate accounting systems to assure accurate compilation of cost expenditures and obligations in accordance with and pursuant to AECA." Pl.'s App. at 311.

F.R.D. 212, 216 (S.D.N.Y. 2003). The duty to preserve attaches not just when suit is filed, but whenever a party knows or should know that evidence may be relevant to anticipated litigation. *Silvestri*, 271 F.3d at 591 ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."); *Kronisch*, 150 F.3d at 126 ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."); *Pueblo of Laguna*, 60 Fed. Cl. at 135; *Renda Marine*, 58 Fed. Cl. at 60; *Zubulake*, 220 F.R.D. at 216. The scope of the duty to preserve extends to electronic documents, such as e-mails and back-up tapes. *Renda Marine*, 58 Fed. Cl. at 61; *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (2003); *Zubulake*, 220 F.R.D. at 216.

Plaintiff contends that Defendant failed in its duty to preserve any and all evidence relevant to the claims or defenses of the parties. Plaintiff avers that it provided written notice to Defendant of differing site conditions on January 22, 2002. Pl.'s App. at 220-21. Therefore, Plaintiff asserts that Defendant was under an affirmative obligation to preserve all evidence relevant to this litigation beginning in January 2002. According to Plaintiff, Defendant failed in its duty to preserve by not keeping back-up tapes prior to July 2003 even though its duty to preserve arose in January 2002. *See* Pl.'s App. at 205. Further, Plaintiff maintains that Defendant failed in its duty to preserve by not keeping back-up tapes for e-mails from August to October 2003, from April to August 2004, and from February to March 2006. *Id*. at 206. In fact, Plaintiff avers that Defendant did not issue any instruction to suspend data destruction until July 11, 2005, three and a half years after the duty to preserve arose. Plaintiff makes this assertion

based on Defendant's response to Interrogatory 8(c) of Plaintiff's May 5, 2006, Interrogatories.[17]

Defendant avers that Plaintiff overstates the time period(s) when Defendant was obligated to preserve documents relevant to the litigation. Defendant asserts that the January 22, 2002, letter from Plaintiff alleged differing site conditions only in a few specific locations. In the context of a project as large as the Nachshonim project, Defendant contends that such specific allegations did not cause Defendant to reasonably anticipate litigation and did not trigger a duty to preserve documents. Defendant contends that instead the duty to preserve arose in July 2002 when requests for equitable adjustment ("REAs") relating to this litigation were filed. Even if the January 22, 2002, letter did trigger a duty to preserve, Defendant avers that the duty extended only to the particular differing site conditions alleged in the letter. Although Plaintiff states that it vigorously disagrees that Defendant's duty arose only in July 2002, Plaintiff does not explain the basis for its disagreement.

The January 22, 2002, letter discussed the results of borings taken in Sections #56, #67, and #23, stated that the actual subsurface conditions at those locations differed from that described in the Contract, and reserved the right to seek an equitable adjustment for the costs associated with "present and future unanticipated subsurface conditions." Pl.'s App. at 220-21. The letter did not provide Defendant with the requisite certainty or specificity of impending

[17] In its response to Plaintiff's motion to compel, Defendant argues that Plaintiff has misconstrued Defendant's response to Interrogatory 8(c) to suggest that up until July 11, 2005, Defendant had in place a routine document destruction policy. In that interrogatory response, Defendant states: "On 11 July 2005 the Corps Office of Counsel sent a memorandum entitled 'Immediate Suspension of Document Destruction, AAB Joint Venture v. United States' to those personnel associated with the Nachshonim project." Pl.'s App. at 210. According to Defendant, although this memorandum may have been the first written directive to preserve documents, it was a follow-up to oral directives which had been made since the time that Plaintiff first alleged the existence of differing site conditions. Defendant contends that from the time that Plaintiff alleged differing site conditions, government employees were instructed not to destroy records during meetings, teleconferences, phone calls and "In Progress Reviews." App. to Def.'s Resp. to Pl.'s Mot. ("Def.'s App.") at 5. Moreover, Defendant notes that its response to Interrogatory 8(a) indicates that there was no document destruction policy in place at the time of the July 11, 2005, memorandum. In its reply brief, Plaintiff denies that it suggested that Defendant followed a routine document destruction policy. The Court, therefore, need not consider the issue of purposeful spoliation of evidence or bad faith, which might be necessary for the Court to draw an adverse inference. *Sensonics*, 81 F.3d at 1572-73; *Thompson*, 219 F.R.D. at 100-01. Instead, the Court need only determine when the duty to preserve attached and what evidence was required to be preserved. *See*, *e.g.*, *Zubulake*, 220 F.R.D. at 216-19.

litigation, nor did it apprise Defendant of the scope of the claims which would be filed.[18] The Court agrees with Defendant that the duty to preserve evidence did not attach until July 2002, when the REAs were filed and when Defendant could reasonably have anticipated the instant litigation. Therefore, any relevant e-mails or other documents in Defendant's possession on or after July 2002 should have been preserved by Defendant for production during discovery. Nonetheless, a determination by the Court that Defendant failed in its duty to preserve e-mails from July 2002 to June 2003, from August to October 2003, from April to August 2004, and from February to March 2006, as Plaintiff contends, will require consideration of what constitutes relevant evidence and whether Defendant has failed in its duty to preserve that evidence.

Plaintiff avers that Defendant has failed in its obligation to preserve evidence by not producing e-mails from eight individuals employed by the USACE who were identified by Defendant in response to Interrogatory Nos. 1, 28, and 29 of Plaintiff's First Set of Interrogatories as being involved in the design phase of the project. Moreover, Plaintiff asserts that Defendant has failed in its obligation by not producing e-mails for twenty-one of twenty-seven individuals identified by Defendant in response to Interrogatory No. 1(f) of Plaintiff's May 5, 2006, Interrogatories as "known to have generated e-mail related to the subject matter of this litigation," and for producing incomplete e-mails for the other six individuals. Plaintiff asks the Court to issue an order requiring Defendant to provide a declaration explaining its failure to preserve back-up tapes for the time periods when it was obligated to preserve evidence.

Defendant concedes that the e-mails that were produced by Defendant did not cover all time period(s) considered by Plaintiff to be relevant to the litigation. Defendant argues, however, that it produced some e-mails from as early as July 2002. According to Defendant, the fact that e-mails were not produced for all individuals that early, or that e-mails were not produced during other periods of time, does not prove that Defendant failed in its duty to preserve. Defendant contends that there is no basis for presuming that all individuals generated relevant, non-privileged documents during the entire period from July 2002 to the present. Defendant further argues that, of the individuals identified by Defendant as having generated e-mail related to the subject matter of the litigation, Defendant produced e-mails from many of them even if not from their own e-mail folders. As for individuals for whom no e-mails were produced, Defendant argues that there is no evidence that those individuals generated such e-mails or that such e-mails were destroyed by Defendant.

The Court finds Defendant's speculation about why e-mails or e-mail folders may be missing to be wholly inadequate. Defendant has itself conceded in response to Interrogatory No. 1(f) that twenty-seven individuals were "known to have generated e-mail related to the subject matter of this litigation." For Defendant to now suggest that some of the individuals may not

---

[18] The claims filed in Case No. 04-1719 seek equitable adjustments resulting from alleged differing site conditions in Segments #67, #45, #56, #34, #10, #78, #89, #91, #11, #12, and #23.

have produced relevant e-mails is preposterous. The other eight USACE employees identified by Defendant should also have produced relevant e-mails, given their role in the design of the project. The fact that Defendant has retrieved e-mails from many of the individuals, as part of the six individuals' e-mails which were produced, further supports the fact that most, if not all, of the thirty-five individuals generated relevant e-mail. The Court agrees with Plaintiff that if Defendant does not possess e-mails for any of the thirty-five individuals for all or a portion of the time period when Defendant was under a duty to preserve evidence, then Defendant should provide a sworn declaration attesting to that fact. Similarly, if Defendant possesses e-mails for any of the individuals, but concludes that some or all of the e-mails are not relevant to the litigation, a sworn declaration should be produced.

Defendant contends that some e-mails may be among those stored on back-up tapes that are very expensive and time-consuming to restore. Defendant states that all back-up tapes relating to the Nachshonim project have been collected and that Defendant is willing to restore some of the back-up tapes, provided that a manageable number of tapes is requested and Plaintiff also agrees to produce electronic documents.

Plaintiff asks the Court, citing *Renda Marine*, 58 Fed. Cl. at 62, to order Defendant to produce at its own expense those back-up tapes from July 2003 to the present that were preserved and to provide Plaintiff with access to all hard drives. According to Plaintiff, the fact that Defendant chose a more expensive back-up medium provides no justification to shift the cost of producing discoverable documents to Plaintiff. Finally, Plaintiff asks the Court to impose sanctions for Defendant's failure in its duty to preserve evidence.

The Court agrees that Defendant was under a duty to preserve e-mails from July 2002 to the present, and that Defendant's decision to transfer the e-mails to back-up tapes does not exempt Defendant from its responsibility to produce relevant e-mails. *See*, *e.g.*, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316-17 (S.D.N.Y. 2003); *In re Brand Name Prescription Drugs*, Nos. 94 C 897, MDL 997, 1995 WL 360526, at *1 (N.D. Ill. July 15, 1995). To permit a party "to reap the business benefits of such technology and simultaneously use that technology as a shield in litigation would lead to incongruous and unfair results." *Linnen v. A. H. Robins Co.*, No. 97-2307, 1999 WL 462015, at *6 (Mass. Super. Ct. June 16, 1999). On the other hand, back-up tapes are principally deployed to protect against destruction of data if the network crashes, not to catalogue information for business purposes, so to require a responding party to pay the full expense of restoration of back-up tapes may be unreasonable. *McPeek v. Ashcroft*, 202 F.R.D. 31, 33-34 (D.D.C. 2001). Under the discovery rules, "the presumption is that the responding party must bear the expense of complying with discovery requests. . . ." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). In assessing whether cost-shifting to the requesting party is appropriate, courts have employed the marginal utility test, *McPeek*, 202 F.R.D. at 34, or have looked to various factors. *Zubulake*, 217 F.R.D. at 322; *Medtronic Sofamor Danek, Inc. v. Michelson*, 229 F.R.D. 550, 553 (W.D. Tenn. 2003); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 429 (S.D.N.Y. 2002). Following either approach, the Court must attempt to balance the likelihood that restored documents will

prove relevant to the instant litigation with whether the cost of restoration places an undue burden on Defendant. RCFC 26(b)(2)(iii); *see Medtronic*, 229 F.R.D. at 553; *In re Amsted Indus., Inc.*, No. 01 C 2963, 2002 WL 31844956, at *2 (N.D. Ill. Dec. 18, 2002). The estimated cost of $85,000 to $150,000 to restore the e-mails is small in comparison to the amount of the suit, which is over $30 million. Additional costs will also be incurred by Defendant, however, in sorting through the e-mails to identify those that are responsive to Plaintiff's discovery requests. Meanwhile, Plaintiff has provided no clear evidence to indicate that relevant documents are likely to be contained in the back-up tapes.

Under the circumstances, the Court finds that a reasonable solution is for Defendant to restore a portion of the back-up tapes from time periods specified by Plaintiff. *See*, *e.g.*, *McPeak*, 202 F.R.D. at 34-35; *Linnen*, 1999 WL 462015, at *5-6. A phased approach will allow the Court to engage in a more meaningful benefit-burden analysis before determining whether to require cost-shifting or cost-sharing. Manual for Complex Litigation § 11.423, at 58 (4th ed. 2004). After Defendant restores a portion of the back-up tapes and identifies responsive documents contained therein, Plaintiff will then have the opportunity to review responsive material to determine if it contains relevant evidence and if additional restoration of back-up tapes is warranted.[19] The Court believes that restoration of one-fourth of the total back-up tapes should be adequate to determine whether the tapes are likely to possess relevant evidence. Defendant shall bear the costs of restoration of the initial sample of back-up tapes and screening the sample to identify responsive documents.[20] The parties will then have an opportunity to argue before the Court whether or not additional restoration of back-up tapes is likely to lead to production of relevant evidence and consequently who should bear the cost for additional restoration.

---

[19] The Court concludes that granting Plaintiff access to hard drives would be unworkable given the inability of Defendant to protect privileged documents.

[20] Defendant may, of course, restore and screen more than one-fourth of the back-up tapes. In Defendant's response, filed January 3, 2007, to Plaintiff's motion for enlargement of time to complete fact discovery, Defendant indicates that at least some back-up tapes have already been restored. Further, in Plaintiff's motion to extend time to serve expert reports filed February 13, 2007, Plaintiff indicates that some responsive documents were provided to Plaintiff. It is not clear to the Court what proportion of the total back-up tapes have already been restored and/or screened for responsive documents.

### C. Assertions of Privilege

#### 1. Work Product Doctrine

Plaintiff seeks thirty-five documents for which Defendant claims protection under the work product doctrine and/or the attorney-client privilege.[21] Plaintiff asserts that Defendant's claims of privilege under the work product doctrine are erroneous. Plaintiff cites *Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 798 (2000), for the principle that "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protectable under the work product doctrine. Similarly, according to Plaintiff, documents that are created "because of a public or business duty" are not protectable. *Id*. at 808. Plaintiff contends that Defendant fails to address whether the documents would have been created irrespective of the litigation and/or whether the documents were prepared because of a public duty, according to the test established in *Pac. Gas & Elec*. According to Plaintiff, many of the documents were generated pursuant to a duty imposed by the Contract Disputes Act, namely a duty to analyze Plaintiff's claims and issue a contracting officer's final decision on the claims. The documents were created to assist the contracting officer in his contract administration duties of evaluating requests for equitable adjustment. Hence, Plaintiff argues, the documents "would have been created in essentially similar form irrespective of the litigation." Plaintiff points out that twenty-four of the documents for which Defendant asserts work product privilege were generated well before Plaintiff even submitted certified claims.[22] Therefore, Plaintiff concludes that many of the documents are not protected under the work product doctrine. Because Plaintiff contends that Defendant's claims of protection under the work product doctrine are unsupported, Plaintiff asks the Court to order Defendant to produce the documents.

Defendant counters that the documents for which it asserted the work product privilege were not routine business or contract administration communications, but were prepared by or at the direction of Defendant's attorneys in anticipation of litigation

The work product doctrine applies to documents prepared in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000). The scope of the work product privilege is defined in RCFC 26(b)(3).[23] The

---

[21] Defendant notes, however, that three of the documents (entries 45, 63, and 64), although on Defendant's original privilege log, were among the documents that were subsequently produced to Plaintiff in January 2006. Def.'s Resp. to Pl.'s Mot. at 15.

[22] The documents referenced by Plaintiff are documents 2, 18-22, 24, 26, 28-34, 36, 38, 39, 41-44, and 47. Pl.'s Mot. at 29-31; Def.'s App. at 11-16.

[23] Although Plaintiff contends in its motion that Defendant cites RCFC 34(b)(3), which does not exist, Defendant clarifies in its response that the incorrect rule was inadvertently cited

privilege covers documents "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." RCFC 26(b)(3). The privilege can be overcome upon a showing of substantial need or undue hardship. *Id*. But, there is an absolute privilege "against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id*.

The Court notes that all of the documents referenced by Plaintiff were generated after July 2002, the date when this Court determined that Defendant could reasonably have anticipated litigation and was, therefore, obligated to preserve documents for discovery purposes. It would be incongruous for the Court to find that Defendant had a duty to preserve documents for discovery because of impending litigation, yet could not assert the work product doctrine to protect documents prepared in anticipation of that litigation. In fact, one of the cases cited by Plaintiff expressly concludes: "We do not view the contracting officer's final decision as the automatic line of demarcation between routine contract administration and preparation for litigation. Obviously, there may be instances where there is considerable preparation for litigation before the contracting officer's final decision has been issued." *Appeals of B.D. Click Co.*, ASBCA No. 25609, 83-1 BCA ¶ 16328, 1983 WL 8450 (1983). The board, therefore, concluded that there are no hard and fast rules for when documents may become protectable under the work product doctrine. This Court similarly has difficulty in drawing a clear distinction between the administrative purpose of preparing a final decision on a request for equitable adjustment and the purpose of preparing for the litigation which is likely to follow. Accordingly, the Court finds no basis to conclude definitively that the documents which Defendant seeks to protect were primarily prepared for a business purpose and that Defendant has improperly asserted the work product privilege.

Nevertheless, the party asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product documents were created in anticipation of litigation is not enough. *In re Smithkline Beecham Corp.*, No. MISC. NO. 01-632, 2000 WL 1717167, at *3 (Fed. Cir. Nov. 1, 2000); *FTC v. GlaxoSmithKline*, 294 F.3d 141, 144 (D.C. Cir. 2002). "The protection from disclosure offered by Rule 26(b)(3) requires a more immediate showing than the remote possibility of litigation. Litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation." *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (Fed. Cl. 2000) (quoting *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 434 (W.D.N.Y. 1997)). Defendant objects in a conclusory fashion to production of certain documents on the basis of the work product doctrine. Yet, Defendant fails to set forth objective facts to support its claim of privilege. Moreover, Defendant does not show that there was a *real* possibility, rather than a just a remote possibility, of litigation at the time of preparation of the work product, and that the documents were prepared in anticipation of

due to a typographical error and that the relevant rule is actually RCFC 26(b)(3).

litigation rather than for a business purpose. Accordingly, the Court finds Defendant's invocation of the work product doctrine to be deficient.

**2. Attorney-Client Privilege**

Next, Plaintiff contends that Defendant has improperly claimed protection under the attorney-client privilege, which is limited to communications in which legal advice is sought or rendered and which is lost upon the voluntary disclosure of information to a third party. Plaintiff avers that there is no indication that certain documents which Defendant seeks to protect under the attorney-client privilege contain confidential communications. Pl.'s Mot. at 29-31. Alternatively, Plaintiff contends that the privilege has been waived for certain documents by disclosure to a third party. *Id*. Plaintiff asks the Court to make an *in camera* inspection of the documents to determine whether they are protected by the attorney-client privilege.

Defendant insists that the documents for which it has asserted the attorney-client privilege contain confidential communications between Defendant and its attorneys for the purpose of obtaining or providing legal advice. To the extent documents were communicated to persons outside the government, Defendant maintains that such communications were for the purpose of obtaining legal advice with respect to anticipated litigation.[24] Defendant further contends that some of the documents were communicated to employees of the Government of Israel, but, under the terms of the LOA, Defendant and the Government of Israel shared a common interest with respect to the litigation. Therefore, Defendant argues that disclosure to Government of Israel employees did not constitute a waiver of the attorney-client privilege.

The attorney-client privilege protects communications between the attorney and his client for the purpose of obtaining legal advice. *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *In re Echostar Commc'n Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409,1415 (Fed. Cir. 1997). The requirements for asserting the attorney-client privilege have been reviewed by this Court:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his

[24] Although Defendant cites *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1298 (D.C. Cir. 1980), to support its argument that such disclosures do not constitute a waiver of the attorney-client privilege, the cited portion of the case pertains to the work product doctrine, not the attorney-client privilege. The standards for waiver of the attorney-client privilege and waiver of the work product doctrine are different, however. *Id*. at 1299; *Carter v. Gibbs*, 909 F.2d 1450, 1450 (Fed. Cir. 1990) ("The attorney-client privilege evaporates upon any voluntary disclosure of confidential information to a third party; the purpose of the work product privilege is not in all cases frustrated by a similar disclosure.").

> subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding . . . ; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484-85 (2000) (quoting *United States v. United Shoe Mach. Corp*., 89 F.Supp. 357, 358-59 (D. Mass. 1950)); accord *First Fed. Sav. Bank of Hegewisch v. United States*, 55 Fed. Cl. 263, 266 (2003). "The burden of establishing the attorney-client privilege rests upon the party claiming privilege." *Energy Capital*, 45 Fed. Cl. at 484; *First Fed. Sav. Bank*, 55 Fed. Cl. at 267; *Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450-51 (6th Cir. 1983) (reviewing law from circuit courts); Paul R. Rice, 2 Attorney-Client Privilege in the U.S. § 11:9, at 76-78 (2d ed. 1999). Voluntary disclosure of confidential communications to a third party constitutes a waiver of the privilege as to those communications. *Genentech*, 122 F.3d at 1415; *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990). The scope of the waiver extends to all communications relating to the same subject matter. *Echostar*, 448 F.3d at 1299; *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). "There is no bright line test for determining what constitutes the subject matter of a waiver, rather the courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures."

For each of the documents for which Defendant seeks to assert the attorney-client privilege, Defendant provides the author, addressee and a brief description of the document in a privilege log, and then simply states that it is protected under the privilege. Such a conclusory statement does not satisfy Defendant's burden. Instead, for each of the documents for which Defendant seeks to invoke the privilege, Defendant must set forth objective facts to establish that the requirements set forth above for asserting the privilege are met. The Court concludes that an *in camera* review of documents is unwarranted at the present time. Instead the Court finds it appropriate for Defendant to review each of the challenged documents to determine whether a claim of protection under the attorney-client privilege is proper. Defendant shall then provide a more complete description of each of the documents for which it wishes to assert the privilege, setting forth all of the persons who sent or received the communication, the role of each of those persons in the government or their affiliations with the government, the subject of the communication, and why it qualifies for protection under the attorney-client privilege.

## III. Conclusion

Plaintiff's Motion for Order Compelling Discovery with Respect to Defendant's Responses to Plaintiff's Requests for Production of Documents in Case Nos. 04-1719, 04-1792 and 05-144 is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff's motion with respect to

Case No. 04-1792 is denied. Plaintiff's motion with respect to Case Nos. 04-1719 and 05-144 is granted to the extent that the Court orders production by Defendant as set forth below. Because the Court finds that Defendant's response was justified at least in part, Plaintiff's motion for award of sanctions is denied.

The Court ORDERS Defendant, on or before **March 28, 2007**, to supplement its responses to Plaintiff's requests for production of documents consistent with this opinion. In particular:

1. Defendant shall produce each of the specific documents itemized in sections A2 and A3 of this opinion. Alternatively, Defendant shall provide a sworn declaration explaining in detail why any of the documents cannot be produced.

2. Defendant shall supplement its response to each of the requests for production of documents in Case No. 04-1719 and Case No. 05-114 set forth in Section A1 of this opinion. Alternatively, Defendant shall provide a sworn declaration explaining why it has no additional documents that are responsive to any of the requests for production of documents.

3. Defendant shall produce all responsive e-mails or other electronic documents from July 2002 to the present for each of the thirty-five individuals requested by Plaintiff and set forth in section A4 of this opinion. For those individuals and time periods for which Defendant is unable to produce e-mails, Defendant shall provide a sworn declaration explaining why the documents cannot be produced and/or whether the documents may be contained on back-up tapes.

4. Defendant shall restore at its own expense at least one-fourth of the total back-up tapes in its possession, based on time periods and locations selected by Plaintiff. Defendant shall then review the restored electronic documents to identify those documents that are responsive to Plaintiff's document requests and provide the responsive documents to Plaintiff.

5. For each of the documents for which Defendant wishes to maintain the work product privilege or the attorney-client privilege, Defendant shall provide objective facts establishing that it qualifies for protection under the work product privilege or the attorney-client privilege.

The Court ORDERS the parties, on or before **April 25, 2007**, to file a Joint Status Report, discussing what, if any, outstanding disputes remain regarding document production and the status of restoration and screening of electronic documents. In the Joint Status Report, the parties shall also propose a revised discovery schedule, including a deadline for additional fact witness depositions, made necessary by this order, and deadlines for completion of expert discovery.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge