IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos. 04-1719C, 05-114C, |
| | ) | 05-1172C, and 06-49C |
| UNITED STATES OF AMERICA, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Pursuant to the Court's Opinions and Orders of February 28, 2007, the parties respectfully submit this joint status report discussing the outstanding disputes that remain regarding document production, the status of restoration and screening of electronic documents, answers to interrogatories, and proposing a revised discovery schedule.

Plaintiff submits that the Government has failed to comply with the Court's Orders with respect to both the production of documents and answers to interrogatories. The Government submits that it has complied with the Court's Orders with respect to both the production of documents and answers to interrogatories.

**A. GENERAL**

Defendant e-mailed its Supplemental Response to Plaintiff's Request for Production on March 28, 2007. In that Supplemental Response the Government noted that it would provide the non-privileged restored backup tapes "on a hard drive or DVDs under separate cover." It further stated "at present, plaintiff may download these documents from ftp://ftp.usace.army.mil/pub/nau/, in the temporary folders "Restored Data 1" "Restored Data 2.2," "Restored Data 3" and "Restored Data 4." Defendant represents that it has restored all of the backup tapes potentially containing responsive documents, and that all non-privileged

responsive documents were included in the referenced ftp folders and subsequently-provided DVD files.

Unfortunately, plaintiff was not able to access the restored backup tapes at the web site. By e-mail dated March 29, 2007, plaintiff's counsel advised the Government that plaintiff had attempted to gain access to the backup tapes through the FTP site but was unable to do so in spite of the efforts of several people, including plaintiff's counsel's IT personnel. Thereafter by e-mail dated March 30, 2007, counsel for the Government confirmed that he was "having a problem at my end too," noting that there may be some kind of bandwidth problem based on overall usage of the FTP site. (Agency personnel who loaded the data onto the FTP site advised that they were able to access the data from that site.) Government counsel further noted that he should be receiving the DVD version by April 2, 2007, and though he would be out of the office from April 2 through April 10, 2007, he would arrange for delivery.

On Friday, April 6, 2007, the Government hand-delivered to plaintiff's counsel two DVDs which, the Government believes, contained the documents that had been restored from the backup tapes. On Monday, April 9, 2007, plaintiff's counsel sent a letter to counsel for the Government regarding the two DVDs, noting that, (1) the DVD entitled "Restored electronic data Sets 1 & 2" is blank; and (2) though plaintiff has utilized three separate software programs, it had been unable to unzip or decompress the files included on the other DVD, "Sets 3 & 4." The April 9, 2007 letter requested that the Government immediately provide both the files omitted from "Sets 1 & 2" and the data on "Sets 3 & 4" in data format. Thereafter, by letter dated April 11, 2007, counsel for the Government stated that the Government did not encounter any of the problems described in plaintiff's April 9, 2007 letter, but made a new set of copies, comprising four DVDs, which were enclosed and hand-delivered on April 11, 2007.

Between April 11 and April 13, 2007, plaintiff made numerous unsuccessful attempts to decompress the DVDs. On April 16, 2007, plaintiff's counsel and counsel for the Government had several discussions regarding plaintiff's inability to uncompress the four DVDs. After being informed that the Government was utilizing a program known as "WinZip,"[1] plaintiff was able to extract the files and was able to view the uncompressed files for the first time on April 17, 2007.

Accordingly, plaintiff contends that it has only had access to the uncompressed, restored backup tapes for approximately two weeks. As a result, plaintiff has only reviewed a small percentage of the restored backup tapes which comprises approximately 13.3 gigabytes of material. Similarly, due to the volume involved, plaintiff has only been able to review a small percentage of the e-mail materials provided by the Government by hard drive, which consists of an additional 25.3 gigabytes of information.

Plaintiff's review of the approximately 39 gigabytes of information is continuing, but for the reasons noted above has not been completed. Therefore, plaintiff is only in a position to note that the newly produced documents will clearly warrant additional fact witness depositions. As of this date, plaintiff can only represent to the Court that there will be a need to depose two fact witnesses: One whom was previously noted: Michael Iarosis; and one individual previously unknown to plaintiff: John Jones. Plaintiff believes that other fact depositions may be necessary based upon its continuing review of the new documents.

---

1 This program was not provided to plaintiff by defendant. Defendant submits that this is a quite common program, and it did not occur to Government counsel that plaintiff's counsel did not possess this program until he was so informed by plaintiff's counsel. Further, the Government does not believe that it is obligated to provide plaintiff with copies of copyright-protected, licensed software programs that are widely utilized and readily available commercially.

**B. <u>SECTION A2 DOCUMENTS/ITEMS</u>**

The Government's supplemental response noted that certain of the documents itemized in Section A2 of the Opinion are "available for inspection and copying in Wiesbaden." The Government's supplemental response notes that it is in possession of the following Section A2 items, among others:

1. Videos;
2. Ten boxes from Wiesbaden;
3. Internal notes and internal meeting memoranda of Mr. Mills;
4. Documents supporting or relating to the Geotechnical Report;
5. Other bids[2]; and
6. Power point presentations or status reports.

---

[2] Defendant has indicated in its supplemental response that other bids are available for inspection "subject to entry of an appropriate protective order." Plaintiff contends that the Government's position is erroneous, because the Government did not raise any protective order objection in its response to the motion to compel, and the Court's Order to produce the other bids is <u>without qualification</u> and without any reference to a protective order. Plaintiff further contends that the Government's assertion that a protective order is required is therefore untimely, and any such objection was waived by its failure to raise such an argument in response to the motion to compel. Plaintiff contends, moreover, that prior to document production, plaintiff's counsel submitted a proposed protective order to defendant's counsel, and did so again on two occasions thereafter, but that defendant did not respond or comment upon the proposed protective order although it had over a year to do so. Defendant contends that its objection to producing proprietary information of persons not parties to this action was timely asserted in defendant's responses to plaintiff's requests for production of documents, and was not waived simply because the defendant did not offer an argument concerning this objection in response to plaintiff's motion to compel, especially in view of the fact that the objection was also not discussed in plaintiff's motion. Defendant further contends that the objection was also not discussed in the Court's Opinion and Order, therefore, should not be construed to have been overruled. As for the fact that a proposed protective order has not yet been filed, defendant maintains that, although this resulted in part from oversight on defendant's part, it is a matter that can easily be remedied without causing prejudice to any party.

Plaintiff believes that this response does not comply with the Court's Order. Plaintiff believes that the Court's Order expressly required the Government to produce any of these items which it had on or before March 28, 2007, and that implicit in this Order was that these items be provided to counsel in Washington, D.C. by that date. Therefore, plaintiff believes that the Government's response is in direct violation of both the express and implied obligations in the Court's Order.

The Government believes that its response was in compliance with the Court's Order, with respect to the manner, place, and time of production, for the following reasons: "Production" of documents, within the meaning of the applicable discovery rules, does not mean delivering the documents to the requesting party; it means making them available for inspection and copying. RCFC 34. And, they may be produced for inspection "as they are kept in the usual course of business . . . ." RCFC 34(b). In the case of the documents that are available for inspection in Wiesbaden, production in this manner means production in Wiesbaden, because that is where they are kept in the usual course of business. The Court's Order did not direct that the documents maintained in Wiesbaden be delivered to plaintiff, nor did it direct that these documents be made available in Washington, D.C. Further, by letter of October 19, 2006, Government counsel advised plaintiff's counsel that the "ten boxes" of documents referenced in item d of Section A2 of the Opinion would be available for inspection and copying in Wiesbaden (except for proposals from other bidders). Although plaintiff's counsel thereafter scheduled depositions in Wiesbaden and could have inspected these documents while in Wiesbaden for the depositions, plaintiff's counsel changed the venue of the depositions to Frankfurt, Germany (within commuting distance from Wiesbaden) and did not come to Wiesbaden.

Plaintiff contends that its counsel originally planned to review the Wiesbaden documents during the course of his trip for the October 2005 document production. This was confirmed in correspondence as early as September 2005. Plaintiff's counsel had planned to have a two-day "lay over" in Wiesbaden to review the defendant's files at its Wiesbaden offices, and then continue on to Israel thereafter. Roughly one to two weeks prior to that trip, however, defendant's counsel informed plaintiff's counsel that the defendant had decided to produce all of its Wiesbaden materials (which defendant had estimated to consist of ten boxes of materials) at once in Israel along with defendant's Israel files, and that as such, plaintiff's counsel should not stop over in Wiesbaden but continue on to Israel. Based upon that representation, plaintiff's counsel changed his itinerary and flew directly to Israel. When, however, the Government production began, plaintiff's counsel inquired as to which files/boxes were the Wiesbaden-based documents. Defendant's assistant command counsel, Brett Howard, informed plaintiff's counsel, Lawrence Prosen, that only one box was being produced from Wiesbaden, as the balance of the Wiesbaden documents (9 boxes) were merely duplicative of Israel files. Plaintiff objected, as referenced in the plaintiff's follow-on letter of November 11, 2005 (Appendix to Plaintiff's Motion to Compel, Exhibit 8).

Similarly, plaintiff contends that defendant's suggestion that plaintiff chose not to go to Wiesbaden to review the 10 boxes of documents in 2006 lacks merit. During plaintiff's visit to Germany, counsel for the United States represented that a roughly 16-inch stack of papers which were hand-delivered to his hotel in Frankfurt constituted the only non-duplicative documents at the Corps' Wiesbaden office, and it was unnecessary for counsel to travel to Wiesbaden for further document review. In fact, there turned out to be only one document, consisting of two or three pages, which was non-duplicative of documents already produced. Defendant contends

that it never represented the referenced stack of papers to be the only non-duplicative documents at the Corps' Wiesbaden office; rather, it represented that these papers were the relevant files of William Thievon, which plaintiff had requested defendant to bring to Mr. Thievon's deposition in Frankfurt for use in that deposition.

Plaintiff contends, moreover, that given the Government's deficient document production there is simply no reason why plaintiff should be required to incur substantial additional costs to go to Wiesbaden to inspect and copy. Plaintiff contends that each of these items should have been provided to plaintiff by March 28, 2007, and the Government should be required to provide a declaration attesting that all non-duplicative documents have been produced; or that any remaining non-duplicative items from the 10 boxes plus the other items listed on Page 4 should be produced in D.C. immediately.[3] Plaintiff further contends that the Court should reconsider the imposition of sanctions, including at a minimum, the award of attorney fees under RCFC 37 (a)(4)(c).

With respect to the remaining A2 items, the Government states that it cannot produce the following items for the following reasons:

1. Personal diaries or logs (because there are none within defendant's custody and control and defendant is not aware that any such documents exist);

2. Diaries kept by Mr. Mills (because there are none, i.e., Mr. Mills did not keep a diary); and

[3] Plaintiff submits that the documents should be produced to plaintiff's counsel in Washington. In the alternative, it would be clearly less expensive for all concerned for the Government to ship these items to the United States, where they can be reviewed in the presence of defendant's Washington, D.C.-based counsel if necessary. Defendant submits that shipping the originals of the voluminous documents in question from Wiesbaden to Washington creates an undue risk that the originals will be lost.

3. Original boring cores depicted in the Geotechnical Report (because the borings in question were not done by or for the Government, and, therefore, the Government never possessed the cores).

Plaintiff contends that Government's response with respect to these remaining A2 items also does not comply with the Court's Order. The Court's Order specifically stated that defendant was required to provide a sworn declaration explaining in detail why any of the documents cannot be produced, and defendant has failed to do so. Defendant does not believe that the Court intended to require it to submit a sworn declaration to establish that it does not possess items that there is no reason at all to expect it to possess, such as diaries of people not shown to have ever kept diaries, or boring cores from borings that were performed by third parties. However, to eliminate uncertainty about this matter, on May 2, 2007, the Government provided plaintiff a sworn declaration confirming these facts.

**C. <u>A3 ITEMS</u>**

The Government's Supplemental Response indicates that Items a, c, d, e, f, h and i are available for inspection and copying.

Plaintiff's objections to this response are the same. Namely, plaintiff contends that the Court's Order required defendant to produce each of these documents on or before March 28, 2007, and that the Government's response that these documents are available for inspection and copying in Wiesbaden, Germany is objectionable for the same reasons. Defendant contends that this response is appropriate, for the reasons stated above.

The Government states that it has not located Item b and Item g. With respect to these items, plaintiff believes the Government's response is insufficient since the Government has failed to provide a sworn declaration explaining in detail why the documents cannot be

produced. Defendant does not believe that the Court intended to require it to submit a sworn declaration to prove a negative and explain in detail matters for which there is no detailed reason. Defendant has stated that it has simply been unable to locate these particular documents. However, to eliminate uncertainty about this matter, on May 2, 2007, the Government provided plaintiff a sworn declaration confirming this fact.

**D. <u>E-MAILS AND BACK-UP TAPES</u>**

Plaintiff notes that, to the extent that defendant does not possess e-mails for any of the 35 individuals for all or a portion of the time period when it was under a duty to preserve evidence, defendant was obligated to provide a sworn declaration attesting to that fact – Opinion Page 15. Defendant notes that there were, in fact, only 34 individuals identified in the Opinion and Order as being subject to the requirement to produce e-mails. Defendant further states that the voluminous amount of e-mails that the Government produced in March 2007 initially appeared to include e-mails for all 34 individuals for the time period when the Government was under a duty to preserve evidence. Upon further review, the Government has recently concluded that this is not so as to several individuals. Further inquiry has revealed that several of the 34 individuals were not involved in the project in question during the period in question, contrary to what the Government stated in an earlier interrogatory response identifying individuals who produced e-mails relevant to the project, and that, in this respect, the earlier interrogatory response was mistaken. On May 2, 2007, the Government provided plaintiff a sworn declaration concerning these facts.

Plaintiff also contends that the Court should make a determination as to whether defendant failed in its duty to preserve back-up tapes from July 2002 to June 2003, August to October 2003, April to August 2004, and from February to March 2006 – Opinion Page 14.

Plaintiff believes that whether it has completed its review of the e-mails produced is irrelevant. The back-up tapes are for clearly relevant periods of time during project performance when the claim events occurred and plaintiff's limited review has already disclosed numerous relevant documents, not previously produced. Plaintiff believes the Government should be required to explain why it failed to preserve 23 months of back-up tapes after its duty to preserve arose. Defendant contends the documents it recovered from the restored back-up tapes and provided to plaintiff include a voluminous amount of documents from the entire period relevant to this case, including the months mentioned above, and that there is no basis for asserting that the Government failed to preserve back-up tapes for these months. Plaintiff contends that the defendant's answers to interrogatories dated June 5, 2006, reflect that the Government did not preserve backup tapes for the 23 months in question. Defendant further contends that, in view of plaintiff's assertion, above, that it "has only reviewed a small percentage of the restored backup tapes which comprises approximately 13.3 gigabytes of material," it is at best premature for plaintiff to request a determination as to whether the Government failed in its duty to preserve back-up tapes.

By letter dated March 8, 2007 the Government provided an e-mail directory to plaintiff. After review of the directory, by letter dated March 14, 2007, Plaintiff requested all e-mails included within 15 designated path names from the directory list. By letter dated March 23, 2007 counsel for the Government stated that it would not retrieve or produce the documents under the directory path names designated in the March 14, 2007 letter, except documents for the referenced 35 individuals. Thereafter by letter dated March 27, 2007 plaintiff disagreed, stating that under item 2 of the Order the Government is obligated to provide full supplementation of the Request for Production of Documents as set forth in Section A1 of the Opinion. Plaintiff

submits that in order to comply with Item 2 of the Order the Government is obligated to provide all responsive, non-privileged documents from the design phase, whether those documents reference one of the 35 individuals or not. Plaintiff further noted that the Court's Order does not allow the Government to limit its production of e-mails to the referenced 35 individuals, nor does the Government have the right to determine not to review significant portions of the e-mail directory which it unilaterally determines is not "likely to be relevant or responsive."

Plaintiff believes that the e-mails produced in the limited manner described does not comply with the Court's Order and requests that the Court resolve this matter as well. Defendant asserts that it informed plaintiff in its March 23, 2007 letter that its reason for not retrieving documents from the designated path names, other than those for the referenced individuals, was that names or other information contained in many of the designated path names indicated that the documents under these path names were not likely to be relevant or responsive. Defendant contends that to individually retrieve such documents in the manner proposed by plaintiff would have been an inefficient way in which to locate and produce relevant and responsive documents, especially without any assurance that plaintiff would have been satisfied with the result of such an effort. The Government did not, however, limit its production to e-mails of those individuals. Rather, the Government produced all responsive, non-privileged electronic documents from all locations where they might reasonably be expected to be found, including restored back-up tapes.

**E. <u>ANSWERS TO INTERROGATORIES</u>**

Plaintiff contends that Defendant's Supplemental Responses to Interrogatories are insufficient for the following reasons. First, plaintiff contends that defendant failed to provide a

supplemental response to Interrogatory No. 14 in Case No. 1719C. In addition plaintiff notes the following:

a. Answer to Interrogatory No. 23 refers to a draft contracting officer's final decision to be "provided under separate cover." This draft decision has not been produced;

b. The Government's Supplemental Response to Interrogatory No. 25 is insufficient in that the referenced answer to Interrogatory No. 8 contains no information pertaining to the prebid period and thus is not responsive to Interrogatory No. 25; and

c. Interrogatory No. 50 the referenced responses to Interrogatories No. 8 and 9 do not appear to contain any information pertaining to agreements between the Army Corps of Engineers and either IDF, MOD, ILA, Blank Lehrer or any other entity concerning the project.

Defendant's supplemental response to Interrogatory No. 14 was omitted inadvertently and will be provided. Defendant believes that draft contracting officer's final decision referenced in the supplemental response to Interrogatory No. 23 was among the documents provided in electronic form, but, in case it was not, defendant provided plaintiff another copy on April 30, 2007. With respect to Interrogatory No. 25, defendant states that it may have misconstrued the interrogatory by not reading the phrase "prebid" as modifying all of the subsequent language in the interrogatory. In any event, defendant is not aware of any prebid internal analysis or evaluation concerning the matters referenced in Interrogatory No. 25, and will supplement or amend its answer to this interrogatory accordingly. With respect to

Interrogatory No. 50, defendant states that it may have misconstrued the interrogatory, and will supplement or amend its answer to this interrogatory accordingly.

**F. THIRTY FIVE DOCUMENTS FOR WHICH DEFENDANT CLAIMED PROTECTION UNDER THE WORK PRODUCT DOCTRINE AND/OR THE ATTORNEY CLIENT PRIVILEGE**

The Court's Order required that, for each of the documents for which defendant wished to maintain the work product privilege or the attorney client privilege, defendant must provide objective facts establishing that such document qualifies for protection under either privilege. Plaintiff contends that defendant has made no effort to establish the objective facts necessary for the establishment of either privilege for any of the documents. Therefore, plaintiff contends that the Court should pass an order directing defendant to immediately produce all 35 documents, or whichever documents have still not been produced. Defendant contends that many of the documents as to which plaintiff challenged the Government's assertions of privilege were produced either while plaintiff's motion to compel was pending or since the issuance of the Court's February 28, 2007 decision concerning this matter. Because of the large number of documents produced since that date, defendant is still in the process of verifying which documents are still subject to an assertion of privilege by defendant.

**G. PROPOSED DISCOVERY SCHEDULE**

Plaintiff proposes the following revised discovery schedule, including deadlines for additional fact witness depositions made necessary by the Court's Orders and deadlines for a completion of expert discovery:

1. Completion by plaintiff of additional fact witness depositions made necessary by this Order - June 15, 2007;
2. Submission of plaintiff's expert reports – June 30, 2007;

3. Submission of defendant's expert reports – July 30, 2007;

4. Plaintiff's rebuttal expert reports, if necessary – August 15, 2007; and

5. Completion of all discovery – September 15, 2007.

Defendant does not oppose this proposed schedule, provided that any further fact discovery by plaintiff is (a) limited to depositions genuinely made necessary by the Court's Orders, and not depositions that could have been taken by December 15, 2006 but for scheduling difficulties; and (b) limited in number and length so as to be reasonably accomplished by June 15, 2007, given the schedules of counsel and the deponents in question. Defendant further notes that, to date, plaintiff has only partially responded to a letter from Government counsel dated September 29, 2006, questioning Plaintiff's claims of privilege with respect to approximately 240 out of more than 1,600 documents as to which plaintiff asserted privilege. Plaintiff's counsel has indicated that a further response will be forthcoming in the near future. Additionally, by letter of April 26, 2007, defendant brought to the plaintiff's attention what defendant believes are various deficiencies in plaintiff's production of electronic documents, including the absence of e-mails for various individuals and time periods. Defendant reserves the right, after reviewing plaintiff's anticipated responses, to file a motion to compel concerning these matters privilege claims if appropriate. The fact that defendant does not at this time oppose the schedule proposed by plaintiff should not be construed as a waiver of its right to seek relief that might affect this schedule.

Plaintiff disputes defendant's assertion that any alleged "scheduling difficulties" obviated the Government's obligation to produce previously noted deponents and asserts that the Government had ample notice of all such depositions but failed to provide dates for such depositions.

Respectfully submitted,

Bell, Boyd & Lloyd LLP

s/ Brian Cohen

____________________________

Brian Cohen, Esq.
Bell, Boyd & Lloyd LLP
1615 L Street, N.W.
Suite 1200
Washington, DC
(202) 955-6823 (phone)
(202) 835-4130 (fax)

*Attorneys for Plaintiff*

Dated: May 2, 2007

**Filed Electronically with the Consent of the Attorney for Defendant**

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson

____________________________

JEANNE E. DAVIDSON
Director

s/ Shalom Brilliant

___________________________

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
Room 8012
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643
*Attorneys for Defendant*

Dated: May 2, 2007