IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-114C |
| | ) | (Consolidated with Case Nos. 04-1719C, |
| THE UNITED STATES OF AMERICA | ) | 05-1172C and 06-49C |
| | ) | (Chief Judge Damich) |
| Defendants. | ) | |

**PROPOSED FINDINGS OF UNCONTROVERTED FACTS**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff A.A.B. Joint Venture, in support of its Motion for Summary Judgment, submits its Proposed Findings of Uncontroverted Facts, as follows:

1. On June 5, 2001, the U.S. Army Corps of Engineers, Europe District, awarded Contract No. DACA90-01-C-0043 to the A.A.B Joint Venture, in the amount of $124,089,176, for the construction of the Nachshonim Military Storage Base near Elad, Israel ("the Project."). (First Amended Complaint, ¶ 6, admitted in Answer).

2. The Project was one of several military construction projects in Israel funded pursuant to the Wye River Accords. (See Attachment A to Exhibit 1, Affidavit of S. Denison Keeney).

3. As part of the implementation of the Wye River Accords, the contract between the United States Government and the Government of Israel, known as the Letter of Offer and Acceptance ("LOA") (Att. A to Ex. 1), provided at note 5, paragraph "n:"

> *The USG and its contractors may bring into Israel nationals of the United States and third countries having diplomatic relations with Israel for employment in carrying out the work implementing this LOA.*

4. Note 10 of the LOA provided:

> *TAX EXEMPTION FOR THIRD COUNTRY NATIONALS. Third country nationals (non-U.S. or Israeli nationals) imported into Israel as work force employees of contractor(s) and or subcontractor(s) to work exclusively on efforts covered by the provisions of this LOA shall be exempted by the GOI from liability for or payment of Israeli personal income tax on earnings resulting from such employment nor shall they be subject to importation or exportation taxation of personal property imported into Israel or acquired there for personal use.*

5. The announcement of the Solicitation for Bids, published in the Commerce Business Daily (Ex. 3) under “Description” noted:

> *Contractors may bring into Israel nationals of the U.S. and third countries having diplomatic relations with Israel for the purpose of accomplishing the work.*

6. The Solicitation also advised prospective bidders that the Corps of Engineers would provide reimbursement to the Contractor for income and employment taxes paid to TCN employees who were brought into Israel to work only on the Nachshonim Project. (Ex. 1, Keeney Affidavit, at ¶ 6).

7. The bid package submitted by the Joint Venture included, as was required by the Solicitation, a “TCN Tax Plan” which showed the anticipated usage of Third Country National (TCN) workers, per month, together with the amount of anticipated tax reimbursement for each month of Project performance. *Id*. at ¶ 9.

8. The bid package submitted by the Joint Venture also included, at Volume I, Schedule and Mobilization (Att. D to Ex. 1), under the heading “Early Mobilization and Procurement Measures” a line item “Make final arrangements for location and subcontracting of TCN camp.” Section 3.2.2 thereof, entitled “Labor and Labor Camp,” states:

> *SAB* [later changed to A.A.B.] *proposes to utilize one of the local manpower companies to provide third country nationals (TCNs) for unskilled, semi-skilled and skilled labor. Workers will come from either*

> *Romania or Turkey. Approximately 500 TCN workers are needed at peak production.*
>
> *Foremen are generally Israeli national employees of subcontractors. Highest level construction supervisors and management are SAB employees.*
>
> *It is common to bring TCNs into Israel to perform construction labor. There are several Israeli manpower firms specializing in providing TCN labor. The manpower firms also construct the worker camps, and provide services for feeding, and daily transportation from camp to the job site.*

9. The contract between the Corps and the Joint Venture provides, at Special Requirement (SR) 22 (Att. G to Ex. 1) as follows:

> *Contractor may arrange, through the appropriate Government of Israel offices, to bring into Israel US nationals and nationals of third countries having diplomatic relations with Israel, for purposes of employment in carrying out this contract work.*

10. The contract also contained, at SR-14 (Att. F to Ex. 1), entitled “TAX CLAUSE”, the tax exemption provided for in the United States / Israel LOA. (See Att.-F to Ex. 1.) The clause required the Contractor to provide to the Corps, for submission to the GOI, information that would establish that the person was qualified for the tax exemption. The qualification was set forth at SR-14, paragraph 4(b), as follows:

> *The tax exemption for TCN personal income and employment taxes on earnings is limited to those third country nationals who enter Israel as employees of the contractor or sub- contractors to work exclusively on this contract or other contracts under LOA # IS-B-HAC.*

11. The Joint Venture based its bid in reliance on the Government’s representation that the contractor would be able to bring Third Country National workers into Israel to perform skilled labor for the Project. (Ex. 7, Affidavit of Mickey Moav).

12. The Corps and the GOI also interpreted the LOA and the contract as allowing the Joint Venture to utilize TCN labor in performing the work. Ex. 2.

13. In December 2001, the Government of Israel adopted what became known as the "Closed Sky Policy," which placed restrictions on the importation of new foreign workers. (Exhibit 1, Affidavit of S. Denison Keeney, at ¶ 14; Exhibit 4, Deposition of Yehuda Segev, at 7-12; Ex. 5, Affidavit of Avrum Joel Arenson, at ¶ 6; Exhibits 7, 8, 9,

14. As a result of the Closed Sky Policy, the Joint Venture was unable to bring into Israel any new TCNs. (Ex. 5, Affidavit of Avrum Joel Arenson, at ¶ 16).

15. The inability to bring new foreign workers into Israel had a substantial impact on the Joint Venture's ability to perform its work on the Nachshonim Project as a result of which the Joint Venture incurred additional costs. See Exhibit 1, Affidavit of S. Denison Keeney, at ¶¶ 16 and 19; Exhibit 5, Affidavit of Avrum Joel Arenson, at ¶ 17, and Exhibits 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 31, and 50.

Date: September 11, 2007

Respectfully submitted,

s/ Brian Cohen

Brian Cohen
BELL BOYD & LLOYD LLP
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Brian Cohen, hereby certify under penalty of perjury that the foregoing A.A.B's Motion for Summary Judgment, Appendix of Exhibits and Statement of Uncontroverted Facts will be served automatically upon ECF filing this 11th day of September, 2007 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

s/ Brian Cohen
Brian Cohen