IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C, AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C

Pursuant to Rule 12(b)(1) and 56(b) of the Rules of this Court, and the order entered on June 8, 2007, defendant respectfully requests the Court to dismiss plaintiff's claim concerning the Government's alleged attempts to require M-20 bolts, asserted in paragraphs 46 through 54 of the amended complaint in No. 05-1172C, for lack of jurisdiction, or, in the alternative, to grant summary judgment dismissing this claim upon the ground that it is barred by the doctrine of accord and satisfaction. Defendant further respectfully requests the Court to grant summary judgment dismissing plaintiff's claim asserted in paragraphs 41 through 45 of the amended complaint in No. 05-1172C, concerning the contract's L/600 deflection requirement, upon the ground that it is barred by the doctrine of accord and satisfaction. In support of our motion, we rely upon the pleadings, the following brief, the attached appendix, and the separately filed proposed findings of uncontroverted fact.[1]

[1] "Def. App." refers to the appendix to this motion.

DEFENDANT'S BRIEF

Issues Presented

1. Whether this Court lacks jurisdiction to entertain the claim asserted in paragraphs 46 through 54 of the amended complaint in No. 05-1172C, concerning M-20 bolts, because it was not certified and presented to the contracting officer for a final decision.

2. Whether Modification P00009 constitutes an accord and satisfaction with respect to the claim concerning M-20 bolts as well as the claim asserted in paragraphs 41 through 45 of the amended complaint in No. 05-1172C, concerning the L/600 maximum deflection requirement.

Nature Of The Case

These consolidated cases concern a contract between the plaintiff, A.A.B. Joint Venture ("AAB") and the United States Army Corps of Engineers, for the design and construction of a storage and logistics base complex for the Israel Defense Forces. The contract required construction of 119 Dry Storage Buildings ("DSBs"), designed to maintain a controlled climate for the housing of heavy military equipment. Compl. ¶ 5, 11.[2] AAB's amended complaint challenges the appropriateness of the pressure test specified for determining the air-tightness of the DSBs, the Government's interpretation of the L/600 maximum deflection requirement for roof structure as applying to exterior panels, and alleged attempts by the Government to require M-20 bolts, rather than M-16 bolts that AAB contends were allowed by the specifications.

The parties differing views concerning the proper interpretation of the contract's maximum deflection and bolt size requirements, among other things, were the subject of discussion at a meeting among representatives of AAB and the Government on December 13,

[2] "Compl." refers to the Amended Complaint in No. 05-1172C.

2001. At the meeting, the parties reached an agreement concerning these matters. The terms of these agreements were memorialized in written resolutions which were incorporated into a bilateral contract modification – Modification No. P00009 – signed by the parties several months later. Modification No. P00009 provided that the minimum acceptable bolt size would be relaxed to M-16, that the maximum deflection of L/600 would "apply to all individual elements of the roof structure for each of the DSBs . . . , including the panels," and that foundation and concrete work on the DSBs could begin prior to the completion of the initial DSB. Id. The modification explicitly states that "the contract adjustment in this modification includes all costs for the change and all claims incidental thereto have been satisfied." App. _

As alleged in the amended complaint in No. 05-1172C, AAB submitted a certified claim to the contracting officer on February 11, 2005, and the claim was denied on September 22, 2005. In the claim, AAB sought approximately $11 million in costs allegedly incurred as a result of the pressure test requirement and the L/600 minimum deflection requirement (primarily the former). The claim did not seek any monetary or other relief in connection with the bolt size requirement of which AAB complains in this case.

Under these circumstances, AAB's claims concerning the bolt size and deflection requirements are barred by accord and satisfaction. The claim concerning the bolt size requirements, however, must be dismissed for lack of jurisdiction.

STATEMENT OF FACTS

On June 5, 2001, AAB was awarded Contract No. DACA90-01-C-0043 (the "Contract") for $124,089,176. Compl ¶ 7. A Notice to Proceed was issued on June 19, 2001. Id.

The contract required construction of 119 Dry Storage Buildings ("DSBs"), designed to maintain a controlled climate for the housing of heavy military equipment. Compl. ¶ 5, 11.

On December 13, 2001, representatives of AAB and the Government held a design issues meeting, at which they discussed a variety of matters relating to the DSBs, including the parties' differences concerning minimum space frame bolt size and maximum roof deflection requirements. The meeting resulted in agreements which were later incorporated into Modification No. P00009. This Modification was signed by the Administrative contracting officer, J.W. Blackburn, Jr., on May 31, 2002, and by AAB's Project Director, S.D. Keeney, on June 3, 2002. Def. App. 3-11.

Modification No. P00009 referenced an enclosure containing a statement of work to which the parties agreed under the Modification. Def. App. 3-4. That statement of work, in turn, referenced an enclosure consisting of minutes, prepared by an AAB representative, of the December 13, 2001 design issues meeting. Def. App. 4-11. These minutes reflect that the meeting was attended by four representatives of AAB and three Government representatives. Def. App. 4.

The statement of work contained in Modification No. P00009 provided, among other things, that the minimum acceptable bolt size would be M-16, that the maximum deflection of L/600 would "apply to all individual elements of the roof structure for each of the DSBs . . . , including the panels," and that foundation and concrete work on the DSBs could begin prior to the completion of the initial DSB. Def. App. 4. The Modification also stated:

> This contract change is the final resolution of the issues and discussions included in the minutes referenced by the scope of work described above.

> It is understood and agreed; pursuant to the above, that the contract amount remains unchanged; the contract time for performance remains unchanged; and the contract adjustment in this modification includes all costs for the change and all claims incidental thereto have been satisfied.

Def. App. 3.

The provision in Modification No. P00009 allowing AAB to begin foundation and concrete work on the DSBs prior to the completion of the initial DSB was requested by AAB, to allow more time for space frame and insulated panel installation. Def. App. 2.

## ARGUMENT

I. The Court Lacks Jurisdiction To Entertain The Bolt Size Claim, Because It Was Not Certified and Presented to the Contracting Officer for a Final Decision

The legal principles and authorities that govern the jurisdictional issue before the Court are set forth in several opinions previously issued here and in another suit filed by AAB in connection with the same contract. In these opinions, the Court dismissed certain pass-through claims asserted by AAB on behalf of one of its subcontractors in Nos. 04-1719C and 04-1792C, as well as AAB's subgrade replacement claim in No. 04-1719C. See AAB Joint Venture v. United States, 75 Fed. Cl. 123 (2007) ("AAB III"); AAB Joint Venture v. United States, 74 Fed. Cl. 367 (2005) ("AAB II"); AAB Joint Venture v. United States, 68 Fed. Cl. 363 (2005) ("AAB I"). As summarized by the Court in AAB II, the governing principles are as follows:

> This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. Although a contractor is not precluded from increasing the amount of a claim, a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer. A new claim is one that does not arise from the same set of operative facts as the claim submitted to the contracting officer. The same set of operative facts has been found where the

> contractor submits additional evidence pertaining to damages to support the same factual claim, or where the claim merely augments the legal theories underlying the certified claim. In contrast, the same set of operative facts has not been found where the contractor files a different type of claim from that presented to the contracting officer, or where the facts require different kinds of proof. . . .

74 Fed. Cl. at 370-72 (internal citations and quotations omitted); accord AAB III, 75 Fed. Cl. at 127; AAB I, 68 Fed. Cl. at 365-66.

The pleadings concerning the submission of a certified claim in this case differ from those in Nos. 04-1719C and 04-1792C, but in a way that renders this case jurisdictionally weaker than those cases. In those cases, the complaints alleged that certain specific claims described in the pleadings had been certified and submitted to the contracting officer for a decision, and that the other claims asserted in the pleadings were based upon the same underlying operative facts as those that were submitted to the contracting officer. The Court rejected this contention, and dismissed the claims that had not been submitted to the contracting officer. The complaint in No. 05-1172C differs from those in Nos. 04-1719C and 04-1792C, in that it merely alleges that "[b]y letter dated February 11, 2005, the Joint Venture submitted its certified claim to the Government and requested a Contracting Officer's final decision." Compl. ¶ 55. The complaint states nothing about the subject matter of the referenced certified claim; it thus provides no basis for concluding that the Court possesses jurisdiction with respect to any particular claim raised in the amended complaint, because it does not allege which of the various claims raised in the complaint were the subject of a claim submitted to the contracting officer.

It is, after all, the plaintiff's burden to plead and to prove the requisite jurisdictional facts to establish the Court's jurisdiction. Precision Pine & Timber v. United States, 50 Fed. Cl. 35,

52 (2001); Fireman v. United States, 49 Fed. Cl. 290, 292 (2001). Given the above-stated rule that the court lacks jurisdiction "over a new claim or a claim of different scope" from the claim presented to the contracting officer, a vague allegation that a certified claim of unidentified scope was submitted is insufficient. Cf. Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Nevertheless, we do not request that the Court dismiss No. 05-1172C in its entirety upon this basis, because we acknowledge that a certified claim was in fact submitted to the contracting officer, seeking compensation for various specified costs allegedly incurred as a result of the pressure test requirement and the L/600 minimum deflection requirement. And, as AAB alleges, the contracting officer denied this claim in its entirety. Compl. ¶ 57. However, the claim did not seek any monetary or other relief in connection with the bolt size requirement. Def. App. 12-43.[3] Indeed, although the contracting officer's final decision discusses the pressure test and deflection claims in detail, it makes no mention of any claim concerning bolt size. Def. App. 44-98.

It is readily apparent from the face of the allegations in the amended complaint concerning the pressure test, deflection, and bolt size requirements that, although all of these claims involve the construction of the DSBs, they are factually and legally distinct. In no sense can the bolt size claim be characterized as being based upon the same underlying operative facts as those underlying the pressure test and deflection claims. Since AAB has not alleged and

---

[3] Def. App. 12-43 consists of a copy of the referenced certified claim. We do not offer this document as evidence of any facts asserted in it, and reserve the right to object to its admissibility to prove such facts. We offer it only so that the Court can ascertain that this submission did not include a claim for expenses incurred as a result of the Government's alleged attempts to require M-20 bolts, and thus does not support jurisdiction with respect to the bolt size claim.

cannot demonstrate that it has submitted its bolt size claim to the contracting officer for a decision, or even that the bolt size claim is based upon the same underlying operative facts as those underlying a claim that was submitted to the contracting officer, the Court lacks jurisdiction to entertain the bolt size claim.

II. The Bolt Size Claim And The Deflection Claim Are Both Barred By The Defense Of Accord And Satisfaction

The doctrine of accord and satisfaction is "'one of the recognized methods of discharging and terminating an existing right as set forth in a preexisting contract; it constitutes a perfect defense in an action for the enforcement of a previous claim, regardless of the merits of such a claim." Abatement Contracting Corp. v. United States, 58 Fed. Cl. 594, 607 (2003), quoting Thomas Creek Lumber v. United States, 36 Fed. Cl. 220, 237(1996), citing Chesapeake & Potomac Telephone Co. v. United States, 228 Ct. Cl. 101, 108, 654 F.2d 711, 716 (1981), quoting 6 Corbin on Contracts § 1276 (1962) (internal quotation marks omitted) . Further, "'[i]t is also well established that ordinarily an executed bilateral contract modification that contains no reservations constitutes an accord and satisfaction of a claim.'" Starflight Boats v. United States, 48 Fed. Cl. 592, 598 (2001) quoting C & H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 252 (1996).

"The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration." Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 343 F.2d 951, 955 (1965). Modification No. P00009 possesses all four of these elements.

1. "In order for there to be proper subject matter under the accord and satisfaction doctrine, the subject matter of the contract must be the same as that set forth in the documents

which modify or attempt to modify the contract, and provide the basis for the accord and satisfaction." Thomas Creek Lumber v. United States, 36 Fed. Cl. at 238. The subject matter of the bolt size and deflection claims raised in the amended complaint and the relevant portions of Modification No. P00009 are the same. Modification No. P00009 resolved the parties' dispute concerning the bolt size issue by providing that "[t]he minimum acceptable space frame bolt size for all types of dry storage buildings is M-16." Def. App. 4. AAB acknowledges that this refers to the same bolt size controversy raised in the amended complaint. Compl. ¶ 53. Modification No. P00009 resolved the parties' dispute concerning maximum roof deflection by providing that "[t]he maximum deflection of L/600 shall apply to all individual elements of the roof structure for each of the DSBs (Dry Storage Buildings), including the panels." Def. App. 4. Although the amended complaint ignores this provision of Modification No. P00009, this provision plainly addresses the same deflection claim raised in the complaint.

2. There is no dispute as to the competence of either the parties to the modification, or of the individuals who signed the modification on behalf of the parties: the Administrative Contracting Officer and AAB's Project Director signed Modification No. P00009. Def. App. 3.

3. A meeting of the minds is evident from the fact of Modification No. P00009 contained, as an enclosure, an explicit statement of work to which the parties agreed under the Modification. Def. App. 4. That statement of work, in turn, referenced an enclosure consisting of minutes – prepared by a representative of AAB – of the December 13, 2001 meeting that led to this agreement. Def. App. 4-11. These minutes reflect that the meeting was attended by four representatives of AAB and three Government representatives. Def. App. 5. Finally, the modification expressly stated:

> This contract change is the final resolution of the issues and discussions included in the minutes referenced by the scope of work described above.
>
> It is understood and agreed; pursuant to the above, that the contract amount remains unchanged; the contract time for performance remains unchanged; and the contract adjustment in this modification includes all costs for the change and all claims incidental thereto have been satisfied.

Def. App. 3 (emphasis added) This language and the details set forth in the statement of work and minutes attached to the Modification leave no room for doubt that there was a meeting of the minds, according to which the minimum bolt size would be M-16, the maximum deflection of L/600 would apply to all elements of the DSB roof structure including the panels, and there would be no change in the contract price or the time for performance as a result of these provisions.

4. By relaxing specific terms of the original contract, Modification No. P00009 conferred valid consideration to support an accord and satisfaction. First, the Modification reflected a compromise concerning minimum bolt size and maximum roof deflection, both of which were subjects of disagreement concerning the correct interpretation of the contract. With respect to the deflection requirement, the disagreement concerned whether roof panels were to be considered part of the roof structure. See Compl. ¶ 41. With respect to the bolt size, AAB acknowledges that "[t]he original solicitation required 'Minimum type of bolts – M-20' and the Special Specification required that the bolts for the roof be 'not less than 20 mm,'" Compl. ¶ 47, but alleges that because an amendment "deleted the General Description for bolts with a minimum diameter of 20 mm," Compl. ¶ 48, it was reasonable to construe the 20 mm requirement as eliminated entirely. Compl. ¶ 49. Modification No. P00009 essentially resolved

these two disagreements by adopting AAB's position concerning the bolts and the Government's position concerning deflection.

Furthermore, Modification No. P00009 was an agreement entered into to resolve multiple issues, not only the deflection requirement and the bolt size requirement. In particular, the Modification granted AAB valuable consideration by allowing AAB to begin foundation and concrete work on the DSBs prior to completion of the initial DSB. Def. App. 4. This was a deviation that AAB had requested, and that AAB had estimated would "allow a 4 to 6 month advance start (from the Proposed Schedule) on the majority of the project structures and allow more time for . . . space frame and insulated panel installation. Def. App. 2. These concessions to AAB provided more than sufficient consideration to support an accord and satisfaction. See Green Mgmt. Corp. v. United States, 42 Fed. Cl. 411, 435 (1998) ("it is a long-established rule that the court will inquire only into whether there has been a bargained-for exchange, and not into the adequacy of consideration").

Finally, we note that AAB mentions Modification No. P00009 in the amended complaint, and does not allege that the modification was entered into involuntarily or under duress. Indeed, the Modification is described in the amended complaint as something advantageous to AAB, in that it confirmed the Government's acceptance of M-16 bolts. Compl. ¶ 53. Nevertheless, we anticipate AAB arguing that it signed the Modification under duress, because there was no other way for it to obtain from the Government concessions such as being allowed to begin foundation and concrete work on the DSBs prior to completion of the initial DSB, and to utilize M-16 bolts in the roof structure. However, the fact that a party must agree to give certain concessions in order to receive other concessions in return does not mean that the agreement is the result of

duress; it means only that the agreement is supported by consideration. "[T]here are three requirements for a claim of economic duress, each of which must be satisfied: (1) involuntary acceptance of the terms of another; (2) no other reasonable alternative was available under the circumstances; and (3) the circumstances were the result of coercive acts of the government." Abatement Contracting, 58 Fed. Cl. at 608. "Economic pressure or the threat of considerable financial loss is not sufficient." Id., citing Rumsfeld v. Freedom NY, Inc., 329 F.3d 1320, 1330 (Fed. Cir. 2003).

## CONCLUSION

For the foregoing reasons, defendant respectfully requests the Court to dismiss AAB's claim concerning the Government's alleged attempts to require M-20 bolts, asserted in paragraphs 46 through 54 of the amended complaint in No. 05-1172C, for lack of jurisdiction, or, in the alternative, to grant summary judgment dismissing this claim upon the ground that it is barred by the doctrine of accord and satisfaction. Defendant further respectfully requests the Court to grant summary judgment dismissing AAB's claim asserted in paragraphs 41 through 45 of the amended complaint in No. 05-1172C, concerning the contract's L/600 deflection requirement, upon the ground that it is barred by the doctrine of accord and satisfaction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

September 11, 2007