IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos. 04-1719C, 05-114C |
| | ) | 05-1172C, and 06-49C, |
| THE UNITED STATES OF AMERICA | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C, AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C**

Dated: October 12, 2007

Brian Cohen
BELL BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Of Counsel:
Philip Clark Jones
Michael J. Schrier
BELL BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

TABLE OF CONTENTS

Page

I. STATEMENT OF THE ISSUES....................1

II. STATEMENT OF THE CASE....................1

A. The Nature of the Case....................1

B. Statement of Facts....................2

III. ARGUMENT....................6

A. Accord And Satisfaction Does Not Provide A Basis For Entry Of Summary Judgment On The Bolt Size And L/600 Claims....................6

1. Standard For Summary Judgment....................6

2. Law On Accord And Satisfaction....................7

3. The Contracting Officer's Final Decision And Subsequent Course Of Conduct Bars The Government's Accord And Satisfaction Affirmative Defense As To Both The M-20 Bolt Size And L/600 Claims....................8

4. The Government's Accord And Satisfaction Argument Must Also Be Rejected Because Of Either A Failure To Prove A Meeting Of The Minds, Or A Lack Of Performance With Respect To The Agreements Reached At The December 13, 2001 Design Issues Meeting....................11

5. Modification P00009 Was Issued Based Upon Only The Changes Clause And Therefore Does Not Bar The Delays Claimed Resulting From The Government's Untimely Issuance Of Modification P00009, And Its Unilateral Determination To Require Compliance With The L/600 Requirement Before Approval Of The M-16 Bolts....................16

B. The M-20 Bolt Claim Should Not Be Dismissed Because It Was Part of AAB's Certified Claim....................18

1. Legal Standard For Motion To Dismiss....................18

2. AAB Has Properly Asserted This Court's Jurisdiction Over The M-20 Bolt Claim....................19

a. AAB Submitted The Demand In Writing To The Contracting Officer....................20

b. AAB Submitted The Demand As A Matter Of Right....................22

c. AAB's Demand Included A Sum Certain.....................................22

d. AAB Has Satisfied All Of The Required Elements For This Court's Subject Matter Jurisdiction ..............................................22

3. The M-20 Bolt Claim Is Not A Forbidden "New Claim"..........................23

IV. CONCLUSION..........................................................................................24

CERTIFICATE OF SERVICE ..........................................................................26

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A & K Plumbing & Mech., Inc. v. United States,*
1 Cl.Ct. 716 (1983) ........ 8
*AAB Joint Venture v. United States,*
74 Fed. Cl. 367 (2005) ........ 19, 23
*Adickes v. Kress and Co.,*
398 U.S. 144 (1970) ........ 7
*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........ 7
*Axion Corp. v. United States,*
68 Fed. Cl. 468 (2005) ........ 12
*Brock & Blevins Co., Inc. v. United States,*
170 Ct.Cl. 52, 343 F.2d 951 (1965) ........ 12
*Chaney and James Constr. v. United States,*
190 Ct. Cl. 699, 421 F.2d 728 (1970) ........ 17
*Cmty. Heating & Plumbing Co. v. Kelso,*
987 F.2d 1575 (Fed. Cir. 1993) ........ 7
*Contract Cleaning Maintenance, Inc. v. United States,*
811 F.2d 586 (Fed. Cir. 1987) ........ 19
*England v. Sherman R. Smoot Corp,*
388 F.3d 844 (Fed. Cir. 2004) ........ 8, 9, 11
*Erco Industries, Ltd. v. Seaboard Cost Line Railroad Co.,*
644 F.2d 424 (5th Cir. 1981) ........ 7
*H.L. Smith, Inc. v. Dalton,*
49 F.3d 1563 (Fed. Cir. 1995) ........ 19, 21, 22
*Jackson Constr. Co. v. United States,*
62 Fed. Cl. 84 (2004). ........ 12
*James M. Ellett Constr. Co. v. United States,*
93 F.3d 1537 (Fed. Cir. 1996) ........ 19, 23
*Koby v. United States,*
53 Fed. Cl. 493 (2002) ........ 11
*McLain Plumbing & Elec. Serv., Inc. v. United States,*
30 Fed. Cl. 70 (1993) ........ 15
*Montana Bank of Circle, N.A. v. United States,*
7 Cl.Ct. 601 (1985) ........ 11
*N.R. Acquisition Corp. v. United States,*
52 Fed. Cl. 490 (2002) ........ 6
*Nebco & Assocs. v. United States*
23 Cl.Ct. 635 (1991) ........ 11
*W&F Bldg. Maint. Co., Inc. v. United States,*
56 Fed. Cl. 62 (2003) ........ 10

*Westerhold v. United States*,
28 Fed. Cl. 172 (1993) ........................................ 12
*Winn-Senter*, 110 Ct.Cl. 34, 75 F.Supp. 255 (1983) ........................................ 8

BOARD DECISIONS

*Algernon Blair, Inc.*,
ASBCA No. 25825, 87-1 BCA ¶19,602 (1987) ........................................ 17
*Appeal of Bromley Contracting Co., Inc.*,
HUDBCA No. 75-8, 77-1 BCA ¶ 12,232 (1976) ........................................ 10
*Appeal of CBI Na-Con, Inc.*,
ASBCA 37972, 89-2 BCA ¶ 21,728 (1989) ........................................ 22
*Appeal of Redondo Electric*,
IBCA 2020, 87-3 BCA ¶ 19,966 (1987) ........................................ 9
*Insulation Specialties, Inc.*,
ASBCA No. 52090, 03-2 BCA ¶32,361 ........................................ 17
*M. A. Santander Construction, Inc.*,
ASBCA No. 15882, 76-1 BCA ¶ 11,798 ........................................ 10
*Mecon Co.*,
ASBCA No. 13620, 69-2 BCA ¶ 7,786 ........................................ 10
*Trataros Constr., Inc., v. General Services Administration*,
GSBCA No. 15344, 03-1 BCA ¶ 32,251 ........................................ 16

STATUTES, REGULATIONS AND RULES

41 U.S.C. § 605(a) ........................................ 19
41 U.S.C. § 605(c)(5) ........................................ 22
41 USC §§ 601, *et seq* ........................................ 2
48 C.F.R. § 33.201 (1994) ........................................ 19
48 C.F.R. § 52.233-1 (1994) ........................................ 19
RCFC 12(b)(1) ........................................ 18, 22

OTHER

*Restatement (Second) of Contracts* § § 279 & 283, cmt. a (1981) ........................................ 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos. 04-1719C, 05-114C |
| | ) | 05-1172C, and 06-49C, |
| THE UNITED STATES OF AMERICA | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendants. | ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C, AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C**

Plaintiff, A.A.B Joint Venture. ("AAB" or "JV"), respectfully requests that the Court deny the Government's ("Government") motion to dismiss or in the alternative for summary judgment in this matter. AAB requests oral argument on its opposition to the Government's motion.

## I. STATEMENT OF THE ISSUES

1. Whether the Government is barred from asserting an accord and satisfaction affirmative defense based on Modification No. P00009 as to AAB's bolt size[1] and L/600 deflection requirement claims.

2. Whether the Court has jurisdiction to hear and decide the bolt size claim.

## II. STATEMENT OF THE CASE

### A. The Nature Of The Case

This is an action involving contract disputes involving the design and construction of a

[1] The terms "bolt size claim", "M-20 bolt claim" and "bolt claim" are used interchangeably and all refer to the claim which is the subject of Defendant's Motion.

storage and logistics base complex for the Israel Defense Forces and arising under the Contract Disputes Act of 1978, as amended, 41 USC §§ 601, *et seq* (the "CDA") between A.A.B Joint Venture and the United States Government.

**B. Statement Of Facts**

On June 5, 2001, AAB, was awarded contract NO. DACA 90-01-C-0043 (the "Contract") for $124,089,176.00 to design and construct the Nachshonim Military Storage Base Project (the "Project"). Complaint ¶ 7; Declaration of Stephen Denison Keeney ("Keeney Decl.") at ¶ 4. A Notice to Proceed was issued on June 19, 2001. Complaint ¶ 7. The contract required construction of 119 Dry Storage Buildings ("DSBs") designed to maintain a controlled climate for the housing of heavy military equipment. Complaint ¶ 5, 11. The Project involved the design and construction of a storage and logistics complex for use by the Israeli Defense Force. The Project, which involved the construction of roughly 200 buildings and supporting infrastructure and site development, is located approximately 20 km. east of Tel Aviv, Israel. Keeney Decl., ¶ 4.

On December 13, 2001, representatives of AAB and the Government held a design issues meeting, at which they discussed a variety of matters relating to the DSBs, including the parties' differences concerning minimum space frame bolt size and maximum roof deflection requirements.

During the December 13, 2001 meeting, the issue of minimum bolt hole size was discussed. At the meeting, the JV wanted to utilize a minimum bolt size of M-16 for all space frames. At the time, it was the JV's belief that the use of M-16 bolts was allowed by the contract based upon Amendment 6 which deleted a reference to M-20 bolts. The bolt size issue was not resolved at the December 13, 2001 meeting. At the conclusion of the December 13, 2001 meeting, the USACE stated only that it would subsequently determine the acceptability of the

M-16 bolts. Keeney Decl., ¶ 7.

At the same December 13, 2001 meeting, the JV and USACE discussed the applicability of the L/600 requirement to the panels and noted that there were three options possible to providing a solution, all of which would involve additional cost to the JV. Additionally, the JV did not agree to provide maximum L/600 deflection in panels until the JV reviewed the cost impacts for each option. In response, Mr. Michael Roach, the contracting officer's representative, stated that if the JV complied with the L/600 requirement for the panels, the Government would show "leniency" if the pressure test came out at 1.5% or 2% infiltration, rather than the 1.1% which would have been required based upon the specified pressure test. Keeney Decl., ¶ 8.

The resolution of this issue was that the JV would comply with the L/600 requirement for the panels. However, the JV was only willing to make this concession, of what it considered to be an otherwise valid claim, if the Government would give the stated leniency with respect to the pressure test. Keeney Decl., ¶ 9.

Though the leniency of nearly 100% was significant, as it turned out this would have fallen far short of allowing compliance with the specified pressure test (*see e.g.* Specification-Division 2, Section 003, Dry Storage Buildings, Chapter J, Paragraph 3), a fact that was not known to the JV at the time of the meeting. Keeney Decl., ¶ 10.

There was never any discussion, or agreement between the JV and the USACE, either at the December 13, 2001 meeting or at any time thereafter that: 1) The issuance of Modification P00009 would be delayed for five and one half months until May 31, 2002; or 2) that the USACE would not make a determination with respect to the bolt hole size until after the JV demonstrated compliance with the L/600 requirement for the panels. Keeney Decl., ¶ 11.

During the period from December 13, 2001 through May 31, 2002 the USACE withheld its approval of the proposed M-16 minimum bolt size pending resolution of the L/600 panel issue. However, as noted above, the parties never agreed that the USACE would delay approval of the bolt size until the JV demonstrated compliance with the L/600 requirement for the panels. Keeney Decl., ¶ 12.

Consistent with this, the JV sent an email on May 14, 2002 to the USACE which stated the following: "I asked him to issue a change order for maximum [sic] M-16 bolts for all DSB's and to consider requesting value engineering, thereby separating the bolt and L/600 panel issues. I stated that the JV was exposed for design and time by not having an official change to the contract. . . . He still wants to lump the bolt issue with the L/600 panel issue." Keeney Decl., ¶ 13.

The USACE's response indicated that the bolt size issue remained unresolved and would not be resolved until all issues tied to the bolt size had been resolved. Keeney Decl., ¶ 15.

During discussions with Jody Blackburn, USACE ACO, a day or so before signing Modification No. P00009, Mr. Blackburn encouraged Mr. Keeney to sign the modification by stating there was no need to worry about waiving the JV's claims, as even after signing the JV would not be giving up all its rights to claim, as the courts are often convinced there was no accord and satisfaction for many reasons and allow the contractor to make the claim. Keeney Decl., ¶ 14.

Modification P00009 was signed by the Administrative contracting officer, J.W. Blackburn, Jr., on May 31, 2002, and by AAB's Project Director, S.D. Keeney, on June 3, 2002. Def. App 3-11.

The untimely issuance of Modification P00009 and the imposition by the USACE of a

requirement that the bolt size issue would not be determined until the JV demonstrated compliance with the L/600 requirement for the panels delayed the release of space frames for fabrication until May 31, 2002. Keeney Decl., ¶ 16.

Rather than grant any leniency, the USACE continued to insist on strict compliance with the specified pressure test from December 13, 2001 through at least January 2003, contrary to Mr. Roach's statement in the December 13, 2001 meeting. Keeney Decl., ¶ 17.

On February 11, 2005, AAB submitted its certified claim to the Government on a number of claims, including the M-20 bolt and L/600 claims. Government Appendix at 12. Both the M-20 bolt size and L/600 claims, which were included as part of AAB's February 2005 DSB Pressure Test certified claim, expressly sought compensation for "the compensable delay to the project's critical path [which] was 299 calendar days . . . and the damages to the JV, both direct and indirect, total[ing] $11,239,552." Government's Appendix at 17-18. This certified claim gave the USACE notice that: (1) Amendment 6 created specification inconsistencies regarding the minimum bolt hole size; (2) this issue was not resolved on December 13, 2001; (3) the Government waited 5 ½ months before untimely resolving the bolt size issue (12/13/01 to 5/31/02); and (4) the Government breached its duty of good faith and fair dealing and its companion duties of cooperation and noninterference by its unreasonable contract administration in not issuing a change order in a timely fashion.

On September 22, 2005, William Mills, the Government's Contracting Officer ("CO"), issued a final decision on AAB's February 11, 2005 claims, including the M-20 bolt and L/600 claims. Government Appendix at 44. The CO's final decision addressed the L/600 claim in the February 11, 2005 certified claim in full and on the merits and never expressly relied upon "accord and satisfaction." Government Appendix at 91. The CO's final decision failed to

specifically address the M-20 bolt size claim, but generally denied AAB's claim in its entirety.

On November 2, 2005, AAB filed its original complaint, asserting both the M-20 bolt size and L/600 claims. *See* No. 05-1172C Docket Entry No. 1. On November 3, 2005, AAB filed it first amended complaint, asserting the same two claims which are now the subject of the Government's motions to dismiss and for summary judgment. *See* No. 05-1172C, Docket Entry No. 5.

Five weeks later, on December 9, 2005, the Government and AAB signed Modification No. P00091. AAB Exhibit 1.

The Government filed its answer to AAB's original and first amended complaints on January 3, 2006 and, for the first time, expressly asserted an "accord and satisfaction" affirmative defense to AAB's claims. *See* No. 05-1172C, Docket Entry No. 7.

[copy from Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact]

## III. ARGUMENT

### A. Accord And Satisfaction Does Not Provide A Basis For Entry Of Summary Judgment On The Bolt Size And L/600 Claims

The Government asserts that summary judgment should be granted on AAB's bolt size and L/600 claims based on the affirmative defense of accord and satisfaction. However, for the reasons discussed below the government's accord and satisfaction argument must be rejected.

#### 1. Standard For Summary Judgment

Summary judgment may be properly granted only where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *N.R. Acquisition Corp. v. United States*, 52 Fed. Cl. 490, 494 (2002). Similarly, "[s]ummary judgment is not appropriate where there are disputes over facts that might affect the outcome of

the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, summary judgment will not be granted if 'the dispute about a material fact is 'genuine.''" *Id.* Where the opponent to a motion for summary judgment points to "an evidentiary conflict created on the record by at least a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant," summary judgment may not be granted. *Id.*

Finally, any doubt as to whether summary judgment is appropriate should be resolved against the moving party. *Erco Industries, Ltd. v. Seaboard Cost Line Railroad Co.,* 644 F.2d 424 (5th Cir. 1981). Also, the moving party shoulders the burden of proving that no question of material fact exists, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970).

**2. Law On Accord And Satisfaction**

The Government relies exclusively upon Modification No. P00009 for its affirmative defense of accord and satisfaction in its motion for summary judgment. Assuming, for purposes of this portion of AAB's argument only, that Modification No. P00009 is a proper basis for asserting an accord and satisfaction affirmative defense, the Government still is not entitled to summary judgment on the M-20 bolt and L/600 claims based on the Government's course of conduct subsequent to the signing of Modification No. P00009.

> A claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.' *O'Connor v. United States,* 308 F.3d 1233, 1240 (Fed. Cir. 2002) (internal quotation omitted). . . .
>
> As noted above, the release of a claim by accord and satisfaction occurs when performance different from that which was claimed is rendered and accepted by the claimant as full satisfaction of his claim. [*Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1581 (Fed. Cir. 1993) ]. However,
>
> > courts may refuse to bar a claim based upon the defense of accord and satisfaction where the parties continue to consider the claim after execution of a release. Such conduct manifests an intent that the parties never construed the release as an abandonment of plaintiff's earlier claim.

> *Id.* (citing *Winn-Senter*, 110 Ct.Cl. 34, 75 F.Supp. 255; *A & K Plumbing & Mech., Inc. v. United States*, 1 Cl.Ct. 716, 723 (1983)) .

*England v. Sherman R. Smoot Corp*, 388 F.3d 844, 849-50 (Fed. Cir. 2004).

### 3. The Contracting Officer's Final Decision And Subsequent Course Of Conduct Bars The Government's Accord And Satisfaction Affirmative Defense As To Both The M-20 Bolt Size And L/600 Claims

Modification No. P00009 was signed by the Government on May 31, 2002 and by AAB on June 3, 2002. Government Appendix at 3. This is the modification which the Government claims fully resolved the M-20 bolt and L/600 claims. Government Motion at 9.

On February 11, 2005, AAB submitted its certified claim to the Government on a number of claims, including the M-20 bolt and L/600 claims. Government Appendix at 12.

On September 22, 2005, William Mills, the Government's Contracting Officer ("CO"), issued a final decision on AAB's February 11, 2005 claims, including the M-20 bolt and L/600 claims. Government Appendix at 44. The CO's final decision did not summarily dismiss the M-20 bolt and L/600 claims based on "accord and satisfaction." In fact, the phrase "accord and satisfaction" was not used by the CO in his September 22nd decision, despite the fact that he expressly mentioned Modification No. P00009 several times. *See, e.g.*, Government Appendix at 91. Instead, the CO addressed the L/600 claim in the February 11, 2005 certified claim in full and on the merits.[2]

On November 2, 2005, AAB filed its original complaint, asserting both the M-20 bolt size and L/600 claims. *See* No. 05-1172C Docket Entry No. 1. On November 3, 2005, AAB filed it first amended complaint, asserting the same two claims which are now the subject of the Government's motions to dismiss and for summary judgment. *See* No. 05-1172C Docket Entry

---

[2] The fact that the CO failed to address the M-20 bolt claim in his September 22, 2005 final decision is of no legal important here because such failure is considered a "deemed denial" of such claim. *See infra*.

No. 5.

Five weeks later, on December 9, 2005, the Government and AAB signed Modification No. P00091, which stated in relevant part:

> The contract completion date shall be extended by 40 calendar days by reason of this modification.
>
> It is understood and agreed that this change resolves all outstanding time of performance related issues.
>
> EXCEPTION: Issues directly or indirectly related to the following certified claims:
>
> 1) TCN Labor Shortage
>
> 2) Erroneous Rejection of Alternative Paint System
>
> 3) DSB Pressure Test
>
> 4) Liquidated Damages.
>
> Contractor reserves its rights to any costs, impacts, markups, delays, extended overhead costs and the like for any of the certified claims and those directly or indirectly related to certified claims listed above.

Exhibit. 1.

The Government filed its answer to AAB's original and first amended complaints on January 3, 2006. *See* No. 05-1172C Docket Entry No. 7.

As is evident from the CO's final decision, the CO did not assert an "accord and satisfaction" defense. Government's Appendix at 44-98. The first time the Government asserted any "accord and satisfaction" defense was in its answer to the complaint in this Court. *See* Docket Entry No. 7 (Answer to Plaintiff's First Amended Complaint). The fact that the CO addressed AAB's claim on the merits and did not assert "accord and satisfaction" as a defense until it was raised in this Court bars or waives the accord and satisfaction affirmative defense. *See England v. Sherman R. Smoot Corp.*, 388 F.3d at 849-50; *Appeal of Redondo Electric*, IBCA 2020, 87-3 BCA ¶ 19,966 (1987)("Moreover, in analyzing the effect of the modifications, we are

permitted to look at the actions of the parties in regard thereto as an aid in determining meaning. . . . Here, the fact that the contracting officer (CO) did not mention accord and satisfaction in his decision denying the claim . . . the defense being raised for the first time at the Board level, is evidence that the Bureau did not consider the modifications as barring the instant claim at the time of their issuance. We conclude that the Bureau has failed to substantiate its position that Redondo relinquished its claim for extended overhead dating from October 31, 1983, by way of agreeing to accords and satisfactions."); *Appeal of Bromley Contracting Co., Inc.*, HUDBCA No. 75-8, 77-1 BCA ¶ 12,232 (1976) ("Moreover, as Appellant has argued the Government first raised the defense of Accord and Satisfaction when it filed its Answer after the Contracting Officer denied the claims on their merits. As recently held in *M. A. Santander Construction, Inc.*, ASBCA No. 15882, 76-1 BCA ¶ 11,798: 'Under the rationale of cases, such as *Mecon Co.*, ASBCA No. 13620, 69-2 BCA ¶ 7,786, the action of the contracting officer in considering the claims on their merits may be considered as evidence that the Government did not construe it [the modification] as a bar to the claims submitted.'").[3]

Even if the Court were to find that the Government asserted accord and satisfaction before the answer in this case, that affirmative defense is still waived. The Government, in its motion for summary judgment, admits that the M-20 bolt and L/600 claims are subsumed within the DSB Pressure Test certified claim – the February 2005 certified claim which forms the basis for this case. *See* Government's Motion at 7 n.3 and Government's Appendix at 12-43 ("Certified Claim – DSB – Pressure Test"). Hence, by agreeing in Modification No. P00091 that

---

[3] In *W&F Bldg. Maint. Co., Inc. v. United States*, 56 Fed. Cl. 62,72 (2003) the Court found no preclusion of the accord and satisfaction defense where the CO's final decision was based on laches and never reached the merits of the claim. Therefore, the CO did not "administer, review, or negotiate" the merits. By contrast, it is obvious that the CO in this case did, at a minimum, review the merits of the L/600 claim. *See* Def. App. 91.

AAB "reserves its rights to any costs, impacts, markups, delays, extended overhead costs" and other relief for the DSB-Pressure Test claim, the Government – either through its course of action or by rescinding the alleged effect of Modification No. P00009 – is barred from asserting the affirmative defense of accord and satisfaction. *See*, *e.g*., *Koby v. United States*, 53 Fed. Cl. 493, 499 (2002) ("A decision to abandon contract rights can be conveyed through a formal agreement of rescission or through the acts and conduct of the parties indicating such an intent. *See Nebco & Assocs. v. United States,* 23 Cl.Ct. 635, 642 (1991); *Montana Bank of Circle, N.A. v. United States*, 7 Cl.Ct. 601, 610 (1985); *see also Restatement (Second) of Contracts* § § 279 & 283, cmt. a (1981) . ("When a party engages in acts inconsistent with the existence of a contract, including acquiescing in a repudiation of the contract by the other party, courts have found an objective intent to abandon despite the party's assertion of subjective intent to the contrary.").

Taken together, the CO's final decision denying the claims on the merits and failing to assert "accord and satisfaction" until the Government filed its January 3, 2006 Answer, combined with the Government's December 9, 2005 agreement to Modification No. P00091 "manifests an intent that the parties never construed the release as an abandonment of plaintiff's earlier claim. *England v. Sherman R. Smoot Corp*., 388 F.3d at 850. Hence, the Government's accord and satisfaction affirmative defense must fail as a matter of law and the Government's motion for summary judgment must be denied.[4]

**4. The Government's Accord And Satisfaction Argument Must Also Be Rejected Because Of Either A Failure To Prove A Meeting Of The Minds, Or A Lack Of Performance With Respect To The Agreements Reached At The December 13, 2001 Design Issues Meeting**.

[4] At a minimum, the Declaration of Denison Keeney proves that there are disputed issues of material fact with respect to Modification Nos. P00009 and P00091 which preclude summary judgment for the Government.

The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration. *Brock & Blevins Co., Inc. v. United States*, 170 Ct.Cl. 52, 59, 343 F.2d 951, 955 (1965). The absence of any of these elements results in a failure of the defense. *Westerhold v. United States*, 28 Fed. Cl. 172, 175 (1993).

This Court has also held that it may void or reform a release on several grounds, including lack of consideration, lack of performance, lack of authority, unilateral or mutual mistake, misrepresentation, duress, or other circumstances in which the parties' conduct evinces an intent to allow additional claims. *Axion Corp. v. United States*, 68 Fed. Cl. 468, 475 (2005); *accord*, *Jackson Constr. Co. v. United States*, 62 Fed. Cl. 84, 93 (2004).

In this case, the government's argument must be rejected based upon either failure to prove a meeting of the minds or lack of performance. These issues are discussed below.

It is clear that questions concerning the achievability of the specified pressure test requirement were known to the Government more than a year prior to the December 13, 2001 meeting. Indeed, as early as April 5, 2000 the COE's mechanical design reviewer, Ragan Glandon questioned whether the 25 millimeter water gauge pressure (part of the specific pressure test) could be met. (Exhibit 2) Moreover, it was also clear by October 2001 that in order to pass the specified DSB pressure test, air infiltration would have to be limited to 1.1 percent. On October 9, 2001, a Government email observed that, without including the doors, the theoretical lowest leakage rate was 2.4 percent. (Exhibit 3)

Therefore, when the parties met on December 13, 2001 the Government knew that there were substantial questions with regard to whether or not the 1.1 percent infiltration rate could be achieved. Clearly, even at this early stage, compliance with the specified pressure test had

become a major issue.

Modification P00009 states that "The agreements reached in the referenced meeting are hereby incorporated into the Contract…" and includes the December 13, 2001 minutes as an enclosure. On page 5 of the minutes, Mr. Keeney noted that additional costs would be incurred to comply with the COE requirement that the panels meet the L/600 deflection requirement. Keeney Declaration ¶ 8.

Significantly, the Government's authorized representative, Mr. Roach, stated in response, "If you reduce the deflection requirement and fail the pressure test, we will be much harder on the JV than if you follow the contract and the pressure test comes out at 1.5% or 2% infiltration." Def. App. 9; Keeney Declaration ¶¶ 8, 9.

While it was clearly the Government's position that the L/600 requirement applied to the panels, it is equally clear that the Joint Venture disagreed with that interpretation. As such, the bargained for agreement as reflected on page 5 was that rather than having to meet the 1.1 percent infiltration rate, if the JV agreed to meet the Corps deflection requirement for the panels the Government would be more lenient if the pressure test came out at 1.5 percent or 2 percent infiltration. While this may seem insignificant, 2 percent versus 1.1 percent reflects a 80-90 percent less stringent requirement.[5]

By email dated May 17, 2002 Mr. Simmons, the Corps' Chief, Technical Coordination Office, transmitted an email to Mr. Roach which stated that the Corps of Engineers was concerned that test requirements as currently written could not be achieved with the building configuration. (Exhibit 4).

---

5 It is the JV's position that the specified pressure test requirement was impossible to achieve given the constraints under which the construction was required to be performed. Also, it became apparent that even this "leniency" would have fallen far short of remedying the problem.

During the period from December 13, 2001 through May 31, 2002 (when Modification 9 was executed), the Corps withheld its approval of the JV's proposed M-16 minimum bolt size pending resolution of the L/600 panel issue. Keeney Declaration ¶¶ 12, 13. In other words, the Corps, though it was never agreed to, took the position that it would not approve the M-16 minimum bolt size until the JV demonstrated compliance with the disputed L/600 requirement for the panels. This linkage, which was not agreed to by the parties, delayed releasing the spatial frames for fabrication. Keeney Declaration ¶ 16. The contemporaneous correspondence is quite clear on this issue.

Mr. Keeney in an email dated May 14, 2002 stated the following:

> "I asked him [Roach] to issue a change order for maximum (sic should be minimum) M-16 bolts for all DSBs and to consider requesting value engineering, thereby separating the bolt and L/600 panels issue. I stated that the JV was exposed for the design and time by not having an official change to the Contract … <u>he still wants to lump the bolt issue with the L/600 panel issue</u>."

Exhibit 5.

In response, the Corps made it clear in an email dated May 21, 2002 that the JVs minimum bolt size proposal had <u>not</u> been accepted noting:

> "Note that the issue of the M-20 bolts apparently remains unsolved based on some discussions of revisions to previous agreements dealing with this issue. I don't know the full details of these discussions, but until there is a resolution to all issues originally tied to this bolt size, the Contract requirement of M-20 bolts will remain valid."

Exhibit 6.

After the JV achieved the L/600 deflection criteria on May 29, 2002, the COE finally approved the use of M-16 bolts as part of Modification P00009 on May 31, 2002. Once the M-16 bolts were approved, the JV released the pilot spatial frame for fabrication. Keeney

Declaration ¶ 16.

Based on the above, Modification P00009 does not constitute an accord and satisfaction which would bar the JVs claims for the following additional reasons:

(a). There was no meeting of the minds because the parties agreed to a term (leniency with respect to the pressure test) that was omitted from the modification;

(b). In the alternative, should the Court determine that the term was included in the modification there can be no accord and satisfaction because of the Government's nonperformance of the agreement.

As reflected in the minutes of the December 13, 2001 meeting, the Contracting Officer's authorized representative tied compliance with the disputed L/600 requirement to an offer to be lenient with the JV if the pressure test results came out substantially in excess of the specified requirement.[6]

The intent of the parties is the controlling factor in deciding whether there was a meeting of the minds and the contract modification provides the best source of evidence regarding intent. *McLain Plumbing & Elec. Serv., Inc. v. United States*, 30 Fed. Cl. 70, 81 (1993).

Modification P00009 states on page 2 "The agreements reached in the referenced meeting are hereby incorporated into the contract, along with the clarification to the minutes as listed below."

Based upon this language, there are two possibilities, both of which require denial of the Government's Motion for Summary Judgment:

(1) The authorized representative of the Contracting Officer's agreement to be lenient

---

6 For many reasons to be discussed at the trial of this matter it is the JVs contention that under all the circumstances and constraints of the construction the specified pressure test was impossible to meet in any event.

in regard to the pressure test if the L/600 requirement was agreed to by the Joint Venture is a part of Modification P00009. In that event, the subsequent actions of the Corps from December 13, 2001 through at least January 2003 failed to comply with this obligation. During that period of well over a year, the Corps continued to insist on strict compliance with the "impossible" pressure test requirement, (Keeney Declaration ¶ 17) thus constituting "lack of performance" of a fundamental term of Modification P00009. *Axion Corp.*, 68 Fed. Cl. at 475.

(2) In the event that this leniency in regard to the pressure test was not included in Modification P00009, the failure to include this agreement in the modification requires a finding that there was no meeting of the minds. *Trataros Constr., Inc., v. General Services Administration,* GSBCA No. 15344, 03-1 BCA ¶ 32,251 at 159,464.

**5. Modification P00009 Was Issued Based Upon Only The Changes Clause And Therefore Does Not Bar The Delays Claimed Resulting From The Government's Untimely Issuance Of Modification P00009, And Its Unilateral Determination To Require Compliance With The L/600 Requirement Before Approval Of The M-16 Bolts.**

Modification P00009 by its express terms resolved only the issues and discussions included in the December 13, 2001 minutes. Specifically Modification P00009 states, "See Enclosed Scope of Work M-1014, USACE/AAB Design Issues Meeting, 13 December 2001. This contract change is the final resolution of the issues and discussions included in the minutes referenced by the scope of work described above." Further, the concluding language under Description of the Amendment/Modification specifically limits the purported accord and satisfaction language by stating "pursuant to the above," which presumably is a reference to the Design Issues Meeting and the issues and discussions included in the minutes thereto.

Neither the modification nor the minutes incorporated by reference, state that the decision on bolt hole size would not be made until the Joint Venture demonstrated compliance with the

L/600 deflection requirement. Further, the modification clearly states that it is issued pursuant to the Changes clause[7]

In short, the untimely issuance of the modification and linkage of compliance with the L/600 requirement as a precondition to issuance of the modification and a determination of bolt size, neither of which were agreed to, delayed spatial frame fabrication. Keeney Declaration ¶¶ 11, 16. Neither of these issues were addressed, or agreed to and therefore Modification P00009 is not a bar.

In *Insulation Specialties, Inc*.,ASBCA No. 52090, 03-2 BCA ¶32,361 at 160,103 the Board denied a government accord and satisfaction argument under similar circumstances stating:

> What is important is the language of the modification itself. That modification deals only with the Noxyde "change" made by the modification and claims incidental to the Noxyde change. The modification cites the Changes clause as authority for the modification. The modification does not purport on its face to deal with the delay leading up to the changed work. Such a delay would have been covered under the Suspension of Work clause, as were earlier delays. (Emphasis added)

*Accord, Algernon Blair, Inc.,* ASBCA No. 25825, 87-1 BCA ¶19,602 (1987) and *Chaney and James Constr. v. United States*, 190 Ct. Cl. 699, 722, 421 F.2d 728, 740-41 (1970) recognizing that modifications for changed work do not address or bar claims for suspension of work pending issuance of change orders.

---

[7] It should be noted that the untimely issuance of Modification P-9 was specifically noted in the certified claim at page 2 which states "The Government first "considered" reducing bolt size at the December 13, 2001 Meeting; but did not finally issue Change Order (P00009) to reduce bolt size until 31 May 2002"; and at page 23 as follows "In addition, the Government breached its duty of good faith and fair dealing and its companion duties of cooperation and non-interference by its unreasonable contract administration in not issuing a Change Order in a timely fashion…"

As in *Insulation Specialties, Inc.*, what is important here is the language of the modification itself. Modification P00009 deals only with the "changes" identified therein. This is confirmed by the fact that the modification cites the Changes clause as authority for the modification. Modification P00009 does not purport on its face to deal with the delay leading up to the changed work. Such a delay would be covered under the Suspension of Work clause. Moreover, modifications for changed work do not address or bar claims for suspension of Work pending issuance of change orders.

Therefore, the delays caused by the untimely issuance of Modification P00009, and the requirement to demonstrate compliance with the L/600 requirement as a precondition to issuance of the change order and determination of the minimum bolt size, are not barred by accord and satisfaction.

### B. The M-20 Bolt Claim Should Not Be Dismissed Because It Was Part of AAB's Certified Claim

The Government also seeks the dismissal of AAB's M-20 bolt claim for lack of subject matter jurisdiction based on an alleged failure to assert a proper claim. This part of the Government's motion should also be denied.

#### 1. Legal Standard For Motion To Dismiss

The Government's motion to dismiss for lack of subject matter jurisdiction is premised upon RCFC 12(b)(1).[8] Since the Court has previously addressed the issue of subject matter jurisdiction in prior decisions, AAB presumes that the Court will continue to apply the law of the

[8] "In considering Defendant's Motion to Dismiss pursuant to RCFC 12(b)(1), the Court must accept as true all of Plaintiff's well-pleaded facts alleged in the complaint, and draw all reasonable inferences in the Plaintiff's favor. Plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *AAB Joint Venture v. United States*, 74 Fed. Cl. 367, 369 (2005)(citations omitted).

case to these jurisdictional issues. *See, e.g.*, *AAB Joint Venture v. United States*, 74 Fed. Cl. 367, 369-71 (2005).

At an irreducible minimum, however, "for the court to have jurisdiction under the CDA, there must be both a valid claim . . . and a contracting officer's final decision on that claim." *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996).

> The CDA requires a Government contractor seeking redress to submit a written claim to a contracting officer for a final decision. 41 U.S.C. § 605(a) (1988). But, neither the CDA nor its implementing regulations, the Federal Acquisition Regulations (FAR), requires submission of a detailed cost breakdown or other specific cost-related documentation with the claim. The CDA does not define "claim," so this court looks for guidance to its implementing regulations. FAR § 33.201 defines a "claim" as
>
>> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.
>
> 48 C.F.R. § 33.201 (1994); *see also* 48 C.F.R. § 52.233-1 (1994) (Government contract disputes clause defining CDA claim). Interpreting this definition, this court has identified three requirements for a valid CDA claim: (1) the contractor must submit the demand in writing to the contracting officer, (2) the contractor must submit the demand as a matter of right, and (3) the demand must include a sum certain. *Essex Electro Eng'rs, Inc. v. United States*, 960 F.2d 1576, 1580 (Fed. Cir.), *cert. denied*, 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). The regulation itself, and this court's interpretation of it, do not mention supporting financial documentation.
>
> A contractor must submit in writing "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)). But the contractor need not include a detailed breakdown of costs. The contractor may supply adequate notice of the basis and amount of the claim without accounting for each cost component.

*H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995).

### 2. AAB Has Properly Asserted This Court's Jurisdiction Over The M-20 Bolt Claim

The M-20 bolt claim was clearly and properly asserted and meets all subject matter

jurisdictional requirements.

**a. AAB Submitted The Demand In Writing To The Contracting Officer**

The Government concedes that AAB submitted a written certified claim to the contracting officer. Government's Motion at 7. The Government does not argue that AAB failed to raise the M-20 bolt issue in the February 11, 2005 certified claim. *Id*. It cannot, because the claim was clearly raised in AAB's certified claim.

> The contract required the upper part of the building envelope to be a steel-structure cladded by insulated "sandwich" panels and completely sealed joints "as specified," although this sealing detail was never defined in the RFP specification. All connections on site between steel parts were to be made with bolts only. The minimum bolt size of M20 (20mm diameter) was deleted by RFP specification amendment before contract execution, however, because the Government omitted this change in all specifications, it disagreed that this change was made.
>
> The Government first "considered" reducing bolt size at the December 13, 2001 meeting; but did not finally issue Change Order (P00009) to reduce bolt size until 31, May 2002. . . .

Government Appendix at 15.

In the section of the certified claim entitled "Relevant Contract Provisions", specific reference to the bolt size was made as follows:

> <u>Minimum bolt size specification references:</u>
>
> Specification Division 2 – Section 003 Dry Storage Buildings and Special Specification Division 3 – Chapter 19, (See Exhibit 1, 22 November 01 JV Letter USACE/01-054, documenting specification inconsistencies in Amendment #6, which are the responsibility of the Government and Exhibit 2, 27 November 01 USACE response Letter COE-01-053).

Government Appendix at 19.

The claim further noted:

> In reliance on these statements, the JV attempted to comply with the impossible specification with disastrous results, including the following: (1) a significant unanticipated research and development ("R&D") effort; (2) concession of other meritorious claims such as (a) minimum air infiltration rate, (b) the L/600 panel deflection issue, and (c) the minimum bolt size for the spatial frames; and (3)

> significant delay to the project schedule and associated extended performance costs, and other resulting damages . . .
>
> For the reasons discussed herein, the Government is liable to the JV for all of the costs, project delays and the monetary consequences of the delays associated with the JV's attempts to comply with the defective/impossible specifications. In total, the compensable delay to the project's critical path was 299 calendar days . . . and the damages to the JV, both direct and indirect, total $11,239,552.

Government's Appendix at 17-18.

Therefore, the certified claim, considered as a whole, gave more than sufficient notice to the contracting officer of the operative facts at issue: (1) Amendment 6 created specification inconsistencies regarding the minimum bolt hole size; (2) this issue was not resolved on December 13, 2001; (3) the Government waited 5 ½ months before untimely resolving the bolt size issue (12/13/01 to 5/31/02); and (4) the Government breached its duty of good faith and fair dealing and its companion duties of cooperation and noninterference by its unreasonable contract administration in not issuing a change order in a timely fashion. Government Appendix at 36-37. In short, all essential operative facts were included in the certified claim. Therefore, the contracting officer was given adequate notice.

AAB submits that the foregoing excerpts from its overall February 22, 2005 certified claim provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *H.L. Smith, Inc. v. Dalton*, 49 F.3d at 1565. AAB was not required to include a detailed breakdown of costs and is permitted to simply provide adequate notice of the basis and amount of the claim without accounting for each cost component. *Id*.

Finally, the Government makes the circular argument that because the contracting officer's final decision "makes no mention of any claim concerning bolt size", there was no such claim. Government's Motion at 7. The fact that the contracting officer failed to address the bolt

size claim in his September 22, 2005 final decision does not prove or tend to prove that the claim was never made (contrary to the plain language of the certified claim cited above). Instead, the contracting officer's failure to address the claim is simply considered a "deemed denial" of the M-20 bolt claim pursuant to 41 U.S.C. § 605(c)(5). *See, e.g., Appeal of CBI Na-Con, Inc.*, ASBCA 37972, 89-2 BCA ¶ 21,728 (1989) (CO's failure to issue final decision on 22 of 33 claims within sixty days resulted in "deemed denial" of those 22 claims). The Government simply cannot get around the fact that the M-20 bolt claim was expressly raised in AAB's February 11, 2005 certified claim.

**b. AAB Submitted The Demand As A Matter Of Right**

The Government does not argue that AAB failed to satisfy the second element of a proper CDA claim. Hence, AAB presumes that the Government concedes this point and AAB will not address it further, for now.

**c. AAB's Demand Included A Sum Certain**

The Government's other argument is that the M-20 bolt claim allegedly "did not seek any monetary or other relief." Government's Motion at 7. This position, in light of the clear language of the February 22, 2005 certified claim seeking "compensable delay to the project's critical path [of] 299 calendar days . . . and [] damages to the JV, both direct and indirect, total[ing] $11,239,552" is not well taken. AAB was not required to provide a separate accounting for each cost component of its claim or allocate damages separately for the L/600, DSB Pressure Test, and M-20 bolt claims. *See H.L. Smith, Inc. v. Dalton*, 49 F.3d at 1565. The summary statement of monetary and other relief is legally sufficient.

**d. AAB Has Satisfied All Of The Required Elements For This Court's Subject Matter Jurisdiction**

The Government's RCFC 12(b)(1) motion to dismiss for an alleged lack of subject matter

jurisdiction must be denied. As discussed above, AAB has submitted a valid, certified claim on the bolt issue (*see* Amended Complaint at ¶¶ 46-55) and the contracting officer's failure to address that claim in his final decision constitutes a deemed denial of that claim (*see* Amended Complaint ¶ 57 (denying certified claim in its entirety)). The foregoing pleading and jurisdictional facts satisfy both of the requirements for this Court's subject matter jurisdiction. *See James M. Ellett Constr. Co. v. United States*, 93 F.3d at 1541-42; *AAB Joint Venture v. United States*, 74 Fed. Cl. at 369. Hence, the Government's motion to dismiss must be denied.

### 3. The M-20 Bolt Claim Is Not A Forbidden "New Claim"

Finally, the M20 bolt claim is not a "new claim." As this Court held in a prior ruling in these consolidated cases:

> This Court does not have jurisdiction over a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision. Although a contractor is not precluded from increasing the amount of a claim, a contractor is precluded from presenting a new claim which was not previously presented and certified to the contracting officer. A new claim is "one that does not arise from the same set of operative facts as the claim submitted to the contracting officer." The same set of operative facts has been found where the contractor submits additional evidence pertaining to damages to support the same factual claim, or where the claim merely "augments the legal theories" underlying the certified claim. In contrast, the same set of operative facts has not been found where the contractor files a different type of claim from that presented to the contracting officer, or where the facts require different kinds of proof.

*AAB Joint Venture v. United States*, 74 Fed. Cl. at 370 (citations omitted).

As discussed previously and as set forth in AAB's February 11, 2005 certified claim, the M-20 bolt size claim arises from the same set of operative facts as the claim submitted to the contracting officer. The certified claim, considered as a whole, gave more than sufficient notice to the contracting officer of the operative facts at issue: (1) Amendment 6 created specification inconsistencies regarding the minimum bolt hole size; (2) this issue was not resolved on

December 13, 2001; (3) the Government waited 5 ½ months before untimely resolving the bolt size issue (12/13/01 to 5/31/02); and (4) "the Government breached its duty of good faith and fair dealing and its companion duties of cooperation and noninterference by its unreasonable contract administration in not issuing a change order in a timely fashion." Government Appendix at 36-37. In short, all essential operative facts were included in the certified claim. Therefore, the contracting officer was given adequate notice and the M-20 bolt size claim, arises from the same set of operative facts as the L/600 and DSB Pressure Test claims which the Government concedes are part of a proper certified claim.

## IV. CONCLUSION

Based upon the foregoing, the Government has failed to meet its summary judgment burden, and summary judgment must be denied for several reasons. First, the contracting officer's subsequent course of conduct consisting of the issuance of a final decision denying the claims on the merits, failure to assert its accord and satisfaction argument until the Government filed its Answer, and the negotiation and execution of Modification P000091 bar the Government's accord and satisfaction defense. Second, the Government's defense must also be rejected because of either its failure to prove a meeting of the minds or a lack of performance with respect to the agreements reached at the December 13, 2001 meeting. Finally, Modification P00009 was based solely upon the Changes Clause and therefore does not bar the delays caused by the untimely issuance of the modification and the unilaterally imposed requirement to demonstrate compliance with the L/600 requirement as a precondition to issuance of the change order and the determination of the minimum bolt size.

AAB has also properly alleged and proven the necessary jurisdictional facts to permit this Court to exercise subject matter jurisdiction over the M-20 bolt claim. Therefore, the Government's motion to dismiss must also be denied, as a matter of law.

WHEREFORE, Plaintiff A.A.B Joint Venture asks the Court to deny the Government's Motion for Summary Judgment and Motion to Dismiss and that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

Dated: October 12, 2007

s/ Brian Cohen
Brian Cohen
BELL BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Of Counsel:
Philip Clark Jones
Michael J. Schrier
BELL BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

**CERTIFICATE OF SERVICE**

I, Brian Cohen, hereby certify under penalty of perjury that the foregoing Plaintiff's Opposition To Defendant's Motion To Dismiss, Or, In The Alternative, For Summary Judgment as to the M-20 Bolts Claim In No. 05-1172C, And For Summary Judgment As to The L/600 Deflection Claim In No. 05-1172C, Plaintiff's Proposed Findings Of Uncontroverted Facts, Plaintiff's Response to Defendant's Proposed Findings Of Uncontroverted Facts, Declaration of Dennison S. Keeney and Exhibits 1 through 6 will be served automatically via "shalom.brilliant.usdoj.gov" upon ECF filing this 12th day of October, 2007 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

s/ Brian Cohen
Brian Cohen