IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos. 04-1719C, 05-114C, |
| | ) | 05-1172C, and 06-49C |
| THE UNITED STATES OF AMERICA | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendants. | ) | |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to Rule 56(h)(2) of the rules of this Court, Plaintiff, A.A.B Joint Venture, in response to the proposed findings of uncontroverted fact filed by Defendant United States in support of Defendant's Motion for Summary Judgment, respectfully submits these proposed findings of uncontroverted fact.

1. A.A.B Joint Venture (the "JV") contracted with the United States Army Corps of Engineers ("USACE") to design and construct the Nachshonim Military Storage Base Project (the "Project"). The Project involved the design and construction of a storage and logistics complex for use by the Israeli Defense Force. The Project, which involved the construction of roughly 200 buildings and supporting infrastructure and site development, is located approximately 20 km. east of Tel Aviv, Israel. Keeney Declaration at ¶ 4.

2. The contract for the design and construction of the Project was signed by the USACE on June 5, 2001, and by the JV on June 11, 2001. Keeney Declaration at ¶ 5.

3. During the December 13, 2001 meeting with the JV and the USACE to discuss design issues, the issue of minimum bolt hole size was discussed. At the meeting, the JV indicated that it wanted to utilize a minimum bolt size of M-16 for all space frames. At the time, it was the JV's belief that the use of M-16 bolts was allowed by the contract based upon

Amendment 6 which deleted a reference to M-20 bolts. The bolt size issue was not resolved at the December 13, 2001 meeting. At the conclusion of the December 13, 2001 meeting, the USACE only stated that it would subsequently determine the acceptability of the M-16 bolts. Keeney Declaration at ¶ 7.

4. The JV had additional discussions with the USACE at the December 13, 2001 meeting concerning the applicability of the L/600 maximum deflection requirement for the panels and noted that there were three options possible to providing a solution all of which would involve additional cost to the JV. The JV did not agree to provide maximum L/600 deflection in panels until the JV reviewed the cost impacts for each option. In response, Mr. Michael Roach, the contracting officer's representative, stated that if the JV complied with the L/600 requirement for the panels, the Government would show "leniency" if the pressure test came out at 1.5% or 2% infiltration, rather than the 1.1% which would have been required based upon the specified pressure test. Keeney Declaration at ¶ 8.

5. The resolution of this issue in Modification No. P00009 (not at the meeting) was that the JV would comply with the L/600 requirement for the panels. However, the JV was only willing to make this concession, of what it considered to be an otherwise valid claim, if the Government would give the stated leniency with respect to the pressure test. Keeney Declaration at ¶ 9.

6. Though the leniency of nearly 100% was significant, as it turned out this would have fallen far short of allowing compliance with the specified pressure test (*see e.g.* Specification-Division 2, Section 003, Dry Storage Buildings, Chapter J, Paragraph 3), a fact that was not known to the JV at the time of the meeting. Keeney Declaration at ¶ 10.

7. There was never any discussion, or agreement between the JV and the USACE, either at the December 13, 2001 meeting or at any time thereafter that: 1) The issuance of Modification P00009 would be delayed for five and one half months until May 31, 2002; or 2) that the USACE would not make a determination with respect to the bolt hole size until after the JV demonstrated compliance with the L/600 requirement for the panels. Keeney Declaration at ¶ 11.

8. During the period from December 13, 2001 through May 31, 2002 the USACE withheld its approval of the proposed M-16 minimum bolt size pending resolution of the L/600 panel issue. However, as noted above, the parties never agreed that the USACE would delay approval of the bolt size until the JV demonstrated compliance with the L/600 requirement for the panels. Keeney Declaration at ¶ 12.

9. Consistent with the foregoing, Stephen Denison Keeney sent an email on May 14, 2002 to the USACE which stated the following: "I asked him to issue a change order for maximum [sic] M-16 bolts for all DSB's and to consider requesting value engineering, thereby separating the bolt and L/600 panel issues. I stated that the JV was exposed for design and time by not having an official change to the contract. . . . He still wants to lump the bolt issue with the L/600 panel issue." Keeney Declaration at ¶ 13.

10. The USACE's response indicated that the bolt size issue remained unresolved and would not be resolved until all issues tied to the bolt size had been resolved. Keeney Declaration at ¶ 14.

11. The untimely issuance of Modification P-00009 and the imposition by the USACE of a requirement that the bolt size issue would not be determined until the JV

demonstrated compliance with the L/600 requirement for the panels delayed the release of space frames for fabrication until May 31, 2002. Keeney Declaration at ¶ 15.

12. Rather than grant any leniency, the USACE continued to insist on strict compliance with the specified pressure test from December 13, 2001 through at least January 2003, contrary to Mr. Roach's statement in the December 13, 2001 meeting. Keeney Declaration at ¶ 16.

13. The JV negotiated the terms of Modification P000091 during the last week of November 2005, leading up to execution of the modification on December 9, 2005. Keeney Declaration at ¶ 17.

14. Those negotiations were conducted directly with Michael Roach, Administrative Contracting Officer, who executed the modification for the USACE. Keeney Declaration at ¶ 18.

15. The purpose of the modification was to bilaterally resolve several issues including the establishment of a substantial completion date, a start date for the two year warranty period, and conversion of three unilateral modifications to bilateral settlements including a time extension. Keeney Declaration at ¶ 19.

16. Both parties also understood that the JV had to reserve its rights for and/or exclude from this modification the JV's certified claims and complaints. In order to accommodate the JV's concerns regarding its certified claims, language was inserted stating that issues directly or indirectly related to the stated certified claims, including the DSB pressure test claim, were excepted from the language indicating that the change resolved all outstanding time of performance related issues. Keeney Declaration at ¶ 20.

17. Mr. Roach and Mr. Keeney agreed that the JV would come up with draft language for the modification. Keeney Declaration at ¶ 21.

18. A day or so before the modification was executed, Mr. Keeney provided Mr. Roach with the above referenced language and the additional language which states: "Contractor reserves its rights to any costs, impacts, markups, delays, extended overhead costs and the like for any of the certified claims and those directly or indirectly related to certified claims listed above." Keeney Declaration at ¶ 22.

19. Mr. Roach indicated his agreement with this language and thereafter on December 9, 2005 the modification was executed. Keeney Declaration at ¶ 23.

Date: October 12, 2007

Respectfully submitted,

s/ Brian Cohen

Brian Cohen
Of Counsel: Philip C. Jones
BELL BOYD & LLOYD, LLP
1615 L Street N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Brian Cohen, hereby certify under penalty of perjury that the foregoing Plaintiff's Proposed Findings Of Uncontroverted Facts will be served automatically via "shalom.brilliant.usdoj.gov" upon ECF filing this 12th day of October, 2007 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

s/ Brian Cohen
Brian Cohen