No. 04-1719C, No. 05-114C, No. 05-1172C, and No. 06-49C (CONSOLIDATED)
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

A.A.B JOINT VENTURE,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C, AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C

---

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

October 29, 2007

## TABLE OF CONTENTS

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C, AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. The Bolt Size Claim Was Not Included In AAB's February 11, 2005 Certified Claim . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. The Bolt Size Claim And The Deflection Claim Are Both Barred By The Defense Of Accord And Satisfaction . . . . . . . . . . . . . . . . 6

A. The Issuance Of The COFD And Modification No. P00091 Do Not Negate The Effect Of Modification No. P00009 As An Accord And Satisfaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. There Was No Lack Of A Meeting Of The Minds When P00009 Was Signed, Nor Did The Government Fail To Perform After The Modification Was Signed . . . . . . . . . . . . . . . . . . . . 7

C. Modification No. P00009 Bars AAB's Delay Claims Relating To The Bolt Size And Deflection Requirements, Notwithstanding That It Cites The Changes Clause Rather Than The Suspension of Work Clause . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## CASES

**PAGE**


Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Brawley v. United States,
96 U.S. 168 (1877) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

King Fisher Marine Serv., Inc. v. United States,,
16 Cl. Ct. 231 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

INDEX TO SUPPLEMENTAL APPENDIX

PAGE

Declaration of Michael Roach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Declaration of Joseph William Blackburn, Jr. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C, AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C

Defendant, the United States, respectfully submits this reply in support of our motion to dismiss or alternative motion for summary judgment.

## INTRODUCTION

In our moving brief, we established that this Court lacked jurisdiction to entertain one of the claims pleaded by plaintiff, A.A.B. Joint Venture ("AAB"), in the amended complaint in No. 05-1172C – the claim concerning the Government's alleged attempts to require M-20 bolts – because the claim was not certified and presented to the contracting officer for a final decision. We also demonstrated that Modification No. P00009 constitutes an accord and satisfaction with respect to the bolts claim as well as the claim asserted in paragraphs 41 through 45 of the amended complaint in No. 05-1172C, concerning the L/600 maximum deflection requirement.

In its response, AAB reads the bolts claim into a certified claim concerning other matters, based upon the fact that the certified claim contains a passing reference to the bolt size requirement. AAB further argues that the bolt claim arose from the same set of operative facts as the claim that was submitted to the contracting officer. The certified claim, however, listed 11

specific grievances, for each of which it sought a specific sum of money. AAB's grievance concerning the bolt size requirement was not among them.

AAB also argues that neither the bolt size claim nor the L/600 deflection claim is barred by Modification No. P00009. First, AAB argues that accord and satisfaction was not raised as a defense in the contracting officer's final decision ("COFD"), and because, in a subsequent modification dealing with other matters, AAB reserved its rights under several certified claims, including the one at issue in No. 05-1172C. However, the absence of the words "accord and satisfaction" from the COFD does not constitute a waiver of the defense or proof that there was none, especially in view of the fact that the COFD did expressly cite the agreement Modification No. P00009 as a reason for denying the deflection claim. And, the reservation of rights contained in Modification No. P00091 merely reserved whatever rights AAB possessed; it did not restore rights that were waived in earlier modifications.

Second, AAB argues that there was either no meeting of the minds concerning the terms of P00009 or a lack of performance of those terms by the Government. This argument, however, seeks to alter the plain terms of the modification through parol evidence. The terms of the modification speak for themselves, and AAB does not suggest any lack of meeting of the minds as to those terms when the modification was signed or any failure of the Government to perform in accordance with those terms after the modification was signed.

Third, AAB argues that Modification No. P00009 was issued based upon the Changes Clause, and, for that reason, does not bar AAB's delay claims resulting from the Government's actions concerning the bolt size and deflection requirements. According to AAB, to affect the delay claims the modification should have cited the Suspension of Work Clause. However, the

delay claims pleaded in No. 05-1172C are also pleaded as arising under the Changes Clause, not the Suspension of Work Clause. The same is true of the certified claim submitted to the contracting officer. No claim under the Suspension of Work Clause is before the Court in this case. Further, the modification explicitly states that "the contract amount remains unchanged; the contract time for performance remains unchanged; and the contract adjustment in this modification includes all costs for the change and all claims incidental thereto have been satisfied." Def. App. 3 (emphasis added).[1] The modification unmistakably applies to all claims for costs and time arising from the disputes over the bolt size and deflection requirements.

## ARGUMENT

### I. The Bolt Size Claim Was Not Included In AAB's February 11, 2005 Certified Claim

AAB asserts that the bolt size claim was included in the February 11, 2005 that it submitted to the contracting officer. To support this assertion, AAB quotes several excerpts from the certified claim that mention certain facts and contract provisions that are part of the basis of the bolt size claim asserted in this action, and states:

> AAB submits that the foregoing excerpts from its overall February 22 [sic], 2005 certified claim provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." H.L. Smith, Inc. v. Dalton, 49 F.3d at 1565. AAB was not required to include a detailed breakdown of costs and is permitted to simply provide adequate notice of the basis and amount of the claim without accounting for each cost component. Id.

[1] "Def. App." refers to the appendix to our motion. "Pl. App." refers to the appendix to plaintiff's response. "Def. Supp. App." refers to the supplemental appendix attached to this reply.

Plaintiff's Response 21. AAB overlooks, however, the fact that the certified claim did provide a breakdown of costs. It listed 12 distinct claim items, with the amount claimed for each item. Def. App. 41-42. The total amount sought in the certified claim consisted of the sum of the amounts itemized in this list. The list identified cost items as narrow and specific as "Testing and Mockup Costs" (Item 1) and "Change for Panels to Meet L/600 Deflection" (Item 12). Nowhere in this itemization was bolt size mentioned.

Even assuming that the references to the bolt size requirement contained in the certified claim were intended by AAB to serve as an alternative or additional basis for the relief sought in the above-discussed itemization, this is not at all apparent on the face of the certified claim. Rather, the omission of any reference to the bolt size requirement from the breakdown of cost items suggests that these references were merely part of the background information provided in the certified claim. Indeed, even if the contracting officer had agreed with all of the statements concerning the bolt size requirement mentioned in the certified claim, a finding that the 12 itemized claim items lacked merit would have left him with no basis for awarding any amount to AAB. The certified claim was simply silent about the costs, if any, incurred by AAB as a result of the referenced events relating to the bolt size requirement. Thus, the certified claim cannot be said to provide adequate notice of the basis and amount of any claim may have intended to assert concerning the bolt size requirement.

Nor did the bolt size claim arise from the same set of operative facts as the claim that was submitted to the contracting officer. The gravamen of the bolt size claim, as alleged in the pleadings, is that the Government's "initial attempt to require M-20 bolts and untimely relief from the erroneous interpretation that the Joint Venture provide M-20 bolts . . . caused the Joint

Venture to perform additional work beyond that required by the contract . . . ." Amended Complaint ¶ 54. This alleged additional work was not mentioned in the certified claim. What AAB points to as the common set of operative facts underlying the certified claim and the bolt size claim, and as giving the Government notice of the latter claim, are actually two distinct sets of alleged facts.

As described by AAB, the common operative facts are:

> (1) Amendment 6 created specification inconsistencies regarding the minimum bolt hole size; (2) this issue was not resolved on December 13, 2001; (3) the Government waited 5 ½ months before untimely resolving the bolt size issue (12/13/01 to 5/31/02); and (4) "the Government breached its duty of good faith and fair dealing and its companion duties of cooperation and noninterference by its unreasonable contract administration in not issuing a change order in a timely fashion."

Plaintiff's Response 23-24, quoting Def. App. 36-37. Of these four alleged facts, however, the first three are not operative facts underlying the certified claim; as we have demonstrated, they are, at most, background information noted in the certified claim but lacking any apparent connection to the costs itemized in that claim. The fourth of these alleged facts is part of the basis of the certified claim and the costs itemized in that claim, but, from the context of the quoted language as it appears in the certified claim, it is evident that this assertion refers to the an alleged delay in allowing a change to the originally-specified <u>pressure test</u> requirement, not the bolt size requirement. By grafting together statements in the certified claim concerning different subjects – incidental comments concerning the bolt size requirement and a statement summarizing the gist of the pressure test claim – AAB seeks to create the illusion that both subjects involve the same facts. In reality, they do not.

## II. The Bolt Size Claim And The L/600 Deflection Claim Are Both Barred By The Defense Of Accord And Satisfaction

### A. The Issuance Of The COFD And Modification No. P00091 Do Not Negate The Effect Of Modification No. P00009 As An Accord And Satisfaction

AAB argues that a course of conduct subsequent to the signing of Modification No. P00009 indicates that the modification was not intended by the parties to have the effect of an accord and satisfaction. The referenced course of conduct consists of the issuance of the COFD, which, according to AAB, treated the L/600 deflection claim as a still-pending claim, and the issuance of Modification No. P00091, in which AAB reserved its rights under four certified claims that it had submitted to the contracting officer. This argument lacks merit.

Although the words "accord and satisfaction" do not appear in the COFD, the COFD does contain the following statement: "The JV's minutes [incorporated in Modification No. P00009] clearly state, 'Compliance with L/600 is required for all roof structure elements, including panels' (Ex. 21). Consequently, when modification P00009 was signed bilaterally, it served as a means whereby both the JV and the government agreed the issue was resolved." Def. App. 91 (emphasis added). This statement is plainly a reaffirmation that Modification No. P00009 constituted an accord and satisfaction concerning the L/600 deflection claim. The fact that the contracting officer also reaffirmed the Government's original position concerning the matter resolved by the modification cannot be construed as a concession that the matter was not resolved by the modification.

Nor can such a concession be read into Modification No. P00091. Modification No. P00091 did not mention, and had nothing to do with, either Modification No. P00009 in general or the L/600 deflection and bolt size issues in particular. The slender reed upon which AAB

relies in this regard is P00091's exception and reservation of rights, which AAB attempts to convert into a restoration of previously-resolved claims. The latter modification contains the statement "It is understood and agreed that this change resolves all outstanding time and performance related issues," followed by a clause carving out as an "exception" the issues raised in four certified claims AAB had submitted, and stating that "Contractor reserves its rights to any costs, impacts, markups, delays, extended overhead costs and the like for any of the certified claims and those directly or indirectly related to the certified claims listed above." Pl. App. 7.[2] On its face, the referenced "exception" merely excluded the listed certified claims from the scope of what was resolved by Modification No. P00091, and the reservation of rights merely reserved whatever rights AAB possessed relating to these certified claims; it did not restore claims that were resolved or rights that were waived in earlier modifications. The referenced exception of claims and reservation of rights left AAB in the same position with respect to these claims and rights after the signing of Modification No. P00091 as before it. The L/600 deflection and bolt size claims were resolved by Modification No. P00009 prior to the signing of Modification No. P00091, and these claims remained resolved thereafter.

B. There Was No Lack Of A Meeting Of The Minds When P00009 Was Signed, Nor Did The Government Fail To Perform After The Modification Was Signed

AAB argues that there was either no meeting of the minds concerning the terms of Modification No. P00009, or a lack of performance of those terms by the Government. The gist

[2] In its argument concerning P00091, AAB erroneously states: "The Government, in its motion for summary judgment, admits that the M-20 bolt and L/600 claims are subsumed within the DSB Pressure Test certified claim – the February 2005 certified claim which forms the basis for this case." Plaintiff's Response 10, citing Government's Motion 7 n.3. We conceded that the L/600 claim was included in February 2005 certified claim, but unmistakably established that the M-20 bolt claim was not.

of this argument is that the quid pro quo for AAB's acquiescence in the Government's interpretation of the L/600 deflection requirement was an agreement by the Government to be lenient concerning the pressure test requirement. AAB further argues that if Modification No. P00009 is construed not to include the a promise of leniency, then there was no meeting of the minds, and if the modification is construed to include such a promise, then there was a failure of performance as a result of the Government's delay in affording AAB such leniency.

The terms of Modification No. P00009, however, were clear. The matters to which the parties agreed in the modification were listed in a statement of work attached to and incorporated in the modification. The statement of work contained no promise by the Government to be lenient concerning the pressure test, much less a promise to exercise leniency within a specified time or in any particular manner. And, the absence of such a promise does not reflect a lack of a meeting of the minds, because this absence was plain on the face of the modification. Also plain on the face of the modification was the actual quid pro quo for AAB's acquiescence in the Government's interpretation of the L/600 deflection requirement. It included, in particular, a provision that "[t]he minimum acceptable space frame bolt size for all types of the dry storage buildings [would be] M-16," and a provision that "[f]oundation and concrete work on the DSB's can begin prior to the completion of the initial DSB . . . ." Def. App. 4.

AAB's argument in this regard is, essentially, an attempt to alter the terms of a written bilateral contract modification based upon parol evidence of extraneous dealings alleged to have occurred between the parties. In the case of determining whether an unambiguous contract modification constitutes an accord and satisfaction, as in the case of interpreting contract terms generally, the parol evidence rule precludes consideration of prior dealings. King Fisher Marine Serv., Inc. v. United States, 16 Cl. Ct. 231, 234 (1989); see also Brawley v. United States, 96

U.S. 168, 173 (1877) ("[t]he written contract merged all previous negotiations, and is presumed, in law, to express the final understanding of the parties. If the contract did not express the true agreement, it was the claimant's folly to have signed it"); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1376 (Fed. Cir. 2004).[3]

Finally, the allegedly expectation of leniency upon which AAB bases its claim of a lack of a meeting of the minds or of performance is based upon a comment by the contracting officer's representative, Michael Roach, at a December 13, 2001 meeting referenced in P00009, that "[i]f you reduce the deflection requirement and fail the pressure test, we will be much harder on the JV than if you follow the contract and the pressure test comes out at 1.5% or 2% infiltration." Plaintiff's Response 13, quoting Def. App. 9. On its face, this comment is nothing more than a warning that the Government would be less tolerant of a failure to meet both the referenced pressure test and the referenced deflection requirement than of a failure to meet only the pressure test. And, to the extent that this warning may be construed as a promise, none of the evidence offered by AAB suggests that this promise was not fulfilled. Indeed, AAB did not perform preliminary pilot DSB pressure tests or submit formal test results to the Government for approval before January 2003. Def. App. 31. Until that time, the Government had no pressure test results about which to be lenient.

In sum, the terms of the modification speak for themselves, and AAB has not demonstrated any lack of a meeting of the minds as to those terms when the modification was

---

[3] AAB's description of the prior dealings is also inaccurate. For example, in a declaration of Stephen Denison Keeney, annexed to AAB's response, Mr. Keeney asserts that, shortly before he signed Modification No. P00009, the administrative contracting officer told him that the modification might not have the effect of an accord and satisfaction or a waiver of claims. Pl. App. 3. This assertion is not true. Def. Supp. App. 3-4.

signed or any failure of the Government to perform in accordance with those terms after the modification was signed.

C. Modification No. P00009 Bars AAB's Delay Claims Relating To The Bolt Size And Deflection Requirements, Notwithstanding That It Cites The Changes Clause Rather Than The Suspension of Work Clause

AAB argues that Modification No. P00009 was issued based upon the Changes Clause, and, for that reason, does not bar AAB's delay claims resulting from the Government's actions concerning the bolt size and deflection requirements. According to AAB, to affect the delay claims the modification should have cited the Suspension of Work Clause.

The authorities cited by AAB, however, establish nothing more than that a contract modification issued under the Changes Clause does not necessarily affect claims under the Suspension of Work Clause for delays leading up to the issuance of the modification. However, neither the February 11, 2005 certified claim nor the Amended Complaint in No. 05-1172C alleges a suspension of work or invokes the Suspension of Work Clause. All of the claims asserted in this case have been asserted under the Changes Clause, not the Suspension of Work Clause.

Further, Modification No. P00009 explicitly states that "the contract amount remains unchanged; the contract time for performance remains unchanged; and the contract adjustment in this modification includes all costs for the change and all claims incidental thereto have been satisfied." Def. App. 3 (emphasis added). The modification unmistakably applies to all claims for costs and time arising from the disputes over the bolt size and deflection requirements.

CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, we respectfully request the Court to dismiss AAB's bolt size claim asserted in paragraphs 46 through 54 of the amended complaint in No. 05-1172C, for lack of jurisdiction, or, in the alternative, to grant summary judgment dismissing this claim upon the ground that it is barred by the doctrine of accord and satisfaction, and to grant summary judgment dismissing AAB's L/600 deflection requirement claim asserted in paragraphs 41 through 45 of the amended complaint in No. 05-1172C, upon the ground that it is barred by the doctrine of accord and satisfaction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

October 29, 2007

# DEFENDANT'S SUPPLEMENTAL APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, Plaintiff, | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, and No. 06-49C (CONSOLIDATED) (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF MICHAEL ROACH

I, Michael Roach, declare as follows:

1. From early 2001 until May 2006, I served as Contracting Officer's Representative for Contract No. DACA90-01-C-0043, a contract that had been awarded to A.A.B Joint Venture ("AAB") for design/build services for construction of the Nachshonim Storage Base near Elad, Israel.

2. In my capacity as Contracting Officer's Representative, I participated in the negotiation of Modification No. P00009 on behalf of the United States Army Corps of Engineers. On June 3, 2002, Modification No. P00009 was signed on behalf of AAB by Stephen Denison Keeney, in his capacity as Project Director.

3. I understand that Mr. Keeney has submitted a declaration in this action, attributing certain statements to me in connection with the signing of Modification No. P00009. Specifically, in paragraph 7 of his declaration, Mr. Keeney asserts:

> ¶ 8 I had additional discussions with the USACE at the December 13, 2001 meeting concerning the applicability of the L/600 requirement to the panels and noted that there were three options possible to providing a solution all of which would involve additional cost to the JV. Additionally, I did not agree to provide maximum L/600 deflection in panels until I reviewed the cost impacts for each option. In response, Mr. Michael Roach, the contracting officer's representative, stated that if the JV complied with the L/600 requirement for the panels, the Government would show "leniency" if the pressure test came out



Def. Supp. App. 1

> at 1.5% or 2% infiltration, rather than the 1.1% which would have been required based upon the specified pressure test.
>
> ¶ 9 The resolution of this issue was that the JV would comply with the L/600 requirement for the panels. However, the JV was only willing to make this concession, of what it considered to be an otherwise valid claim, if the Government would give the stated leniency with respect to the pressure test.

These statements, however, are not accurate.

4. The outcome of the 13 December 2001 meeting was that the AAB agreed that the maximum deflection of L/600 shall apply to all individual elements of the roof structure for each of the DSBs (Dry Storage Buildings), including the panels. At the same meeting it was also agreed that the foundation and concrete work on the DSBs could begin prior to the completion of the initial DSB. At that meeting Mr. Keeney, as AAB's representative, agreed with both of these decisions. At no time did I state that the "Government would show leniency" if AAB failed to meet the pressure test.

5. After Modification No. P00009 was executed it was always been my understanding that the M-16 bolt and the L/600 deflection change issues had been resolved. I also negotiated Modification No. P00091 which resolved a number of additional issues.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 29th day of October 2007.

MICHAEL ROACH



Def. Supp. App. 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DECLARATION OF JOSEPH WILLIAM BLACKBURN, JR.

I, Joseph William Blackburn, Jr., declare as follows:

1. From August 2001 until August 2003, I served as Administrative Contracting Officer for Contract No. DACA90-01-C-0043, a contract that had been awarded to A.A.B Joint Venture ("AAB") for design/build services for construction of the Nachshonim Storage Base near Elad, Israel. Since that time, I have retired from public service and am employed in the private sector.

2. On May 31, 2002, in my capacity as Administrative Contracting Officer, I signed Modification No. P00009 on behalf of the United States Army Corps of Engineers. On June 3, 2002, Modification No. P00009 was signed on behalf of AAB by Stephen Denison Keeney, in his capacity as Project Director.

3. I understand that Mr. Keeney has submitted a declaration in this action, attributing certain statements to me in connection with the signing of Modification No. P00009. Specifically, in paragraph 14 of his declaration, Mr. Keeney asserts:

> During discussions with Jody Blackburn, USACE ACO, a day or so before signing Modification No. P00009, Mr. Blackburn encouraged me to sign the modification by stating that there was no need to worry about waiving my claims, as even after signing I would not be giving up all my rights to claim, as the courts are

> often convinced there was no accord and satisfaction for many reasons and allow the contractor to make the claim.

This statement, however, is not accurate.

4. At no time did I state to Mr. Keeney that his signing of Modification No. P00009 would not have the effect of waiving any claims. Nor did I state that Modification No. P00009 might not constitute an accord and satisfaction with respect to the claims referenced in the modification. Nor did I state anything concerning what the courts might conclude concerning Modification No. P00009 or any other accord and satisfaction. I made no statement or representation to Mr. Keeney that would justify his concluding that the meaning and effect of Modification No. P00009 was other than as expressly stated in the modification itself.

5. I probably did state – and it would have been true to state – that by signing the modification Mr. Keeney would not be giving up all of AAB's rights to claim. This is because signing the modification would not have the effect of waiving claims outside the scope of the modification, such as claims arising after the signing of the modification. Further, AAB would retain the right to offer reasons why a particular claim should not be deemed waived, if a meritorious basis existed for such an argument. However, I was not aware then, and am not aware now, of any meritorious basis existed for such an argument.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23 day of OCT, 2007.

JOSEPH WILLIAM BLACKBURN, JR.