IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1719C, No. 05-114C, No. 05-1172C, |
| | ) | and No. 06-49C |
| THE UNITED STATES, | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of this Court, defendant, the United States, respectfully responds to plaintiff's proposed findings of uncontroverted fact as follows:

1. On June 5, 2001, the U.S. Army Corps of Engineers, Europe District, awarded Contract No. DACA90-01-C-0043 to the A.A.B Joint Venture, in the amount of $124,089,176, for the construction of the Nachshonim Military Storage Base near Elad, Israel ("the Project."). (First Amended Complaint, 6, admitted in Answer).

Response:

Defendant does not dispute this proposed finding.

2. The Project was one of several military construction projects in Israel funded pursuant to the Wye River Accords. (See Attachment A to Exhibit 1, Affidavit of S. Denison Keeney).

Response:

Defendant does not dispute this proposed finding.

3. As part of the implementation of the Wye River Accords, the contract between the United States Government and the Government of Israel, known as the Letter of Offer and Acceptance ("LOA") (Att. A to Ex. 1), provided at note 5, paragraph "n:"

> *The USG and its contractors may bring into Israel nationals of the United States and third countries having diplomatic relations with Israel for employment in carrying out the work implementing this LOA.*

Response:

Defendant does not dispute this proposed finding.

4. Note 10 of the LOA provided:

> *TAX EXEMPTION FOR THIRD COUNTRY NATIONALS. Third country nationals (non-U.S. or Israeli nationals) imported into Israel as work force employees of contractor(s) and or subcontractor(s) to work exclusively on efforts covered by the provisions of this LOA shall be exempted by the GOI from liability for or payment of Israeli personal income tax on earnings resulting from such employment nor shall they be subject to importation or exportation taxation of personal property imported into Israel or acquired there for personal use.*

Response:

Defendant does not dispute this proposed finding.

5. The announcement of the Solicitation for Bids, published in the Commerce Business Daily (Ex. 3) under "Description" noted:

> *Contractors may bring into Israel nationals of the U.S. and third countries having diplomatic relations with Israel for the purpose of accomplishing the work.*

Response:

Defendant does not dispute this proposed finding.

6. The Solicitation also advised prospective bidders that the Corps of Engineers would provide reimbursement to the Contractor for income and employment taxes paid to TCN employees who were brought into Israel to work only on the Nachshonim Project. (Ex. 1, Keeney Affidavit, at ¶ 6).

Response:

Defendant does not dispute this proposed finding to the extent that it is supported by the text of the referenced Solicitation. Otherwise, it is disputed upon the ground that the affidavit testimony cited by plaintiff to support this finding is inadmissible under best evidence rule, Fed. R. Evid 1002, and because the Solicitation's "Instructions to Bidders," referenced in the cited testimony, does not support this finding. A different provision – Special Contract Requirement SR-14 – governs reimbursement of income and employment taxes. Pl. App. 42-45.[1]

7. The bid package submitted by the Joint Venture included, as was required by the Solicitation, a "TCN Tax Plan" which showed the anticipated usage of Third Country National (TCN) workers, per month, together with the amount of anticipated tax reimbursement for each month of Project performance. *Id*. at ¶ 9.

Response:

Defendant does not dispute this proposed finding to the extent that it is supported by the text of the referenced bid package and Solicitation. Otherwise, it is denied upon the ground that it is not supported by competent evidence. The affidavit testimony cited by plaintiff to support this finding is inadmissible under best evidence rule, Fed. R. Evid 1002.

8. The bid package submitted by the Joint Venture also included, at Volume I, Schedule and Mobilization (Att. D to Ex. 1), under the heading "Early Mobilization and Procurement Measures" a line item "Make final arrangements for location and subcontracting of TCN camp." Section 3.2.2 thereof, entitled "Labor and Labor Camp," states:

---

[1] "Pl. App." refers to the appendix to plaintiff's motion for summary judgment.

> *SAB* [later changed to A.A.B.] *proposes to utilize one of the local manpower companies to provide third country nationals (TCNs) for unskilled, semi-skilled and skilled labor. Workers will come from either Romania or Turkey. Approximately 500 TCN workers are needed at peak production.*
>
> *Foremen are generally Israeli national employees of subcontractors. Highest level construction supervisors and management are SAB employees.*
>
> *It is common to bring TCNs into Israel to perform construction labor. There are several Israeli manpower firms specializing in providing TCN labor. The manpower firms also construct the worker camps, and provide services for feeding, and daily transportation from camp to the job site.*

Response:

Defendant does not dispute this proposed finding.

9. The contract between the Corps and the Joint Venture provides, at Special Requirement (SR) 22 (Att. G to Ex. 1) as follows:

> *Contractor may arrange, through the appropriate Government of Israel offices, to bring into Israel US nationals and nationals of third countries having diplomatic relations with Israel, for purposes of employment in carrying out this contract work.*

Response:

Defendant does not dispute this proposed finding, except to note that the quotation contained in the proposed finding is incomplete. Immediately following the quoted passage, the referenced contract provision goes on to state: "Contractors shall be responsible for timely and complete submittal of the necessary information and forms directly to the appropriate GOI agency for the required customs clearances, passports, visas, licenses or permits. The contractor shall be responsible for the sponsorship of its employees and their dependents and shall process said permits directly with the appropriate GOI agency. Offerors are advised that the Government of Israel reserves the right to limit access to designated

security areas and refuse entry into Israel or employment of specified individuals, or to require their departure from Israel, in accordance with Israeli law and practice."

10. The contract also contained, at SR-14 (Att. F to Ex. 1), entitled "TAX CLAUSE", the tax exemption provided for in the United States / Israel LOA. (See Att.-F to Ex. 1.) The clause required the Contractor to provide to the Corps, for submission to the GOI, information that would establish that the person was qualified for the tax exemption. The qualification was set forth at SR-14, paragraph 4(b), as follows:

> *The tax exemption for TCN personal income and employment taxes on earnings is limited to those third country nationals who enter Israel as employees of the contractor or sub- contractors to work exclusively on this contract or other contracts under LOA # IS-B-HAC.*

Response:

Defendant does not dispute the first and third sentence of this proposed finding. The second sentence is not a statement of fact but an interpretation of the referenced contract clause.

11. The Joint Venture based its bid in reliance on the Government's representation that the contractor would be able to bring Third Country National workers into Israel to perform skilled labor for the Project. (Ex. 7, Affidavit of Mickey Moav).

Response:

Defendant disputes this proposed finding. The evidence cited to support this proposed finding indicates only that the estimator responsible for preparing the estimate of construction costs for the contract in question estimated labor costs utilizing figures for foreign workers. The cited evidence – a declaration by that estimator – also opines that "[h]ad we known at the time of the bid that we would not be able to bring in foreign workers, our bid would have been

significantly higher . . . ." Plaintiff offers no evidence, however, that this estimator is competent to so testify, or otherwise to state whether the contractor relied upon the alleged representation. Further, plaintiff did in fact utilize TCNs on the project, including TCNs who were already in Israel and had been working on other projects for one of the companies comprising the plaintiff Joint Venture. Pl. App. 139-140, 182-83. Finally, the Government never "represent[ed] that the contractor would be able to bring Third Country National workers into Israel," but only that the contractor could "arrange, through the appropriate Government of Israel office," to bring TCNs into Israel for employment on this project. Pl. App. 46-47. It was clear from the language of the Solicitation that the decision whether or to what extent TCNs would be allowed into Israel would lie with the GOI. The Solicitation further advised the contractor that the risks regarding acquisition of visas for TCN workers fell on the contractor, Pl. App. 40-41, 47, and, in Solicitation Amendment 3, the Government advised contractors that it would not facilitate obtaining visas s during the construction program. Def. App. 5.[2]

12. The Corps and the GOI also interpreted the LOA and the contract as allowing the Joint Venture to utilize TCN labor in performing the work. Ex. 2.

Response:

Defendant disputes this proposed finding. The evidence cited in support of this proposed finding – the deposition testimony of John Jones, a Government official who participated in the negotiation of the LOA – did not pertain to the contract, but only to the LOA. In fact, when asked whether the contract contained a provision reflecting an anticipation that TCN labor would be utilized, Mr. Jones responded that he never reviewed the contract. Mr.

[2] "Def. App." refers to the appendix to defendant's cross-motion for summary judgment.

Jones responded that he had never even reviewed the contact. Pl. App. 91. Further, in the cited testimony, Mr. Jones discussed his understanding of the undertakings of the parties to the LOA – the governments of Israel and the United States – not the undertakings of the parties to the contract. And, the Joint Venture was a party to the contract, not the LOA.

13. In December 2001, the Government of Israel adopted what became known as the "Closed Sky Policy," which placed restrictions on the importation of new foreign workers. (Exhibit 1, Affidavit of S. Denison Keeney, at ¶ 14; Exhibit 4, Deposition of Yehuda Segev, at 7-12; Ex. 5, Affidavit of Avrum Joel Arenson, at ¶ 6; Exhibits 7, 8, 9.

Response:

Defendant disputes this proposed finding. The evidence cited by plaintiff to support this proposed finding does not include any policy statement or other document issued by the Government of Israel referring to a "Closed Sky Policy." This evidence is thus inadmissible under best evidence rule, Fed. R. Evid 1002. Plaintiff does cite a decision issued by the GOI in December 2001, which reduced quotas for foreign workers, Pl. App. 142, but the GOI had done so in previous years as well, Pl. App. 229, and had also adopted a policy of intensifying enforcement of laws prohibiting foreign workers from remaining in Israel illegally. Def. App. 6.

Additionally, we object to this proposed finding to the extent that it relies upon the deposition testimony of Yehuda Segev, for the reasons we stated on the record at the commencement of the deposition, see Pl. App. 100-101; because the cited testimony consists almost entirely of generalities far too vague to support any specific findings; and because, from the face of the cited testimony, it is primarily if not exclusively inadmissible hearsay.

14. As a result of the Closed Sky Policy, the Joint Venture was unable to bring into Israel any new TCNs. ( Ex. 5, Affidavit of Avrum Joel Arenson, at ¶ 16).

Response:

Defendant disputes this proposed finding for the reasons stated in response to proposed finding no. 13. Additionally, the only evidence cited in support of this proposed finding is a paragraph contained in an unsigned, undated affidavit. (In plaintiff's appendix, the signature line of the affidavit is blank. The it is followed by a signed signature page from what appears to be a different affidavit. Based upon the content of that page, the affidavit to which it pertains may or may not be similar to the affidavit cited.) See Pl. App. 140, 141. The cited paragraph does not support the proposed finding. Assuming that the affidavit as a whole may be read to assert that the Joint Venture was unable to bring into Israel any new TCNs, plaintiff offers no evidence establishing that the named affiant, Avrum Joel Arenson, possessed personal knowledge of the reasons for the actions and decision of the GOI, or was otherwise competent to testify that the asserted inability was a result of the alleged closed sky policy. Finally, even according to Mr. Arenson, if his company had proved that it had exhausted all efforts to hire foreign workers already in Israel, and had resolved the problem of deserters, it probably would have been able to utilize its allocation of 539 visas for the Nachshonim project. Def. App. 26-28.

15. The inability to bring new foreign workers into Israel had a substantial impact on the Joint Venture's ability to perform its work on the Nachshonim Project as a result of which the Joint Venture incurred additional costs. See Exhibit 1, Affidavit of S. Denison Keeney, at ¶¶ 16 and 19; Exhibit 5, Affidavit of Avrum Joel Arenson, at ¶ 17, and Exhibits 7, 8, 9, 10, 11,

12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 31, and 50.

Response:

Defendant disputes this proposed finding for the reasons stated in response to proposed finding no. 14. Additionally, the evidence cited in support of this proposed finding consists primarily of documents containing or reporting self-serving contentions made by plaintiff to the Government either during the events in question or in the certified claim submitted to the contracting officer concerning this matter. Some of these documents are Government reports reflecting these contentions, but the fact that the Government accepted te Joint Venture's assertions in this regard and did not contemporaneously challenge them does not prove that the assertions were true. Likewise, the fact that upon occasion Government officials conveyed the Joint Venture's version of the problem to other officials within the governments of Israel and the United States does not constitute an admission that this version of the problem was accurate. The content and context of the communications cited by plaintiff in this regard indicate that Corps of Engineers officials were simply attempting to ameliorate the problem as it was described by the Joint Venture, in the interest of progress on the project. Plaintiff points to no evidence that Corps officials possessed independent knowledge confirming the truth of the contractor's assertions concerning this matter.

To the extent that this proposed finding can be construed to assert that inability to bring new foreign workers into Israel was a cause of delay in the Joint Venture's performance of the contract, we dispute this proposed finding because it is not supported by a schedule analysis performed by a qualified expert or other competent evidence concerning the effect of this inability upon the performance schedule. We reserve the right to refute any contentions

concerning the causes of delay in the project when that issue is before the Court, based upon, inter alia, the expert report of Ockman & Borden, served upon plaintiff on November 1, 2007.

Finally, we dispute we proposed finding because plaintiff has provided no evidence that it was unable to hire foreign workers already in Israel, or to hire Israeli construction workers; because the Joint Venture was paying its TCNs a monthly salary higher than the average for Israeli construction workers, Pl. App. 245; and because there is no significant difference in terms of quality or speed or cost between the work of Israeli construction workers and foreign workers. Def. App. 31.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

**s/Jeanne E. Davidson**
JEANNE E. DAVIDSON
Director

**Filed electronically**

OF COUNSEL:

PAUL CHEVERIE
Command Counsel
BRETT R. HOWARD
Assistant Command Counsel
Europe District
U.S. Army Corps of Engineers

**s/Shalom Brilliant**
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

Attorneys for Defendant

November 2, 2007