IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Nos. 04-1719C, 05-114C |
| | ) | 05-1172C, and 06-49C, |
| THE UNITED STATES OF AMERICA | ) | (CONSOLIDATED) |
| | ) | (Chief Judge Damich) |
| Defendants. | ) | |

**PLAINTIFF'S SURREPLY IN FURTHER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO THE M-20 BOLTS CLAIM IN NO. 05-1172C AND FOR SUMMARY JUDGMENT AS TO THE L/600 DEFLECTION CLAIM IN NO. 05-1172C**

Pursuant to the Court's Order dated December 3, 2007 plaintiff submits its Surreply. As ordered, this Surreply addresses only points (1) and (2) of the proposed topics in Plaintiff's Motion For Leave To File A Surreply.

A. The Government's Statements With Respect To Leniency Pertaining To The Pressure Test Do Not Constitute Extrinsic Evidence; And Even If They Did Such Evidence Was Clearly Admissible Under Numerous Exceptions To The Parol Evidence Rule

The government argues that the terms of Modification P9 are clear. Defendant states in its Reply "The matters to which the parties agreed in the modification were listed in a statement of work attached to and incorporated in the modification. The statement of work contained no promise by the government to be lenient concerning the pressure test, much less a promise to exercise leniency within a specified time or in any particular manner." Reply, page 8.

Plaintiff submits that a review of Modification P9 (Defendant's Appendix 3-11) and the relevant surrounding circumstances demonstrate beyond question that this argument is meritless.

First, Paragraph 2 of the scope of work (Defendant's Appendix 4) states "The Agreements reached in the referenced meeting are hereby incorporated into the contract, along

with the clarification to the minutes as listed below." The minutes of the meeting are referenced in item 1 of the scope of work as Enclosure 1 to the modification.

Those minutes contain a statement by the government's authorized representative agreeing to leniency by the government with respect to the pressure test if the Joint Venture agreed to give up what it considered to be a valid claim, i.e. the L/600 issue.[1] In addition, Mr. Keeney's declaration clearly states that the Joint Venture considered the quid pro quo for the waiver of the L/600 issue to be the granting of leniency with respect to the specified pressure test as stated by Mr. Roach at the meeting. Keeney Declaration ¶¶ 8 – 9.[2]

This understanding is confirmed by the minutes of the June 4, 2002 A.A.B JV Management Committee meeting which states under Item 9.1:

> Change order issued for relief of minimum bolt M-20 to M-16 (700K exposure), minimum dehumidifier capacity (7% vs. 15% air infiltration), relief from providing copper busbars in DSBs, <u>easing of expectations for DSB pressure test</u> and schedule relief in exchange for JV commitment to provide panels to L/600.

(emphasis added). (Exhibit 1).

In short, since the minutes were incorporated into the contract, the government's authorized representative's statement is not extrinsic evidence. Moreover, it is clear that the Joint Venture considered the agreement to ease expectations on the pressure test to be a material

---

1 The certified claim made this precise point, as follows: "The Joint Venture was led to believe that USACE would release it from full compliance with the impossible testing specification. In return for this alleged promise, the Joint Venture was forced to construct a more costly and structurally stable building than required by the contract." Def. App. 24.

2 The government asserts without <u>any</u> evidentiary basis that the "actual" quid pro quo for A.A.B's acquiescence on the L/600 issue was the allowance of the use of M-16 bolts and a provision that foundation and concrete work on the DSBs could begin prior to completion of the initial DSB. There is no basis in the record for that assertion. Mr. Keeney's declaration to the contrary is unrebutted.

term which it believed was included in the modification. Thus, the parol evidence rule does not apply.[3]

Second, when integration is in dispute, evidence of agreements and negotiations prior to and contemporaneous with the adoption of a writing are admissible to establish whether or not the writing is an integrated agreement. Restatement (Second) Contracts § 214(a) (1981). This rule was followed by the predecessor Court Of Claims in *David Nassif Assocs. v. United States*, 214 Ct. Cl. 407, 419, 557 F.2d 249, 256 (1977) (in all cases the Court should consider the negotiations which produced the writing). This is particularly true, where as here, there is no integration clause. *McAbee Constr., Inc. v. United States*, 97 F.3d 144 (1996). *See also Massachusetts Bay Trans. Auth. v. United States*, 129 F.3d 1226, 1235 - 1236 (Fed. Cir. 1997) (pre-modification letters used to determine that modification was not a fully integrated agreement). Therefore, the statement with regard to leniency is also admissible for this purpose.

Third, it is well established that an agreement is not completely integrated if it omits a consistent additional agreed term. Restatement (Second) of Contracts § 216 (1981). *United Technologies Corp.*, ASBCA Nos. 46880, 46881, 97-1 BCA ¶ 28,818, at Page 143,798 (evidence of prior negotiations admissible because government failed to establish that there was a completely integrated or even a partially integrated agreement). The agreement for leniency is a consistent additional term and is admissible on this basis as well.

Finally, where an accord and satisfaction is ambiguous the court may examine extrinsic evidence to determine the intent of the parties. *District of Columbia v. United States*, 67 Fed. Cl. 292, 339 (2005); *See also Jackson Constr. Co., Inc. v. United States*, 62 Fed. Cl. 84, 93 (2004)

---

3 Parol evidence is also admissible to establish mistake. Restatement (Second) of Contracts § 214(d) (1981).

(extensive evidence of negotiations used to determine the meaning of an ambiguous modification).

Plaintiff submits that the material term granting leniency with respect to the pressure test which Mr. Keeney stated was the Joint Venture's quid pro quo for agreeing to waive the JV's valid L/600 claim, and was noted in the minutes which are part of Modification P9, should therefore be deemed to be part of the modification. At a minimum, the modification is ambiguous with respect to this material term and parol evidence should be considered by the court as an aid in interpreting the ambiguous contract language. *W & F Bldg. Maint. Co., Inc. v. United States*, 56 Fed. Cl. 62, 69 (2003) (extrinsic evidence is independently admissible to aid in the interpretation of ambiguous contractual terms).

B. The Record Clearly Demonstrates That The Government Did Not Fulfill Its Promise Of Leniency With Respect To The Specified Pressure Test

The government's assertion that to the extent that this warning may be construed as a promise none of the evidence offered by A.A.B suggests that this promise was not fulfilled." (Reply, page 9), is false and misleading.

Mr. Keeney's declaration states that, during the entire period from December 2001 through January 2003, the government insisted on strict compliance with the specified pressure test. Keeney Dec. ¶ 17. Further, the certified claim notes that tests were performed. For example, on 13 and 22 June 2002 the JV conducted pressure tests on a mock up, each of which failed. Def. App. 25. Those tests were conducted in an effort to comply with the specified pressure test. Other exhibits to the certified claim are to the same effect: the Joint Venture's letter of July 22, 2002 recounted the pressure tests performed on the mock up over the prior three months and specifically requested that the COE lower the requirements, (Exhibit 2); the government's letter of September 5, 2002 expressed disappointment with the statement by one of

the Joint Venture's subcontractors that the "pressure criteria can't be achieved." (Exhibit 3); and by letter dated November 7, 2002 Mr. Roach directed the Joint Venture to "Complete the construction of the initial DSB and perform the various tests necessary to prove your design in accordance with Division 02, Section 003, Chapter J of the Contract, (Exhibit 4); Finally though it eventually agreed to consider alternative testing procedures, relaxation of the requirement did not occur until February 19, 2003 when the government informed the Joint Venture that ASTM E-779 was an acceptable alternative to the specified test. (Exhibit 5).

In short, the government's statements are grossly misleading. Several tests were performed and the government was apprised of the results. However, more importantly the record is clear that the government did not agree to relax the impossible pressure test requirement until February 2003, 9 months after the modification was executed. Thus it is beyond question that the government did not fulfill the promise of leniency which the Joint Venture relied upon in executing Modification. P9.[4]

Dated: December 7, 2007

Respectfully submitted,

s/ Brian Cohen

Brian Cohen
BELL BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300
Attorney for Plaintiff A.A.B Joint Venture

4 Whether other consideration flowed to the Joint Venture is irrelevant. Ultimately the government agreed to allow the use of M16 bolts (which plaintiff claimed it was contractually entitled to use) and allowed foundation and concrete work on the DSBs to begin prior to the completion of the initial DSB. However, the Joint Venture was only willing to agree to waive its valid L/600 claim if leniency was shown with respect to the impossible pressure test requirement. Mr. Keeney's declaration is clear on this point and the incorporated minutes of the meeting support him rather than Mr. Roach. Interestingly Mr. Roach's declaration states only that he did not say that the "Government would show leniency" if A.A.B failed to meet the pressure test. Significantly Mr. Roach does not contest the accuracy of the statement ascribed to him in the minutes. Def. App 9.

Of Counsel:
Philip Clark Jones
Michael J. Schrier
BELL BOYD & LLOYD, LLP
1615 L Street, N.W., Suite 1200
Washington, D.C. 20036
(202) 466-6300

**CERTIFICATE OF SERVICE**

I, Brian Cohen, hereby certify under penalty of perjury that the foregoing Plaintiff's Surreply In Further Opposition To Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment As To The M-20 Bolts Claim In No. 05-1172C And For Summary Judgment As To The L/600 Deflection Claim In No. 05-1172C and Exhibits will be served automatically via "shalom.brilliant.usdoj.gov" upon ECF filing this 7th day of December, 2007 upon:

Shalom Brilliant, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

s/ Brian Cohen
Brian Cohen